IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CYNTHIA B. SCOTT, ET AL.,

*Plaintiffs*,

v.

HAROLD W. CLARKE, ET AL.,

*Defendants*.

CIVIL ACTION NO. 3:12-CV-00036

MEMORANDUM OPINION

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

Plaintiffs, all of whom are prisoners residing at Fluvanna Correctional Center for Women ("FCCW"), have filed an action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated Plaintiffs' constitutional rights under the Eighth Amendment to be free from cruel and unusual punishment.  Plaintiffs assert that FCCW fails to provide constitutionally adequate medical care and that Defendants are deliberately indifferent to this failure.  Seeking "to represent a class consisting of all prisoners who currently reside or will reside in the future at FCCW and who have sought, currently seek[,] or will seek medical care while residing at FCCW," Plaintiffs request a declaratory judgment and preliminary and permanent injunctions ordering FCCW to provide adequate medical care to Plaintiffs and all other similarly situated women residing at FCCW.

FCCW is a facility of the Commonwealth of Virginia Department of Corrections (the "VDOC"), and most of the named individual Defendants are VDOC employees who are being sued in their official capacities,[1] which is essentially "'another way of pleading an action against

---

[1] The official capacity Defendants are Harold W. Clarke, the Director of the Virginia Department of Corrections (the "VDOC"); David Robinson, VDOC's Chief of Corrections Operations; Frederick Schilling,
(continued...)

an entity of which an officer is an agent.'  As long as the government entity receives notice and

an opportunity to respond, an official-capacity suit is, in all respects other than name, to be

treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)); *see also Huggins v. Prince

George's Cnty., Md.*, 683 F.3d 525, 532 (4th Cir. 2012).  Thus, the complaint pleads an action

against the VDOC, and I will treat the VDOC and the official capacity defendants

interchangeably.  *See Huggins*, 683 F.3d at 532 n. 3.

The VDOC Defendants have moved to dismiss pursuant to Rule 12(b)(6), arguing the

following:  that they have not been personally involved in denying adequate medical care and

cannot be held liable on a *respondeat superior* theory; that they have not tacitly authorized or

been deliberately indifferent to the healthcare provider's alleged misconduct; and that the case

cannot proceed as a class action as a matter of law.  However, each argument fails, and I will

deny the motion to dismiss.  As explained further herein, the claims against the VDOC

Defendants are not premised on a theory of *respondeat superior*; rather, the complaint alleges

that the VDOC Defendants have a non-delegable duty to provide constitutionally adequate

medical care, and that the VDOC Defendants are directly liable, not vicariously liable, for the

VDOC's policy and practice of providing insufficient health care.  The complaint lays out

thoroughgoing allegations that the VDOC Defendants were (and are) directly on notice of

systemic and pervasive problems regarding the provision of medical care at FCCW, but have

---

[1](...continued)
VDOC's Director of Health Services; and Phyllis A. Baskerville, the Warden at Fluvanna Correctional Center
for Women ("FCCW").  Armor Correctional Health Services, Inc. ("Armor") and "John/Jane Doe, M.D.,
Acting Medical Director, Fluvanna Correctional Center for Women" are also named as Defendants in this
case, but they are not parties to the instant motion.

failed to take any action.  As for the argument against class certification, Plaintiffs have not yet even filed a motion to certify a class, and the VDOC's request that I deny certification is premature.

## I.

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, I apply the pleading standard refined by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See also* Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8.  The non-moving party must have alleged facts that "state a claim to relief that is plausible on its face," *i.e.*, facts that "have nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "*Iqbal* and *Twombly* do not require a plaintiff to prove his case in the complaint,"*Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d 278, 291 (4th Cir. 2012), as the following long-held rule still stands: "in evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the [non-moving party] in weighing the legal sufficiency of the complaint," *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).  *See also Robertson*, 679 F.3d at 284; *E.I. duPont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

## II.

### *A.*

Plaintiffs have adequately alleged the elements of viable claims under the Eighth Amendment, which requires that Plaintiffs allege "deliberate indifference" to a "sufficiently serious" deprivation of their Eighth Amendment rights. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted); *see also Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) ("An inmate's Eighth Amendment claim involves a subjective component and an objective component. 'Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).'") (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Regarding the inquiry whether Plaintiffs have alleged a "sufficiently serious" deprivation of their Eighth Amendment rights, Plaintiffs have alleged Defendants' "deliberate indifference" to "serious" medical conditions and, significantly, Defendants' motion to dismiss raises no challenge to Plaintiffs' allegations regarding the seriousness of the medical conditions. A "'serious . . . medical need' is one 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). Plaintiffs have alleged, *inter alia*, the following diagnosed medical issues

