IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CYNTHIA B. SCOTT, ET AL.,<br>                            *Plaintiffs*,<br><br>v.<br><br>HAROLD W. CLARKE, ET AL.,<br>                            *Defendants*. | CIVIL ACTION NO. 3:12-CV-00036<br><br>**MEMORANDUM OPINION**<br><br>NORMAN K. MOON<br>UNITED STATES DISTRICT JUDGE |

Plaintiffs, all prisoners residing at Fluvanna Correctional Center for Women ("FCCW"), filed an action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated Plaintiffs' constitutional rights under the Eighth Amendment to be free from cruel and unusual punishment. Plaintiffs assert that FCCW fails to provide adequate medical care and that Defendants are deliberately indifferent to this failure. Plaintiffs request a declaratory judgment and preliminary and permanent injunctions ordering FCCW to provide adequate medical care to Plaintiffs and all other similarly situated women residing at FCCW.

FCCW is a facility of the Commonwealth of Virginia Department of Corrections (the "VDOC"). Most of the individual Defendants are VDOC employees who are being sued in their official capacities, and on December 11, 2012, I denied the individual state employees' motion to dismiss pursuant to Rule 12(b)(6).[1] Thereafter, on February 6, 2013, Plaintiffs' motion for

---

[1] The individual state employee Defendants are Harold W. Clarke, the Director of the Virginia Department of Corrections (the "VDOC"); David Robinson, VDOC's Chief of Corrections Operations; Frederick Schilling, VDOC's Director of Health Services; and Phyllis A. Baskerville, the Warden at Fluvanna Correctional Center for Women ("FCCW"). The original complaint named "John/Jane Doe, M.D., *Acting Medical Director, Fluvanna Correctional Center for Women*," and the amended complaint names "Paul C. Ohai, *M.D., Medical Director, Fluvanna Correctional Center for Women*." The medical director was not a party to the individual state employee Defendants' motion to dismiss.

(continued...)

leave to file an amended complaint was granted, and an amended complaint was filed.[2]

The instant motion to dismiss was filed by a single defendant, Armor Correctional Health, Inc. ("Armor"), arguing that, because its contract with VDOC expired and that, on May 1, 2013, another provider assumed the contract to provide medical services at FCCW, Plaintiffs' claims for injunctive and declaratory relief should be denied as moot. The new contractual provider is Corizon Health, Inc. ("Corizon"), which formerly was a contractual provider of medical services at FCCW during part of the time covered in Plaintiffs' complaint, and subsequently the complaint was amended to add Corizon as a defendant. For the reasons stated herein, I will grant Armor's motion to dismiss.

## I.

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, I apply the pleading standard refined by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See also* Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8. The non-moving party must have alleged facts that "state a claim to relief that is plausible on its face," *i.e.*, facts that "have nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible if the complaint contains "factual

---

[1](...continued)
In denying the motion to dismiss, I determined that Plaintiffs had sufficiently alleged a systemic failure on an on-going basis of FCCW staff and agents of the VDOC to provide medical care to women incarcerated at FCCW to satisfy the minimum standards mandated by the Eighth Amendment to the United States Constitution, and that they had sufficiently alleged that, as a result of this ongoing, systemic failure, women at FCCW have suffered and continue to suffer the adverse physical and mental effects of FCCW's failure to provide medical care (or the provision of deficient care) in deliberate indifference to their serious medical needs.

[2] As previously noted, the amended complaint identifies Paul C. Ohai as a defendant; otherwise, the amended complaint varies from the original complaint only in slight clarifications of various allegations.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The following long-held rule still stands: "in evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the [non-moving party] in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

## II.

Plaintiffs seek only declaratory and injunctive relief pursuant to the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

Plaintiffs identify Armor as the corporate entity that is responsible for providing all medical services "needed to afford adequate and necessary health care to all prisoners residing at certain VDOC correctional facilities, including FCCW," and state that Armor has maintained that obligation since October 2011. However, Armor's contract with VDOC expired on April 30, 2013, and another company, Corizon, won the contract to provide such services. Therefore, according to Armor, Plaintiffs' claims for injunctive and declaratory relief against Armor are now moot and should be dismissed.

## III.

Plaintiffs' response in opposition to the motion to dismiss points out the following facts alleged in the complaint and amended complaint.

During the substantial majority of the time period during which Plaintiffs' counsel

performed their due diligence investigation in anticipation of possibly filing this lawsuit, and during which Plaintiffs engaged in the process of exhausting the remedies potentially available to them through the administrative grievance process, the medical care provider at FCCW, pursuant to a contract with VDOC, was Prison Health Services, Inc., subsequently known as PHS Correctional Healthcare ("PHS"). On or about June 13, 2011, PHS merged with another private, for-profit provider of medical care services to prisons and jails, Correctional Medical Services, Inc., to form a new entity, Corizon. Thereafter, Corizon continued to serve as the medical care provider at FCCW under the contract between VDOC and PHS, employing the same on-site medical staff, until November 1, 2011, when Corizon was replaced in this capacity by Armor.

In succeeding to and assuming Corizon's rights and obligations as the contractual provider of medical care services at FCCW, Armor retained essentially the same on-site medical staff as was previously employed at FCCW by Corizon. In Plaintiffs' view, Armor "effectively adopted, ratified and continued as its own Corizon's prior policies and practices with respect to the systemic failure to provide necessary and appropriate medical care and/or provision of deficient medical care to the plaintiffs and other similarly-situated prisoners at FCCW."

Thus, Plaintiffs included Armor as a named Defendant when this action was commenced.[3] Armor, having served as the medical care contractor for a 17-month period from November 1, 2011 to April 30, 2013, has now been replaced as the provider at FCCW by Corizon.

Plaintiffs asserts that, because the agreement is for two years, "it is apparent that as early

---

[3] Plaintiffs did not include Corizon as a named Defendant, even though, according to Plaintiffs, Corizon is the entity which was responsible for the allegedly inadequate and deficient medical care services of which Plaintiffs complain prior to the time at which Armor assumed that role.

as May 1, 2015 (if not sooner), Armor could yet again occupy the position of medical care provider at FCCW," and could resume "the same pattern and practice of unconstitutional conduct for which plaintiffs are seeking relief."

## IV.

### A.

"[F]or a controversy to be moot, it must lack at least one of the three required elements of Article III standing: (1) injury in fact, (2) causation, or (3) redressability." *Townes v. Jarvis*, 577 F.3d 543. 546-547 (4th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). Article III standing – injury, causation, and redressability – must persist at every stage of the litigation, or else the action becomes moot. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997) (citations omitted). For an injury to meet the redressability standard, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *In Re Mutual Funds Investment Litigation*, 529 F3.d 207, 216-217 (4th Cir. 2009) (citing *Lujan*, 504 U.S. at 560-61).

Here, a grant of injunctive relief against Armor to enjoin any possible, albeit remote, unconstitutional treatment in the future will not serve to redress Plaintiffs' alleged injuries. Armor is no longer the medical provider at FCCW and is no longer providing treatment to Plaintiffs or any other inmates at FCCW. Even in light of Plaintiffs' argument that Armor could one day again be awarded the contract to provide medical services at FCCW and injunctive relief would serve to redress that future injury, this assertion is based on pure speculation. "Any declaratory or injunctive relief ordered in" Plaintiffs' favor "in [this] situation[] would have no practical impact on [their] rights and would not redress in any way the injury originally

asserted." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (2007); *see also Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."). Because Plaintiffs are requesting prospective relief from a Defendant who can no longer provide that relief, any judgment on the merits as to this Defendant, Armor, would not resolve the issues in this case. *See, e.g., Phillips v. McLaughlin*, 854 F. 2d 673, 677 (4th Cir. 1988) ("A request for prospective relief alone, founded on a challenge to a regulation which no longer applies to plaintiffs, does not present an actual case or controversy."); *Burke v. Barnes*, 479 U.S. 361 (1987) (interest in "lawmaking process" does not save legal challenge to expired statute from mootness; judicially cognizable injury no longer exists when statute ceases to be effective); *Diffenderfer v. Central Baptist Church of Miami, Florida, Inc.*, 404 U.S. 412, 415 (1972) (per curiam) (action for relief only in the form of declaration that statute was unconstitutional as applied was moot because statute had been repealed).

B.

Citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (2000), Plaintiffs oppose the motion to dismiss on the ground that the "voluntary cessation" exception to the mootness doctrine applies in this case. As the Supreme Court of the United States observed in *Laidlaw*,

> [i]t is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite* [*v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)]. "[I]f it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.' " *Id*., at 289, n. 10 (citing *United States v. W.T. Grant Co*., 345 U.S. 629, 632 (1953)). In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably

be expected to recur." *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968). The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Ibid*.

528 U.S. at 189 (parallel citations omitted).

In *Laidlaw*, the defendant actively and voluntarily chose to come into substantial compliance with the limitations imposed in its National Pollution Discharge Elimination System permit, and then defendant took affirmative steps to shut down a facility. *Id*.

Here, however, the triggering event that renders Plaintiffs' claims moot – but moot only against this one Defendant, Armor – is the involuntary termination of the contract between Armor and VDOC, and the selection of another provider by the VDOC through a competitive bidding process. In support of Armor's reply to Plaintiffs' opposition, Armor has submitted the affidavit of its Chief Operating Officer, Kenneth M. Palombo, with exhibits in support of the affidavit. The following facts set forth therein support the conclusion that the termination of the contract between Armor and VDOC does not arouse the voluntary cessation exception to the mootness doctrine:

- Armor provided medical services pursuant to its contract with the VDOC at FCCW from November 1, 2011, to April 30, 2013, when the contract terminated.

- Prior to the termination of this contract, the contract for services beginning May 1, 2013, was up for competitive bid pursuant to VDOC procurement procedures and a Request for Proposal was issued.

- Although Armor submitted a proposal for the current contract, Armor was not the successful bidder and was not awarded the contract by the VDOC.

Thus, the termination of Armor's contract had no relationship to any motive on Armor's part to avoid judicial review of its provision of medical care, but was rather the result of the competitive bidding process and procedures of the VDOC. *See Incumaa*, 507 F.3d at 288 (state

inmate's First Amendment claim regarding department of corrections policy barring inmates in the maximum security unit ("MSU") from receiving publications via mail sought declaratory and injunctive relief, but not damages, and thus was mooted upon his release from the MSU).

Armor's cessation was not "voluntary," and therefore it does not constitute "voluntary cessation." Furthermore, I emphasize that the case can proceed to the merits without Armor as a defendant – as, for that matter, it formerly proceeded without Corizon as a defendant.[4] This case will proceed to the merits, and neither Armor nor Corizon (nor any other medical care provider with which the VDOC may form a contract) will be "free to resume [or continue the] challenged conduct in the absence of a substantive determination." *Americans United for the Separation of Church and State v. Bd. of Education of Beechwood Ind. School Dist.*, 369 F. Supp. 1059, 1061 (1974) (citing *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37 (1944)).

V.

For the stated reasons, Armor's motion to dismiss will be granted. An appropriate order accompanies this memorandum opinion.

Entered this ___4th___ day of October, 2013.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[4] I note that discovery from nonparties is expressly permitted by the Federal Rules of Federal Procedure.