IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CYNTHIA B. SCOTT, ET AL.,<br>          *Plaintiffs*,<br><br>v.<br><br>HAROLD W. CLARKE, ET AL.,<br>          *Defendants*. | CIVIL ACTION NO. 3:12-CV-00036<br><br>**MEMORANDUM OPINION**<br><br>NORMAN K. MOON<br>UNITED STATES DISTRICT JUDGE |

Plaintiffs have filed a motion to compel discovery. The motion has been briefed and the parties' arguments have been heard. Citing *Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D. Va. 1992) (the only case cited in the entirety of Defendants' opposition to the motion to compel), Defendants acknowledge that, as they phrase it, "[t]he burden is on the person objecting to discovery to show that discovery should not be allowed." At the conclusion of the hearing on the motion to compel, I granted Plaintiffs' motion, and stated that I would issue a memorandum opinion on the matter.

As demonstrated at the hearing and discussed herein, Defendants do not remotely satisfy their burden. Accordingly, I will grant Plaintiffs' request, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), to recover reasonable expenses and attorney's fees incurred in the preparation and filing of the motion to compel.

**I.**

Plaintiffs, all prisoners residing at Fluvanna Correctional Center for Women ("FCCW"),

filed an action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated Plaintiffs' constitutional rights under the Eighth Amendment to be free from cruel and unusual punishment. Plaintiffs assert that FCCW fails to provide adequate medical care and that Defendants are deliberately indifferent to this failure. Plaintiffs request a declaratory judgment and preliminary and permanent injunctions ordering FCCW to provide adequate medical care to Plaintiffs and all other similarly situated women residing at FCCW.

FCCW is a facility of the Commonwealth of Virginia Department of Corrections (the "VDOC"). Most of the individual Defendants are VDOC employees who are being sued in their official capacities, and on December 11, 2012, I denied the individual state employees' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] On February 6, 2013, Plaintiffs' motion for leave to file an amended complaint was granted, and an amended complaint was filed.[2]

On July 15, 2013, Plaintiffs were granted leave to file a second amended complaint. The second amended complaint recognized the VDOC's transfer of responsibility, on or about May

---

[1] The individual state employee Defendants are Harold W. Clarke, the Director of the Virginia Department of Corrections (the "VDOC"); David Robinson, VDOC's Chief of Corrections Operations; Frederick Schilling, VDOC's Director of Health Services; and Phyllis A. Baskerville, the Warden at Fluvanna Correctional Center for Women ("FCCW"). The original complaint named "John/Jane Doe, M.D., *Acting Medical Director, Fluvanna Correctional Center for Women*," and the amended complaint named "Paul C. Ohai, *M.D., Medical Director, Fluvanna Correctional Center for Women*." The medical director was not a party to the individual state employee Defendants' motion to dismiss.

As I observed in the opinion denying the individual state employees' motion to dismiss and in several other opinions entered in this case, Plaintiffs' complaint and amended complaints are replete with exhaustive, detailed allegations of a systemic failure on an on-going basis of FCCW medical staff and agents of the VDOC to provide medical care to the women incarcerated at FCCW that satisfies the minimum standards mandated by the Eighth Amendment to the United States Constitution. Plaintiffs have alleged that, as a result of this ongoing, systemic failure, women at FCCW have suffered and continue to suffer adverse physical and mental effects from the failure to provide medical care (or the provision of deficient care) in deliberate indifference to their serious medical needs.

[2] As previously noted, the amended complaint identified Paul C. Ohai as a defendant; otherwise, the amended complaint varied from the original complaint only in slight clarifications of various allegations.

1, 2013, for medical care services at FCCW from Armor Correctional Health Services, Inc. ("Armor") to Corizon Health, Inc. ("Corizon"). The second amended complaint names as defendants Corizon and Mark Militana, M.D., Corizon's on-site Medical Director at FCCW.

Armor filed a motion to dismiss, arguing that, because Armor's contract with VDOC had expired and that Corizon (which had formerly been the contractual provider of medical services at FCCW during part of the time covered in Plaintiffs' complaint and amended complaints) had assumed the contract to provide medical services at FCCW, Plaintiffs' claims for injunctive and declaratory relief against Armor should be denied as moot. I granted Armor's motion to dismiss.

Dr. Militana filed a motion to dismiss the second amended complaint, arguing that it "only identif[ies] him as the Medical Director at FCCW since on or after May 1, 2013," and "make[s] no mention of any allegations of wrongdoing by" him. I denied the motion to dismiss because the second amended complaint expressly alleges that Corizon's medical staff at FCCW functions "[s]ubject to the supervision and oversight of Dr. Militana" and that Corizon, under Dr. Militana's direct supervision and oversight, has adopted and perpetuated the same pattern and practice of constitutionally deficient medical care that existed when Corizon assumed the contract from its predecessor, Armor (patterns and practices that Corizon instituted as Armor's predecessor).

## II.

Plaintiffs' Request No. 14 seeks production by the VDOC Defendants of

[a]ll documents concerning the VDOC's policies, practices and/or procedures establishing medical care standards or protocols to be followed by the VDOC's contractual medical care providers with respect to the diagnosis, treatment and management of infectious diseases and chronic conditions including, without limitation:

>   a. Hepatitis (all types)
>   b. Diabetes (all types)
>   c. MRSA
>   d. Tuberculosis
>   e. Cancer (all types)
>   f. HIV/AIDs
>   g. Hypertension.

Plaintiffs' Request No. 15 seeks

> [a]ll documents concerning or constituting any reports made by FCCW or the VDOC's contractual medical care provider to VDOC or any other governmental agency concerning the incidence and/or tracking of any of the infectious diseases addressed in Document Request No. 14, *supra*, at FCCW from April 2006 to the present.

The substantive connection is readily apparent between the information sought by Requests Nos. 14 and 15 and the claims stated in Plaintiffs' 47-page second amended complaint. This is a proposed class action in which plaintiffs are proceeding in a representative capacity on behalf of all of the women incarcerated at FCCW and who have been, are now, or will be subject to systemically deficient medical care practices on the part of FCCW and the VDOC's contractual medical care provider. Plaintiffs' claims are

- that FCCW systemically fails to provide constitutionally adequate medical care;

- that the medical care provided at FCCW deviates, based on cost considerations, from the appropriate standard of care, including
  - a deficient sick call process,
  - the failure and refusal to acknowledge, examine, diagnose, and treat serious or potentially serious inmate medical problems,
  - the failure and refusal to refer FCCW inmates for needed specialized care,
  - the failure and refusal to carry out specialists' prescribed courses of treatment,
  - and the failure and refusal to provide FCCW inmates with effective medication for severe, chronic pain;

- that the medical care at FCCW deviates from the appropriate standard of care based upon non-medical, arbitrarily stated security considerations;

- and that unnecessary and preventable fatalities attributable to FCCW's systemic failure to provide constitutionally adequate medical care have occurred and will continue to occur.

As a proposed class, Plaintiffs claim that

> [a]ll FCCW prisoners comprising the proposed class are equally subject to the actual or potential adverse impacts on their physical health and mental and emotional well-being resulting from the long-standing and on-going pattern and practice of systemic unconstitutional acts and omissions on the part of the defendants described in this Complaint. Thus, common questions of law and fact exist as to all class members. Those common questions include, but are not necessarily limited to: (i) whether defendants systematically provide inadequate medical care to the prisoners residing at FCCW; (ii) whether defendants' acts and/or omissions in the provision of or failure to provide medical care at FCCW reflect deliberate indifference to the serious medical needs of the prisoners residing at FCCW; (iii) whether defendants' provision of inadequate medical care on a systemic basis has placed the prisoners residing at FCCW at an unreasonable risk of suffering new or worsening physical injury, illness, mental anguish, emotional distress and the prospect of premature death; and (iv) whether defendants have violated the rights of the prisoners residing at FCCW to be free from cruel and unusual punishment as proscribed by the Eight Amendment?

The various infectious diseases and chronic conditions that are the subjects of Requests Nos. 14 and 15, and which are represented by and reflected in the health problems of the FCCW prisoner population as a whole, are obviously relevant to the claims stated in Plaintiffs' complaint. Even ignoring the class action allegations, and focusing solely on the alleged health problems of the individual plaintiffs and the inadequate (or non-existent) care they claim they have experienced, there is a clear linkage between Requests Nos. 14 and 15 and Plaintiffs' claim for relief.

Plaintiff Marguerite Richardson has expressly alleged that she suffers from Hepatitis C and Methicillin-resistant Staphylococcus aureus (MRSA), two of the infectious diseases or conditions that are the subject of inquiry in Document Requests Nos. 14 and 15. As an example and illustration of the deficient medical care routinely provided by the defendants at FCCW, the complaint alleges systemic deficiencies regarding the manner in which Ms. Richardson has been

informed about and treated for these serious health problems, which involve communicable (even highly contagious) illnesses that commonly adversely affect prison inmate populations. The claims in the complaint are not limited by the specific allegations stated as examples of the claims. Documents that refer, relate to, or reflect deficiencies or inadequacies in the manner in which various infectious diseases and chronic conditions (including, but not limited to, Hepatitis C and MRSA) are addressed and treated in general by the VDOC and its contractors, or which reflect the contractors' failure to acknowledge or comply with the VDOC's articulated policies and procedures, are obviously relevant to Ms. Richardson's allegations in particular and more generally to Plaintiffs' claim regarding an on-going pattern and practice of sub-standard medical care on the part of the defendants.

Plaintiffs' Request No. 21 seeks production by the VDOC Defendants of

[a]ll documents concerning any investigation or inquiry conducted by the VDOC with respect to fatalities of FCCW prisoners who died in the Infirmary at FCCW or at an outside medical care facility to which PHS or Armor referred the deceased prisoner(s), from on or about April 19, 2006 to the present.

The complaint expressly alleges that

the systemic practices and procedures originally adopted and implemented by PHS, and subsequently ratified and implemented by Armor and Corizon, respectively, have resulted in deaths which provision of appropriate medical care could and should have prevented. Such practices and procedures embody and reflect deliberate indifference to the serious medical needs of prisoners residing at FCCW and continue to pose an increased and undue risk of premature death to the named plaintiffs and the members of the class they seek to represent.

As the basis of and justification for the declaratory and injunctive relief Plaintiffs seek in this action, the complaint alleges that the constitutionally deficient medical care provided to them (and FCCW prisoners in general) by the VDOC and its contractors subjects them to "substantial existing, on-going and/or imminent physical injury, illness and undue risk of

premature death in deliberate indifference to their rights under the Eighth Amendment[.]" Moreover, Plaintiffs have alleged specific instances of premature death that have already occurred at FCCW as a result of Defendants' systemically inadequate care. The nexus between these allegations and the substance of the documents sought by Request No. 21 is facially apparent and undeniable.

The VDOC Defendants object to the production of all but a limited volume of documents responsive to Plaintiffs' Request No. 14,[3] and to the production of any documents responsive to Plaintiffs' Requests Nos. 15 and 21, on the ground that the requests seek information that is "not relevant to this case" as perceived by the VDOC. Regarding Request No. 14, the objection is that

> VDOC's policies, practices and/or procedures establishing medical care standards and protocols to be followed by the VDOC's contractual medical care providers with respect to the diagnosis, treatment and management of infectious diseases and chronic conditions . . . other than for infectious diseases and chronic conditions which Plaintiffs specifically suffer from such as Hepatitis and MRSA, are not relevant to the case.

Regarding Request No. 15, the objection is that

> [a]ny documents concerning or constituting any reports made by FCCW or the VDOC's contractual medical care providers to VDOC or any other government agency concerning the incidents [sic] and/or tracking of any of the infectious diseases addressed in Document Request 14 at FCCW from April 2006 to the present, except those specifically pertaining to Plaintiffs are not relevant to the case.

Regarding Request No. 21, the "VDOC defendants object to this request because it is not relevant to the allegations raised by the Plaintiffs concerning their medical treatment at FCCW

---

[3] In response to Request No. 14, Defendants have produced a small number of documents expressly pertaining to the VDOC's stated practices and procedures for addressing and responding to cases of hepatitis and MRSA (the two conditions, among all of those made the subject of inquiry in Request No. 14, of which one named plaintiff, Marguerite Richardson, suffers).

and because it would necessarily bring in other inmates' medical records and information which are confidential." Plaintiffs expressly indicated their willingness to negotiate and enter into an appropriate confidentiality or protective order imposing limitations on the scope of use or public dissemination of documents produced by Defendants, or even to allow Defendants to simply redact the names of the prisoners whose records might be produced in response. This proposed accommodation has not altered Defendants' objection.

## III.

### A.

Absent a court order expressly to the contrary, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). The Rule further provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Consistent with the language of the Rule, the United States Court of Appeals for the Fourth Circuit has observed that "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *CareFirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (citation omitted); *see also Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977) (stating that information that is "germane to the subject matter of the pending action" is discoverable).

The district courts in the Fourth Circuit have repeatedly acknowledged the principle that relevancy, in the discovery context, merits and must be given a broad construction. *See, e.g., Kidwilder v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D. W. Va. 2000):

> Information is relevant, for discovery purposes, if it "bears on, or . . . reasonably

>   could lead to other matter[s] that could bear on, any issue that is or may be in the case." Although "the pleadings are the starting point from which relevancy and [the scope of] discovery are determined . . . [r]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information." Rather, the general subject matter of the litigation governs the scope of relevant information for discovery purposes. Therefore, courts broadly construe relevancy in the context of discovery.

(Citations omitted); *see also Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010) ("[t]he scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case" (citations omitted)); *Floren v. Whittington*, 217 F.R.D. 389, 391 (S.D. W.Va. 2003); *Spell v. McDaniel*, 591 F. Supp. 1090, 1114 (E.D. N.C. 1984) ("Rules 26 through 37 of the Federal Rules have been interpreted liberally to allow maximum discovery. . . . Therefore, discovery requests should be complied with if there is a *reasonable possibility* that the information sought *may* be relevant to the subject matter of the action" (emphasis added; citations omitted)).[4]

---

[4] The presumption favoring a broad construction of the concept of relevancy under the Federal Rules is significant in the present context of federal civil rights claims asserted pursuant to 42 U.S.C. § 1983. *See*, *e.g.*, *Floren v. Whittington*, 217 F.R.D. 389, 391 (S.D. W.Va. 2003) (recognizing and giving full effect to "the important federal interests in broad discovery and truth seeking as well as the interest in vindicating important federal substantive policy such as that embodied in section 1983" (citations omitted)); *Spell v. McDaniel*, 591 F. Supp. 1090, 1114-15 (E.D. N.C. 1984); *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D. N.Y. 1997) ("actions alleging violations of § 1983 require especially generous discovery") (citing *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 128 (N.D. N.Y 1984) ("[f]ederal policy favors broad discovery in civil rights actions"))). In *Floren v. Whittington* – a case involving a claim by an individual plaintiff that a policeman's wrongful entry upon plaintiff's property and unlawful arrest of the plaintiff was part of a pattern and practice of unconstitutional conduct on the part of the City of Dunbar, WV police force for which City officials bore direct supervisory liability – the district court granted a motion to compel ordering the production of the personnel and internal affairs files of all police officers employed by the municipality except for the files of non-defendant officers never subjected to any citizen complaints, internal investigations or disciplinary actions. *See* 217 F.R.D. at 391-92; *see also Spell*, 591 F. Supp. at 1113-15 (in § 1983 action premised upon allegations that policeman's physical assault of the plaintiff while in custody following arrest for driving while intoxicated was part of a pattern and practice of police brutality in City of Fayetteville, NC, district court granted a motion to compel ordering production of "(1) records of complaints, investigations and reports concerning the incident at bar and [the individual defendant police officer's] conduct while a member of the Fayetteville Police Department; (2) records of complaints filed, investigations conducted and reports written for internal and external use [concerning] allegations of abuse and unreasonable force within the Fayetteville Police Department since January 1, 1981; and (3) regulations, directives, manuals, official administrative reports and other documents produced by or for the Police Department and used by it to

(continued...)

Moreover, "[t]he burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules." *Desrosiers v. MAG Industrial Automation Systems, LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009); *see also Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 204 (S.D. W.Va. 2011) ("When the requested information appears relevant, the party objecting to providing it must demonstrate that the information has no bearing upon a claim or defense of any party[.]"). Where a *prima facie* showing of relevance has been made by the party seeking discovery, "the burden shifts . . . to the resisting party to show 'lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption of broad discovery.'" *Desrosiers*, 675 F. Supp. 2d at 601 (citations omitted); *see also J.K. Mineral Co., LLC v. Swiger*, ___ F.R.D. ___, Civ. Action No. 1:12-cv-00143, 2013 WL 663283 at *12 (N.D. W.Va. Feb. 22, 2013) ("Counsel for the opposing party should not be able to act as the gatekeeper to determine what information the adversary is entitled to have.").

### B.

The objections Defendants have interposed to Requests Nos. 14 and 15 are without merit. As discussed above, Rule 26(b)(1) and the decisions interpreting its scope are clear that the parties' claims and defenses establish the parameters within which the relevancy of information sought through discovery is determined. Plaintiffs claim that, as a result of Defendants'

---

[4](...continued)
communicate departmental policies or rules of law to officers regarding the use of force." (Footnotes omitted.)). These cases establish that broad discovery is mandated, even in cases in which individual plaintiffs allege and seek to prove that governmental defendants have engaged in a pattern or practice of unconstitutional conduct.

deliberate indifference to Plaintiffs' serious medical needs, Plaintiffs have been, are now and, absent the intervention of a court in the form of declaratory and injunctive relief, will continue to be subjected to a level of medical care at FCCW on a systemic basis that, qualitatively and quantitatively, falls below the minimum standard dictated by the Eighth Amendment. The subject matter of Plaintiffs' Requests Nos. 14 and 15 (documents concerning practices, procedures and standards established by the VDOC for addressing and treating infectious diseases and chronic conditions, and documents shedding light on how FCCW and the VDOC's medical care contractor adhere to – or fail to comply with – those practices, procedures and standards) is obviously relevant to the substance of Plaintiffs' claim.

Defendants propose that, because a particular named Plaintiff (Marguerite Richardson) has alleged that she is afflicted with only two of the particular diseases or conditions in regard to which Requests Nos. 14 and 15 more broadly inquire, the scope of relevancy is somehow circumscribed by Ms. Richardson's allegations. But Ms. Richardson's allegations setting forth the deficient manner in which the FCCW Medical Staff has responded to or treated her Hepatitis C and her MRSA infection are merely illustrative examples of the facts supporting Plaintiffs' contentions. The allegations do not, in themselves, constitute Plaintiffs' claim, and it is the claim, not isolated underlying allegations stated in support of the claim, that establishes the bounds of relevancy.

The documents sought by Plaintiffs' Requests Nos. 14 and 15 constitute information that "bears on or . . . reasonably could lead to other matter[s] that could bear on" issues that are or may be raised in this case. *Kidwilder*, 192 F.R.D. at 199 (citations omitted).[5] Non-privileged

---

[5] *See also Océ North America, Inc. v. MCS Services, Inc.*, Civ. Action No. 1:10-cv-00984, 2011 WL 197976 at
(continued...)

documents responsive to these requests fall easily within the broad scope of relevancy applicable to federal civil cases generally and federal civil rights actions under § 1983 in particular. The VDOC Defendants are obligated to show otherwise, and they have not met this burden.

*C.*

Plaintiffs' Request No. 21 seeks the production of documents referring to, relating to or reflecting investigations undertaken by the VDOC with respect to fatalities of FCCW prisoners who died in the Infirmary at FCCW or at an outside medical care facility to which the deceased prisoner was referred by FCCW Medical Staff.

The complaint and amended complaints allege that, as a result of the constitutionally deficient medical care rendered by the VDOC and its medical care contractors, Plaintiffs face a heightened and undue risk of premature death. Indeed, Plaintiffs have alleged specific instances which they believe to be illustrative of the phenomenon of premature, preventable fatalities attributable to substandard medical care at FCCW which the relief sought in this action might prevent. The documents sought by Request No. 21 are patently relevant to this element of Plaintiffs' overall Eighth Amendment claim.

The essence of Defendants' relevancy objection is that, because none of the four named plaintiffs have themselves yet died as a result of the alleged inadequate medical care at FCCW, documents concerning the VDOC's investigation into the facts and circumstances of fatalities

---

[5](...continued)
*4 (D. Md. Jan. 20, 2011), observing that,
> [t]o be discoverable, information must be relevant to any party's claim or defense, though it need not be admissible at trial. Fed. R. Civ. P. 26(b)(1). Courts broadly construe relevancy within the context of discovery to encompass any matter that bears or may bear on any issue that is or may be in the case. *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D. W.Va. 2000) (citing *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 350 (1978)).

involving FCCW prisoners are necessarily beyond the bounds of discovery.[6] However, documents that may call into question or cast doubt upon the nature or extent of medical care provided to FCCW prisoners in instances in which deaths resulted undoubtedly involve "matter that bears on or may bear on any issue that is or may be in the case." *Océ North America, Inc. v. MCS Services, Inc.*, Civ. Action No. 1:10-cv-00984, 2011 WL 197976 at *4 (D. Md. Jan. 20, 2011) (citations omitted). Defendants cannot simply disregard the claims and express allegations in Plaintiffs' pleadings.[7] The discovery sought is clearly relevant to Plaintiffs' claims. *J.K. Mineral Co.*, 2013 WL 663283 at *12 (counsel not permitted to act as sole arbiter of scope of discovery to which adverse party is entitled). Defendants' conclusory contention that the documents sought by Plaintiffs through Request No. 21 are "not relevant" does not meet "[t]he burden . . . on the party resisting discovery to explain specifically why its objection[ ] . . . [is] proper given the broad and liberal construction of the federal discovery rules." *Desrosiers*, 675 F. Supp. at 601; *see also Marfork Coal*, 274 F.R.D. at 204. Defendants must promptly

---

[6] At the hearing on the motion to compel, counsel for the VDOC Defendants denied that the relevancy objection is based on an assertion that none of the four named plaintiffs are deceased. Then, counsel for the VDOC Defendants proceeded to argue that Plaintiffs had "not made a connection between the relevance of those documents and the allegations of inadequate medical care that they are alleged to have suffered from. . . ." Counsel added that the complaint had lodged "what appears to be a sweeping statement that . . . two deaths are illustrative of a phenomena of premature preventable fatalities." Suffice it to say that the complaint includes the explicit claim that, because of the substandard medical care provided at FCCW, the named Plaintiffs and other similarly situated FCCW inmates face a substantial risk of undue future harm including, but not limited to, the risk of premature and easily preventable death. A plaintiff in a case such as this need not die in order to state a claim that she is in danger because of constitutionally deficient medical care. *See, e.g., Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition. . . . It would be odd to deny an injunction to inmates who plainly prove an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them. . . . [A] remedy for unsafe conditions need not await a tragic event."); *Thompson v. Neeb*, Civil Action No. 7:07-cv-00092, 2007 WL 2570220 at *4 & n. 4 (W.D. Va. Aug. 31, 2007) ("an Eighth Amendment claim may be based on a defendant's conduct in exposing an inmate to an unreasonable risk of future harm") (citing *Hellling*).

[7] At the hearing on the motion to compel, counsel for Plaintiffs described Defendants' objections as "collaterally attack[ing] this court's refusal to dismiss the complaint by essentially disregarding specific allegations in the complaint. . . ."

produce responsive documents.

D.

In their opposition to the motion to compel, the VDOC Defendants assert that Plaintiffs' Requests Nos. 14, 15, and 21 call for "inmates' medical information which is confidential," and insist that they "cannot produce such information by simply entering into a confidentiality agreement with Plaintiffs." Counsel for the VDOC Defendants repeated this assertion at the hearing on the motion to compel. As I have already observed, the record discloses and the parties acknowledged at the hearing that Plaintiffs' counsel expressly indicated their willingness to negotiate and enter into an appropriate confidentiality or protective order imposing limitations on the scope of use or public dissemination of documents produced by Defendants, or even to allow Defendants to simply redact the names of the prisoners whose records might be produced in response.[8]

Defendants' objection does not establish a basis for avoiding discovery. Indeed, the Fourth Circuit has endorsed the proposition that the otherwise-discoverable private medical information of non-parties can be protected adequately by crafting an appropriate protective order. The private nature of the information does not shield it from discovery. *See, e.g., Watson*

---

[8] The VDOC Defendants failed to raise any legal argument in support of their objection to the production of otherwise-discoverable documents. Defendants simply assert that such information may involve the privacy interests of non-party prisoners. Defendants do not attempt to explain why an appropriate confidentiality or protective order, agreed upon by the parties and approved by the court pursuant to Fed. R. Civ. P. 26(c), would be inadequate to protect valid confidentiality concerns.

At the hearing, counsel for Defendants asserted that, "notwithstanding having conversations with Plaintiffs' counsel" about "how we best protect . . . confidential medical information," "we were just unable to come to an agreement with regard to how to best produce those documents without violating the privacy of other inmates." The exhibits Plaintiffs submitted with their motion to compel shows that, when counsel for Plaintiffs corresponded at length to counsel for Defendants after Defendants raised their confidentiality objections to Requests Nos. 15 and 21, counsel for Defendants simply responded, "See Defendants' previously stated objection to this Request."

*v. Lowcountry Red Cross*, 974 F.2d 482, 489-92 (4th Cir. 1992) (in a case involving wrongful death of infant as a result of transfusion of HIV-contaminated blood collected by defendant, the Fourth Circuit affirmed a district court's refusal to shield non-party blood donor from reasonable discovery; the district court's ruling provided, *inter alia*, that "[p]laintiff, defendant and counsel for all concerned are directed by this Order not to disseminate any information learned about the donor or his appointed counsel to any party without further order of this Court").[9]

Accordingly, when I granted the motion at the conclusion of the hearing, I directed the parties to reach an agreement regarding confidentiality or to seek an appropriate protective order. In any event, the motion to compel is granted, and the VDOC Defendants must promptly produce responsive documents.

## IV.

Plaintiffs argue that they are entitled to recover their reasonable expenses incurred in the preparation and filing of this motion, including attorney's fees. Federal Rule of Civil Procedure 37(a)(5)(A) provides, in pertinent part, as follows:

> If [a] motion [filed pursuant to this Rule] is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

---

[9] *See also Doe v. American Nat'l Red Cross*, 151 F.R.D. 71, 73-74 & n. 5 (S.D. W.Va. 1993) (in an HIV-contaminated blood transfusion case, the district court allowed the plaintiff to conduct donor discovery, subject to the terms of an order imposing express restrictions upon further public dissemination or disclosure of the donor's private and personal information, including a prohibition on use of the donor's specific identifying information in court filings, a requirement that donor be referred to by an alias in any depositions concerning him, and prohibiting the disclosure of the donor's identity by counsel in working with their own experts and consultants; regarding the documents at issue, the court's order expressly stated: "The identity of the person named herein is confidential. The contents of and your compliance with this Order should be handled accordingly.").

As indicated in the preceding discussion, the objections the VDOC Defendants have interposed as a basis for limiting their response to Plaintiffs' Request No. 14 and for refusing to provide any discovery responsive to Requests Nos. 15 and 21 are not well-taken. Plaintiffs' requests plainly seek information "relevant to [plaintiffs'] claim" in this action as contemplated by Rule 26(b)(1) and the case law illuminating the concept of relevance embodied in that Rule. Accordingly, I will award Plaintiffs' their "reasonable expenses incurred in making the motion" to compel, "including attorneys' fees." The order accompanying this memorandum opinion will direct Plaintiffs to file a detailed petition for expenses and fees within 21 days of the date of entry of the order.

V.

For the stated reasons, the motion to compel discovery was granted, and I will grant Plaintiffs' motion, filed pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), to recover reasonable expenses and attorney's fees incurred in the preparation and filing of the motion. An appropriate order accompanies this memorandum opinion.

Entered this  25th  day of November, 2013.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE