**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| CYNTHIA B. SCOTT, *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | Case No. 3:12-cv-00036-NKM |
| v. | ) | Sr. Judge Norman K. Moon |
| | ) | |
| HAROLD W. CLARKE, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## PLAINTIFFS' PETITION REGARDING RECOVERABLE ATTORNEYS' FEES

Plaintiffs Cynthia B. Scott, *et al.* ("Plaintiffs"), by their undersigned attorneys, pursuant to Fed. R. Civ. P. 37(a)(5)(a) and this Court's Memorandum Opinion and Order entered on November 25, 2013 (ECF Docket Nos. 88, 89), hereby submit this Petition identifying the reasonable attorneys' fees that Plaintiffs incurred in the preparation, filing and argument of their Motion to Compel Discovery (ECF Dkt. No. 72), which the Court granted.

This Court granted the Motion to Compel on the grounds that the Objections asserted by the Virginia Department of Corrections ("VDOC") Defendants as grounds for their refusal to respond to Plaintiffs' Document Requests were "not well-taken," stating in pertinent part as follows:

> Plaintiffs' requests plainly seek information "relevant to [Plaintiffs'] claim" in this action as contemplated by Rule 26(b)(1) and the case law illuminating the concept of relevance embodied in that Rule. Accordingly, I will award Plaintiffs their "reasonable expenses incurred in making the motion" to compel, "including attorneys' fees." The order accompanying this memorandum opinion will direct Plaintiffs to file a detailed petition for expenses and fees within 21 days of the date of entry of the order.

11/25/13 Mem. Op. at 16. Plaintiffs submit the instant Petition in accordance with the Court's decision.

## PROCEDURAL BACKGROUND

As described more fully in the Introduction and Statement of the Case incorporated in Plaintiffs' Memorandum of Law filed in support of their Motion to Compel (ECF Dkt. No. 73), the sequence of events resulting in the discovery impasse between Plaintiffs and the VDOC Defendants commenced with the service of the VDOC Defendants' Objections to Plaintiffs' Document Requests on July 23, 2013. *See* ECF Dkt. No. 73, Exhibit B. In that submission, the VDOC Defendants first articulated their broad-brush "relevancy" Objections to Plaintiffs' Document Requests, including Requests Nos. 14, 15 and 21. *Id.* at 5-7.

Upon a careful and thorough examination of the nature and substance of all of the VDOC Defendants' Objections, Plaintiffs' counsel prepared and served an 11-page letter setting forth Plaintiffs' position with respect to the merits (or lack thereof) of each such Objection on August 2, 2013. *See* ECF Dkt. No. 73, Exh. C. As a result of oral communications between counsel for the parties conducted on August 12 and August 20, 2013, and accommodations reached during those discussions, only the VDOC Defendants' Objections with respect to Plaintiffs' Requests Nos. 14, 15 and 21 were left unresolved. Despite Plaintiffs' written and oral explanations of the reasons why the VDOC Defendants' "relevancy" arguments were unfounded, the VDOC Defendants insisted that they were on "solid ground" in adhering to those Objections and that they would not be withdrawn.[1]

Work on the researching and drafting of Plaintiffs' Motion to Compel and supporting Memorandum of Law, undertaken principally by Theodore Howard and Cori Lombard of Wiley Rein LLP in Washington, DC, commenced immediately after the parties' Rule 37(a)(1) telephone conference concluded on August 20 without a comprehensive resolution of all of the

---

[1]   *See* Declaration of Theodore A. Howard ("Howard Decl."), ¶ 7 at 2-3 (dated December 16, 2013) (copy attached hereto as Exhibit 1).

VDOC Defendants' Objections.  Howard Decl., ¶ 11 at 4.  The Motion and supporting

Memorandum and exhibits thereto were filed on September 23, 2013.  *Id.*

For a host of reasons grounded in applicable law and implicated in the imposition of

sound professional billing judgment, all of which are explained fully below, Plaintiffs seek a

recovery of fees in the amount of $20,399.00, pursuant to this Court's prior Order.

<u>**ARGUMENT**</u>

I.      **DETERMINATION OF A REASONABLE FEE AWARD IS DETERMINED BY**
        **APPLICATION OF THE LODESTAR ANALYSIS**

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court of the United States

declared that "[t]he most useful starting point in determining the amount of a reasonable fee is

the number of hours reasonably expended on the litigation multiplied by a reasonable hourly

rate.  This calculation provides an objective basis on which to make an initial estimate of the

value of the lawyer's services."  *Id.* at 433; *see also Blum v. Stenson*, 464 U.S. 886, 888 (1984)

("The initial estimate of a reasonably attorney's fee is properly calculated by multiplying the

number of hours reasonably expended . . . times a reasonable hourly rate.  Adjustments to that

fee then may be made as necessary in the particular case."  (Citation omitted.)).

Following *Hensley* and *Blum*, the Fourth Circuit has repeatedly applied this "lodestar"

methodology in reviewing the reasonableness of fee awards entered by district courts in a host of

cases brought pursuant to federal statutes expressly providing that a prevailing party may be

awarded the fees its counsel reasonably incurred in successfully representing that party's

interests in the subject litigation.  *See, e.g., Eastern Assoc. Coal Corp. v. Director, OWCP*, 724

F.3d 561, 569-70 (4th Cir. 2013); *Newport News Shipbuilding and Dry Dock Co. v. Holiday*, 591

F.3d 219, 226-27 (4th Cir. 2009); *Robinson v. Equifax Information Servs., LLC*, 560 F.3d 235,

243-44 (4th Cir. 2009); *Grissom v. The Mills Corp.*, 549 F.3d 313,320-21 4th Cir. 2008); *Rum*

*Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174-75 (4th Cir. 1994).  Moreover, as a guide to aid the lower courts in performing the lodestar analysis to determine the measure of reasonable attorneys' fees in those cases in which they may be awarded, the Fourth Circuit has instructed district judges to consider the following twelve factors originally identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243-44, *citing Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978); *see also Grissom*, 549 F.3d at 320-21 ("Here, the parties agree that in calculating an appropriate attorneys' fee award, a district court must first determine the lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying the *Johnson/Barber* factors when making its lodestar determination." (Citations omitted.)).[2]

Although determination of reasonable attorneys' fees as discovery sanctions under Fed. R. Civ. P. 37 may differ significantly from awarding fees to a prevailing party at the conclusion of litigation governed by a federal fee-shifting statute, the methodology employed by the courts

---

[2]    To the extent that any one of the *Johnson* factors is taken into account in determining and/or effectively duplicates either of the lodestar elements (*e.g.*, "hours reasonably expended" is essentially the same as *Johnson* factor No. 1 ("the time and labor expended") and is also necessarily a function of *Johnson* factor No. 2 ("the novelty and difficulty of the questions raised")), such factors may not be "double-counted" by using them as a basis to adjust the lodestar figure further after it has been determined.  *See Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 5530 (2010); *McAfee v. Boczar*, Nos. 12-2481, 13-1088 and 13-1356, Slip Op. at 17-18 (4th Cir. December 12, 2013); *Eastern Assoc. Coal*, 724 F.3d at 570 & n.5.

is essentially the same in both situations.  *See Davis v. Rouse*, Case No. WDQ-08-cv-3106, 2012 WL 3059569, at *2- *3 (D. Md. July 25, 2012) (noting practical distinctions between awarding post-judgment fees to a prevailing party under a fee-shifting statute and awarding fees as a discovery sanction, but nonetheless utilizing the lodestar analysis, including consideration of pertinent *Johnson* factors, to determine reasonableness of rates charged and hours expended in connection with discovery dispute); *see also SunTrust Bank v. Nik*, Civ. Action No. 1:11cv43, 2012 WL 1344 390, at *3-*4 (E.D. Va. March 22, 2012) (applying lodestar analysis with assessment of relevant *Johnson* factors to determine fees recoverable by moving party on successful motion to compel discovery); *Beyond Systems, Inc. v. World Avenue USA, LLC*, Civ. Action No. PJM-08-921, 2011 WL 2038545, at *1-*2  (D. Md. May 24, 2011) (same).

Accordingly, based on the foregoing authorities, this Court's task in determining the reasonable attorneys' fees the Plaintiffs should be awarded turns on performance of the following analytical steps:

(i) evaluation of the hourly rates claimed by Plaintiffs in light of the prevailing market rate in the relevant geographic jurisdiction for legal services of the type performed by counsel on Plaintiffs' behalf, including consideration of any pertinent *Johnson* factors, to determine the reasonable hourly rate to be utilized in the lodestar calculation;

(ii) evaluation of the time charges claimed by Plaintiffs in light of the nature and extent of the tasks performed, including consideration of any pertinent *Johnson* factors, to determine the number of hours reasonably expended;

(iii) performance of the lodestar calculation; and

(iv) determination of whether any other adjustments are necessary or appropriate under the particular circumstances of this case.

Plaintiffs address each of these steps below.

II.                                                                                                                        T

    **HE LODESTAR ANALYSIS CONFIRMS THAT PLAINTIFFS ARE ENTITLED
    TO A RECOVERY UNDER RULE 37(a)(5)(a) IN THE AMOUNT OF $20,399.00**

    A.    **Reasonable Hourly Rates**

        1.    **Relevant Geographic Jurisdiction**

In seeking an award of attorneys' fees, Plaintiffs bear the burden of "produc[ing] specific evidence of the 'prevailing market rates in the relevant community' for the type of work" performed by counsel with respect to the Motion to Compel. *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007). "Typically, this means an attorney will demonstrate the market rate for services in the geographic jurisdiction of the litigation." *Holiday*, 591 F.3d at 227 (citation omitted); *accord Rum Creek Coal Sales*, 31 F.3d at 175 ("The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." (Citation omitted.)).

An exception to the presumption that the forum constitutes the relevant jurisdiction for purposes of determining the prevailing market rates may be recognized "[i]n circumstances where it is reasonable to retain attorneys from other communities[.]" *Rum Creek Coal Sales*, 31 F.3d at 175. In that case, the plaintiff coal company brought an action under 42 U.S.C. § 1983 against the Governor of West Virginia and officials of the West Virginia State Police, asserting that certain state statutes pursuant to which law enforcement declined to intervene to prevent violent protests and destruction of property on the plaintiff's premises by striking and picketing coal miners were preempted by federal labor laws and denied plaintiff rights guaranteed by the Equal Protection and Due Process Clauses of the U.S. Constitution. Although the action was filed in the federal district court in Charleston, WV, the plaintiff, upon prevailing on the merits of its constitutional claims, sought recovery of the reasonable attorneys' fees incurred by its lead (and regular outside) counsel, Hunton & Williams of Richmond, VA, on the basis of reference to

prevailing market rates in Richmond, rather than in Charleston.  Although the presiding

magistrate judge in the district court rebuffed this effort, the Fourth Circuit disagreed, analyzing

the issue, in pertinent part, as follows:

> Even though the litigation was conducted in Charleston, West Virginia, Rum
> Creek Coal argues that it was justified in retaining Hunton & Williams from
> Richmond because (1) Hunton & Williams was its regular outside counsel, (2) the
> case was expected to be difficult and protracted, (3) the case would ultimately end
> up before the Fourth Circuit in Richmond, where Hunton & Williams is based;
> and (4) it was suing the sitting governor and the state police superintendent, which
> would make it and its counsel unpopular in much of West Virginia.  Rum Creek
> Coal contends that the fees it paid Hunton & Williams are reasonable in
> Richmond and that there is no other evidence in the record to the contrary.  . . .
>
> [W]e agree that the magistrate judge had no factual basis to reduce [the Hunton &
> Williams] rate[s] to a range of $80 to $160 per hour, as he did.  The only facts in
> the record reveal that the rates charged by Hunton & Williams, predominantly in
> the range of $115 to $230 per hour, were their normal Richmond hourly rates, that
> the rates were charged to and actually paid by Rum Creek Coal, and that the
> persons involved in charging and paying those rates believed them to be
> reasonable.  Such evidence is sufficient to establish the "prevailing market rate"
> for services charged by Hunton & Williams to its clients in Richmond.
>
> That those rates are based on Richmond market data does not, in the
> circumstances of this case, make the evidence irrelevant.  In *National Wildlife
> Federation v. Hanson*, 859 F.2d 313 (4th Cir. 1988), we observed that the
> community in which the court sits is the first place to look in evaluating the
> prevailing market rate.  Rates charged by attorneys in other cities, however, may
> be considered when "the complexity and specialized nature of a case may mean
> that no attorney, with the required skills, is available locally," and the party
> choosing the attorney from elsewhere acted reasonably in making the choice.  *Id*.
> at 317.  [¶] In this case, both criteria are fulfilled.

31 F.3d at 178-79 (citation omitted) (reversing lower court and utilizing Hunton & Williams'

standard Richmond rates at first input to the lodestar calculation); *see generally National Wildlife

Federation v. Hanson,* 859 F.2d 313, 317 (4th Cir. 1988) (two questions to be asked in

determining whether an exception to the general rule should be granted are whether "services of

a like quality [are] truly available in the locality where the services are rendered; and did the

party choosing the attorney from elsewhere act reasonably in making that choice? (*citing Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir. 1982)).

Here, Plaintiffs required counsel with the requisite experience and expertise with respect to prisoners' condition-of-confinement claims arising under the Eighth Amendment to capably represent their interests.  However, in addition, they also needed counsel possessing the financial and personnel resources required to prosecute a complex, potentially protracted class action proceeding *and* that was willing to undertake the representation on a pro bono basis.  *See* Declaration of Abigail Turner ("Turner Decl."), ¶ 3 at 1 (dated December 16, 2013) (copy attached hereto as Exh. 2).  Here, as in the *Hanson* case, "the nearest counsel with the requisite expertise in complex [civil rights] litigation and the willingness to forego compensation temporarily and perhaps permanently, was in Washington, DC."  Turner Decl., ¶¶ 4-8 at 1-3; *see Hanson*, 859 F.2d at 318.

Accordingly, Plaintiffs were clearly justified and acted reasonably in seeking and obtaining representation by Wiley Rein LLP, a Washington, DC law firm, and the hourly rates by which the reasonableness Wiley Rein's rates in the case at bar should be evaluated are the prevailing market rates of Washington, DC.  *Hanson*, 859 F.2d at 318; *see also Rum Creek Coal Sales*, 31 F.3d at 178-79; *cf. Holiday*, 591 F.3d at 229 (on remand, Dept. of Labor Benefits Review Board "should consider *Hanson* and *Rum Creek* to decide if [petitioner's Washington, D.C. counsel's] hourly rate should be determined with reference to Georgia [where the administrative appeal was brought] or Washington, D.C.").

## 2.   <u>Prevailing Market Rates</u>

Courts confronted with the need to determine the reasonableness of the hourly rates charged by District of Columbia practitioners engaged in complex federal litigation have routinely relied upon adjusted versions of the *Laffey* Matrix as a guide with respect to prevailing

market rates in the Washington, DC legal community. The original Matrix -- a grid reflecting average hourly rates for Washington, DC lawyers of differing experience levels as of the time period June 1, 1981 to May 31, 1982 -- was accepted by the federal courts as reliable and admissible evidence of prevailing local market rates in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371-75 (D.D.C. 1983), *aff'd*, 746 F.2d 4 (D.C. Cir. 1984).[3]

Adjusted versions of the *Laffey* Matrix, designed to maintain its currency and utility, have been developed periodically since then, employing either monthly changes in the overall Consumer Price Index ("CPI") for the Washington Metropolitan area, or monthly data reflecting changes in the price of legal services generally as an isolated component of the CPI, as a basis for adjusting the 1981-82 rates in the original Matrix to the time relevant to the specific case at bar. *See generally Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14-15 (D.D.C. 2000) (explaining differences in preparatory methodology as between Adjusted *Laffey* Matrix (legal services data) and U.S. Attorneys' Office for the District of Columbia Adjusted Matrix (CPI generally)). The District of Columbia federal courts have found both adjusted Matrices reliable, and have indeed relied on either or both of them in determining reasonable hourly rates in particular cases. *See generally Covington v. District of Columbia*, 839 F. Supp. 894, 900 (D.D.C. 1993), *aff'd*, 57 F.3d 1101, 1109-10 (D.C. Cir. 1995) (affirming district court's methodology and conclusions with respect to award of fees that relied, in part, upon plaintiffs' submission of Adjusted Laffey Matrix *and* U.S. Attorney's Office Adjusted Matrix to establish prevailing DC market rates against which the reasonableness of their claimed fees were to be measured). The Matrices, considered separately or collectively, constitute sufficient evidence, in and of themselves, to establish the prevailing market rates for Washington, DC practitioners.

---

[3]     *Overruled in part on other grounds*, *Save Our Cumberland Mtns., Inc. v. Hodel*, 857 F.2d 1516, 1520 (D.C. Cir. 1988) (*en banc*).

*Salazar*, 123 F. Supp. 2d at 14 ("Defendants are wrong when they contend that a matrix itself is insufficient to establish market rates for lawyers with experience in complex federal litigation in the District of Columbia.").

Current versions of both the Adjusted *Laffey* Matrix (available at http://www.laffeymatrix.com/see.html) and the Civil Division of the U.S. Attorney's Office for the District of Columbia's Adjusted Matrix (available at http://www.justice.gov/usao/dc/divisions/Laffey_Matrix%202014.pdf) are attached as Exhibits B and C to the Howard Declaration establish the prevailing market rates for Washington, DC against which the reasonableness of the rates charged by Wiley Rein LLP as to which Plaintiffs seek recovery may be evaluated.

Here, in the dual interests of both reducing the areas of potential dispute between the parties in regard to the magnitude of the fee recovery to which Plaintiffs claim entitlement and minimizing the impact of the significant disparity between prevailing rates charged by Washington, DC lawyers and prevailing rates in the Western District of Virginia,[4] plaintiffs adopt the lower-scale U.S. Attorney's Office Adjusted Matrix as the basis upon which they seek a fee recovery here.

### 3.    Plaintiffs' Reasonable Hourly Rates

As noted above in the Procedural Background, *supra*, work on the researching and drafting of Plaintiffs' briefing of their Motion to Compel was performed by two Wiley Rein LLP attorneys -- Theodore Howard, a partner, and Cori Lombard, an associate.  Mr. Howard

---

[4]     *Cf. Allstar Lodging, Inc. v. William Rookard, et al.*, Civ. Action No. 5:13cv00053, Memorandum Opinion at 8 (W.D. Va. Nov. 8, 2013) (Urbanski, J.) ("[W]hile an hourly rate of $650 (or $720) may be well and good for Washington, DC, and lawsuits  involving multinational corporations, it is a simply enormous hourly rate for Harrisonburg, Virginia and a case involving two small local businesses.")

graduated from law school in 1981 and has been engaged over the entirety of his thirty-two years of practice in complex civil litigation matters in federal and state courts in Washington, DC as well as nationally.  Howard Decl., ¶ 14 at 5.  Ms. Lombard, a Summer Associate at Wiley Rein in 2008, graduated from law school in 2009 and commenced work as a litigation associate at Wiley Rein in January 2011.  Since that time, she has been involved in a number of large, complex civil litigation and adversarial regulatory matters.  *Id.*, ¶ 17 at 6.

As reflected by the relevant excerpts from Wiley Rein LLP's internal Detailed Billing Records maintained for the instant case, Mr. Howard's standard hourly billing rate during the time period in which work was devoted to plaintiffs' Motion to Compel was $640.00/hr., while Ms. Lombard's standard hourly billing rate was $420.00/hr.  *See* Howard Decl., ¶ 19 at 7 & Exh. A attached thereto.  Under the U.S. Attorney's Office for the District of Columbia's Adjusted Matrix, Mr. Howard's hourly rate for the 2013-14 time period, as a Washington, DC federal court litigator with more than 20 years of experience is $510.00/hr. (a reduction of $130.00, more than 20%, off his standard rate), while Ms. Lombard's rate as an associate with between 4 and 7 years of experience is $295.00/hr. (a reduction of $125.00, nearly 30%, off her standard rate).  *Id.*, ¶ 22 at 8 & Exh. C attached thereto.  For the reasons explained previously, Plaintiffs seek recovery in accordance with these Adjusted Matrix rates.

In determining the reasonableness of the hourly rates for which recovery is sought, this Court is instructed to consider and weigh, to the extent pertinent, the twelve *Johnson* factors identified in Argument Section I, *supra*.  While, because this analysis arises in the context of resolution of a discovery dispute, rather than at the conclusion of litigation on the merits -- *see SunTrust Bank*, 2012 WL 1344390, at *3 (finding numerous *Johnson* factors inapposite "[b]ecause this matter involved a discovery motion rather than a complete disposition of a case

after trial") -- Plaintiffs submit that *Johnson* factors Nos. 2 ("novelty and difficulty of the questions raised"), 5 ("the customary fee for like work"), and 9 ("the experience, reputation and ability of the attorney[s]") are all properly considered in assessing the reasonableness of Plaintiffs' claimed hourly rates here.  Plaintiffs address each of these factors below:

- **<u>Novelty And Difficulty Of The Question Raised</u>**

While there is nothing necessarily either "novel" or "difficult" about challenging an adversary party's refusal to respond to a discovery request on the basis of a "relevancy" objection in the abstract, Plaintiffs submit that here, the complex nature of Plaintiffs' claim that the Defendants provide substandard medical care on a systemic basis at FCCW; the (potentially) critically-important nature of the discovery sought by Plaintiffs through Requests No. 14, 15 and 21 to their ability to ultimately prove their claim; and the VDOC Defendants' complete failure to explain or provide support for the asserted Objections that they interposed all contribute to grounds for a finding that Plaintiffs' Motion to Compel was not a routine undertaking.

- **<u>The Customary Fee For Like Work</u>**

Motions practice with respect to discovery disputes is a common characteristic of complex matters litigated in federal courts, and the U.S. Attorney's Office for the District of Columbia Adjusted Matrix -- *see* Howard Decl., Exh. C -- reflects the rates customarily charged by experienced Washington, DC lawyers engaging in such activity.

- **<u>Experience, Reputation And Ability Of The Attorneys</u>**

Both Mr. Howard and Ms. Lombard have significant past experience with the substance of prisoners' condition-of-confinement claims, and Mr. Howard has been involved in both the litigation of such claims and in oversight of legal services organizations focusing on such litigation for more than two decades.  *See* Howard Decl., ¶¶ 16, 18 at 6-7.  A testimonial to the capability with which counsel briefed and argued the Motion to Compel is reflected in the

substantial overlap in the content of plaintiffs' opening and reply briefs and this Court's Memorandum Opinion granting the Motion.

In sum, based upon consideration of the *Johnson* factors that appear most relevant to evaluation of the reasonableness of the hourly rates for which Plaintiffs seek recovery, this Court can and should readily conclude that the hourly rates of $510.00 sought for the work performed by Mr. Howard and $295.00 sought for the work performed by Ms. Lombard constitute reasonable hourly rates.

### B.   <u>Reasonable Hours Expended</u>

"A fee applicant has the burden of proving hours to the district court by submitting contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks." *CoStar Group Inc. v. Loopnet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000) (citing authorities); *Beyond Systems*, 2011 WL 2038545, at *5. Excerpts from Wiley Rein LLP's Detailed Billing Records maintained for this case, reflecting the contemporaneous time entries for work performed in connection with the genesis and evolution of the parties' subject discovery dispute and the researching, briefing and argument of Plaintiffs' Motion to Compel, submitted as Exhibit A to the Howard Declaration, satisfy Plaintiffs' evidentiary burden in this regard.

The Wiley Rein time records, including entries for Mr. Howard, Ms. Lombard, and two legal assistants, Robert Shields and Nathan Lovett, reflect that a total of 100.70 hours were expended from the point at which the VDOC Defendants' written Objections to Plaintiffs' Document Requests were served on July 23, 2013 through November 21, 2013, the date of the hearing on the Motion.  In the exercise of the sound professional billing judgment that the courts

expect to be applied by the award-seeking party in this context,[5] Plaintiffs propose to exclude from this total the following time increments:

1.   19 hours, all attributable to Mr. Howard, incurred in reviewing the VDOC Defendants' Objections, preparing Plaintiffs' letter responding to the Objections, and preparing for and participating in the two Rule 37(a)(1) meet-and-confer telephone conferences between Plaintiffs' counsel and counsel for the VDOC Defendants on August 12 and August 20, 2013, the latter of which confirmed the existence of an unresolved dispute based upon the VDOC Defendants' continuing "relevancy" Objections to Plaintiffs' Requests Nos. 14, 15 and 21;

2.   4.75 hours, attributable to the legal assistants, Messrs. Shields and Lovett, incurred in securing electronic copies of relevant case authorities and cite-checking and proofreading the Motion to Compel and supporting Memorandum of Law;

3.   2.80 hours, attributable to Mr. Howard, incurred in inter-office conferences with Ms. Lombard and Mr. Shields, as well as telephone and e-mail communications with co-counsel, relating to preparation of the Motion to Compel and the scheduling of the hearing on the Motion;

4.   14.25 hours, attributable to Mr. Howard and Ms. Lombard, incurred in researching and preparing Plaintiffs' Reply Memorandum. Although this submission was of significance to Plaintiffs as a medium for reinforcing the themes advanced in the Motion to Compel and opening Memorandum of Law, the Reply Memorandum was, strictly speaking, arguably unnecessary, since the VDOC Defendants failed to advance any arguments of which Plaintiffs were not already aware, or to cite any case authorities supportive of the VDOC Defendants' legal position, in their Opposition Memorandum;

5.   10.00 hours, attributable to Mr. Howard, reflective of general inefficiencies in working on the Motion papers, resulting from discontinuities associated with having to devote time to other client matters concurrently with his preparation of the Motion and supporting Memorandum of Law; and

---

[5]   *See generally Hensley v. Eckerhart*, 461 U.S. at 434 ("Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. 'In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary*[.]'" (*quoting Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (*en banc*) (emphasis in original)); *see also Rum Creek Coal Sales*, 31 F.3d at 174-75 (fees claimed must reflect the application of "billing judgment").

6.     4.00 hours, attributable to Mr. Howard, incurred in traveling from his residence in Northern Virginia to Charlottesville and back on November 21, 2013, the date of the hearing on the Motion.

These self-imposed deductions, collectively, total 54.80 hours, leaving 45.90 hours which Plaintiffs claim as time reasonably expended on the researching, briefing and argument of their Motion to Compel, including 31.90 hours of work performed by Mr. Howard and 14.00 hours for Ms. Lombard.

Upon consideration of the *Johnson* factors plaintiffs believe to be relevant to this analysis -- Nos. 2 ("the novelty and difficulty of the questions raised"), 7 ("the time limitations imposed by the . . . circumstances"), and 9 ("the experience, reputation and ability of the attorney") -- Plaintiffs submit that the Court should conclude that the 45.90 hours claimed should be deemed reasonable and compensable.

- **The Time And Labor Expended**

Plaintiffs submit that the less than 50 hours of attorney time for an exhaustively-researched and fully-supported Motion to Compel with regard to discovery of potentially critical significance to Plaintiffs' ability to prove their case on the merits is fully consistent with the time that Plaintiffs' counsel would spend on a comparable motion under analogous circumstances in litigation involving the representation of one of their Firm's paying clients. *See* Howard Decl., ¶ 29 at 10.

- **Novelty And Difficulty Of The Question Raised**

In the parties' Rule 37(a)(1) communications, the VDOC Defendants' counsel insisted that they were on "solid ground" in adhering to the "relevancy" Objections they interposed as a basis for resisting any obligation to produce documents responsive to Plaintiffs' Requests Nos. 14, 15 and 21 (except for a limited production partially responsive to Request No. 14),  -- *see* Howard Decl., ¶ 7 at 2-3 -- but failed to identify any authority supportive of their position.  As a

15

result, Plaintiffs' counsel were obligated to conduct exhaustive legal research in order to both support their own affirmative arguments as to why discovery should be compelled, but also to protect against any existing decisions supportive of the VDOC Defendants' position which the VDOC Defendants' counsel may have declined to identify for strategic reasons.  Thus, a very significant component of the time incurred by both Mr. Howard and Ms. Lombard was devoted to legal research which could have been avoided but for the VDOC Defendants' unprincipled and unfounded contentions -- a circumstance that became clear once the VDOC Defendants' Opposition to the Motion to Compel, *including not a single citation to any supporting caselaw*, was filed.  *Id*., ¶27 at 9-10.

- **<u>Time Limitations Imposed By The Circumstances</u>**

Due to the time of year in which the parties' discovery dispute crystallized, involving vacation and work-related travel obligations on the part of Mr. Howard and the trial schedule of lead counsel for the VDOC Defendants, the parties' oral communications seeking dispute resolution pursuant to Rule 37(a)(1) could not commence until August 12, 2013 and could not be completed until August 20, 2013.  Howard Decl., ¶ 6 at 2.  In light of the magnitude of the discovery that must be conducted and completed, principally by the Plaintiffs, before this case can be resolved by dispositive motion or trial, Plaintiffs perceived the need to prepare and file their Motion to Compel as expeditiously as practicable.  As a result, Mr. Howard undertook a relatively greater share of the research and drafting duties associated with preparation of the Motion papers than would have been necessary in the absence of the time pressures involved. *Id*., ¶26 at 9.  For these reasons, the allocation of hours as between Mr. Howard and Ms. Lombard was reasonable under the particular circumstances with which Plaintiffs were confronted.

16

- **Experience, Reputation And Ability Of The Attorneys**

But for Mr. Howard's and Ms. Lombard's respective levels of familiarity with Section 1983 litigation in general and prisoners' conditions-of-confinement claims in particular -- *see* Howard Decl., ¶¶ 16,18 at 6-7 -- the amount of time needed to research, draft and submit Plaintiffs' Motion to Compel and supporting Memorandum might have been considerably greater than the hours for which Plaintiffs seek recovery.

Based on consideration of the foregoing *Johnson* factors most relevant to the Court's assessment regarding the reasonableness of the hours expended by Plaintiffs' counsel for which Plaintiffs seek recovery following the imposition of sound and responsible billing judgment, the Court should conclude that Plaintiffs are entitled to a recovery based on 45.90 hours of time reasonably expended in bringing their successful Motion to Compel.[6]

**C.   The Lodestar Calculation**

In light of the analysis and argument set forth above, Plaintiffs submit that the appropriate and warranted lodestar calculations are as follows:

---

[6]      Although Plaintiffs' attorneys at the Washington Lawyers' Committee for Civil Rights and Urban Affairs and the Legal Aid Justice Center, respectively, reviewed and provided editing suggestions with respect to drafts of Plaintiffs' Motion, Memorandum of Law and Reply Memorandum prior to the filing of each of those submissions, Plaintiffs -- without prejudice to any position or action they may decide to pursue in the future in regard to later phases of this case -- are not seeking to recover fees incurred in connection with those activities of their co-counsel.  Plaintiffs, subject to the same reservation stated above, are also foregoing any request for expenses incurred in connection with the preparation, filing and argument of the Motion to Compel including, in particular, amounts associated with computerized legal research.

| **ATTORNEY** | **HOURLY RATE** | **HOURS** | **RECOVERABLE FEES** |
|---|---|---|---|
| T. Howard | $510.00/hr.   x | 31.90 hrs.  = | $16,269.00 |
| C. Lombard | $295.00/hr.   x | 14.00 hrs.  = | $4,130.00 |

As a result, Plaintiffs seek a recovery in the total amount of $20,399.00 as their "reasonable expenses, including attorneys' fees" incurred in the successful prosecution of their Motion to Compel Discovery against the VDOC Defendants.

"When . . . the applicant for a fee has carried [its] burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be [a] reasonable fee[.]" *Blum v. Stenson*, 465 U.S. at 1548; *see also Perdue*, 559 U.S. at 552; *Eastern Assoc. Coal*, 724 F.3d at 570.  Plaintiffs, consistent with these authorities, have met their burden here.

## CONCLUSION

While, in particular cases, a further adjustment to the "reasonable fees" yielded by proper application of the lodestar methodology may be necessary or appropriate -- *see, e.g., Blum*, 465 U.S. at 1544; *Robinson*, 560 F.3d at 244 -- Plaintiffs submit that no such circumstances exist here that would warrant, much less require, any further adjustment to the amount of reasonable, and thus recoverable, fees yielded by the application of the lodestar analysis set forth above. Accordingly, an award of $20,399.00, representing the reasonable attorneys' fees incurred by Plaintiffs in the preparation, submission and argument of their successful Motion to Compel Discovery from the VDOC Defendants should be ordered.

DATED:        December 16, 2013

Respectfully submitted,

Alex R. Gulotta, VSB No. 37097
(alex@justice4all.org)
Abigail Turner, VSB No. 74437
(abigail@justice4all.org)
Mary Bauer, VSB No. 31388
(mary@justice4all.org)
Brenda E. Castañeda, VSB No. 72809
(brenda@justice4all.org)
Ivy A. Finkenstadt, VSB No. 84743
(ivy@justice4all.org)
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA  22903
(434) 977-0553

 and

Theodore A. Howard (admitted *pro hac vice*)
(thoward@wileyrein.com)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C.  20006
(202) 719-7000

and

Deborah Golden (admitted *pro hac vice*)
(Deborah_Golden@washlaw.org)
D.C. PRISONERS' PROJECT OF
THE WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
11 Dupont Circle, N.W.
Suite 400
Washington, D.C.  20036
(202) 319-1000


By:        /s/Brenda E. Castañeda
          Brenda E. Castañeda


19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of December 2013, true and correct copies of

Plaintiffs' Petition Regarding Recoverable Attorneys' Fees, with supporting Exhibits, were

served upon the following:

> J. Michael Parsons, AAG II
> OFFICE OF THE ATTORNEY GENERAL
> Public Safety & Enforcement Division
> 900 East Main Street
> Richmond, VA  23219
> **jparsons@oag.state.va.us**
>
> Attorneys for the Virginia Department of Corrections Defendants
>
> Edward J. McNelis III
>  Elizabeth M. Muldowney
> RAWLS, McNELIS & MITCHELL, P.C.
> 211 Rocketts Way, Suite 100
> Richmond, VA  23231
> **emcnelis@rawlsmcnelis.com**
> **emuldowney@rawlsmcnelis.com**
>
> Attorneys for Defendant Armor Correctional Heath Services, Inc.

> _____/s/Brenda E. Castañeda_____
> Brenda E. Castañeda