# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

CYNTHIA B. SCOTT, *et al.*,    )
    )
        *Plaintiffs,*  )
    )    Case No. 3:12-cv-00036-NKM
    v.    )    Sr. Judge Norman K. Moon
    )
HAROLD W. CLARKE, *et al.*,    )
    )
        *Defendants.*  )
    )

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Mary C. Bauer, VSB No. 31388
Abigail Turner, VSB No. 74437
Brenda E. Castañeda, VSB No. 72809
Angela A. Ciolfi, VSB No. 65337
Erin M. Trodden, VSB No. 71515
Ivy A. Finkenstadt, VSB No. 84743
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
(434) 977-0553

Deborah M. Golden (admitted *pro hac vice*)
Elliot Mincberg
D.C. PRISONERS' PROJECT OF
THE WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000

Theodore A. Howard (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

Attorneys for Plaintiffs

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities ..................................................................................................... iii

INTRODUCTION .............................................................................................................1

SUMMARY STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................1

       A.     THE PLAINTIFFS' SIGNIFICANT MEDICAL PROBLEMS ............................2

       B.     THE VDOC'S CONTRACTUAL ARRANGEMENTS FOR THE
             PROVISION OF MEDICAL CARE AT FCCW ....................................................3

       C.     THE VDOC'S CONTROL OF AND RESPONSIBILITY FOR THE
             PROVISION OF MEDICAL CARE .....................................................................4

       D.     THE VDOC'S NON-INTERVENTION POLICY WITH RESPECT
             TO DEFICIENT MEDICAL CARE .......................................................................5

STANDARD OF REVIEW ..................................................................................................7

ARGUMENT ....................................................................................................................8

I.     THE VDOC HAS A NON-DELEGABLE DUTY UNDER THE
     EIGHTH AMENDMENT TO PROVIDE PRISONERS IN ITS CUSTODY
     WITH APPROPRIATE MEDICAL CARE ..........................................................8

II.    THE PLAINTIFFS' ADVERSE HEALTH PROBLEMS AND CONDITIONS
     CONSTITUTE SERIOUS MEDICAL NEEDS ...............................................13

CONCLUSION ...............................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ancata v. Prison Health Services, Inc.*,
769 F.2d 700 (11th Cir. 1985) ...................................................................................9, 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...........................................................................................................7

*Brice v. Virginia Beach Correctional Center*,
58 F.3d 101 (4th Cir. 1995) ...........................................................................................13

*Brown v. Plata*,
__ U.S. __, 131 S. Ct. 1910 (2011)................................................................................8

*Bryant v. Maffucci*,
729 F. Supp. 319 (S.D.N.Y. 1990), *aff'd*, 923 F.2d 979 (2d Cir. 1991) ...................9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).........................................................................................................7

*Clement v. Satterfield*,
927 F. Supp. 2d 297 (W.D. Va. 2013) .........................................................................7

*Covington v. Westchester Cnty. Jail*,
No. 96 Civ. 7551 (SAS), 1998 WL 26190 (S.D.N.Y. Jan. 26, 1998)........................9

*De'lonta v. Johnson*,
708 F.3d 520 (4th Cir. 2013) .........................................................................................13

*Estelle v. Gamble*,
429 U.S. 97 (1975)........................................................................................................8, 13

*Gil v. Vogliano*,
131 F. Supp. 2d 486 (S.D.N.Y. 2001)..........................................................................9

*Hayes v. Snyder*,
546 F.3d 516 (7th Cir. 2008) ................................................................................... 13-14

*Henderson v. Sheahan*,
196 F.3d 839 (7th Cir. 1999) .........................................................................................13

*Henry v. Purnell*,
652 F3d 524 (4th Cir. 2011) (*en banc*) .......................................................................7

Case 3:12-cv-00036-NKM   Document 138   Filed 09/02/14   Page 3 of 23   Pageid#: 2431

*Iko v. Shreve*,
    535 F.3d 225 (4th Cir. 2008) ............................................................13

*King v. Kramer*,
    680 F.3d 1013 (7th Cir. 2012) ...................................................... 11-12

*Kuhne v. Fla. Dep't of Corr.*,
    745 F.3d 1091 (11th Cir. 2014) .......................................................14

*Mahan v. Plymouth Cnty. House of Corr.*,
    64 F.3d 14 (1st Cir. 1995) ...............................................................14

*Ogunde v. Prison Health Services, Inc.*,
    274 Va. 55, 645 S.E.2d 520 (2007)..............................................10, 11

*Peralta v. Dillard*,
    744 F.3d 1076 (9th Cir. 2014) .........................................................14

*Randle v. Alexander*,
    960 F. Supp. 2d 457 (S.D.N.Y. 2013)..............................................14

*T-Mobile Northeast LLC v. City Council of City of Newport News*,
    674 F.3d 380 (4th Cir. 2012) .............................................................7

*Taylor v. Barnett*,
    105 F. Supp. 2d 483 (E.D. Va. 2000) ...............................................13

*Vollette v. Watson*,
    937 F. Supp. 2d 706 (E.D. Va. 2013) .................................................7

*West v. Atkins*,
    487 U.S. 42 (1988)..............................................................8, 9, 11

**Statutes**

42 U.S.C. § 1983.......................................................................................1

Va. Code. Ann. § 53.1-32.A .....................................................................8

**Rules and Regulations**

Fed. R. Civ. P.  23(a) ...............................................................................1

Fed. R. Civ. P.  23(b)(3)...........................................................................1

Fed. R. Civ. P. 56(a). ...............................................................................7

Plaintiffs Cynthia B. Scott, Bobinette Fearce, Marguerite Richardson and Rebecca Scott ("Plaintiffs"), by their undersigned attorneys, submit this Memorandum of Law in support of their Motion for Partial Summary Judgment.

## INTRODUCTION

For themselves and on behalf of the entire population of other women incarcerated at Fluvanna Correctional Center for Women ("FCCW"), the Plaintiffs initiated this action seeking declaratory and injunctive relief under 42 U.S.C. § 1983 and the Eighth Amendment to the Constitution of the United States on July 24, 2012.[1]

Following extended discovery and numerous procedural twists and turns, as a result of which the private contractors retained by the Virginia Department of Corrections ("VDOC") to provide medical care at numerous of its facilities including FCCW – Armor Correctional Health Systems, Inc. ("Armor") and Corizon Health, Inc. ("Corizon"), both former named defendants in this action – have been dismissed, the VDOC is the sole defendant in this action. The Plaintiffs now move for the entry of an Order granting them partial summary judgment on the grounds that as to two key elements of their claim for relief – non-delegable duty and serious medical need – they are entitled to judgment, on the basis of a record of undisputed material facts, as a matter of law.

## SUMMARY STATEMENT OF UNDISPUTED MATERIAL FACTS

In accordance with Rule 56(b) of this Court's Local Rules, the Plaintiffs submit, concurrently with the filing of their Motion and this supporting Memorandum of Law, a

---

[1] Plaintiffs filed a Motion seeking certification of a class consisting of all current and future residents of FCCW that have sought, are seeking or will seek adequate, appropriate care for serious medical needs, pursuant to Rules 23(a) and 23(b)(3), Fed. R. Civ. P., on August 14, 2014. *See* ECF Docket No. 132. The Motion, to which the VDOC Defendants filed a Response in Opposition on August 28, 2014 (*see* ECF Dkt. No. 134), remains pending at this time.

Statement of Undisputed Material Facts ("Fact Stmt.").  A summary of the undisputed material facts pursuant to which partial summary judgment in favor of the Plaintiffs may be entered as a matter of law, which are set forth in greater detail with full supporting record citations in the Statement of Undisputed Material Facts, is provided below.

A.    **THE PLAINTIFFS' SIGNIFICANT MEDICAL PROBLEMS**

Operated by VDOC, FCCW houses approximately 1,200 women, a majority of whom are 35 years of age or older and are serving median sentences of twenty years.  VDOC assigns women with serious medical needs to FCCW for the purpose of receiving a heightened level of care.  Fact Stmt., ¶ 37-39.

The Plaintiffs have significant medical problems.  Fact Stmt., ¶¶ 4, 13, 16, 18, 21, 24, 26, 29, 31, and 33. Plaintiff Cynthia Scott has sarcoidosis, a chronic and life-threatening disease involving cell inflammation in and around vital organs such as her lungs, liver, spleen, pancreas, and eyes.  Fact Stmt., ¶¶ 2-3.  She also suffered deep-vein thrombosis, a blood clot that formed in a vein deep in the body.  Fact Stmt., ¶¶ 5-6.  In 2012, a fragment of the blood clot in her left leg traveled to her lungs, resulting in a pulmonary embolism.  Fact Stmt., ¶¶ 5, 7.

Plaintiff Marguerite Richardson has Hepatitis C.  Fact Stmt., ¶ 10.  Due to liver damage related to her Hepatitis C, she suffers from elevated ammonia levels and symptoms of hepatic encephalopathy, such as memory loss, related to the poor functioning of her liver's ability to remove toxins from her blood.  Fact Stmt., ¶¶ 10-11.  Ms. Richardson has also been diagnosed with Methicillin-resistant Staphylococcus aureus (MRSA), a highly contagious form of bacterial infection that may be fatal if left untreated. Fact Stmt., ¶ 15.

Plaintiff Rebecca Scott has been profoundly deaf since childhood and needs hearing aids to communicate and understand commands from security staff at FCCW.  Fact Stmt., ¶ 19.  She also has asthma and frequently needs to use an inhaler to breathe.  Fact Stmt., ¶ 22.

2

Plaintiff Bobinette Fearce suffers from degenerative disc disease affecting her spine, carpal tunnel syndrome in both her wrists, and chronic pain related to her disc and joint problems. Fact Stmt., ¶¶ 25-28. Ms. Fearce also has incontinence and chronic kidney disease.[2]

Hundreds of other women incarcerated at FCCW suffer from serious medical conditions that are likely to cause significant deterioration in their health, permanent functional impairment, or death if untreated or treated improperly. Fact Stmt., ¶ 35. For example, many women, including D.E, A.M., T.G., E.G., K.C., and M.W., have diabetes. Fact Stmt., ¶ 34, Ex. 14-15. E.G., L. S-M, D.D., L.G., and B.E.G. have each been treated for cancer. Fact Stmt., ¶ 34, Ex. 14-15. M.W. has suffered a series of amputations related to untreated blood clots. Fact Stmt., ¶ 34, Ex. 14-15. In fact, *over half* of FCCW's general population has long-term health conditions or illnesses justifying the need for chronic care treatment and monitoring. Fact Stmt., ¶¶ 35, 38.

### B. THE VDOC'S CONTRACTUAL ARRANGEMENTS FOR THE PROVISION OF MEDICAL CARE AT FCCW

Since FCCW opened in 1998, VDOC has contracted with outside medical providers for health care at the facility. VDOC selects medical contractors through a competitive bidding process. VDOC's choice to provide medical care through outside contractors has led to six or seven transitions in health care providers since FCCW opened. Fact Stmt., ¶¶ 41, 42, 44.

By the time this case goes to trial, there will have been three changes in contractors in just over three years. Armor provided health care services at FCCW from November 1, 2011, to May 1, 2013. Fact Stmt., ¶ 45. Corizon was selected to provide health care at FCCW beginning on May 1, 2013. Fact Stmt., ¶ 46. On June 2, 2014, Corizon notified VDOC that it was terminating the 2013 contract. Fact Stmt., ¶ 47. VDOC initiated an emergency procurement

---

[2] All four named Plaintiffs have other serious medical needs, as described in the accompanying Statement of Undisputed Material Facts.

process and selected Armor to begin again providing health care services on October 1, 2014. Fact Stmt., ¶ 48.

The Plaintiffs and putative class members, all women seeking medical care while incarcerated at FCCW, are wholly dependent on prison staff and medical providers for meeting their health needs. Fact Stmt., ¶ 40. Prisoners cannot have medications sent to them from outside, and they cannot seek care from providers outside VDOC except through the contractor. Fact Stmt., ¶ 40.

### C.     THE VDOC'S CONTROL OF AND RESPONSIBILITY FOR THE PROVISION OF MEDICAL CARE AT FCCW

Health care within VDOC is overseen by a lead administrator, called the "Health Services Director" and a lead physician, called the "Medical Director." Both the Health Services Director and the Medical Director are VDOC employees. Fact Stmt., ¶¶ 53-54. At the facility-level, the warden at FCCW is the highest-ranking VDOC official at the prison and has authority over all staff, including medical personnel. Fact Stmt., ¶ 55. Even when there is a private contractor, the warden remains ultimately responsible for operation of the prison, including health care treatment and security. Fact Stmt., ¶ 56.

Although a series of private health care contractors has come and gone in the sixteen years since FCCW opened, policies, practices, and many of the personnel providing care have largely remained the same. Fact Stmt., ¶ 43. VDOC requires contractors to follow VDOC's operating procedures concerning the provision of health care, and for managing its workforce and staff. Fact Stmt., ¶¶ 49-51 ; *see also* Response in Opposition to Plaintiff's Motion for Class Certification (ECF Dkt. No. 134) (hereinafter, "Class Cert. Opp.") at 6. The 2013 contract between Corizon and VDOC also stipulates minimum staffing levels and sets specific penalties for failure to meet the minimum staffing levels. Fact Stmt., ¶ 49. If Corizon does not maintain

4

monthly staffing levels according to the contract, VDOC deducts a penalty amount from its invoice payment for that month. Fact Stmt., ¶ 49. Additionally, the contractors' doctors must use the VDOC formulary for prescribing medication. Fact Stmt., ¶ 52.

Prior to May 2013, a VDOC regional periodically monitored health services at FCCW. Fact Stmt., ¶ 58. Since May 1, 2013, VDOC has employed "contract monitors," who visit the facilities regularly to review medical charts and evaluate the contractor's compliance, using a series of metrics selected by VDOC. Fact Stmt., ¶ 59. The contract monitoring tools were developed to monitor day-to-day compliance with health services delivery procedures. Fact Stmt., ¶ 60.

### D. THE VDOC'S NON-INTERVENTION POLICY WITH RESPECT TO DEFICIENT MEDICAL CARE

As a matter of both policy and practice, VDOC systematically renounces responsibility for the actions and omissions of its health care contractors. *See* Class Cert. Opp. at 6. For example, VDOC maintains that it has no legal duty to supervise the contractors, *see id.* at 10, and it is VDOC policy not to "second-guess" the decisions of its contractors. *See id.* at 11.

The story of FCCW prisoner Debbie Daley is illustrative. Ms. Daley was diagnosed with colorectal cancer shortly after arriving at FCCW in July 2013. Fact Stmt., ¶ 61. Ms. Daley's oncologist at UVa Hospital said she needed chemotherapy in November 2013. Fact Stmt., ¶ 63. Due to scheduling delays by FCCW medical personnel and transportation cancellations by FCCW staff, Ms. Daley did not begin chemotherapy treatment until eight months later in July 2014. Fact Stmt., ¶ 63. When Ms. Daley arrived for her appointment at UVa on July 2, 2014, her UVa doctors found her febrile, septic, and in great pain due to a cancer-related infection that FCCW doctors had refused to treat. Fact Stmt., ¶ 65. UVa admitted Ms. Daley to the hospital for

5

several weeks to treat her infection with IV antibiotics. Chemotherapy soon followed. Fact Stmt., ¶ 65.

Ms. Daley's UVa oncologist, Dr. Erica Ramsdale, was so concerned about Ms. Daley's condition upon her arrival at the hospital on July 2, 2014, that she contacted the UVA Ethics Consult Service to ask for guidance in dealing with what Dr. Ramsdale considered to be medical neglect. Fact Stmt., ¶ 65. Dr. Ramsdale accepted UVa Ethics' recommendation to declare Ms. Daley an "unsafe discharge" unless FCCW would agree¸ *inter alia*, to provide prompt transportation to any appointments, appropriate pain treatment, compliance and follow-through with chemotherapy treatments, and antibiotic treatment of further infections. Fact Stmt., ¶ 66.

Ms. Daley complained to VDOC, by letter from counsel, about her medical treatment at FCCW and requested an investigation of the delays in her chemotherapy treatment and the lack of proper follow-up care for her infection, cancer, and pain management as ordered by the physicians at UVa. Fact Stmt., ¶ 67. VDOC responded that "VDOC officials are aware of the issues concerning Ms. Daley's medical treatment;" however, "VDOC officials do not interfere with or otherwise direct the medical treatment and care provided by Corizon staff at FCCW. Accordingly, decisions concerning Ms. Daley's medical treatment and care are not made by VDOC officials." Fact Stmt., ¶ 68. VDOC further indicated that "VDOC officials cannot 'ensure that Ms. Daley [will] remain at UVa hospital until her course of antibiotic treatment for sepsis is complete' or 'take action to stop [the medical provider's] refusal to provide Ms. Daley the antibiotics ordered by the oncologist at UVa . . . .'" Fact Stmt., ¶ 68. VDOC's letter does commit that it will provide transportation to and from outside medical appointments. Fact Stmt., ¶ 68.

6

## STANDARD OF REVIEW

Pursuant to Rule 56(a), Fed. R. Civ. P., a party is entitled to summary judgment as to each claim or part of such claim as to which it moves if it shows that there is no genuine issue to be tried as to any material fact and that it is entitled to the entry of judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Henry v. Purnell*, 652 F3d 524, 531 (4th Cir. 2011) (*en banc*) ("Summary judgment is appropriate . . . if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" (*quoting Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003)); *accord T-Mobile Northeast LLC v. City Council of City of Newport News*, 674 F.3d 380, 385 (4th Cir. 2012).

In order to defeat a properly-supported motion, the non-moving party may not rest upon mere allegations or assertions, but must come forward with specific facts in the form of admissible exhibits and sworn statements demonstrating the existence of a genuine issue for trial. *Vollette v. Watson*, 937 F. Supp. 2d 706, 712 (E.D. Va. 2013), *citing Celotex*, 477 U.S. at 322-24; *see Clement v. Satterfield*, 927 F. Supp. 2d 297, 305 (W.D. Va. 2013) ("[T]he non-movant must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. 'Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of the non-movant's case.'" (Citations omitted.)).

7

## ARGUMENT

### I. THE VDOC HAS A NON-DELEGABLE DUTY UNDER THE EIGHTH AMENDMENT TO PROVIDE PRISONERS IN ITS CUSTODY WITH APPROPRIATE MEDICAL CARE

The Commonwealth of Virginia's obligation to afford medical care to those individuals convicted of crimes and sentenced to terms of incarceration under its laws finds its roots in both the Eighth Amendment to the Constitution of the United States and the Virginia Code. *See generally Brown v. Plata*, __ U.S. __, 131 S. Ct. 1910, 1928 (2011) ("To incarcerate, society takes from prisoners the means to provide for their own needs. Prisoners are dependent on the State for food, clothing and necessary medical care."); *Estelle v. Gamble*, 429 U.S. 97, 103 (1975) (acknowledging as an "elementary principle[] . . . the government's obligation to provide medical care for those whom it is punishing by incarceration."); *see* Va. Code. Ann. § 53.1-32.A ("It shall be the general purpose of the state correctional facilities to provide proper . . . medical and mental health care and treatment . . . [to] prisoners committed or transferred thereto.").

The VDOC has chosen, as is its prerogative, to carry out its obligation to provide medical care to State prisoners by selecting, through a competitive bidding process, a private, for-profit company with which VDOC contracts to render medical care services at designated state correctional facilities, including FCCW. *See* Fact Stmt., ¶¶ 41-46. The law is well settled, however, that choosing to meet its duty to provide its prisoners with medical care through the services of a private contractor has no bearing on VDOC's constitutional and statutory responsibility to assure that the care provided is adequate and appropriate to meet prisoners' legitimate needs. As the Supreme Court of the United States held in *West v. Atkins*, 487 U.S. 42, 56 (1988), "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." (Footnote omitted.)

8

Consistent with the principle recognized in *West*, the lower federal courts have routinely concluded that State and local governments may not effectively insulate themselves from Eighth Amendment claims premised upon allegedly deficient medical care by delegating responsibility for the provision of such care to third parties. Thus, in *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir. 1985), the Court of Appeals expressly rejected the premise that a county government's delegation of its obligation to afford medical care to inmates at the county jail to a contractor could shield the county from legal responsibility for claims alleging deficient care, reasoning as follows:

> The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals. *See Estelle, supra*. This duty is not absolved by contracting with an entity such as Prison Health Services. Although Prison Health Services has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service. In that sense, the county's duty is non-delegable.

*Id.* at 705 (citation and footnote omitted); *see also Gil v. Vogliano*, 131 F. Supp. 2d 486, 493 (S.D.N.Y. 2001) ("[A] municipality's duty to provide medical care to inmates is non-delegable and is not absolved by contracting with a third-party to provide care."): *Covington v. Westchester Cnty. Jail*, No. 96 Civ. 7551 (SAS), 1998 WL 26190, at *4 (S.D.N.Y. Jan. 26, 1998) (concluding that county jail faced direct, not vicarious, liability for any constitutional violations committed by its medical care contractor under the "non-delegable duty theory of *Ancata*"); *Bryant v. Maffucci*, 729 F. Supp. 319, 324 (S.D.N.Y. 1990) ("Although defendants deny any substantive responsibility for the medical treatment of inmates, and deny any control over or direct responsibility for Correctional Health Services, they may not avoid liability by delegating the duty to provide medical care." (Citation omitted.)), *aff'd*, 923 F.2d 979 (2d Cir. 1991).

In its Response in Opposition to the Plaintiffs' Motion for Class Certification (ECF Dkt. No. 134) ("Class Cert. Opp."), the VDOC contends that Armor and Corizon and their respective

9

employees "are and have been independent contractors, not agents of VDOC." Class Cert. Opp. at 5, *citing Ogunde v. Prison Health Services, Inc.*, 274 Va. 55, 645 S.E.2d 520 (2007). Relying upon the Supreme Court of Virginia's determination in *Ogunde* that Prison Health Services ("PHS")[3] was an independent health care contractor for VDOC, rather than an agent of the State, the VDOC concludes:

> [T]he rendering of health care services at FCCW is and has been under the control of the Contract Providers, not VDOC, and the Contract Providers have and continue to supervise and direct their employees at FCCW.
>
> Therefore, the Contract Providers are and have been independent contractors, not agents of VDOC. As such, VDOC is not liable for the acts or omissions of the Contract Providers and their employees at FCCW.

Class Cert. Opp. at 6.

Putting aside for the moment the point that this argument goes to the merits of the Plaintiffs' claims but has nothing whatsoever to do with the question of class certification, it is nonetheless patently clear that the VDOC's attempted reliance upon *Ogunde* is hopelessly misplaced. Neither the Commonwealth nor the VDOC were named as a party defendant in *Ogunde*, and the plaintiff in that case did not assert any constitutional claim against the VDOC premised upon allegations of deficient care on the part of the VDOC's medical care contractor. Accordingly, the question of whether the VDOC bore ultimate legal responsibility for sub-standard medical care allegedly rendered to the plaintiff by the VDOC's contractor was simply not presented in *Ogunde*. On the contrary, the Court considered the question of PHS's status solely in connection with its evaluation of the merits of the contractor's defense that it was acting as an agent of the State and should be shielded from exposure to the plaintiff's medical malpractice claim based upon principles of sovereign immunity. *See* 645 S.E. 2d at 523-25. The

---

[3]     Prison Health Services is the corporate predecessor of Corizon.

10

Court determined, based upon analysis of the terms and conditions of the contract between Prison Health and the VDOC, that PHS was an independent contractor, not a state agent, and that sovereign immunity therefore did not apply to insulate PHS from potential malpractice liability. *Id*. at 524-25.

The reasoning set forth and result reached in *Ogunde* have no bearing *whatsoever* on the issues before the Court here. As *West* and *Ancata* make clear, contracting with a third party to provide medical care to a governmental entity's prison population does not relieve the government of its constitutional duty under the Eighth Amendment to ensure the adequacy of the care – irrespective of how the third party is characterized. *West* expressly noted in this regard that "[w]hether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner," and cogently observed that if the law were otherwise, "'the state [would] be free to contract out all services which it is constitutionally obligated to provide and leave its citizens with no means for vindication of those rights, whose protection has been delegated to "private" actors, when [the rights] have been denied.'" 487 U.S. at 56 & n.14 (citation omitted). Accordingly, the VDOC cannot invoke the "independent contractor" status of Armor and Corizon under the holding in *Ogunde* as a basis for avoiding its constitutional obligations under the Eighth Amendment.

Moreover, where the State effectively cedes final decision-making authority with respect to the provision of or failure to provide medical care to a third-party contractor, the contractor's policies and decisions effectively become and constitute the policies and decisions of the State. *Ancata*, 769 F.2d at 705 n.9 ("where a governmental entity delegates the final authority to make decisions then those decisions necessarily represent official policy" (*citing Hearn v. City of Gainesville*, 688 F.2d 1328, 1334 (11th Cir. 1982)); *King v. Kramer*, 680 F.3d 1013, 1020 (7th

Cir. 2012) (county could not "shield itself from § 1983 liability by contracting out its duty to provide medical services. . . . [because] the private company's policy becomes that of the County if the County delegates final decision-making authority to it." (Citation omitted.)).

Undisputed evidence in the case at bar directly supports the conclusion that the VDOC has completely ceded final decision-making authority with respect to some medical care judgments to its medical-care contractor, as illustrated by the facts of prisoner Debbie Daley's encounter with Corizon's utterly inadequate treatment of her cancer, described above. *See* Summary Statement of Undisputed Material Facts, *supra*, at 5-7; *see* Fact Stmt., ¶¶ 61-68 & Ex. 40 thereto ("As you know, Corizon provides medical care to offenders at FCCW pursuant to the current contract with VDOC. VDOC officials do not interfere with or otherwise direct the medical treatment and care provided by Corizon staff at FCCW.")]. *See also* Class Cert. Opp. at 14 ("[The] VDOC Defendants are not responsible for the supervision and direction of Corizon and its employees who provide the medical care at FCCW.").

Without having to definitively resolve the issue, this Court has previously recognized on two occasions, and implicitly endorsed, the proposition that the ultimate legal responsibility for, and potential liability associated with, the provision of medical care to the Plaintiffs and other prisoners residing at FCCW lies with the VDOC, notwithstanding the fact that day-to-day medical services are the contractual obligation of Corizon (or Armor). *See* Memorandum Opinion of December 11, 2012 at 2-3, 11-16 (ECF Dkt. No. 33); Memorandum Opinion of July 28, 2014 at 4-5 (ECF Dkt. No. 127). For the reasons set forth above, this Court should now *hold*, as a matter of law, that the VDOC has a non-delegable duty under the Eighth Amendment to provide the Plaintiffs – and all prisoners within its custody – with medical care that meets or exceeds constitutional minimum standards.

12

## II. THE PLAINTIFFS' ADVERSE HEALTH PROBLEMS AND CONDITIONS CONSTITUTE SERIOUS MEDICAL NEEDS

In *Estelle v. Gamble*, the Supreme Court concluded "that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." 429 U.S. at 104 (citation omitted). The progeny of *Estelle* thus recognize, in accordance with this principle, that a threshold element of an Eighth Amendment claim premised upon allegations of deficient medical care is the claimant's showing that the health problem of which he/she complains involves a "serious medical need." *See, e.g., Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 104 (4th Cir. 1995); *Taylor v. Barnett*, 105 F. Supp. 2d 483, 487 (E.D. Va. 2000) ("First, [the plaintiff] must demonstrate a sufficiently serious medical need." (Citation omitted.)). This element of the Eighth Amendment analysis is subject to an objective standard of evaluation. *Brice*, 58 F.3d at 104 ("To establish . . . a constitutional violation, a claimant must prove that, objectively assessed, he had a 'sufficiently serious' medical need to require medical treatment[.]"); *cf. De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) ("[W]e first resolve that De'lonta has alleged an objectively serious medical need[.]").

The federal courts have endorsed a variety of different formulations of the analysis by which the presence or absence of a "serious medical need" is determined. In *Iko*, the Fourth Circuit cited with approval a standard adopted by the Seventh Circuit, stating that:

> [b]eginning with the objective component [of the Eighth Amendment analysis], a "serious . . . medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognized the necessity of a doctor's attention.

535 F.3d at 241, *quoting Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999). By contrast, without reference to the *Henderson* decision relied upon in *Iko*, in *Hayes v. Snyder*, 546 F.3d 516 (7th Cir. 2008), the Court of Appeals advanced a somewhat different test, stating:

13

> [A] prisoner's medical need is "serious" where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and we [have] noted, with approval, that other courts had found the following circumstances to be indications that a prisoner has a serious medical need: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."

*Id.* at 522-23, *citing Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The Ninth Circuit recently endorsed the same analysis. *See Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014).[4]

Irrespective of which of these analytical standards this Court might select and choose to apply, the undisputed material facts of this case establish beyond question that the Plaintiffs have serious medical needs – *i.e.*, medical problems that: (i) have been diagnosed by physicians as mandating treatment; (ii) are (in at least some instances) so obvious that even a lay person would easily recognize the necessity of a doctor's attention; (iii) absent treatment, could result in further significant injury or the unnecessary and wanton infliction of pain; (iv) a reasonable doctor or patient would find important and worthy of comment or treatment; (v) significantly (and adversely) affect each of the Plaintiffs' daily activities; and/or (vi) involve the existence of chronic and substantial pain.

---

[4] These alternative measures for determining "serious medical need" have been approved and applied by other federal courts as well. *See, e.g., Mahan v. Plymouth Cnty. House of Corr.*, 64 F.3d 14, 18 (1st Cir. 1995) (serious medical need is "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention"); *Kuhne v. Fla. Dep't of Corr.*, 745 F.3d 1091, 1096 (11th Cir. 2014) (same); *Randle v. Alexander*, 960 F. Supp. 2d 457, 480 (S.D.N.Y. 2013) ("In determining seriousness of a medical condition, courts look to certain factors, including: (1) 'whether a "reasonable doctor or patient would find [it] important and worthy of comment"; (2) whether the condition "significantly affects an individual's daily activities"; (3) and whether it causes "chronic and substantial pain."'" (*quoting Chance v. Armstrong*, 143 F.3d 968, 702 (2d Cir. 1998))).

14

In August 2010, Plaintiff Cynthia Scott was diagnosed with sarcoidosis, a potentially life-threatening chronic inflammatory disease that can affect the body's vital organs including the heart, lungs, liver, spleen, pancreas and eyes. Fact Stmt., ¶ 2 & Ex. 1 thereto [C. Scott Declaration]. In March of 2012, Ms. Scott began experiencing serious swelling in her left leg that was ultimately determined to involve a blood clot (deep-vein thrombosis), resulting in a pulmonary embolism in connection with which she was hospitalized on an emergency basis. *Id.*, ¶¶ 5-7. In 2013, Ms. Scott wore a Holter monitor for 24 hours on two occasions to evaluate the condition of her heart and was advised that the results were abnormal. *Id.*, ¶ 8. In 2014, the results of urinalysis indicated that Ms. Scott confronts a risk of kidney failure. *Id.*, ¶ 9.

Plaintiff Marguerite Richardson first learned that she was infected with Hepatitis C (HCV) in 1994, a chronic disease that may progress over the course of several decades. Since 2012, Ms. Richardson has experienced elevated levels of ammonia in her blood stream and occasional symptoms of hepatic encephalopathy, including memory loss and disorientation. In the Fall of 2013, it was determined that Ms. Richardson may have cirrhosis of the liver attributable to her HCV. Fact Stmt., ¶¶ 10-14 & Ex. 6 thereto. Ms. Richardson suffers from swelling and painful open sores ("venous stasis ulcers") on the back of her lower left leg that were diagnosed, in the Spring of 2012, to be infected with Methicillin-resistant Staphylococcus aureus (MRSA), a potentially-contagious form of bacterial infection which may be fatal if not properly treated. *Id.*, ¶ 15.

Plaintiff Rebecca Scott has a severely deformed ingrown toenail on the big toe of her right foot that periodically becomes inflamed, infected and extremely painful, making it very difficult for Ms. Scott to walk. Fact Stmt., ¶ 17 & Ex. 9 thereto. Ms. Scott has been profoundly hearing-impaired since early childhood, a severe disability that necessitates her use of well-

15

maintained and functioning hearing aids in order to communicate and hear and respond to commands. *Id.*, ¶ 19. Ms. Scott has chronic asthma and requires the use of an inhaler in order to breathe properly. *Id.*, ¶ 22.

Plaintiff Bobinette Fearce suffers from a host of significant medical problems including, but not limited to: degenerative disc disease affecting her neck and spine and causing continuous and debilitating chronic back pain; bi-lateral carpal tunnel syndrome in her wrists; a bladder condition causing constant incontinence; and chronic kidney disease. Fact Stmt., ¶¶ 25-33 & Ex. 11 thereto.[5]

As described herein, many of the Plaintiffs' ailments are the subject of diagnoses by doctors as requiring treatment – *e.g.*, Cynthia Scott's sarcoidosis and deep-vein thrombosis; Ms. Richardson's HCV and MRSA; Rebecca Scott's asthma; and Ms. Fearce's degenerative disc disease, bi-lateral carpal tunnel syndrome and her kidney disease. Cynthia Scott's severely swollen leg associated with her blood clot; Ms. Richardson's open sores on her left leg; and Rebecca Scott's severely deformed toenail are all conditions that even a lay person would recognize as meriting a doctor's attention. Rebecca Scott's hearing impairment and asthma, and Ms. Fearce's carpal tunnel syndrome and incontinence plainly affect their respective daily activities in a significant way. Virtually all of the Plaintiffs' maladies involve chronic and substantial pain and, absent treatment, could give rise to further significant injury and the unnecessary infliction of pain. Their health problems are likewise of a sort that an objectively

---

[5] As further evidentiary support for their pending Motion for Class Certification, as well as for their claims on the merits, the Plaintiffs have offered the sworn Declarations of a host of additional FCCW prisoners (and putative class members) who have likewise attested to significant health problems and concerns from which the Declarants suffer that also constitute or involve "serious medical needs" such as deep-vein thrombosis, colorectal cancer, breast cancer, congestive heart failure, HIV, cervical cancer, chronic rectal bleeding and various types of diabetes. *See generally* Fact Stmt., ¶34 and Exs. 14-15 thereto.

16

reasonable patient would deem important and worthy of comment and treatment. In sum, assessed in light of any of the tests utilized by the courts, the Plaintiffs have serious medical needs.

Upon his comprehensive review of the Plaintiffs' primary medical records as maintained at FCCW and by the VDOC, as well as their deposition testimony and discovery responses, the Plaintiffs' medical expert witness, Dr. Greifinger, found and concluded that the health problems and concerns of which the Plaintiffs complain constitute "serious medical needs" of which the VDOC Defendants are aware. *See* Fact Stmt., ¶¶ 4, 7, 13, 16, 18, 21, 24, 26, 29, 31, and 33 & Ex. 3. There has been no contention otherwise by the VDOC. The Court should find, accordingly, that the Plaintiffs have satisfied the "serious medical needs" element of their Eighth Amendment claims as a matter of law.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be granted.

17

DATED:          September 2, 2014

Respectfully submitted,

Mary C. Bauer, VSB No. 31388
([mary@justice4all.org](mailto:mary@justice4all.org))
Abigail Turner, VSB No. 74437
([abigail@justice4all.org](mailto:abigail@justice4all.org))
Brenda E. Castañeda, VSB No. 72809
([brenda@justice4all.org](mailto:brenda@justice4all.org))
Angela Ciofi, VSB No. 65337
([angela@justice4all.org](mailto:angela@justice4all.org))
Erin M. Trodden, VSB No. 71515
([erin@gustice4all.org](mailto:erin@gustice4all.org))
Ivy A. Finkenstadt, VSB No. 84743
([ivy@justice4all.org](mailto:ivy@justice4all.org))
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA  22903
(434) 977-0553

and

Deborah M. Golden (admitted *pro hac vice*)
([Deborah_golden@washlaw.org](mailto:Deborah_golden@washlaw.org))
Elliot Mincberg
D.C. PRISONERS' PROJECT OF
THE WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
11 Dupont Circle, N.W.
Suite 400
Washington, D.C.  20036
(202) 319-1000

and

Theodore A. Howard (admitted *pro hac vice*)
([thoward@wileyrein.com](mailto:thoward@wileyrein.com))
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C.  20006
(202) 719-7000

By:_____*/s/ Brenda E. Castañeda*_____
Attorneys for Plaintiffs

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September, 2014, a true and correct copy of

Plaintiffs' Memorandum in Support of Their Motion for Partial Summary Judgment was served

electronically upon the following:

> J. Michael Parsons, Esq.
> OFFICE OF THE ATTORNEY GENERAL
> Public Safety and Enforcement Division
> 900 East Main Street
> Richmond, VA 23219
> (jparsons@oag.state.va.us)
>
> Attorneys for the Virginia Department of Corrections
> Defendants

> _/s/**Brenda E. Castañeda**_
> Brenda E. Castañeda