IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CYNTHIA B. SCOTT, *et al.*, ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | Case No. 3:12-cv-00036-NKM |
| v. ) | Sr. Judge Norman K. Moon |
| ) | |
| HAROLD W. CLARKE, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

### PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Mary C. Bauer, VSB No. 31388
Abigail Turner, VSB No. 74437
Brenda E. Castañeda, VSB No. 72809
Angela A. Ciolfi, VSB No. 65337
Erin M. Trodden, VSB No. 71515
Ivy A. Finkenstadt, VSB No. 84743
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA  22903
(434) 977-0553

Deborah M. Golden (admitted *pro hac vice*)
Elliot Mincberg
D.C. PRISONERS' PROJECT OF
THE WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
11 Dupont Circle, N.W.
Suite 400
Washington, D.C.  20036
(202) 319-1000

Theodore A. Howard (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
(202) 719-7000

Attorneys for Plaintiffs

| No. | Fact | Source |
|---|---|---|
| | **PLAINTIFFS' SERIOUS MEDICAL NEEDS** | |
| 1. | Plaintiffs Cynthia Scott, Marguerite Richardson, Rebecca Scott, and Bobinette Fearce are all incarcerated at the Fluvanna Correctional Center for Women ("FCCW"). | VDOC Am. Answer ¶¶ 5-8 (February 19, 2013) (ECF Dkt. 40) |
| **Plaintiff Cynthia Scott** | | |
| 2. | In approximately 2010, Plaintiff Cynthia Scott was diagnosed with sarcoidosis. | Ex. 1, Decl. C. Scott ¶ 9; Ex. 2, Medical Records of C. Scott, VDOC production bates 1089-92. |
| 3. | Sarcoidosis is "a chronic inflammatory disease that can affect various organs in the body. The cause of the disease is unknown but there are treatments available to slow the progress of the disease and its effects on so-called end organs such as the heart, lungs, and lymph nodes, among others." | Ex. 3, Decl. attesting to expert report of Dr. Robert Greifinger, Apr.25, 2014 ("Greifinger report") ¶ 12. |
| 4. | Dr. Greifinger's report states that Cynthia Scott has a serious medical need with respect to her sarcoidosis. | Ex. 3, Greifinger report ¶ 12. |
| 5. | In 2012, Ms. Scott developed deep vein thrombosis in her left leg, and fragments of this blood clot traveled to her lungs, resulting in a pulmonary embolism. | Ex. 1, Decl. C. Scott ¶ 37; Ex. 2, VDOC production bates 364, 385-87. |
| 6. | Deep vein thrombosis is a blood clot that forms in a vein deep in the body. | Ex. 4, National Institutes of Health, "What Is Deep Vein Thrombosis?"(Oct. 28, 2011), *available at* http://www.nhlbi.nih.gov/health/health-topics/topics/dvt/. |
| 7. | "Pulmonary embolism is a life threatening condition caused by a break-up in the blood clot that is part of the deep vein thrombosis." | Ex. 3, Greifinger report ¶ 14. |
| 8. | In 2012, Ms. Scott experienced chest pains, which could have been caused by the spread of sarcoidosis to her heart. On two occasions in 2013, Ms. Scott wore a cardiac Holter monitor for 24 hours, and the results of both tests were abnormal. | Ex. 1, Decl. C. Scott ¶ 22; Ex. 2, VDOC production bates 15590; Ex. 5, Medical Records of C. Scott, Plaintiffs' Production, PLCS 00000317. |
| 9. | In 2014, lab results indicated that Ms. Scott's kidneys were failing. | Ex. 1, Decl. C. Scott ¶ 56; Ex. 2, VDOC production bates 15734, 15758. See also Ex. 5, PLCS 00000185 ("there is evidence of some kidney damage.") |

| | **Plaintiff Marguerite Richardson** | |
|---|---|---|
| 10. | Plaintiff Marguerite Richardson has had Hepatitis C since at least 1994. Due to her Hepatitis C, she suffers from elevated ammonia levels and symptoms of hepatic encephalopathy such as memory loss. | Ex. 6, Decl. M. Richardson ¶¶ 9-16; Ex. 7, Medical Records of M. Richardson, VDOC production bates 2055 (elevated ammonia level on 4/24/13); 2057 (elevated ammonia 1/31/13); 2074 (elevated ammonia 8/30/12); 2161 (memory loss and hepatic encephalopathy). |
| 11. | Hepatic encephalopathy is the loss of brain function that occurs when the liver is unable to remove toxins from the blood. | Ex, 8, National Institutes of Health, "Hepatic encephalopathy"(Oct. 13, 2013), *available at* http://www.nlm.nih.gov/medlineplus/ency/article/000302.htm. |
| 12. | Hepatitis C (HCV) "is a chronic infection that can lead to liver disease, including cirrhosis and carcinoma of the liver. The course of the disease can be several decades. HCV is treatable during a window of time when there is mild liver disease and before the liver has frank cirrhosis." | Ex. 3, Greifinger report ¶ 38. |
| 13. | Dr. Greifinger's report states that Hepatitis C is a serious medical need. | Ex. 3, Greifinger report ¶ 37. |
| 14. | Lab results taken in 2013 were inconclusive but suggested that Ms. Richardson may have cirrhosis of the liver. | Ex. 6, Decl. M. Richardson ¶ 15; Ex. 7, VDOC production 15768 ("Fibrosure result supportive of cirrhosis"). |
| 15. | Ms. Richardson suffers from venous stasis ulcers on her lower left leg, and in the spring of 2012, her lower leg and foot became infected with Methicillin-resistant Staphylococcus aureus (MRSA), a highly contagious form of bacterial infection that may be fatal if left untreated. | Ex. 6, Decl. M. Richardson ¶¶ 22-27; Ex. 7, VDOC production 2069; 2126, 2139-40; 2147, 2150. |
| 16. | Dr. Greifinger's report states that Ms. Richardson's stasis ulcers and related venous insufficiency are serious medical needs. | Ex. 3, Greifinger report ¶ 37. |
| | **Plaintiff Rebecca Scott** | |
| 17. | Plaintiff Rebecca Scott suffers from a painful, deformed toenail that has become infected and ingrown, which makes it difficult for her to walk. | Ex. 9, Decl. R. Scott ¶¶ 4-5. See e.g., Ex. 10, Medical Records of R. Scott, VDOC production bates 1553. |

| | | |
|---|---|---|
| 18. | Dr. Greifinger's report states that this condition is a serious medical need. | Ex. 3, Greifinger report ¶ 23. |
| 19. | Ms. Scott has been profoundly deaf since childhood, and needs hearing aids to communicate and understand commands. | Ex. 9, Decl. R. Scott. ¶ 10; Ex. 10, VDOC production bates 1250. |
| 20. | As Dr. Greifinger states in his report, "Deafness is a disabling medical condition. In addition to the obvious challenges for a person with seriously impaired hearing, there are other consequences behind bars," such as the difficulty in hearing and following orders and the attendant risks of unintentional violations. | Ex. 3, Greifinger report ¶ 27. |
| 21. | Dr. Greifinger's report states that Ms. Scott's deafness is a serious medical need. | Ex. 3, Greifinger report ¶ 23. |
| 22. | Ms. Scott has asthma and frequently needs to use an inhaler to breathe. | Ex. 9, Decl. R. Scott ¶ 28; Ex. 10, VDOC production bates 1560. |
| 23. | "Asthma is a reactive airway disease characterized by intermittent coughing, wheezing, and shortness of breath. Untreated, these episodes of illness can range from unpleasantness to life threatening. Asthma attacks are associated with constriction of the airways, inflammation, and mucous production." | Ex. 3, Greifinger report ¶ 24. |
| 24. | Dr. Greifinger's report states that Ms. Scott's asthma is a serious medical need. | Ex. 3, Greifinger report ¶ 23. |
| **Plaintiff Bobinette Fearce** | | |
| 25. | Plaintiff Bobinette Fearce suffers from degenerative joint disease, which causes her intense pain and difficulty walking. | Ex. 11, Decl. B. Fearce ¶ 4; Ex. 12, Medical Records of B. Fearce, VDOC production bates 3939, 3956, Ex. 13, Grievance Records of B. Fearce, VDOC production bates 8429, 8642. |
| 26. | Dr. Greifinger notes that Ms. Fearce is physically disabled as a result of her degenerative joint disease, which is a serious medical need. | Ex. 3, Greifinger report ¶ 29. |
| 27. | Ms. Fearce also suffers from carpal tunnel syndrome in both of her wrists. | Ex. 11, Decl. B. Fearce ¶ 6-7; Ex. 12, VDOC production bates 4415. |
| 28. | Untreated, carpal tunnel syndrome can result in "pain, permanent nerve damage, and disability." | Ex. 3, Greifinger report ¶ 32. |
| 29. | Dr. Greifinger 's report states that Ms. Fearce's carpal tunnel syndrome is a serious medical need. | Ex. 3, Greifinger report ¶ 29. |
| 30. | Ms. Fearce suffers from urinary incontinence, which requires her to wear adult diapers and use the bathroom frequently to | Ex. 11, Decl. B. Fearce ¶¶ 15, 18; Ex. 12, VDOC |

3

|     |                                                                                                                                                                                                                         |                                                                                                                                                                                                                                                                                                                                                                                                                  |
| --- | ----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|     | avoid wetting herself.                                                                                                                                                                                                  | production bates 4153, 5256; 5278-79.                                                                                                                                                                                                                                                                                                                                                                            |
| 31. | Dr. Greifinger's report states that Ms. Fearce's urinary incontinence is a serious medical need.                                                                                                                        | Ex. 3, Greifinger report ¶ 29.                                                                                                                                                                                                                                                                                                                                                                                   |
| 32. | Ms. Fearce suffers from chronic kidney disease.                                                                                                                                                                         | Ex. 11, Decl. B. Fearce ¶ 37; Ex. 12, VDOC production 4171.                                                                                                                                                                                                                                                                                                                                                      |
| 33. | Dr. Greifinger's report states that Ms. Fearce's chronic kidney disease is a serious medical need.                                                                                                                      | Ex. 3, Greifinger report ¶ 29.                                                                                                                                                                                                                                                                                                                                                                                   |
| 34. | In addition to the Plaintiffs, seventeen women incarcerated at FCCW have submitted declarations demonstrating the existence of serious medical needs.                                                                   | Ex. 14, Declarant Chart, and Ex. 15, Decls. of D.E., A.M., T.G., E.G., L.S.M., T.H., M.B., H.L., T.L., B.S., B.G., A.C., B.B., C.R., L.M., K.P., D.S., L.G., B.E.G., S.B., I.F., and M.W.                                                                                                                                                                                                                        |
| 35. | In the first quarter of 2014, FCCW reported 622 cases of diseases or ailments that qualified women for chronic care status (including conditions such as hypertension, asthma, diabetes, Hepatitis, seizures, and HIV). | Ex. 16, 2014 1st Quarter Statistics, Ex. 12, VDOC production bates 31322.                                                                                                                                                                                                                                                                                                                                   |
| 36. | VDOC has admitted to all facts alleged in Plaintiffs' Second Amended Complaint that are consistent with or supported by those facts contained in its own medical records.                                               | VDOC Am. Answer ¶¶ 5-8; 24-42; 44-61; 63-64; 68-76; 78-87; 89-95; 104-105; 109; 112; 116-118; 122; 126; 130-135; 138-140 (ECF Dkt. 40); *see also* Plaintiffs' Second Amended Complaint (filed July 14, 2013) (ECF Dkt. 58); *and* Order granting amended complaint (filed July 15, 2013) (ECF Dkt. 55) (Deeming prior answers by VDOC defendants to be asserted in response to the Second Amended Complaint). |
|     | **OVERVIEW OF FCCW'S HEALTHCARE SYSTEM**                                                                                                                                                                                |                                                                                                                                                                                                                                                                                                                                                                                                                  |
| 37. | FCCW is a prison of the Virginia Department of Corrections ("VDOC").                                                                                                                                                    | VDOC Am. Answer ¶ 1 (ECF Dkt. 40).                                                                                                                                                                                                                                                                                                                                                                               |
| 38. | FCCW houses approximately 1,200 women, a majority of whom are 35 years of age or older and are serving median sentences of twenty years.                                                                                | VDOC Am. Answer ¶ 17 (ECF Dkt. 40).                                                                                                                                                                                                                                                                                                                                                                              |

| | | |
|---|---|---|
| 39. | FCCW is where women with serious medical problems are sent in the first instance, or to which they are transferred from other VDOC facilities for the purpose of receiving a heightened level of care. | VDOC Am. Answer ¶ 17 (ECF Dkt. 40). |
| 40. | FCCW prisoners are totally dependent on FCCW staff and medical providers for their health needs.  Prisoners cannot have medications sent to them and cannot seek care outside VDOC except through the contractor. | Ex. 17, Fred Schilling Dep. 44:12-45:20, Mar. 25, 2014 ("Schilling Dep."); Ex. 18, Stephanie Anderson Dep. 118:4-119:2, June 12, 2014 ("Anderson Dep."). |
| 41. | Since FCCW opened in 1998, VDOC has contracted with outside for-profit medical providers for health care at the prison. | Ex. 17, Schilling Dep. at 49:2-5. |
| 42. | There have been six or seven transitions between healthcare contractors at FCCW since it opened. | Ex. 19, Dr. Denise Young Dep. 105:9-15, June 3, 2014 ("Young Dep."). |
| 43. | When contractors change, they often rehire the same personnel and operate under the same policies. | Ex. 20, Dr. David MacDonald Dep. 24:2 to 26:12, May 12, 2014 ("MacDonald Dep."); Ex. 18, Anderson Dep. 14:4-10; Ex. 21, Dr. Mark Militana Dep.  131:6-18, July 22, 2014 ("Militana Dep."). |
| 44. | VDOC selects medical contractors through a competitive bidding process. | Ex. 22, James Hatcher Dep. 20:14-22:2, June 24, 2014 ("Hatcher Dep."). |
| 45. | Armor Correctional Health Services, Inc. ("Armor") provided health care services at FCCW from November 1, 2011, to May 1, 2013.  The contract covered eight VDOC prisons.  Armor is a for-profit corporation. | Ex. 23, Bruce Teal Dep. 27:11-15, May 21, 2014 ("Teal Dep."); Armor Am. Answer ¶ 14 (filed Feb. 20, 2014) (ECF Dkt. 41). |
| 46. | In the spring of 2013, Corizon was selected to provide health care at FCCW beginning on May 1, 2013.  The contract covered 17 prisons at a cost of $76 million.  Corizon is a for-profit corporation. | Ex. 17, Schilling Dep. 109:18-110:7; Corizon Am. Answer ¶ 16 (admitting to allegations contained in ¶ 16 of Pl.'s 2nd Am. Complaint) (filed August 28, 2013) (ECF. Dkt. 67). |
| 47. | On June 2, 2014, Corizon notified VDOC that it was terminating the 2013 contract. | Ex. 24, Letter from Woodrow A. Myers to Scott Magazine (June 2, 2014). |

5

| | | |
|---|---|---|
| **48.** | VDOC initiated an emergency procurement process and selected Armor to begin again providing health care services on October 1, 2014. | Ex. 25, A. David Robinson Dep. 82:11-13, 83:12-16, 88:17-21, June 27, 2014 ("Robinson Dep."). |
| **49.** | The 2013 contract between Corizon and VDOC stipulates minimum staffing levels and sets specific penalties for failure to meet the minimum staffing levels. If Corizon does not provide staffing levels according to the contract, VDOC deducts a penalty amount from its invoice payment that month. | Ex. 26, Staffing reports, CZN-04394 through 04420; Ex. 27, contract staffing levels CZN-04879 through 04882; Ex. 28, David Thompson Dep. 61:16-66:16, August 19, 2014 ("Thompson Dep."); Ex. 17, Schilling Dep. 126:8-19. |
| **50.** | VDOC promulgates standard operating procedures, as well as Medical and Nursing Guidelines, for provision of health care within its prisons, including those, like FCCW, where the health care services are rendered by private contractors. | Ex. 20, MacDonald Dep. 107:20 to 109:8; Ex. 18, Anderson Dep. 30:7-13; Ex. 29, Dr. John May Dep. 63:10-13, May 21, 2014, ("May Dep."); Ex. 30, Dr. Paul C. Ohai Dep. 32:4-13, June 27, 2014 ("Ohai Dep."). |
| **51.** | Private contractors, such as Corizon and Armor, have their own procedures, but must also follow VDOC's procedures. | Ex. 31, Johnnie Lambert Dep. 27:3-12, June 24, 2014 ("Lambert Dep.); Ex. 32, Sylvia McQueen Dep. 68:4-8, June 18, 2014 ("McQueen Dep."); Ex. 30, Ohai Dep. 32:4-13. |
| **52.** | Private contractors, such as Corizon and Armor, are required to use the VDOC formulary for prescribing medication. | Ex. 33, Dr. Mark Amonette Dep. 170:11-13, June 27, 2014 ("Amonette Dep."). |
| | **VDOC OVERSIGHT & SUPERVISION** | |
| **53.** | The "Health Services Director" is a VDOC employee, and is the highest ranking health services administrator within VDOC. | Ex. 17, Schilling Dep. 12:9-14:19. |
| **54.** | The "VDOC Medical Director" is a VDOC employee, and is the highest ranking physician within VDOC. The Medical Director's duties include reviewing policies and procedures, chairing committees such as the continuous quality improvement, pharmacy, and therapeutics committees, reviewing requests for non-formulary medications, reviewing | Ex. 33, Amonette Dep. 19:12 to 21:4; Ex. 17, Schilling Dep. 156:14-18, 178:12-22. |

| | | |
|---|---|---|
| | requests for Hepatitis C treatment, and reviewing medical complaints from prisoners. | |
| 55. | The warden at FCCW is the highest-ranking VDOC official at the prison and has authority over all staff, including medical personnel. | Ex. 34, Tammy Brown Dep. 10:15 to 12:13, 13:9-14, June 13, 2014 ("Brown Dep."). |
| 56. | Even when there is a private contractor, the warden remains ultimately responsible for operation of the prison, including health care treatment and security. | Ex. 34, Brown Dep. 13:3-8. |
| 57. | The Warden, along with the FCCW administrator of health care, "will ensure that offenders have access to, (sic) and are provided health care services." | Ex. 35, Operating Procedure 720.1, "Access to Health Services," at 1 (last amended Aug. 7, 2013), *available at* https://vadoc.virginia.gov/about/procedures/documents/700/720-1.pdf. |
| 58. | Prior to May 2013, a VDOC regional nurse monitored the adequacy of health services at FCCW. | Ex. 25, Robinson Dep. 114:8-13. |
| 59. | Since May 1, 2013, VDOC strengthened oversight of its medical contractor through the use of "contract monitors," who visit the facilities regularly to review medical charts, and evaluate the contractor's compliance using a series of metrics selected by VDOC. | Ex. 17, Schilling Dep. 110:8-17; Ex. 36, Catherine Thomas Dep. 7:20 to 9:16, June 13, 2014 ("Thomas Dep."). |
| 60. | The policies from which the contract monitoring tools were developed from day-to-day operational procedures of health services delivery. | Ex. 36, Thomas Dep. 11:15 to 12:3. |
| | **VDOC REFUSAL TO "INTERFERE"** | |
| 61. | Debbie Daley was diagnosed with colorectal cancer shortly after arriving at FCCW in July 2013. | Ex. 37, Decl. Debbie Daley ¶ 4; Ex. 38, Decl. of Dr. Ramsdale p. 2. |
| 62. | FCCW medical personnel repeatedly changed Debbie Daley's oncologist's recommendations for long-acting and short-acting paid medications, leaving her in excruciating pain. | Ex. 37, Decl. of Debbie Daley ¶ 9; Ex. 38, Decl. of Dr. Ramsdale p. 2. |
| 63. | In November 2013, Ms. Daley's specialists decided that she needed chemotherapy instead of surgery because her tumor had shrunk insufficiently as a result of radiation treatment. She was recommended for pre-chemotherapy evaluation, which she did not receive unitl April 2014. She did not begin chemotherapy treatment until July 2014, due to an FCCW attempt to move her treatment from her UVA oncologist to the Medical College of Virginia and scheduling delays by medical personnel at FCCW. | Ex. 37, Decl. Debbie Daley ¶ 7, 10-12, 19; Ex. 38, Decl. of Dr. Ramsdale p. 2-3. |
| 64. | In February 2014, Ms. Daley's UVa specialist, Dr. Erica Ramsdale, called FCCW doctor, Dr. Patricia Rodgers, at the prison to inquire why Ms. Daley missed an appointment. Dr. | Ex. 38, Decl. of Dr. Ramsdale p. 3. |

7

| | | |
|---|---|---|
| | Rodgers said she did not know but that "she had no control over transportation and that the prison could cancel it for any reason." | |
| 65. | Ms. Daley has an abscess on her buttocks related to her cancer. When it became infected in June 2014, Dr. Carter, medical director at FCCW, refused to treat her with antibiotics for three weeks. When she arrived at UVa for an appointment to set up her chemotherapy treatments on July 2, 2014, her oncologist discovered that she was febrile, septic, and in great pain. Dr. Ramsdale admitted Ms. Daley to the hospital for several weeks to treat her infection with IV antibiotics and then to begin chemotherapy. | Ex. 37, Decl. Debbie Daley ¶¶ 15, 17-18; Ex. 38, Decl. of Dr. Ramsdale, p. 4. |
| 66. | Dr. Ramsdale was so concerned about Debbie Daley's condition upon her arrival at the hospital on July 2, 2014, that she contacted the UVA Ethics Consult Service over her concerns of medical neglect. Dr. Ramsdale accepted the UVa Ethics' recommendation to declare Ms. Daley an "unsafe discharge" unless FCCW would agree, *inter alia*, to prompt transportation to any appointments, appropriate pain treatment, compliance and follow-through with chemotherapy treatments, and antibiotic treatment of further infections. | Ex. 38, Decl. of Dr. Ramsdale, pp. 4-5. |
| 67. | Ms. Daley complained to VDOC, by letter from counsel, about her medical treatment at FCCW and requested an investigation of the delays in her chemotherapy treatment and the lack of proper follow-up care for her infection, cancer, and pain management as ordered by the physicians at UVa. | Ex. 39, Letter from Brenda Castañeda to A. David Robinson, et al. (July 2, 2014). |
| 68. | VDOC responded to the letter from counsel two weeks later, stating: "VDOC officials are aware of the issues concerning Ms. Daley's medical treatment;" however, "VDOC officials do not interfere with or otherwise direct the medical treatment and care provided by Corizon staff at FCCW. Accordingly, decisions concerning Ms. Daley's medical treatment and care are not made by VDOC officials." VDOC further indicated that "VDOC officials cannot 'ensure that Ms. Daley remain at UVa hospital until her course of antibiotic treatment for sepsis is complete' or 'take action to stop [the medical provider's] refusal to provide Ms. Daley the antibiotics ordered by the oncologist at UVa . . . .'" VDOC's letter states that it will provide transportation to and from outside medical appointments. | Ex. 40, Letter from Michael Parsons to Brenda Castañeda (July 18, 2014). |

DATED:    September 2, 2014

          Respectfully submitted,

          Mary C. Bauer, VSB No. 31388
          (mary@justice4all.org)

8

Abigail Turner, VSB No. 74437
(abigail@justice4all.org)
Brenda E. Castañeda, VSB No. 72809
(brenda@justice4all.org)
Angela Ciofi, VSB No. 65337
(angela@justice4all.org)
Erin M. Trodden, VSB No. 71515
(erin@gustice4all.org)
Ivy A. Finkenstadt, VSB No. 84743
(ivy@justice4all.org)
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA  22903
(434) 977-0553

and

Deborah M. Golden (admitted *pro hac vice*)
(Deborah_golden@washlaw.org)
Elliot Mincberg
D.C. PRISONERS' PROJECT OF
THE WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
11 Dupont Circle, N.W.
Suite 400
Washington, D.C.  20036
(202) 319-1000

and

Theodore A. Howard (admitted *pro hac vice*)
(thoward@wileyrein.com)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C.  20006
(202) 719-7000


By:       */s/Brenda E. Castañeda*
     Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September, 2014, true and correct copies of Plaintiffs' Memorandum in Support of Their Motion for Class Certification, with supporting Exhibits, were served electronically upon the following:

> J. Michael Parsons, Esq., AAG II
> OFFICE OF THE ATTORNEY GENERAL
> Public Safety and Enforcement Division
> 900 East Main Street
> Richmond, VA 23219
> (jparsons@oag.state.va.us)
>
> Attorneys for the Virginia Department of Corrections
> Defendants

                  */s/Brenda E. Castañeda*
                  Brenda E. Castañeda