# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CYNTHIA B. SCOTT, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | Case No. 3:12-cv-00036-NKM |
| v. ) | Sr. Judge Norman K. Moon |
| ) | |
| HAROLD W. CLARKE, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

## DECLARATION OF PROF. A. BENJAMIN SPENCER

I, A. Benjamin Spencer, declare under penalty of perjury that the following is true and based on my personal knowledge:

1. I am a professor at the University of Virginia School of Law in Charlottesville, Virginia. My areas of expertise include civil procedure, complex litigation, class actions, federal courts, and jurisdiction.

2. I received my B.A. from Morehouse College in 1996, my M.Sc. in Criminal Justice Policy from the London School of Economics in 1997, and my J.D. from Harvard Law School in 2001.

3. I am an attorney at law in good standing and licensed by the Commonwealth of Virginia and have been since 2001. I am also admitted to practice in the following courts: the courts of the District of Columbia and the United States Courts of Appeals for the D.C., Third and Fourth Circuits.

4. I previously served as a professor at Washington and Lee University School of Law and as an associate professor at the University of Richmond School of Law. I am a member of the American Law Institute and a member of the West Academic Law School Advisory Board.

5. I serve on the Virginia State Bar Council and have served as a Special Assistant U.S. Attorney for the Western District of Virginia, occasionally handling appellate cases in the Fourth Circuit on behalf of the government on a pro bono basis. I also practiced as a litigation associate with the law firm of Shearman & Sterling.

6. I have reviewed the records that Plaintiffs' counsel will submit to the court in support of their fee petition, including their hours and declarations. I have also reviewed the Memorandum Opinion for Summary Judgment (ECF Dkt. No. 201) and the Memorandum

1

Opinion for Class Certification (ECF Dkt. No. 188) in this case.

7. In determining a "reasonable" attorney's fee under section 1988, the Fourth Circuit has long held that a district court's discretion must be guided strictly by the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). *See Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986). Although these factors are numerous and include considerations such as the time and skill required to litigate the case, the undesirability of the case, and the opportunity costs in forgoing other work, "the most critical factor is the degree of success of obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).[1] Here, the Plaintiffs have obtained through the proposed settlement a wholesale revision of the medical procedures at the Fluvanna County Correctional Center, with a new set of operating procedures, accommodation of disabilities, and systematic monitoring of compliance with this new regime. Memorandum of Law in Support of Plaintiffs' Consent Motion for Approval of Settlement Agreement at 3-6. Framing and negotiating such a complex agreement itself required a significant investment of time and expertise by Plaintiffs' counsel and it demonstrates how much they succeeded in accomplishing on behalf of their clients (factor 8).

8. This was a particularly undesirable case given the limitations imposed by the clients' circumstances (factors 7 and 10). Few private attorneys would be willing and able to take cases like this one due to the difficulty of communicating with large numbers of incarcerated clients, the time-consuming and expensive nature of such litigation, and the fact that the prospect of compensation comes only from an award of attorney's fees, which depends entirely on success on the merits and comes only after the litigation has been concluded, often years after it is filed (factor 6). Further, the need for detailed knowledge of the clients' medical conditions and needs further complicated the factual investigation in this case. Because the central allegations of the complaint concerned "deliberate indifference to serious medical needs of prisoners," *Estelle v. Gamble*, 429 U.S. 97, 104 (1975), this case has taken on the nature of a medical malpractice case superimposed on a civil rights case. The standard from *Estelle*, of course, demands far more by way of proof than simple negligence and that feature of the case also increased the burden on Plaintiffs' counsel to assemble evidence to prevail on the merits or obtain a favorable settlement (factors 2 and 3).

9. The hours Plaintiffs' counsel expended on this case were reasonably and necessarily incurred due to the following considerations: 1) the difficulty of cultivating potential plaintiffs who were willing and qualified to act as class representatives, 2) exhausting administrative procedures as required under the Prison Litigation Reform Act on a sufficiently broad range of complaints to support an action challenging the provision of medical care on a class-wide basis, 3) the substantial nature of the motions practice in the case, 4) the breadth and duration of discovery and time spent reviewing tens of thousands of pages of discovery including medical records, 6) the time spent advising and consulting with the class representatives, 7) the

---

[1] The twelve *Johnson* factors are: (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases.

2

amount of time spent preparing for the class action trial which was set to begin just a few days after the settlement was reached, 8) the time spent in settlement negotiations, and 9) the time spent preparing the motion papers seeking approval of the settlement. This Court has dealt at some length with the arguments of Defendants in opposition to certification of a class and satisfaction of the requirements for exhaustion of administrative remedies. As this Court observed, "This case has a long procedural history." Memorandum Opinion of November 24, 2014, at 1 n.1. In that same opinion, which ran to a total of 47 pages, this Court scheduled a two-week bench trial in this case, which indicates the factual intricacy of the merits of the Plaintiffs' claims. Id. at 46. This Court also issued a 33-page opinion certifying the class in this case. Not only is certification itself a complicated issue, but it requires adequate representation of all class members as the case goes forward. All of this entails special attention and special efforts by Plaintiffs' counsel in their capacity as class counsel.

10. I am familiar with legal fees charged in the Western District of Virginia for civil cases, including attorney and paralegal fees. In my opinion, the hourly rate for Plaintiffs' attorneys' fees set by the PLRA falls well below the prevailing rate in the Western District of Virginia for each of Plaintiffs' attorneys in this case, based on their respective years in practice and experience.

I swear under penalty of perjury that the information in this affidavit is true to the best of my memory, knowledge and belief.

Signed this 16th day of October, 2015

_____
Prof. A. Benjamin Spencer, Esq.

3