```
1              UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF VIRGINIA
2                 Charlottesville Division

3   CYNTHIA B. SCOTT, et al.,        Civil No. 3:12cv00036

4
                    Plaintiffs,
5
          vs.                        Harrisonburg, Virginia
6
    HAROLD W. CLARKE, et al.,
7                                    11:33 a.m.
                    Defendants.      May 30, 2018
8

9           TRANSCRIPT OF TELEPHONIC MOTIONS HEARING
              BEFORE THE HONORABLE JOEL C. HOPPE
10                UNITED STATES MAGISTRATE JUDGE

11  APPEARANCES:

12  For the Plaintiffs:          ANGELA CIOLFI
                                 BRENDA CASTANEDA
13                               SHANNON ELLIS
                                 KIMBERLY ROLLA
14                               LEGAL AID JUSTICE CENTER
                                 1000 Preston Ave,  Suite A
15                               Charlottesville VA 22903

16                               CASEY NASH
                                 Kelly & Crandall, PLC
17                               3925 Chain Bridge Rd.
                                 Suite 202
18                               Fairfax VA 22030

19                               THEODORE HOWARD
                                 Wiley Rein LLP
20                               1776 K St. N.W.
                                 Washington DC  20006
21
    Court Reporter:             Sonia Ferris, RPR, OCR
22                              U.S. Court Reporter
                                116 N. Main St.  Room 314
23                              Harrisonburg, VA 22802
                                540.434.3181.  Ext. 7
24
    Proceedings recorded by mechanical stenography; transcript
25  produced by computer.
```

1  (APPEARANCES Continued:)

2  For the Defendants:                ELIZABETH MULDOWNEY
                                      RUTH GRIGGS
3                                     Sands Anderson, PC
                                      1111 East Main St.
4                                     Suite 2400
                                      Richmond VA 23218-1998
5
                                      DIANE ABATO
6                                     VICTORIA PEARSON
                                      Office of Attorney General
7                                     900 E. Main St.
                                      Richmond VA 23219
8
                                      KATHERINE LONDOS
9                                     NATHAN SCHNETZLER
                                      Frith Anderson & Peake PC
10                                    29 Franklin Rd. SW
                                      Roanoke VA 24011
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Good morning.  This is Joel Hoppe.

2          Who is on the line for the plaintiffs?

3          MS. CIOLFI:  Good morning.

4          This is Angela Ciolfi with the Legal Aid Justice

5   Center, for the plaintiff, and with me in the room are Brenda

6   Castaneda and Shannon Ellis, also with the Legal Aid Justice

7   Center.

8          I heard a lot of chiming in, so I'm not entirely sure

9   who else for plaintiffs is on the line.

10          MS. NASH:  Good afternoon, Your Honor.

11          This is Casey Nash from Kelly and Crandall on behalf

12   of the plaintiffs as well.

13          MS. ROLLA:  Your Honor, Kimberly Rolla on behalf of

14   the plaintiffs, with Legal Aid Justice Center.

15          MR. HOWARD:  Good morning, Your Honor.

16          This is Ted Howard from Wiley and Rein in Washington

17   for the plaintiffs.

18          THE COURT:  Good morning to all of you.

19          Who's on the line for the defendants?

20          MS. LONDOS:  Katherine Londos and Nate Schnetzler,

21   with Frith Anderson & Peake in Roanoke.

22          MS. ABATO:  Diana Abato and Victoria Pearson with the

23   AG's office in Richmond.

24          MS. MULDOWNEY:  Elizabeth Muldowney from Sands

25   Anderson in Richmond.

1          MS. GRIGGS:  Ruth Griggs from Sands Anderson.

2          THE COURT:  Karen Dotson is also on the line and

3     she's recording this hearing so there is a record of our

4     discussions today.

5          We are here on the defendant's motion to continue and

6     I have reviewed the plaintiff's response to that.

7          Who's going to address the motion for the defendants?

8          MS. LONDOS:  Good morning, Your Honor.  This is

9     Katherine Londos with Frith Anderson and Peake in Roanoke.

10         Your Honor, shortly before we got on this call, the

11    defense made a determination that we would withdraw -- we are

12    withdrawing the motion for a continuance.  Defendants are

13    ready to proceed, and, thus, we will withdraw the motion.

14    Again, that decision was made just shortly prior to getting

15    on the call.

16         There is one caveat I want to mention, and I raise

17    this simply as -- in my role as an officer of the court.  We

18    have serious reservations that this is a five-day proceeding.

19    We are ready to go.  We're not asking for a continuance as

20    stated in the motion at this time, but feel an obligation to

21    advise Your Honor and the court, generally, that given the

22    posture of this case, and even given the agreement reached

23    this morning with counsel that we would -- both sides would

24    simultaneously reduce and narrow their witness and exhibit

25    lists by the end of this week, it seems like a big bite for a

1    five-day.  So we have no reservations, but I certainly would

2    want to advise the Court.  I do not want to arrive and have

3    Judge Moon look at us and ask what we all thought we could do

4    in five days.  So I raise that issue simply by way of just

5    putting that out there, but not asking for a continuance at

6    this time.

7         Thank you.

8         THE COURT:  I think that's something that we

9    certainly can address today.

10        Are there some ways to try and manage the amount of

11   information that you all want to present at the hearing so

12   that each side can fairly present its case?  I think we all

13   should -- there have been a number of motions filed in the

14   last day or so that I think we also need to figure out when

15   responses are going to be filed on those, and there's a

16   hearing scheduled for -- I believe it's June 8th -- where

17   those motions can be taken up.  But just given the volume of

18   the motions and the short amount of time that Judge Moon will

19   have to address them, you know, it may be that he'll have to

20   address them in an opinion that's issued after the hearing.

21   I think that's just a possibility that y'all would need to

22   contemplate.

23        MS. LONDOS:  Your Honor, this is Katherine Londos

24   again.

25        Several members of the plaintiffs' team and I had a

```
 1   conversation this morning.  We are working together to

 2   narrow, specifically, the exhibit and witness lists, but

 3   other issues.  Those discussions, I know, will be ongoing.

 4   We're making those efforts.  It is still -- I'm saying this

 5   with an understanding of how sometimes these things work.  We

 6   don't want to get in a situation where Judge Moon looks at us

 7   later and says counsel should have brought this to my

 8   attention -- to the Court's attention, that this was a lot.

 9   It's in that spirit that I raise the issue.

10            THE COURT:  Right.  I understand that.

11            When do you all think -- have you set a deadline for

12   when you're going to shoot to have these narrowed?

13            MS. LONDOS:  Friday.

14            THE COURT:  Friday.

15            Will you advise the Court of any narrowing or, you

16   know, some issues you can take off Judge Moon's plate by

17   then?

18            MS. LONDOS:  What we talked about specifically this

19   morning was narrowing the exhibit and witness lists.  I know

20   all these motions were filed last evening and we're still

21   processing them, but I know I speak for the defense team that

22   we will be taking a close look at them and the legal issues

23   that can be agreed upon or stipulated to or anything along

24   those lines, we will do that.  We're just -- I'm not even --

25   I haven't even had a chance to download them all and open
```

1    them all yet before the phone call.

2          THE COURT:  Okay.

3          How about for the plaintiffs?  Do you have anything

4    you want to say along what Ms. Londos is discussing?

5          MS. CIOLFI:  Yes, Your Honor.  This is Angela Ciolfi

6    for the plaintiff.

7          We certainly welcome the withdrawal of the

8    continuance and appreciate Ms. Londos and the Court's efforts

9    to try to streamline the process as much as possible for the

10   hearing.  You know, we do acknowledge that there's a lot of

11   information.  Both parties have submitted, as of last night,

12   extensive pretrial briefing, so that should provide some

13   opportunity to frame the issues.  The plaintiffs have

14   designated several depositions, and as -- with defendants'

15   motion for summary judgment as well, so, hopefully, we'll be

16   able to offer a lot of deposition designations as a way to

17   reduce live testimony to be presented.

18         As Ms. Londos said, plaintiffs offered, and

19   defendants have agreed, to simultaneously agree to narrow the

20   exhibit and witness lists.  We are also -- plaintiffs are

21   also working on factual stipulations.

22         The exhibit and witness lists -- we did agree to

23   exchange those on Friday.  I think just given where we are in

24   the week that it would probably likely take, you know, some

25   portion of the day to do that.  So with that and the motions

1    that were filed last night and the stipulation that we would

2    like to present to the defendants as quickly as possible, we

3    would ask that maybe we advise the Court on Monday, giving

4    us, you know, the weekend, unfortunately, to hash things out

5    as much as we can.  I think we might actually have more

6    information to provide the Court by Monday.

7         We certainly welcome any other ideas the Court has

8    for managing the information to be presented.

9         THE COURT:  Have you all discussed a date for filing

10   responses to the motion to exclude experts and the motion for

11   summary judgment?

12        MS. LONDOS:  We have not, no.

13        THE COURT:  What did you envision?  There's a hearing

14   date scheduled for the 8th.  I imagine that would be what you

15   all would use to address these motions.

16        MS. LONDOS:  Your Honor, I apologize.  Just with them

17   coming in late last night, on that particular question, I

18   have not had a chance to consult my colleagues on the defense

19   side on that.  Certainly, that's on the table to be discussed

20   today.  We just haven't gotten to it this morning.

21        MS. CIOLFI:  And this is Angela Ciolfi.

22        Plaintiffs are in the same position as well.  We

23   would like -- I think having a deadline would be a good thing

24   for all involved, but I wouldn't want to overly promise,

25   given the time restraints.

1          THE COURT:  I would suggest that Judge Moon is going

2     to need more than a day to consider responses.

3          MS. LONDOS:  May I suggest that I consult with Angela

4     Ciolfi, and we can continue our discussions -- myself, being

5     the representative of the defense team, and Ms. Ciolfi being

6     the representative from the plaintiffs -- that we consult,

7     hopefully by the end of the day today, to see if we can come

8     to some agreement on that?

9          THE COURT:  Sure.  I think that's fine.  We'll be

10     happy to let you all have the first crack at figuring that

11     out.

12          Are there still depositions outstanding?

13          MS. LONDOS:  Yes.  And Ms. Riggs may be in a better

14     position to say exactly from our side.  I think maybe even

15     today.

16          Is that correct, Ms. Riggs?

17          MS. RIGGS:  Due to circumstances beyond everyone's

18     control, we had to postpone Dr. Gable's deposition until next

19     Tuesday.  There was a death at the jail last night and he, as

20     the medical doctor, is involved and has not slept yet.  So

21     counsel decided it would be more appropriate to give him an

22     opportunity to sleep and prepare for next week.

23          Then my understanding, Mr. Hasher's 30(b)(6) is on

24     Friday, so that will leave Mr. Hasher's 30(b)(6) on Friday,

25     an expert deposition for Dr. Gable and his 30(b)(6) on

1  Tuesday.

2        Counsel and I have been working today to narrow our

3  understanding of the testimony that Dr. Gable would

4  potentially be providing as a 26(a)(2)(C) expert, making

5  clear it's a very limited scope.  Essentially, treater

6  testimony.  Hopefully, we'll be able to cut down some of the

7  time for both his expert deposition and his 30(b)(6) next

8  week.

9        THE COURT:  Okay.

10        MS. CIOLFI:  Yes.  I believe there's one more

11  discussion of a short continuation of one of defendant's

12  experts that was scheduled for tomorrow.

13        MS. RIGGS:  Yes, that's tomorrow.  I forgot about

14  that one.  I'm sorry.

15        THE COURT:  All right.

16        Let me ask you this.  As to the actual hearing, have

17  you all given some thought to allocating each side time to

18  present evidence just to make sure that one side doesn't

19  monopolize the time?

20        MS. CIOLFI:  This is Angela Ciolfi.

21        We have discussed that to some extent.  It's a little

22  bit complicated by one thing that is, I think, probably

23  inherent in every case and one thing that's a little unique

24  about this case.  The first one, it's just very difficult to

25  commit to time frames when neither side is in control of the

1    other person's cross.  I know the plaintiffs, you know, are

2    working very diligently to try to contain and to reduce the

3    number of witnesses and contain the amount of evidence that

4    will be presented in their case in chief to allow the

5    defendants an opportunity to present their defense and for us

6    to cross-examine their witnesses, but there are some factors

7    outside of our control.

8         The second one that is more unique is that there is

9    some -- and the plaintiff has filed a motion in limine on

10   this question -- about the time frame of the relevant period

11   for determining liability for contempt, and that is whether

12   the time frame is from the time the consent order was entered

13   in February of 2016 to when the motion for show cause was

14   filed in September of 2017, or whether it's the entire period

15   leading up to today's status.

16        Both parties acknowledge that the period between

17   September -- and my intent in laying this out is not to argue

18   the motion but simply to illustrate to the Court that there

19   is some difficulty in figuring out how the evidence will be

20   presented without some resolution of that issue.

21        Both parties have acknowledged that the evidence --

22   the facts and circumstances following the motion to show

23   cause leading up to today are relevant, but we are still in

24   conversations with defendants' counsel about what the --

25   their position on the appropriate time period for liability.

1          THE COURT:  Okay.

2          MS. LONDOS:  Your Honor, this is Katherine Londos.

3          The only thing I would add is that -- and this is

4     always an issue on the defense side of the table -- is that

5     we are always concerned that the allotted time will be

6     occupied disproportionately by the plaintiff and the

7     defendant will not be left with enough time.  That is

8     inherent in the nature of trial practice but one that we are

9     mindful of, particularly in this case.  We certainly don't

10    want to be left with, you know, two hours on Friday afternoon

11    to present our case.  Those discussions have been ongoing and

12    I imagine will continue to be ongoing.  We're just mindful of

13    that potential as often happens in these cases.  Nothing

14    unique about this case in particular.

15         THE COURT:  These conversations may be more fruitful

16    after Friday when you've narrowed your witness and exhibit

17    lists, but certainly each side has a right to present its

18    case.

19         MS. CIOLFI:  Your Honor, this is Angela Ciolfi again.

20         May I ask for clarification on the deadline for

21    responses for motions in limine that were filed yesterday?

22    In addition to the motions in limine, defendants also filed a

23    motion for summary judgment, which is, you know, of much

24    greater magnitude, of course, than a motion in limine would

25    be.  I believe plaintiffs' position will be that that motion

1    was untimely filed, so, you know, we'll, of course, address

2    that in the briefing, but I just want to clarify that the

3    Court does not intend that we would be fully briefing their

4    46-page motion and supporting exhibits by the time to have it

5    heard on June 8th.

6         THE COURT:  You know, I would think it would be

7    really probably an impossible task for Judge Moon to be able

8    to rule on the motion for summary judgment prior to the

9    commencement of the hearing.  Usually, those motions are

10   filed, under a typical scheduling order, 75 days before

11   trial, and heard 45 days before or after full briefing.  So

12   that will be a real challenge.

13        Ms. Londos, what's your view on that?

14        MS. LONDOS:  Your Honor, this case has been unusual

15   in so many regards, but one in particular has been the

16   schedule and the way this case has developed beyond what I

17   think anyone anticipated back in December of 2017 when I

18   think a good number of the attorneys on this call today were

19   not even -- were not involved in the case yet.

20        The number of depositions taken in the last 60 days,

21   and even the number of depositions taken after May 1, which

22   was the court's discovery cutoff, is significant.  I have

23   them typed out here and there are, you know -- I don't want

24   to miscount, but -- some were 30(b)(6) depositions, but

25   there's been 5 or 6 or 7 or 8 now depositions taken after the

discovery cutoff.  We have been working diligently.  We have

been working collaboratively and cooperatively with counsel

to get everything scheduled.  But a lot of what has happened

in this case has happened in the last 30 days.  So that's

unique.  Usually, for those of us in trial practice, we're

very familiar with the idea of something happening after the

discovery cutoff -- supplemental disclosures and an

occasional deposition.  But overall, it feels like a very

large percentage of the discovery in this case happened in

May, and continues to happen.  I can't even keep up with the

emails that are coming in about supplemental disclosures, et

cetera.  So it's just been a different dynamic than most of

the other cases we're all involved in.

        So that's where we are and that's why the motions are

being filed when they're filed is, simply, we haven't got

that far.  Again, as an indicator, there were depositions

last week and there are depositions this week.  It's been an

ongoing process.

        MS. CIOLFI:  Your Honor, I would just like to point

out that the pretrial schedule was the schedule that the

defendants agreed to with full knowledge of what the scope of

this case entailed, including the 56 supporting -- not

declarations but exhibits -- that accompanied plaintiffs'

voluminous motions.  So this is really a case of buyer's

remorse on the part of the defendants, and not surprise.

1          This is the schedule that we all agreed to and did

2     not contemplate motion for summary judgment to be filed.  We

3     contemplated the filing of a pretrial brief as of yesterday,

4     which is what the plaintiffs filed.  The defendants did have

5     the opportunity to fully brief the motion for show cause that

6     the plaintiff filed back in September, and they did brief

7     that, after which both parties had a status conference before

8     Judge Moon in which he expressly declined to rule on the show

9     cause until the time of trial.  I would submit that the

10    plaintiffs -- that that is where we stand and that the

11    plaintiffs have tried to accommodate the numerous delays in

12    production and rescheduling of depositions due to

13    availability of defendants' witnesses and their lawyers, and

14    that we should not now be penalized by the lateness of the

15    discovery because of the plaintiffs' willingness to

16    accommodate the multiple schedule changes.

17         THE COURT:  Let me just cut in for a second.

18         You know, I can see that both sides have been working

19    really hard on this case and there's been a great volume of

20    discovery in a pretty compressed time and significant motions

21    practice.  So it does seem to me that -- I think the way this

22    case has unfolded is unusual.  The pretrial order does not

23    expressly contemplate motions for summary judgment.  I think

24    that will be something that -- you know, plaintiffs can

25    certainly raise that with Judge Moon.  I don't know what he

1   would say on that, but I would imagine that he certainly

2   would want to allow the plaintiffs adequate time to respond

3   to the dispositive motions.  I don't see how he could rule on

4   that prior to the hearing, though.  I would think that that

5   would be something that he would address in a post-hearing

6   opinion.

7           Go ahead, Ms. Londos.

8           MS. LONDOS:  This is Katherine Londos again.

9           Maybe this hearing is a microcosm of this case in

10  general, but I feel like this hearing -- we've morphed a

11  little bit into, sort of, the issues with the motion for

12  continuance.  We do -- the defense -- I want to be clear --

13  wants to be heard on the summary judgment motion.  The

14  summary judgment motion is, I think, crucial to the Court's

15  hearing of this case.  The refrain that we've heard over and

16  over again is we both have enough attorneys on both sides of

17  the aisle to get everything done.  Hence, all these

18  depositions that have been scheduled.  The defense believes

19  it's important that Judge Moon hear the issues before the

20  hearing, and I will not for a minute concede that the defense

21  has been less than diligent and less than attentive in

22  everything in this case, and I'm not going to rehash

23  everything, but that is one point that I want to make clear.

24  There's been extensive efforts to get everything done and,

25  certainly, a lot of these depositions are only happening

1   because they were requested later in the process.  But the --

2   we would respectfully ask the opportunity to be heard on the

3   summary judgment before the hearing, and I understand that we

4   are dealing with a complicated calendar issue, but at the

5   beginning of this case, there was an agreement on limited

6   discovery and that's what we thought we were getting, and it

7   has not turned out to be, from the defense perspective,

8   limited.

9          THE COURT:  Well, don't forget.  You all can add

10  attorneys to the case but Judge Moon doesn't get to add

11  judges or law clerks.  I know that they are looking at

12  everything.  They're going to do their best to address all

13  these motions meaningfully and properly.

14          I think it will really be -- I mean, I'll be in touch

15  with Judge Moon and certainly will let him know that you all

16  want to have a motion for summary judgment heard, I imagine,

17  on the 8th at the hearing, but I think there's going to have

18  to be some consideration about when the plaintiffs' brief is

19  due and, Ms. Ciolfi, if you're going to raise the time

20  window, I would encourage you to do that sooner rather than

21  later.  I don't know what Judge Moon will say on that.

22          MS. LONDOS:  If I could just add -- and I will stop

23  talking.  I don't mean to keep adding.  But if the Court will

24  not hear the motion for summary judgment prior to the

25  hearing, that would, I guess, raise the issue of a

1   continuance again.  Again, while we're ready to go, we would

2   like the opportunity to be heard.  So I would imagine that

3   Judge Moon will know what he wants to do on that point, but

4   we would -- if that involves a continuance to allow us to be

5   heard, that would be our position -- is that we would like to

6   be allowed to be heard, notwithstanding everything that's

7   been said thus far in this hearing.

8           THE COURT:  Like I said, I think he'd try to hear the

9   motion, but I don't know that you're going to have a ruling

10  on that before trial.  You know, it is a bench trial, so it

11  is probably a motion like the motion to exclude the experts

12  that can be addressed after the evidence has been presented.

13          There's one motion I think Judge Moon will take up,

14  and that's the defendants' motion for a view.  If he agrees

15  to do that, I imagine that's something that could be done not

16  during that five-day period?

17          MS. LONDOS:  Absolutely, Your Honor.

18          Whenever Judge Moon wants the site inspection, he

19  will get the site inspection.  We will make that happen.

20          THE COURT:  Are there some other considerations about

21  the schedule and briefing or other things to raise today?

22          MS. CIOLFI:  Your Honor, there are other motions

23  pending, not including the ones that were filed last night.

24  I don't know that -- I think one may be fully ripe; the

25  defendants' motion for an extension of email production.  I

don't think that the other motion has been fully briefed yet.
That would be the plaintiffs' motion for privilege waiver.  I
think those are the ones that are pending other than the ones
that have procedurally been filed.  I don't know if the Court
wants, at this time, to hear those or not.

        THE COURT:  I think those are some of the outstanding
motions in front of me, and there are some motions to seal
and things like that that I'll take up as soon as I can.  I
don't think that -- plaintiffs' motion now, of course, is not
ripe.  There's no response, but on the defendants' motion for
extension, I planned on taking that up today.

        What is the status of the email production?  Is it
still ongoing?

        MS. LONDOS:  Your Honor, it is still ongoing.  We are
continuing what I would call extensive efforts.  The IT
vendor is getting them to us, meaning the defense counsel.
We are processing them internally to review for privilege and
relevancy issues and getting them out as they come.  There
are tens of thousands coming in to us and we have people
dedicated here to reviewing them and getting them out.  I
think there's one -- another batch, hopefully, going out
today or tomorrow.  We have one that just came in end of last
week.  16,008 files came in in the end of last week.  8,500
came in yesterday.  So we are diligently and continuously
working on that.

1    But I, too, was not prepared to fully argue that

2    motion today.

3    THE COURT:  Ms. Ciolfi, is there anything

4    preliminarily that you would want to say on that?  The

5    production is ongoing and sounds like it's still -- are you

6    receiving substantial amounts of emails?

7    MS. CIOLFI:  Your Honor, if I could, I'd like to ask

8    my colleague, Casey Nash, to respond regarding the motions.

9    THE COURT:  Sure.

10   Ms. Nash?

11   MS. NASH:  Good afternoon, Your Honor.

12   I think it's our position that -- I mean, the trial

13   starts in a matter of days.  As the defendants have

14   indicated, they're still receiving tens of thousands of

15   emails.  This is discoverable information that's been

16   withheld from the plaintiffs and being produced at this late

17   stage.  It's really going to be difficult for the plaintiff

18   to meaningfully use this and present this at trial,

19   particularly given that our exhibit list is well past due.  I

20   think, you know, we're now a month beyond the production date

21   that the Court ordered.  So I think that sanctions are

22   appropriate because, you know, the Court ordered that this

23   information be produced, and I understand it's a tall order

24   and I understand that both sides are working really hard.

25   I'm not going to accuse the defendants of dilatory conduct,

```
 1    but the simple fact is this information was ordered by the
 2    Court.  It wasn't produced by the deadline and I really think
 3    that causes some harm to the plaintiffs.  So I think
 4    sanctions are appropriate.
 5          MS. LONDOS:  Your Honor, this is Katherine Londos.
 6          I'm sorry.
 7          THE COURT:  Let me say that I'm not sure that it
 8    makes a whole lot of sense to -- if these emails aren't able
 9    to be used at trial, and if exhibit lists have been
10    identified and you all are trying to winnow down the exhibit
11    lists, that the production would continue.
12          I'm wondering, what is -- at this point, Ms. Nash,
13    what would the purpose be, and are you all seeking that
14    continued production?  Would it make sense to hold it in
15    abeyance at this time?
16          MS. NASH:  I think our position is -- I mean, it's
17    really hard for us to process information at this time, even
18    if it's given to us.  I'm not sure that it makes sense for
19    the production to continue, given that it's not going to be
20    useable.  That being said, the plaintiffs provided a list of
21    these 17 priority email boxes to the defendants on
22    January 25th.  During the April 12th hearing, the Northrop
23    Grumman representative on the phone indicated that Northrop
24    Grumman didn't receive the request for the 17 email boxes
25    until April 4.  This delay -- you know, I understand it's a
```

1    tall order.  I understand everyone is working hard.  Just not

2    being able to receive this discoverable information in time

3    for trial, given that timeline, I think it presents prejudice

4    to the plaintiffs in preparing their case, and I think there

5    has to be some consequence for that.

6         THE COURT:  Let me say this.  I'm not going to go

7    forward and address any prejudice or sanctions today, if that

8    would be appropriate at all.  I think we all recognize -- and

9    I certainly did -- that it was going to be a very tall order

10   to get all these emails produced.  You know, the system for

11   archiving emails and then retrieving them is -- it is really

12   hard to understand why that was seen as a good way to do it,

13   but I don't think that falls at these particular defendants'

14   feet.  That decision was made well above their pay grade so I

15   don't know that it's at all appropriate for me to sanction

16   them for something that seems like was really out of their

17   control.  Perhaps things could have been started earlier with

18   the production, but given the request and information that

19   was sought, it wasn't 17 custodians until we had whittled

20   things down after, I think, maybe two hearings and then

21   figured out that was going to be what the defendants needed

22   to delve into.  It was a much larger scope of email recovery

23   that I voiced some concerns about proportionality of that

24   overall initial request.  So I don't think the delay,

25   necessarily, all falls at the defendants' feet either.

1          Ms. Nash, as I understand, there are emails y'all are

2     entitled to that you have not received at this time, but it

3     sounds like there's been an effort to really get a lot of

4     them in to you, and it may just be that balancing the

5     plaintiffs' interests in going forward expeditiously and as

6     contemplated with the hearing, there would just need to be a

7     weighing that you all would have to do that, whether getting

8     every shred of discovery that you're entitled to outweighs

9     the need to go forward in June with the hearing, and it seems

10    like the decision has been made to go forward with what you

11    have and do the best with that information.

12         That's a longwinded way of saying if sanctions are

13    something that you're seriously going to seek, I think we

14    would need to address that in another hearing.

15         Ms. Londos, is there something you wanted to say?

16         MS. LONDOS:  No, sir.  Thank you.

17         MS. CIOLFI:  Your Honor, this is Angela Ciolfi.

18         We would request the Court not rule on that at this

19    time and give us an opportunity -- I think there may be some

20    factual issues about the timing in which the plaintiffs

21    narrowed their request that are relevant here, and we would

22    like an opportunity to talk about whether an additional

23    hearing might be necessary.

24         THE COURT:  That's fine.  I'm expressly not ruling on

25    that issue today.

1      MS. LONDOS:  Thank you, Your Honor.

2      MS. CIOLFI:  Your Honor, there is one last thing.  I

3  apologize.

4      So we -- as Ms. Griggs alluded to, we have

5  rescheduled Dr. Gable's deposition to Tuesday.  The counsel

6  for both parties have been trying to resolve some objections

7  that were raised this morning as to the substance of that

8  testimony, and we're at loggerheads.  I think additional

9  discussions have happened.  I hope that we'll be able to

10 resolve them, but I am anticipating that that may not be

11 possible.

12     Would the Court like to -- I think it's in everyone's

13 interest to have this resolved before Tuesday.  If we're

14 unable to resolve it, could we be able to get some time with

15 you on Monday or before?

16     THE COURT:  I have very good availability Thursday,

17 Friday, Monday.  So yes.  I will be available as long as you

18 all are.

19     MS. CIOLFI:  Thank you.  We appreciate that, and we

20 will make every effort to resolve it without bringing it to

21 your attention, and I'm sure I speak for both sides on that.

22     THE COURT:  Let me tie up one thing with the emails.

23     I'm going to order that the defendants can hold their

24 production in abeyance at this point.  It doesn't seem it

25 makes sense for that to go forward given how extensive or how

1    much work it requires to do that, and the plaintiffs aren't

2    going to be to be able to use those emails at trial.

3            Anything else from the defendants?

4            MS. LONDOS:  No, sir.  Thank you.

5            THE COURT:  Ms. Ciolfi, anything else from the

6    plaintiffs?

7            MS. CIOLFI:  No, Your Honor.  Thank you.

8            THE COURT:  Then we will -- you all are going to give

9    us an update, perhaps as soon as later today, about when

10   responses to motions to exclude will be filed, and I think

11   it's still a bit of an open question about when the summary

12   judgment -- when the opposition to summary judgment will be

13   filed, but I think that's something you all also should

14   consider, and I'll certainly let Judge Moon know that the

15   defendants would like to be heard on the 8th on their motion

16   for summary judgment.

17           I think that's it.

18           Counsel, thanks for calling in, and have a good day.

19           MS. CIOLFI:  Thank you, Your Honor.

20           MS. LONDOS:  Thank you.

21

22   "I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

23

24

25