# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

CYNTHIA B. SCOTT, et al.,     )
                   )
     Plaintiffs,       )
                   )
v.                   )     Case No. 3:12-cv-36
                   )
HAROLD W. CLARKE, et al.,     )
                   )
     Defendants.      )
                   )

## MEMORANDUM IN RESPONSE TO COURT'S ORDER TO SHOW CAUSE

Defendants Harold W. Clarke, A. David Robinson, Stephen Herrick, and Eric Aldridge (collectively "Defendants"), by counsel, in response to the Court's Order to Show Cause, ECF No. 495, and the Court's post-trial briefing Order, ECF No. 519, submit this narrative memorandum as to why Defendants should not be held in contempt.

## I.    Standard of Review for Contempt

Federal courts have the inherent authority under Article III of the Constitution to hold parties in civil contempt for violating a court order. Shillitani v. United States, 384 U.S. 364, 370 (1966); In re Under Seal, 749 F.3d 276, 285 (4th Cir. 2017). The moving party bears the burden of establishing by clear and convincing evidence each of the following elements:

> "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's 'favor'; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violation; and (4) that the movant suffered harm as a result."

Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC, 887 F.3d 610, 617 (4th Cir. 2018) (quoting United States v. Ali, 874 F.3d 825, 831 (4th Cir. 2017)). If the complaining party

629.0303\NHS
4823-8857-3294 .v1

satisfies this prima facie burden, the burden of production shifts to the alleged contemnor to show its substantial compliance with the Order, inability to comply, or good faith attempt to comply. United States v. Rylander, 460 U.S. 752, 757 (1983); Chesapeake Bank v. Berger, No. 4:14cv66, 2014 WL 5500872, 2014 U.S. Dist. LEXIS 153996, at *8 (E.D. Va. Oct. 30, 2014) (citing Consolidation Coal Co. v. Local 1702, United Mineworkers of Am., 683 F.2d 827, 832 (4th Cir. 1982)). Upon such a showing, the burden reverts back to the complainant who bears the ultimate burden of persuasion. Rylander, 460 U.S. at 757.

Evidence is clear and convincing if it "place[s] in the ultimate factfinder an abiding conviction that the truth of [the party's] factual contentions are highly probable." Colorado v. New Mexico, 467 U.S. 310, 316 (1984) (internal quotations omitted). Thus, the moving party's evidence must "instantly tilt[ ] the evidentiary scales in the affirmative when weighed against the evidence" of the alleged contemnor. Id. The function of this standard of proof serves to allocate "the risk of erroneous judgment between the litigants and indicates the relative importance society attaches to the ultimate decision." Id. at 315–16 (citing Addington v. Texas, 441 U.S. 418, 423–25 (1979)).

To hold a party in civil contempt, the court must be able to point to an order "which 'sets forth in specific detail an unequivocal command' which a party has violated." In re GMC, 61 F.3d 256, 258 (4th Cir. 1995) (quoting Ferrell v. Pierce, 785 F.2d 1372, 1378 (7th Cir. 1986)). The order allegedly violated must be "clear and unambiguous." Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991) (collecting cases). "[A]ny ambiguities or uncertainties in such a court order must be read in a light most favorable to the person charged with contempt." Id. (citing NBA Properties, Inc. v. Gold, 895 F.2d 30, 32 (1st Cir. 1990)).



629.0303\NHS
4823-8857-3294 .v1

## II. A Party Cannot be Held in Contempt Prior to Entry of a Court Order

As an initial matter, events predating the Court's February 6, 2015 approval of the parties' Settlement Agreement cannot serve as a basis for finding Defendants in contempt. "In order to prevail on a contempt petition, the complaining party must demonstrate by clear and convincing evidence that the respondent has violated the express and unequivocal command of a *court order*." D. Patrick, Inc. v. Ford Motor Co., 8 F.3d 455, 460 (7th Cir. 1993) (citing Stotler & Co. v. Able, 870 F.2d 1158, 1163 (7th Cir. 1989)); see also In re Andreas, 373 B.R. 864, 874 (Bankr. N.D. Ill. 2007). Indeed, it is an understood and long-standing principle that a party may be held in contempt only for "what is decreed, not for what may be decreed." Taliaferro v. Horde, 22 Va. 242, 247 (1822).

This principle is particularly significant in this case: a class-action lawsuit pursuant to Rule 23 of the Federal Rules of Civil Procedure. Under Rule 23(e), the parties' Settlement Agreement required approval by the Court after a fairness hearing before having any effect. Class members had an opportunity to object to the terms of the Settlement Agreement, which some did. The Court could have rejected or required modifications to the Settlement Agreement if it saw fit. Thus, there was no guarantee that the Settlement Agreement proposed by the parties would be approved by the Court. So, Defendants' actions prior to the Court's approval of the Settlement Agreement cannot, as a matter of law, serve as any basis for a finding of contempt because there was no court order then in effect.[1]

---

[1] Nevertheless, Defendants did begin implementing changes to comply with the Settlement Agreement prior to its approval by the Court.

629.0303\NHS
4823-8857-3294 .v1

### III. The Court's February 5, 2016, Order Does Not Contain an Unequivocal Command

Despite Plaintiffs' attempts to characterize it as such, the Court did not enter a Consent Order, Consent Judgment, or a Consent Decree in this case. Rather, the Court's February 5, 2016, Order merely approved the Settlement Agreement as required by Rule 23. The Final Judgment Order, ECF No. 262, did not make the Settlement Agreement itself an Order and did not contain the terms of the Settlement Agreement. Because the Court's February 5, 2016, Final Judgment Order does not contain any unequivocal command or contain any of the provisions of the Settlement Agreement in the Order itself, the Order does not comply with Rule 65 of the Federal Rules of Civil Procedure and may not serve as the basis for a finding of contempt. Further, the Settlement Agreement itself does not constitute a consent decree and may not serve as a basis for a finding of contempt.

#### a. The Court lacks jurisdiction to hold Defendants in contempt

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" <u>Gunn v Minton</u>, 568 U.S. 251, 256 (2013) (quoting <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994)). "It is to be presumed that a cause lies outside this limited jurisdiction, <u>Turner v. Bank of N. Am.</u>, 4 U.S. 8 (1799), and the burden of establishing the contrary rests upon the party asserting jurisdiction, <u>McNutt v. Gen. Motors Acceptance Corp.</u>, 298 U.S. 178, 182–83 (1936)." <u>Kokkonen</u>, 511 U.S. at 377.

A motion asserting that a court order has been violated and requesting enforcement of the order by means of civil contempt generally invokes the Court's ancillary jurisdiction, and "the petitioner bears the initial burden of proving that the alleged contemnor has violated an outstanding court order." <u>Perry-Bey v. City of Norfolk</u>,



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 4 -

629.0303\NHS
4823-8857-3294 .v1

678 F. Supp. 2d 348, 376 (E.D. Va. 2009) (citing <u>Kokkonen</u>, 511 U.S. at 379; <u>Commodity Futures Trading Comm'n v. Wellington</u>, 950 F.2d 1525, 1529 (11th Cir. 1992)). Thus, in order for the Court to have subject matter jurisdiction, Plaintiffs must prove that there is an outstanding court order enforceable by contempt. <u>Id.</u>[2]

### 1. To be enforceable through contempt, an Order must expressly set forth the parties' obligations

"A provision of a settlement agreement not specifically set forth in a judicial order is not enforceable by contempt," and "merely retaining jurisdiction to enforce the agreement is not enough to transform it into an order enforceable by contempt." <u>Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.</u>, 84 F.3d 367, 371 (10th Cir. 1996) (citing <u>H.K. Porter Co. v. Nat'l Friction Prods.</u>, 568 F.2d 24 (7th Cir. 1977); <u>D. Patrick v. Ford Motor Co.</u>, 8 F.3d 455, 461 (7th Cir. 1993)). "Standing alone, a settlement agreement is nothing more than a contract; the imprimatur of an injunction is required to render it a consent decree enforceable through contempt." <u>D. Patrick</u>, 8 F.3d at 460 (citations omitted). While a provision retaining jurisdiction may be sufficient to impart ancillary jurisdiction to order specific performance of a settlement agreement, only the process of express inclusion of the equitable terms of the settlement agreement into the court's

---

[2] "[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, <u>California v. LaRue</u>, 409 U.S. 109 (1972), principles of estoppel do not apply, <u>Am. Fire & Casualty Co. v. Finn</u>, 341 U.S. 6, 17–18 (1951), and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings. Similarly, a court including an appellate court, will raise lack of subject-matter jurisdiction on its own motion. 'The rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, which requires this court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record.'" <u>Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee</u>, 456 U.S. 694, 703 (1982) (quoting <u>Mansfield, C. & L.M.R. Co. v. Swan</u>, 111 U.S. 379, 382 (1884)). Thus, "a litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 576 (2004) (internal quotations omitted); <u>see</u> <u>also</u> Fed. R. Civ. P. 12(h)(3).

629.0303\NHS
4823-8857-3294 .v1

order accomplishes the goal of conferring continuing jurisdiction with the court and concomitant enforceability by contempt. <u>Consumers Gas & Oil</u>, 84 F.3d at 370–71.

In <u>D. Patrick, Inc.</u>, the Seventh Circuit Court of Appeals affirmed a district court's decision not to hold a party in contempt. 8 F.3d at 462. The district court rendered its judgment on the issue of contempt after a hearing on a correlating motion for a preliminary injunction. <u>Id.</u> at 458. On appeal, the <u>D. Patrick</u> Court observed that it had "substantial doubt as to whether the settlement agreement at issue here is even amenable to enforcement through contempt." <u>Id.</u> at 460. The district court's order in that case did not "spell[ ] out the parties' rights and obligations . . . only the settlement agreement purport[ed] to do that." <u>Id.</u> While the parties' stipulated that the court would retain jurisdiction to enforce the settlement agreement and the district court's order "approved the stipulation and retain[ed] jurisdiction to enforce the settlement agreement through contempt," the district court failed to "set forth any of the provisions of the settlement agreement in its order." <u>Id.</u> at 460–61.

Given that flaw, the <u>D. Patrick</u> Court looked to the requirement of Rule 65(d) of the Federal Rules of Civil Procedure, noting that "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; and shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." <u>Id.</u> at 461. Noting the strict construction of Rule 65, the <u>D. Patrick</u> Court confirmed that a court order merely approving a settlement agreement, making a copy of the agreement part of a proceeding, and containing text adopting the settlement agreement and incorporating it into the order by reference was insufficient to "'spell out . . . the specific obligation resting on the



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\NHS
4823-8857-3294 .v1

defeated litigant . . . .'" <u>Id.</u> (quoting <u>H.K. Porter Co. v. Nat'l Friction Prod.</u>, 568 F.2d 24, 27 (7th Cir. 1977)). Indeed, "[t]he fact that the parties' obligations were set forth in the settlement agreement did not remedy the defect." <u>Id.</u>

The <u>D. Patrick</u> Court likened that case to situations involving contempt motions following decrees that merely reference the text of a statute.

> [J]ust as it is inadequate if the decree has merely referred to a statute, even though the statute clearly created the legal obligation which warranted the decree, so it is not enough for enforcement by contempt proceedings if the decree merely referred to a contract, even though the contract clearly created the legal obligation which warranted the decree.

<u>Id.</u> (citing <u>H.K. Porter</u>, 568 F.2d at 27–28). And mere retention of jurisdiction by the district court to enforce the agreement did not "transform the agreement into a court order enforceable through a contempt proceeding." <u>Id.</u> (collecting cases).

**2. The Final Judgment Order does not contain the terms of the Settlement Agreement or enter the proposed Settlement Agreement as an Order.**

The Settlement Agreement in this case is injunctive in nature. ECF No. 222, at *2–3; ECF No. 58, at *46 (requesting permanent injunctive relief). Thus, the Court's Order must comply with Rule 65 in order for the terms of the Settlement Agreement to be enforceable through a contempt proceeding. <u>Thomas v. Brock</u>, 810 F.2d 448, 450 (4th Cir. 1987) (citations omitted); <u>see also</u> <u>Pashby v. Delia</u>, 709 F.3d 307, 331 (4th Cir. 2013) (quoting <u>Smith v. Lessard</u>, 414 U.S. 473, 476 (1974) ("the specificity provisions of Rule 65(d) are no mere technical requirements"); <u>Smith-Berch, Inc. v. Baltimore Cnty.</u>, 64 F. App'x 887, 889 (4th Cir. 2003) (per curiam) ("Thus, according to Rule 65(d) the district court was



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\NHS
4823-8857-3294 .v1

required to specifically state the terms of its injunction and could not simply incorporate the plaintiff's proposed injunction in its order.").[3]

The Court's Final Order in the original proceeding states as follows:

1. Final approval of the Settlement Agreement is GRANTED, and the Settlement Agreement is deemed implemented as of the date of entry of this order;

\* \* \* \*

3. As contemplated by the Settlement Agreement, the Court shall retain jurisdiction for purposes of ensuring the implementation of the Settlement Agreement and shall preside over such further proceedings as may be necessary or appropriate to enforce its terms and conditions.

ECF No. 262, at \*1–2. The Court had to grant approval of the Settlement Agreement because this was a class action. Fed. R. Civ. P. 23(e). But the Court's Order does not

---

[3] Thomas and Smith-Berch must be reconciled with the Fourth Circuit's opinion in Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co., 203 F.3d 291 (4th Cir. 2000). Columbus-America was an admiralty action regarding salvage of lost treasure discovered off the coast of South Carolina. 203 F.3d at 295. The discoverer of the treasure and several insurers reached a settlement agreement and signed a dismissal order to be held in escrow until the parties completed their respective obligations under the settlement agreement. Id. at 297. After partially completing its obligation under the settlement agreement, the discoverer attempted to withdraw from the agreement and dismissal order, but the district court refused to allow the withdrawal. Id. The district court entered the dismissal order but subsequently vacated the order to the extent it dismissed a related in rem action regarding the ship wreck. Id. at 297–98. The Columbus-America Court concluded that the district court retained jurisdiction to enforce the settlement agreement in that case because the dismissal order contained language stating that the court retained jurisdiction to enforce the settlement. Id. at 299. The Fourth Circuit did not, however, indicate that the settlement agreement implicated Rule 65 or conduct any analysis with respect to Rule 65 in the Columbus-America opinion. Thus, it is not clear that Columbus-America concerned any prospective relief and is therefore distinguishable from both Thomas and Smith-Berch.

Smyth v. Rivero, 282 F.3d 268 (4th Cir. 2002) is likewise distinguishable. Again, Rule 65 played no part in the Smyth Court's analysis of whether the subject settlement agreement was enforceable by the district court. Moreover, its reliance on Kokkonen for the proposition that language in a court order amounting to retention of jurisdiction is sufficient to endow the court with the power to enforce the settlement after dismissal of the case is not applicable under the facts of this case. The Court's retention of jurisdiction in the Final Order entered in this case implicates only the Court's power to award damages or decree specific performance, not find Defendants in contempt because the Order does not meet the requirements of Rule 65. See Kokkonen, 511 U.S. at 378 ("Enforcement of the settlement agreement, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."). Neither Kokkonen nor Smyth addressed the requirements of Rule 65 and clearly addressed only those situations that did not feature continuing injunctive relief.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\NHS
4823-8857-3294 .v1

reference a single term of the Settlement Agreement, does not attach a copy of the Settlement Agreement endorsed by the Court, and does not even incorporate the Settlement Agreement by reference. The Final Judgment Order does not contain language entering the Settlement Agreement as an Order of the Court. Nothing in the Court's Order sets forth the parties' obligations, only the Settlement Agreement does that. Just as in D. Patrick, Inc. v. Ford Motor Co. and Thomas v. Brock, it is necessary to refer from the Court's Order to another document to determine the acts enjoined. Therefore, the Court's Order violates Rule 65 and does not contain an "unequivocal command" that may serve as a basis for a finding of contempt. As such, the Court lacks jurisdiction to hold Defendants in contempt.

**b.  The Settlement Agreement is not a consent order.**

The Settlement Agreement in this case does not qualify as a consent decree. Indeed, settlement agreements and consent decrees are different creatures. Settlement agreements are mere contracts. Consent decrees are court orders.[4]

A consent decree is an "agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 379 (1992) (citing Ry. Emps. v. Wright, 364 U.S. 642, 650–51 (1961)). "A consent decree is both a settlement and an injunction," thereby implicating Rule 65. Healey v. Spencer, 765 F.3d 65, 75 (1st Cir. 2014) (citation omitted). "For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." United States v. Armour & Co.,

---

[4]  Anthony DiSarro, Six Decrees of Separation: Settlement Agreements and Consent Orders in Federal Civil Litigation, 60 Am. U.L. Rev. 275 (2010).

629.0303\NHS
4823-8857-3294 .v1

402 U.S. 673, 682 (1971); Int'l Longshoremen's Ass'n Local 333 v. Int'l Longshoremen's Ass'n AFL-CIO, 687 F. App'x 315, 326 (4th Cir. 2017) (citing Armour).

Notably, for purposes of this case, a court's duty when presented with a consent decree "is akin, but not identical to its responsibility in approving settlements of class actions . . . ." United States v. Miami, 664 F.2d 435, 441 (5th Cir. Dec. 1981) (citations omitted). With respect to class action settlements, the court's review consists of "ratification of a compromise" and confirmation that the "settlement is fair, adequate and reasonable." Id. (internal quotations omitted). A consent decree does not just ratify a settlement; rather, "by virtue of its injunctive provisions, [it] reaches into the future and has continuing effect . . . ." Id. Thus, the court must also confirm that the consent decree "'is not illegal, a product of collusion, or against the public interest.'" United States v. North Carolina, 180 F.3d 574, 581 (4th Cir. 1999) (quoting United States v. Colorado, 937 F.2d 505, 509 (10th Cir. 1991)).

On its face, the Settlement Agreement does not purport to be a consent decree, and the Settlement Agreement was never signed by the Court or entered on the docket as a consent decree. Compare ECF No. 265 with United States v. E.I. du Pont de Nemours & Co., No. 5:16cv88, ECF No. 42 (W.D. Va. July 28, 2017); United States v. Virginia, No. 3:12cv59, ECF No. 112 (E.D. Va. Aug. 23, 2012).[5] Plaintiffs moved for the Settlement Agreement's approval pursuant to Rule 23 only. See ECF No. 220; ECF No. 221, at *5. The Court did not conduct an analysis or make any findings with respect to the Settlement Agreement's

---

[5] See also United States v. Baltimore Police Dep't, No. 1:17cv99, ECF No. 39, at *7 (D. Md. Apr. 7, 2017); United States v. City of Ferguson, No. 4:16cv180, ECF No. 41 (E.D. Mo. April 19, 2016); In re: Oil Spill by the Oil Rig "Deep Water Horizon", No. 2:10cv4536, ECF No. 15 (E.D. La. Apr. 4, 2016); United States v. Alabama, No. 2:15cv368, ECF No. 11 (M.D. Ala. June 18, 2015); United States v. City of Albuquerque, No. CIV14-1025, ECF No. 134, at *30 (D.N.M. June 2, 2015); United States v. City of New Orleans, No. 2:12cv1924, ECF No. 159-1 (E.D. La. Jan. 11, 2013). In Baltimore Police and City of New Orleans, the courts entered orders expressly entering the proposed consent decrees as orders of the respective court.

629.0303\NHS
4823-8857-3294 .v1

legality or whether it was against the public interest. <u>See</u> ECF Nos. 261, 262. The Court's Final Judgment Order did not enter the Settlement Agreement as an Order of the Court. <u>See</u> <u>E.I. du Pont de Nemours & Co.</u>, No. 5:16cv88, 2017 WL 3220449, 2017 U.S. Dist. LEXIS 119143, at *54 (W.D. Va. July 28, 2017); <u>Oh. Valley Envtl. Coalition v. Pocahontas Land Corp.</u>, No. 2:15cv15515, 2017 WL 9881152017 U.S. Dist. LEXIS 36145, at *7–8 (S.D.W. Va. Mar. 14, 2017). The Court's Memorandum Opinion and Final Judgment Order approved the Settlement Agreement only as required by Rule 23.

Neither the Settlement Agreement nor the Court's Final Judgment Order constitutes a valid decree for purposes of Plaintiffs' contempt motion. The Final Judgment Order does not comport with the requirements of Rule 65, and the Court's retention of jurisdiction to enforce an agreement providing for prospective relief is an insufficient basis for purposes of ancillary jurisdiction. As such, the Court lacks jurisdiction to hold Defendants in contempt. Moreover, the Final Judgment Order does not constitute a Consent Order because the Court's approval of the Settlement Agreement was solely for purposes of Rule 23, and the Court neither signed the Settlement Agreement as its own Order nor did it enter the proposed Settlement Agreement as an Order. Therefore, Defendants cannot be held in contempt because there is not a court order containing an unequivocal command in existence.

### c.  <u>The Settlement Agreement is not an unequivocal command</u>

Even if the Court does have jurisdiction to hold Defendants in contempt, Plaintiffs have failed to establish that the Settlement Agreement is an "unequivocal command" that is "clear and unambiguous." And the ambiguities in the Settlement Agreement must be construed in Defendants' favor. An undergirding principle of the requirement that the



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\NHS
4823-8857-3294 .v1

alleged contemnor must have violated an order that is clear and unambiguous is that "any ambiguities or uncertainties in such a court order must be read in a light favorable to the person charged with contempt." Project B.A.S.I.C., 947 F.2d at 16 (citing NBA Properties, 895 F.2d at 32).

### 1. The Settlement Agreement's terms are ambiguous

The vast majority of the "Standards" in the Settlement Agreement are subjective. For example, the "Standards" for staffing and "diagnosis and treatment" provide no objective criteria for measurement. Those standards provide:

> Provider Staffing levels. Standard: FCCW shall establish and maintain a sufficient number of health staff of varying types or adopt such other measures as shall be necessary to provide inmates with adequate and timely evaluation and treatment, including continuity and coordination of care.

> Diagnosis and Treatment. Standard: Prisoners should have unimpeded access to timely medical care at an appropriate level, including, among other things, adequate pain management for acute and chronic conditions.

ECF No. 221-1, at *8, 9. As the evidence in this case clearly shows, the use of terms such as "sufficient number of health staff," "adequate and timely evaluation and treatment," "continuity and coordination of care," "unimpeded access to timely medical care at an appropriate level," and "adequate pain management" has resulted in stark differences in opinion between the healthcare experts retained by the parties. What is an appropriate practice according to one expert is unacceptable to another. What is sufficient or timely to one expert is improper to another. Other "Standards" concerning "Intake screening of offenders," "Response to Medical Emergencies/Emergency Medical Care," "Utilization Management," "Infirmary Conditions," "Chronic Care," "Infectious Disease," "Continuity in Supply and Distribution of Medicine," "Continuity in Supply and Distribution of Medical Equipment/Supplies," and "Care/Release of Terminally Ill Offenders" contain similar



629.0303\NHS
4823-8857-3294 .v1

ambiguous language. An order to provide "adequate" or "appropriate" care is not an unequivocal command—particularly in the context of prospective relief under the auspices of Rule 65—if there is no corresponding objective measure and the parties must resort to other sources to determine what is "adequate" or "appropriate."

In addition, the Settlement Agreement contemplates that the Compliance Monitor will develop Performance Measuring Tools regarding twenty-three categories. <u>See</u> ECF No. 221-1, at *15, *49. If these tools must be developed in order to gauge Defendant's progress towards compliance, then clearly the Settlement Agreement itself is not sufficiently specific to be a self-executing, unequivocal command. Instead, Defendants must rely on Dr. Scharff to interpret the Settlement Agreement, develop Performance Measuring Tools, and assess Defendants' compliance with those Performance Measuring Tools before it is clear what specific actions will be required under the Settlement Agreement. That flaw notwithstanding, there is no evidence before the Court of what the Performance Measuring Tools actually are.

The use of the term "implement" in the Settlement Agreement is also ambiguous. Plaintiffs contend that "implement" means completed within thirty days of the Court's approval of the Settlement Agreement. <u>See</u> ECF No. 221-1, at *25. Defendants—and Dr. Scharff—disagree.

To "implement" means "carry out, accomplish; [especially] to give practical effect to and *ensure of actual fulfillment* by concrete measures." <u>Merriam-Webster's Collegiate Dictionary</u> 624 (11th ed. 2014) (emphasis added); <u>Indep. Energy Corp. v. Trigen Energy Corp.</u>, 944 F. Supp. 1184, 1192 (S.D.N.Y. 1996) (quoting <u>The American Heritage Dictionary</u> (New College ed. 1976)) (""To provide a definite plan or procedure to ensure the

629.0303\NHS
4823-8857-3294 .v1



FAP
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

fulfillment of'"). The <u>Independent Energy</u> Court determined that the use of the phrase "fully implement" in a letter agreement was ambiguous. <u>Indep. Energy Corp.</u>, 944 F. Supp. at 1190–92. In that case, one party argued that the phrase "fully implement" meant a project needed to be completed for purposes of triggering a reimbursement provision. <u>Id.</u> at 1190. The other party argued that the phrase required only approval to go forward with the project to trigger the reimbursement obligation. <u>Id.</u> at 1192. Here, the Settlement Agreement does not even use the qualifier "fully" to modify "implement."

Plaintiffs' interpretation of "implement" would also render other portions of the Settlement Agreement meaningless, particularly the portions of the Settlement Agreement addressing the Compliance Monitor's visits to the facility. The Settlement Agreement envisions the monitoring to last for no less than three years, and the Compliance Monitor may increase the number of yearly visits, if necessary. If "implement" meant complete, there would be no need for the monitor to ever increase his visits. Likewise, Plaintiffs' interpretation eviscerates the Settlement Agreement's language that the Compliance Monitor may decrease the number of annual visits if he determines "that appropriate progress has been demonstrated toward the goal of constitutionally-adequate medical care . . . ." The Settlement Agreement also requires the Compliance Monitor to "*develop* Performance Measuring Tools." ECF No. 221-1, at *49 (emphasis added). The process of developing these Performance Measuring Tools implies a passage of time. Indeed, the tools were not identified until after Dr. Scharff's July 2016 visit to FCCW—well beyond thirty days. Plaintiffs' position also runs contrary to, as discussed more fully below, their delay in commenting or participating in formulating ADA and CQI policies for FCCW. Finally, the Compliance Monitor flatly rejected Plaintiffs' notion that



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 14 -

"implement" meant that the objectives of the Settlement Agreement must be complete in thirty days.

Because the terms of the Settlement Agreement are ambiguous with respect to the timeline for compliance and the Defendants' obligations, those terms must be construed in the Defendants' favor.

### 2. Defendants are making appropriate progress as required by the Settlement Agreement

In June 2017 and again in June 2018, Dr. Scharff stated that the Defendants were making not just appropriate progress, but "substantial progress" towards satisfaction of the terms of the Settlement Agreement. Upon his initial review of the Settlement Agreement's terms and based on his experience with other institutions, Dr. Scharff believed that the process of achieving full compliance with the terms of the Settlement Agreement would take approximately four to five years. Now, just over two years after the Court's approval of the Settlement Agreement, Dr. Scharff (1) does not believe the Settlement Agreement has failed, (2) believes that it is reasonable to expect Defendants to achieve full compliance, and (3) believes that Defendants are fully committed to achieving full compliance.

Dr. Scharff has never issued a notice—as the Settlement Agreement obligates him to do—identifying any instance of constitutionally inadequate medical care at FCCW. Dr. Scharff has not reprimanded Defendants for their practice of pre-pouring and administering medication to inmates by LPNs. Indeed, VDOC facilities are surveyed by the Virginia Board of Pharmacy each year, and VDOC has never been penalized for administering medication in this manner. Dr. Scharff has not reprimanded Defendants for administering medication or diabetic sticks through the food port in segregated housing,



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 15 -

629.0303\NHS
4823-8857-3294 .v1

and contrary to Plaintiffs' expert's statement that she is not aware of that practice anywhere, the Federal Bureau of Prisons utilizes the same process.

Defendants have made significant improvements in the areas of staffing, scope of practice, sick call, equipment, medical leadership, and the overall culture and direction of the facility. They have substantially increased funding for medical care at FCCW, and Armor has agreed to provide staff beyond that required by the contract without requesting increased payments from Defendants. Defendants have instituted a medical grievance system unlike any other such that rejected medical grievances are reviewed and responded to by a healthcare provider and every emergency medical grievance results in an evaluation at the infirmary. Defendants have not refused requests for resources needed to comply with the Settlement Agreement.

Defendants have implemented the Settlement Agreement and are making appropriate progress towards full compliance. Therefore, Defendants cannot be held in contempt.[6]

## IV. <u>To Find the Defendants in Contempt, the Court Must Find Clear and Convincing Evidence of Systemic Constitutionally Inadequate Care</u>

The Settlement Agreement expressly states that before a contempt proceeding may go forward, there must be a problem of constitutionally inadequate care. Moreover, the intent of the Settlement Agreement is not to subvert the requirements of the Prison Litigation Reform Act and provide a cause of action for every individual instance of alleged deliberate indifference under the guise of a contempt proceeding. Thus, Plaintiffs must show that any alleged constitutionally inadequate care is systemic in nature.

---

[6] As additional support, and in the interest of brevity, Defendants incorporate by reference their Memorandum in Support of their Motion for Summary Judgment, ECF No. 419.

629.0303\NHS
4823-8857-3294 .v1

- 16 -

Properly stated Eighth Amendment deliberate indifference claims contain both an objective and subjective component. <u>Drakeford v. Mullins</u>, No. 16-7206, 2017 U.S. App. LEXIS 4182, at *2 (4th Cir. Mar. 9, 2017). The objective component consists of an allegation that the prisoner (1) suffered "a serious or significant physical or emotional injury . . . or (2) demonstrated a substantial risk of such serious harm . . . ." <u>De'Lonta v. Angelone</u>, 330 F.3d 630, 634 (4th Cir. 2003). In other words, the medical condition must be "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Drakeford</u>, 2017 U.S. App. LEXIS 4182, at *2 (quoting <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008)).

To meet the subjective component, the defendant must (1) "actually know of and disregard an objectively serious condition, medical need, or risk of harm," <u>De'Lonta</u>, 330 F.3d at 634; and (2) actually know of "'the excessive risk posed by the official's action or inaction,'" <u>Scinto v. Stansberry</u>, 841 F.3d 219, 226 (4th Cir. 2016) (quoting <u>Jackson</u>, 775 F.3d at 178). Also, the alleged deprivation must be "extreme," and the defendant's conduct must entail "more than mere negligence." <u>Id.</u> (internal quotations omitted). For purposes of a health care provider, the medical treatment must have been so "'grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" <u>Sharpe v. S.C. Dep't of Corr.</u>, 621 F. App'x 732, 733 (4th Cir. 2015) (quoting <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990)). Mere disagreements "over the inmate's proper medical care," however, are generally not actionable. <u>Scinto</u>, 841 F.3d at 225-26 (quotations omitted). "Moreover, it is not the function of prison administrators or nurses to second guess the good faith treatment decisions of licensed physicians."



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\NHS
4823-8857-3294 .v1

Thompson v. Clarke, No. 7:17cv10, 2018 WL 1547360, 2018 U.S. Dist. LEXIS 53193, at *15 (W.D. Va. Mar. 29, 2018) (Moon, J.) (citing Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Russell v. Sheffer, 538 F.2d 318, 319 (4th Cir. 1975)). Indeed, "disagreements between a patient and [her] medical care givers" do not equal deliberate indifference. Id. (citing Estelle v. Gamble, 429 U.S. 97, 107 (1976)).

The Settlement Agreement is clear that before Plaintiffs may seek specific performance or request contempt sanctions, there must exist a problem of constitutionally-deficient medical care at FCCW. Constitutionally-deficient medical care is the deliberate indifference standard. Thus, the Court must find any deficiency in the level of medical care implicates the Constitution before it can hold Defendants in contempt.

Dr. Scharff never issued a notice to Defendants regarding any problem of constitutionally-deficient medical care as required by the Settlement Agreement. Additionally, the experts in this case—licensed medical providers—disagree as to whether the care provided to the offenders that Plaintiffs put at issue during the trial was even negligent, much less amounted to deliberate indifference. Dr. Gable testified that nothing different could have been done at the facility with respect to offenders Huffman, Booth, Taylor, and Vandeman. Dr. Joshua testified that the care provided to offenders Liberato and Niece was appropriate. Dr. Gable disagreed with UVA's recommendations as to offenders Cairns and Johnson.

Because disagreements between an inmate and her medical provider do not equal deliberate indifference and neither negligence nor medical malpractice rise to the level of deliberate indifference, Plaintiffs have failed to establish a problem of constitutionally-deficient medical care by clear and convincing evidence. Further, the Settlement



629.0303\NHS
4823-8857-3294 .v1

Agreement does not capture individual instances of negligence, medical malpractice, or even deliberate indifference, and Plaintiffs have not established by clear and convincing evidence a systemic problem of constitutionally inadequate care.

### V. Defendants' Substantial Compliance, Good Faith Attempt to Comply, and Inability to Comply

Defendants' substantial compliance, good faith attempt to comply, or inability to comply are available defenses to an Order to show cause. Chesapeake Bank v. Berger, 2014 U.S. Dist. LEXIS 153996, at *8 (citing Consolidation Coal Co., 683 F.2d at 832).[7]

"'Substantial compliance is found where all reasonable steps have been taken to ensure compliance: inadvertent omissions are excused only if such steps were taken.'" United States v. Darwin Constr. Co., 873 F.2d 750, 755 (4th Cir. 1989) (quoting United States v. Darwin Constr. Co., 680 F. Supp. 739, 740 (D. Md. 1988)).

The good faith analysis encompasses a "close inquiry into the defendants['] actions, [but] it is not the court's role to examine every tactical decision made by the defendant[s]" or substitute its judgment with the benefit of 20/20 hindsight. NAACP, Jefferson Cnty. Branch v. Brock, 619 F. Supp. 846, 851 (D.D.C. 1985).

---

[7] Some courts have concluded that the good faith attempt to comply defense is no longer viable in the Fourth Circuit based on the decision in McLean v. Central States, 762 F.2d 1204, 1210 (4th Cir. 1985). See Schwartz v. Rent-A-Wreck of Am., 261 F. Supp. 3d 607, 616 n.8 (D. Md. 2017) (collecting cases both recognizing and disavowing good faith defense). The Fourth Circuit's statement in McLean that "good faith alone does not immunize a party from a civil contempt sanction" can be read harmoniously with the Consolidation Coal Court's recognition of the defense. In McLean, the contemnor made pension payments directly to a bankruptcy debtor in derogation of a bankruptcy court order that the funds be paid directly to the bankruptcy trustee. In Consolidation Coal, however, the contemnors abided the court's order by encouraging union members to return to work after a meeting and each day before each shift at the gates of the mine. Consolidation Coal, 683 F.2d at 831. Those actions were foreseeably ineffective, however, and the contemnors failed to take "all reasonable means to end the illegal strike" that was the subject of that case. Id. So, the import of Mclean and Consolidation Coal is not that the good faith defense does not exist, but in order to claim the defense, the defendant must take reasonable efforts to comply with the court's order and cannot rely simply on foreseeably ineffective efforts to comply. In other words, digging a well with a spoon would not trigger the protection of the good faith defense. Moreover, the Fourth Circuit has repeatedly stated that **the good faith attempt to comply defense is viable** in decisions since McLean. See, e.g., Dunkin' Donuts, Inc. v. Three Rivers Entm't & Travel, 42 F. App'x 573, (4th Cir. 2002); United States v. Darwin Constr. Co., 873 F.2d at 754 (4th Cir. 1989).



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 19 -

The inability to comply defense requires evidence of a "present inability to comply with the" Court's Order. <u>SEC v. SBM Inv. Certificates, Inc.</u>, No. 06-0866, 2012 U.S. Dist. LEXIS 28175, at *36 (D. Md. Mar. 2, 2012) (citing <u>United States v. Rylander</u>, 460 U.S. at 757). To serve as a viable defense, the inability to comply must have arisen subsequent to the entry of the Court's Order and exist at the time of the contempt proceeding. <u>United States v. Ali</u>, 874 F.3d 825, 829 (4th Cir. 2017) (citation omitted). The evidence must be categorical and detailed, not simply unsubstantiated or conclusory assertions. <u>Id.</u> Generally, there must be a showing that the putative contemnor "took all reasonable efforts to comply with the court's order." <u>SBM Inv. Certificates</u>, 2012 U.S. Dist. LEXIS 28175, at *36 (citing <u>United States v. Conces</u>, 507 F.3d 1028, 1043 (6th Cir. 2007); <u>Chairs v. Burgess</u>, 143 F.3d 1432 (11th Cir. 1998)).

    a.  **<u>Substantial compliance and good faith attempt to comply</u>**

As Plaintiffs' Exhibit 4 shows, Defendants have made appropriate progress towards compliance with the terms of the Settlement Agreement. By the Compliance Monitor's own assessment, Defendants have made substantial progress. Defendants have revamped the grievance system, started new programming, introduced more telemedicine options, and centralized nurse staff and the pill line to improve culture and accountability. Defendants are currently overstaffing the facility, and Defendants are providing additional staff besides those provided by Armor. Armor has provided staff above and beyond that required by the contract. Defendants instituted an "L-card" system in the summer of 2017 to improve reordering of medications. Defendants have made improvements in the areas of staffing, scope of practice, sick call, equipment, medical leadership, and the overall culture and direction of the facility. Defendants have not



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 20 -

refused requests for resources needed to comply with the Settlement Agreement. Defendants monitor their progress and compliance with the Settlement Agreement on a weekly basis at least. Plaintiffs have not met their burden of rebutting Defendants' evidence of their substantial compliance and good faith attempt to comply with the Settlement Agreement.

      b.   **<u>Inability to comply</u>**

Dr. Scharff made clear that both upon his appointment as the Compliance Monitor and presently that he expected it to take several years for Defendants to achieve full compliance with the Settlement Agreement. Defendants believed so as well and were never alerted that they were out of compliance because they had not satisfied all or even some of the obligations in the Settlement Agreement within thirty days. Should the Court reject the Compliance Monitor's understanding of the requirements of the Settlement Agreement, Defendants will have been prevented from complying based on their detrimental reliance on the Compliance Monitor.

One of the obstacles to instituting cultural change at the institution was the hiring of a full-time onsite medical director. Defendants identified twenty candidates for the position. Despite the offer of an outrageous salary, multiple candidates either did not respond to Defendants' requests for more information or turned down the medical director position at FCCW. Similarly, unexpected turnover in the HSA position hindered the pace of institutional change at the facility. Compounding this difficulty was the national nursing staff crisis resulting in stiff competition with traditional healthcare institutions offering incentives and work environments that Defendants cannot match due to the nature of correctional healthcare.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\NHS
4823-8857-3294 .v1

Finally, Plaintiffs' delay in responding to Defendants regarding either the ADA or CQI policies has prevented Defendants from satisfying those obligations. Defendants even submitted their proposed ADA and CQI policies to the Compliance Monitor as the ultimate decision maker per the terms of the Settlement Agreement. But the Compliance Monitor has not yet made a decision on Defendants' policies.

For the foregoing reasons, should the Court believe that the Settlement Agreement required full compliance within thirty days or even full compliance at this stage, Defendants have met their burden of establishing an inability to comply.

CONCLUSION

WHEREFORE, Defendants respectfully request that the Court enter an Order vacating its Order to Show Cause, ECF No. 495, for want of jurisdiction or, in the alternative, finding Defendants are not in contempt, denying the relief requested in Plaintiffs' Motion to Show Cause, and granting Defendants such further relief as the Court deems just and proper.

Respectfully Submitted,

HAROLD W. CLARKE, A. DAVID ROBINSON, STEPHEN HERRICK, AND ERIC ALDRIDGE



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\NHS
4823-8857-3294 .v1

/s/_____

Katherine C. Londos (VSB #: 36848)
John C. Johnson (VSB #: 33133)
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:    540/772-9167
Email: klondos@faplawfirm.com
        jjohnson@faplawfirm.com
        nschnetzler@faplawfirm.com


Edward J. McNelis, III
Elizabeth M. Muldowney
Ruth T. Griggs
Sands Anderson PC
1111 East Main Street, Suite 2400
Richmond, VA 23218-1998
Phone: 804-648-1636
Fax:    804-783-7291
Email: emcnelis@sandsanderson.com
        emuldowney@sandsanderson.com
        rgriggs@sandsanderson.com


Diane M. Abato
SAAG/Chief
Office of the Attorney General
Criminal Justice and Public Safety Division
202 North 9th Street
Richmond, VA 23219
Phone: 804-786-8191
Fax:    804-786-4239
Email: dabato@oag.state.va.us

*Counsel for Howard W. Clarke, A. David
Robinson, Stephen Herrick, and Eric Aldridge*



629.0303\NHS
4823-8857-3294 .v1

- 23 -

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2018 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to all counsel of record.

/s/ Nathan H. Schnetzler
Of Counsel

629.0303\NHS
4823-8857-3294 .v1