-4-

and problems obviously necessitating a doctor's care: sarcoidosis, a potentially life-threatening disease involving cellular inflammation; pulmonary embolism, a potentially life-threatening blockage of the main artery of the lung or one of its branches; degenerative cervical spine and disc disease; chronic pain; carpal tunnel syndrome; incontinence; temporomandibular joint disorder, which has caused a misaligned jaw; methicillin-resistant *Staphylococcus aureus* ("MRSA," also called multidrug-resistant *Staphylococcus aureus*), a highly contagious bacterial infection; and profound deafness aggravated by recurring tonsillitis.  Plaintiffs have met their burden to allege "sufficiently serious" deprivations of their Eighth Amendment right to constitutionally adequate medical care.  Any further determination whether Plaintiffs' medical needs are objectively "sufficiently serious" is an argument on the merits that is not properly considered or resolved at the Rule 12(b)(6) stage.

Plaintiffs have also adequately alleged "deliberate indifference to a prisoner's serious illness or injury" to support a cause of action under § 1983, as contemplated by *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Such deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.  For a prison official to exhibit deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a *substantial risk* of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837 (emphasis added).  And, as I have already observed, "a factfinder may conclude that a prison official knew of a *substantial risk* from the very fact that the risk was *obvious*."  *Id.* at 842.

### B.

Plaintiffs' allegations amply support a reasonable inference of Defendants' deliberate

indifference to Plaintiffs' serious medical needs.  Claiming that the "sick call" and referral processes at FCCW are deficient, Plaintiffs allege that the "responsibility to determine whether a prisoner will be scheduled for an appointment with a doctor and what, if any, treatment short of a doctor's appointment an ailing prisoner will receive" is "delegated" to licensed practical nurses ("LPNs" and certified nursing assistants ("CNAs"), rather than physicians or registered nurses, and that these LPNs and CNAs lack "the medical training and experience of physicians, certified physicians' assistants[,] or registered nurses . . . ."  "[D]eliberate indifference [can] occur[] when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment," and medical personnel serving as gatekeepers with respect to access to care also may be liable "if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000); *see also Dawson v. Kendrick*, 527 F. Supp. 1252, 1307 (S.D. W.Va. 1981) (initial screening upon incarceration by untrained staff indicated grossly deficient medical care).

Plaintiffs allege that, as a result of cost-saving concerns, medical personnel at FCCW "have failed, or refused, to invest the time or effort required to acknowledge, examine, diagnose and treat them with respect to existing or potentially serious medical problems and concerns."  Indeed, the complaint is replete with specific examples of how Plaintiffs have been adversely affected as a result of this concern.  A delay in providing medical treatment in the face of observable symptoms may give rise to an inference of deliberate interference.  *See, e.g., Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990) (alleged lack of follow-up after known and ongoing complaints of cardiac-related symptoms could allow finding of deliberate indifference); *Sosebee v. Murphy*, 797 F.2d 719, 181-82 (4th Cir. 1986) (deliberate indifference an issue of material fact where treatment of allegedly obvious symptoms was delayed); *Tillery v. Owens*, 719 F. Supp.

1256, 1308 (W.D. Pa. 1989) (court will defer to informed judgment on appropriate medical treatment, but "if an informed judgment has not been made, the court may find that an eighth amendment claim has been stated") (citing *Supre v. Richetts*, 792 F.2d 958, 963 (10th Cir. 1986)). Even a "significant delay in treating a medical condition which is *not life-threatening* can state an Eighth Amendment claim." *Wilkins v. Corr. Med. Sys.*, 928 F.2d 400 (Table), 1991 WL 34999, at *3 (4th Cir. Mar. 19, 1991) (unpublished) (collecting cases) (emphasis added).

Plaintiffs allege that medical personnel at FCCW have failed, or refused, to make referrals to specialists despite prisoners' apparent and often previously documented need for specialized care. These allegations, taken as true, satisfy Plaintiffs' burden to allege facts giving rise to a reasonable inference of deliberate indifference. *See, e.g., Hayes v. Snyder*, 546 F.3d 516, 526 (7th Cir. 2008) (refusal to refer prisoner to specialist when generalist was unable to identify cause of severe, worsening pain could support finding of deliberate indifference); *Greeno v. Daley*, 414 F.3d 645, 654-55 (7th Cir. 2005) (jury could find deliberate indifference based on two-year delay in referring prisoner to specialist or authorizing endoscopy despite prisoner's deteriorating medical condition); *McElligot v. Foley*, 182 F.3d 1248, 1256-57 (11th Cir. 1999) ("deliberate indifference may be established . . . by a decision to take an easier but less efficacious course of treatment") (citations omitted); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704-05 (11th Cir. 1985) (refusal to refer prisoner to specialists absent court orders, despite recognized need for treatment, was deliberate indifference).

Plaintiffs allege that FCCW inmates may stand in the "Pill Line" for an hour or more, often under harsh conditions, only to receive an incorrect prescription or to be told that their medicine has been forgotten, or not ordered, or is otherwise unavailable. In addition, the complaint alleges that FCCW doctors have altered the courses of medicine prescribed by U.Va.

-7-

specialists to one of the Plaintiffs for sarcoidosis and blood clots; have limited or denied physical therapy prescribed for two of the Plaintiffs; have ignored a specialist's suggestion for surgery to address one Plaintiff's carpal tunnel syndrome, even though lesser remedies proved ineffective; denied a surgery prescribed by a specialist for one Plaintiff's chronic bladder problem because she was deemed "too old"; denied a Plaintiff braces and oral surgery needed to permanently correct a temporomandibular joint disorder, which will cause indefinite damage if left untreated; and rejected a specialist's order that a Plaintiff resume medication to treat chronic chest pain. Similar allegations of prison doctors' denial of experts' recommended treatment have been found sufficient to allege Eighth Amendment violations. *See, e.g., Estelle*, 429 U.S. at 105 (deliberate indifference may be manifested by "intentionally interfering with the treatment once prescribed"); *Gil v. Reed*, 381 F.3d 649, 664 (7th Cir. 2004) (allegations that prison doctor prescribed medication that specialist warned against and canceled specialist's prescriptions created material issue of fact with regard to doctor's state of mind); Starbeck v. Linn Cnty. Jail, 871 F. Supp. 1129, 1146-47 (N.D. Iowa 1994) (allegation that recommended surgery was denied because state did not want to pay for associated costs created issue of material fact with respect to deliberate indifference); *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) (reversing dismissal of complaint and concluding that it was question of fact whether denial of recommended post-operative care was due to deliberate indifference).

Plaintiffs have alleged that medical personnel at FCCW "intentionally withhold[]" pain medication sufficient to alleviate severe and chronic pain. These allegations alone may support a reasonable inference of deliberate indifference. *See, e.g., Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) ("We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such a pain.");

*McElligott*, 182 F.3d at 1257 ("[P]rison officials may violate the Eighth Amendment by failing to treat an inmate's pain.").  Indeed, the allegations of Defendants' deliberate indifference to the individual named Plaintiffs also suggest a systemic pattern of deficient medical care at FCCW, which also provides a basis for a reasonable inference of deliberate indifference.  *See Bishop v. Stoneman*, 508 F.2d 1224, 1226 (2d Cir. 1974) (considering allegations of six "typical incidents" and reversing district court order granting motion to dismiss).[2]

## C.

Plaintiffs further allege that Defendants Schilling and Baskerville were and are responsible for the review and disposition of "hundreds of grievances recounting FCCW's systemic provision of deficient medical care and/or outright failure to provide appropriate medical care," and that this role placed these defendants directly on notice of Defendant Armor's pattern of repeated failure to provide constitutionally adequate medical care over an extended period of

---

[2] As the United States Court of Appeals for the Second Circuit explained in *Bishop v. Stoneman*,

> a series of incidents closely related in time, within several months as these are, may disclose a pattern of conduct amounting to deliberate indifference to the medical needs of prisoners. We hold that the cumulation of incidents alleged in the complaint entitled plaintiffs to a trial of the underlying allegation of deliberate indifference to their medical needs.

508 F.2d 1224, 1226 (2d Cir. 1974).  Even a pattern of reckless or negligent conduct may establish deliberate indifference to serious medical needs.  *See DeGidio v. Pung*, 920 F.2d 525, 532-33 (8th Cir. 1990).  Courts nationwide are in accord.  *See Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1988) ("And while a single instance of medical care denied or delayed, viewed in isolation, may appear to be the product of mere negligence, repeated examples of such treatment bespeak a deliberate indifference by prison authorities to the agony engendered by haphazard and ill-conceived procedures."); *Newman v. Alabama*, 503 F.2d 1320, 1332 (5th Cir. 1974) ("[T]he record is replete with countless examples of inmates who were subjected to incalculable discomfort and pain as a result of the lack of medical care or inadequacy in the treatment administered. These examples fortify the conclusion that deficiencies were not isolated and bespeak of callous indifference to the welfare of inmate-patients. Moreover, these examples also belie any suggestion that suffering resulted merely from legitimate discrepancies of opinion as to the proper treatment to be rendered."); *Dawson v. Kendrick*, 527 F. Supp. 1252, 1307 (S.D. W.Va. 1981) (*Estelle* standard has "been applied to systemic deficiencies in the provision of medical care in prisons [and] systemic deficiencies manifested by insufficient or unqualified medical personnel, and inadequate medical facilities and procedures in a prison which make unnecessary suffering inevitable may constitute an unconstitutional deprivation").

time.  The "[r]eceipt of letters by prison officials may be evidence of personal knowledge of unconstitutional conditions," particularly where "the harm continues over a period of time." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).  Thus, contrary to Defendants' assertion, Plaintiffs do not claim that Defendants are liable based only on isolated "response[s] to a grievance or appeal."   Rather, the hundreds of grievances that Plaintiffs allege have been reviewed by Defendants Schilling and Baskerville could constitute "notification of a continuing problem which may have been within [the VDOC Defendants'] power to remedy."  *Wright*, 766 F.2d at 850; *see also Motto v. Correctional Medical Services*, Civil Action No. 5:06-cv-00163, 2007 WL 2897854, at *4 (S.D. W.Va. Sept. 27, 2007) (plaintiff's allegations that prison officials were aware of his need for surgery through filing of grievance letters and that they were deliberately indifferent were sufficient to state §1983 claim).  Thus, given that Plaintiffs have alleged that the VDOC Defendants remained inactive despite personal knowledge of information disclosing alleged ongoing deficiencies in medical care, Plaintiffs' Eighth Amendment claim may proceed against them directly.  *See, e.g., Young v. Wexford Health Sources*, Civil Action No. 1:10-cv-08220, 2012 WL 621358, at *5 (N.D. Ill. Feb. 14, 2012) ("Where, as here, Plaintiff informed correctional officials that he was being denied access to the health care unit, those officials may be liable under 42 U.S.C. § 1983 for their purported inaction.") (citations omitted).

At the very least, Plaintiffs allege that the hundreds of medical grievances initiated by Plaintiffs and other FCCW residents informed Defendants Schilling and Baskerville of allegations of serious and repeated provision of deficient medical care on the part of Defendant Armor that should have caused them to investigate the underlying facts and circumstances.  *See Farmer*, 511 U.S. at 843 n. 8 ("[A] prison official . . . would not escape liability if the evidence showed that he merely refused to verify the underlying facts that he strongly suspected to be

-10-

true, or declined to confirm inferences of risk that he strongly suspected to exist . . . ."); *see also Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) ("Nevertheless, even under [the] subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious. . . . [A]n injury might be so obvious that the factfinder could conclude that the guard *did* know of it because he could not have failed to know it."). Furthermore, as previously discussed, such a pattern of deficient care can constitute evidence of deliberate indifference. Accordingly, Plaintiffs' factual allegations, taken as true, reasonably support the inference that Defendants Schilling and Baskerville were deliberately indifferent with respect to Plaintiffs' serious medical problems.[3]

The complaint states a claim for deliberate indifference to serious medical needs for which the VDOC can be held directly liable, rather than vicariously liable, under § 1983. Plaintiffs have alleged facts sufficient to support a claim that the VDOC maintained an official policy or custom of constitutionally deficient medical care under *Monell* and its progeny. In particular, Plaintiffs allege that officials at the VDOC have remained deliberately indifferent to or have actively ratified systemic and pervasive violations of the constitutional rights of the women incarcerated at FCCW and that, as a consequence of this policy or custom of inaction, officials at VDOC tacitly authorized and enabled ongoing violations of Plaintiffs' right to constitutionally-adequate medical care. A governmental entity and its officers sued in their

---

[3] Additionally, Plaintiffs allege that one of the Plaintiffs "is being retaliated against for having attempted to raise legitimate concerns with respect to the nature and quality of her medical care . . . ." This allegation of retaliation, which necessarily involves the personal knowledge and involvement of Defendant Baskerville, itself gives rise to an inference of deliberate indifference. *See, e.g., Speagle v. Ferguson*, Civil Action No. 2:10-cv-02040, 2010 WL 3724784, at *7 (C.D. Ill. Aug. 20, 2010) (denying motion to dismiss claim for failure to provide adequate medical care and noting that allegation of denial of medicine as retaliation by sheriff "impl[ied] that [sheriff] was deliberately indifferent to potential harm to Plaintiff").

official capacity can be held directly liable under § 1983 when a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694.  An actionable "policy or custom" can arise "through an omission . . . that 'manifest[s] deliberate indifference to the rights of citizens'" or "through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)); *accord Newhard v. Borders*, 649 F. Supp. 2d 440, 446 (W.D. Va. 2009).  Liability arises where a plaintiff shows that the policy or custom of inaction was "the 'moving force of the constitutional violation' specifically charged." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984).   A causal connection between "a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom," *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987), as, for example, where "[governmental] employees [or agents] could reasonably infer . . . tacit approval of the conduct in issue," *Milligan*, 743 F.2d at 230.

Plaintiffs have sufficiently pled a custom or practice of deliberate indifference to their serious medical needs.  An unconstitutional "custom 'may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law.'" *Lytle*, 326 F.3d at 473 (quoting *Carter*, 164 F.3d at 218).  A custom in this sense "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees" *Newhard*, 649 F. Supp. 2d at 446 (quoting *Spell*, 824 F.2d at 1387).  "'Actual knowledge may be evidenced by recorded reports to

-12-

or discussions by a municipal governing body.  Constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them.'" *Id*, 649 F. Supp. 2d at 446 n. 4 (quoting *Spell*, 824 F.2d at 1387).  Further, such a custom gains the force of law where officials "fail[], as a matter of specific intent or deliberate indifference, . . . to correct or stop the practices."  *Spell*, 824 F.2d at 1391.

Plaintiffs allege that,

[a]s a result of its officials' and employees' direct participation in and awareness of the review process involving FCCW prisoners' hundreds of grievances recounting FCCW's systemic provision of deficient medical care and/or outright failure to provide appropriate medical care, without requiring FCCW and Armor and/or PHS [Armor's predecessor contractor] to adopt and implement corrective measures, VDOC has adopted and engaged in a custom or practice of deliberate indifference to plaintiffs' serious medical problems and needs.

Plaintiffs further allege "'numerous particular instances' of unconstitutional conduct," *see Lytle*, 326 F.3d at 473, visited against the named Plaintiffs and others incarcerated at FCCW, and far less is required to survive a motion to dismiss, *see Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 339 (4th Cir. 1994) ("There is no requirement that [plaintiff] detail the facts underlying his claims, or that he plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation.").  Thus Defendants' contention that Plaintiffs have not sufficiently pled Defendants' knowledge of deficient medical care is refuted.  Plaintiffs allege that Defendants Schilling and Baskerville had "direct personal knowledge of the substance of prisoner grievances describing the pervasive nature of the deficient medical care to which the named plaintiffs and other prisoners similarly situated have been subjected at FCCW," and that the VDOC likewise had such knowledge "[a]s a result of its officials' and employees' direct participation in and awareness of the [grievance]

-13-

review process."   By exhibiting deliberate indifference to or tacitly authorizing the alleged deficient care, the VDOC Defendants made additional, ongoing violations at FCCW reasonably probable, *see Spell*, 824 F.2d at 1391, and Plaintiffs state a "facial[ly] plausib[le]" claim grounded on "factual content that allows the court to draw the reasonable inference that [the VDOC] [is] liable for the misconduct alleged," *see Iqbal*, 556 U.S. at 678.

Defendants baldly assert that Plaintiffs' "claims must fail because *respondeat superior* generally does not apply in a § 1983 case."   However, precedent "firmly establishe[s] the principle that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates."  *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).   Supervisory liability "is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."  *Id*. (citation omitted).   To establish supervisory liability under § 1983, a plaintiff must show the following:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).   In a § 1983 action like this case, "liability may extend to the highest levels of state government" so long as the official fell within "the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked."  *Slakan*, 737 F.2d at 373.

Plaintiffs have adequately alleged facts that, taken as true, reasonably give rise to the

-14-

inference that the VDOC Defendants had "actual or constructive knowledge" of the "pervasive and unreasonable risk" that Plaintiffs and similarly situated prisoners were suffering and would continue to suffer violations of their Eighth Amendment right to constitutionally adequate medical care as a result of the pervasive shortcomings in the medical care provided at FCCW. *See Shaw*, 13 F.3d at 799. Plaintiffs allege that Defendants Schilling and Baskerville had "direct personal knowledge of the . . . pervasive nature of the deficient medical care" rendered to prisoners at FCCW.  These allegations also support an inference that the VDOC Defendants had constructive knowledge of alleged unconstitutional deprivation of adequate medical care of a systemic nature.

Plaintiffs have also alleged facts to show the VDOC Defendants' "continued inaction in the face of documented widespread abuses," which "provides an independent basis for finding . . . deliberate[] indifferen[ce] or acquiesce[nce] in the constitutionally offensive conduct of [] subordinates."  *See Slakan*, 737 F.2d at 373.  Plaintiffs allege "widespread abuses" in the form of systemic and pervasive deficiencies in the medical care provided at FCCW, and "continued inaction" on the part of the VDOC Defendants.  Plaintiffs allege that the VDOC Defendants deliberately ignored or tacitly authorized the provision of grossly inadequate medical care to the inmates at FCCW, that the VDOC Defendants knew of these gross inadequacies through the grievance process, and yet neglected to respond with corrective action.

Plaintiffs have pled "an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff" sufficient to establish causation.  *See Shaw*, 13 F.3d at 799. The complaint states that Defendant Schilling, Director of Health Services, "exercis[es] direct day-to-day supervisory authority over the provision, under contract, of medical care services to prisoners incarcerated in VDOC correctional facilities by" Defendant Armor and its predecessor

contractor, PHS.  The complaint states that Defendant Baskerville, as Warden of FCCW, "is directly responsible at all times for the safe, secure and humane housing and treatment of all prisoners residing at FCCW, including the plaintiffs."  The complaint further states that, under VDOC Operating Procedure No. 866-1, Defendants Schilling and Baskerville both have direct responsibility over the review and resolution of grievances initiated by prisoners for failure to provide medical care or provision of inadequate medical care at FCCW.  The complaint states that Defendant Robinson, VDOC's Chief of Corrections Operations, "exercises general supervisory authority over VDOC's provision of medical care services to prisoners incarcerated in VDOC facilities," including FCCW, and that, in this capacity, Defendant Robinson oversees the Health Services Unit in its entirety.  Accordingly, the complaint sufficiently alleges that Defendants Robinson, Shilling, and Baskerville were and are participants in the "the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked."  *See Slakan*, 737 F.2d at 373.

The same is true of Defendant Clarke.  Plaintiffs allege that Clarke, the Director of the VDOC, "is the legal custodian of all prisoners" housed at FCCW "and is responsible for the safe, secure and humane housing and treatment of those prisoners."  Defendant Clarke "had the responsibility and capability to end the offensive practices."  *See Slakan*, 737 F.2d at 373.  Yet, as alleged in the complaint, Defendant Clarke failed to affirmatively act to alter the contractors' behavior and, thereby, perpetuated the constitutional abuses.[4]

---

[4] As Director of the VDOC, Defendant Clarke has the duty "[t]o supervise and manage the Department and its system of state correctional facilities," and the authority to "prescribe rules for . . . the health of prisoners in state correctional facilities."  Va. Code §§ 53.1-10(2), 53.1-25.  The Code of Virginia also provides that "[i]t shall be the general purpose of the state correctional facilities to provide proper . . . medical and mental health care and treatment," among other things. Va. Code § 53.1-32(A).

In sum, Plaintiffs' allegations, taken as true, necessarily survive the motion to dismiss. Plaintiffs have stated a viable claim for supervisory liability against each of the named VDOC Defendants in their official capacities and thus against the VDOC itself.

### III.

Defendants err in asking me to deny class certification, because Plaintiffs have not yet moved for class certification, and courts usually permit discovery relating to the issue before deciding whether to allow the action to proceed on a class basis.  *See, e.g., Kirby v. Blackledge*, 530 F.2d 583, 588 (4th Cir. 1976) (prisoners were "entitled to pursue their discovery procedures" and "entitled to the opportunity to perfect their class action").

### IV.

For the stated reasons, Defendants' motion to dismiss will be denied.  An appropriate order accompanies this memorandum opinion.

Entered this __11th__ day of December, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE