# 1IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

CYNTHIA B. SCOTT, *et al.*,                )
                                           )
                          *Plaintiffs,*     )
                                           )   Case No. 3:12-cv-00036-NKM/JCH
            v.                             )   Sr. Judge Norman K. Moon
                                           )
HAROLD W. CLARKE, *et al.*,                )
                                           )
                          *Defendants.*     )
                                           )

## PLAINTIFFS' POST-TRIAL RESPONSE BRIEF

Angela Ciolfi, VSB No. 65337
(angela@justice4all.org)
Brenda E. Castañeda, VSB No. 72809
(brenda@justice4all.org)
Abigail Turner, VSB No. 74437
(abigail@justice4all.org)
Adeola Ogunkeyede (admitted *pro hac vice*)
(adeola@justice4all.org)
Kimberly A. Rolla, VSB No. 85625
(kim@justice4all.org)
Shannon M. Ellis, VSB No. 89145
(shannon@justice4all.org)
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
(434) 977-0553

Philip Fornaci (admitted *pro hac vice*)
(phil_fornaci@washlaw.org)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000

Theodore A. Howard (admitted *pro hac vice*)
(thoward@wileyrein.com)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

Kristi C. Kelly, VSB No. 72791
(kkelly@kellyandcrandall.com)
Andrew Guzzo, VSB No. 82170
(aguzzo@kellyandcrandall.com)
Casey S. Nash, VSB No. 84261
(casey@kellyandcrandall.com)
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7576

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ............................................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     VDOC IS NOT SHIELDED FROM LIABILITY FOR CONTEMPT
     BASED UPON PURPORTED NON-COMPLIANCE BY THIS COURT'S
     FINAL ORDER WITH FED. R. CIV. P. 65(d) ...............................................................2

     A.     The Requirements of Rule 65(d) Have No Bearing Whatsoever
          On This Court's Exercise Of Subject-Matter Jurisdiction Over
          Plaintiffs' Show Cause Motion .................................................................................4

     B.     Defendants' Invocation of Rule 65(d) Is Both Untimely And Legally
          Unfounded ..................................................................................................................6

          1.     Defendants' Dilatory Assertion Of Protections
               Purportedly Afforded By Rule 65(d) Supports A
               Finding of Waiver ........................................................................................6

          2.     The Fair Notice Function Served By Rule 65(d) Was
               More Than Satisfied In This Case ...............................................................8

II.    THIS COURT'S REQUIRED FINDINGS UNDER THE PLRA AS A
     CONDITION OF APPROVING THE SETTLEMENT AGREEMENT
     FORECLOSE THE DEFENDANTS' COLLATERAL ATTACKS PREMISED
     UPON ASSERTIONS OF VAGUENESS AND/OR AMBIGUITY ................................13

III.   A *DE NOVO* FINDING OF "DELIBERATE INDIFFERENCE TO
     PLAINTIFFS' SERIOUS MEDICAL NEEDS" IS NOT REQUIRED ...........................15

IV.   VDOC'S "GOOD FAITH" AND "SUBSTANTIAL COMPLIANCE"
     DEFENSES CANNOT BE SUSTAINED AS A MATTER OF LAW .............................16

V.    NOTHING DONE OR SAID BY THE COMPLIANCE MONITOR
     IMPEDED VDOC'S PROGRESS TOWARDS TIMELY AND
     APPROPRIATE COMPLIANCE WITH THE SETTLEMENT AGREEMENT .............17

CONCLUSION ...............................................................................................................................19

Case 3:12-cv-00036-NKM-JCH   Document 537   Filed 08/20/18   Page 2 of 41   Pageid#: 12971

Cases

*Central States, Southeast and Southwest Areas Pension Fund v.*
    *Wintz Properties, Inc.*,
    155 F.3d 868 (7th Cir. 1998) ...................................................................................4, 7

*H-D Michigan, LLC v. Hellenic Duty Free Shops, S.A.*,
    694 F.3d 827 (7th Cir. 2012) ........................................................................................8

*Helling v. McKinney*,
    509 U.S. 25 (1993)........................................................................................................16

*ICEE Distributors, Inc. v. J&J Snack Foods Corp.*,
    325 F.3d 586 (5th Cir. 2003) ........................................................................................8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994).....................................................................................................5, 6

*Landmark Legal Found. v. E.P.A.*,
    272 F. Supp. 2d 70 (D.D.C. 2003) ...............................................................................6

*Retiree, Inc. v. Anspach*,
    660 F. App'x 582 (10th Cir. 2016) ...............................................................................8

*S.E.C. v. Dowdell*,
    No. 301CV00116, 2002 WL 31248028 (W.D. Va. Sept. 30, 2002)...................12, 13

*S.E.C. v. SBM Investment Certificates, Inc.*,
    Civ. Action No. DKC 06-0866, 2012 WL 706999 (D. Md. March 2, 2012) ..........11

*Schmidt v. Lessard*,
    414 U.S. 473 (1974).......................................................................................................8

*Szabo v. U.S. Marine Corp.*,
    819 F.2d 714 (7th Cir. 1987) ........................................................................................7

*Thomas v. Brock*,
    810 F.2d 448 (4th Cir. 1987) .....................................................................................6, 8

*U.S. Comm. Fut. Trad. Comm'n v. The Borrowing Station, LLC*,
    No. 8:12-cv-01225-PWG, 2013 WL 5211469 (D. Md. Aug. 23, 2013)...................5

*U.S. Comm. Fut. Trad. Comm'n v. Dupont*,
    No. 9:16-cv-03258-TMC-JDA, 2018 WL 3134421 (D.S.C. June 8, 2018) ..............5

*U.S. Comm. Fut. Trad. Comm'n v. Giap*,
No. 1:12-cv-193, 2012 WL 6930327 (E.D. Va. Dec. 17, 2012)................................................5

*U.S. Comm. Fut. Trad. Comm'n v. Shephard*,
No. 13-cv-00370-FDW-DSC, 2016 WL 8257689 (W.D.N.C. Sept. 7, 2016).........................5

*U.S. v. Fuller*,
919 F.2d 139, 1990 U.S. App. LEXIS 20896 (4th Cir. Sept. 4, 1990)........................... *passim*

*U.S. v. McAndrew*,
480 F. Supp.1189 (E.D. Va. 1979) ..................................................................................10, 11

*U.S. v. Myers*,
Crim. Action No. 5:12-CR-17, 2012 U.S. Dist. LEXIS 192349 (N.D. W.Va.
Aug. 15, 2012) ........................................................................................................................11

**Statutes**

Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A) .............................................................14

**Rues and Regulations**

Fed. R. Civ. P. 65......................................................................................................................3, 4, 5

Fed. R. Civ. P. 65(d) .............................................................................................................. *passim*

Case 3:12-cv-00036-NKM-JCH   Document 537   Filed 08/20/18   Page 4 of 41   Pageid#: 12973

Plaintiffs Cynthia B. Scott, *et al.*, by their undersigned attorneys, hereby submit their Response to the Defendants' Post-Trial Brief (ECF Dkt. No. 536), filed herein on August 6, 2018.

## **INTRODUCTION**

A full two and one-half years after this Court entered a Final Judgment Order approving a Settlement Agreement jointly negotiated and agreed upon by the Parties that, *inter alia*, expressly reserved to this Court jurisdictional authority to enforce its terms (by contempt proceedings if necessary), nearly one year since the Plaintiffs' Show Cause Motion seeking a contempt finding against the Defendants was filed, and after the Court and Parties devoted extensive time and resources to a one-week trial on the issue, the VDOC now suddenly contends for the first time that the Court's Order was procedurally defective and is not susceptible to enforcement by way of a finding of liability for contempt. Indeed, the VDOC goes so far as to argue that this Court *lacks subject-matter jurisdiction* to enter a contempt finding.

The VDOC's argument is wrong in all respects. First, whether this Court's Final Judgment Order did or did not comply with the requirements of Fed. R. Civ. P. 65(d) is not a question of *jurisdictional* dimension. Second, because compliance or lack thereof with Rule 65(d) has no impact on the Court's subject-matter jurisdiction, VDOC's attempted interposition of the Rule is subject to waiver and, clearly, should be deemed waived based on VDOC's failure to raise this argument in a timely manner. Third, the fundamental underlying purpose fostered by Rule 65(d) -- *i.e.*, fair notice to a party sought to be held in contempt as to what its obligations were -- was clearly satisfied as a result of VDOC's knowing complicity and acquiescence in the establishment of a procedural framework pursuant to which it could be sanctioned with a finding of contempt for failure to meet its obligations under the Settlement Agreement.

For all these reasons, elaborated more fully below, VDOC's bid to "get out of jail free" necessarily fails. The other arguments set forth in Defendants' Post-Trial Brief merit only brief rejoinder, as they were for the most part already addressed, and debunked, in the Plaintiffs' Post-Trial Brief (ECF Dkt No. 534).

**ARGUMENT**

**I.   VDOC IS NOT SHIELDED FROM LIABILITY FOR CONTEMPT BASED UPON PURPORTED NON-COMPLIANCE BY THIS COURT'S FINAL ORDER WITH FED. R. CIV. P. 65(d)**

The Parties agree on the elements that must be established in order to warrant a finding of civil contempt. First among them is "the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge." *See, e.g.*, Memorandum of Law in Support of Plaintiffs' Motion for Order to Show Cause Why Defendants Should Not Be Held In Contempt at 17, *citing Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (other citations omitted) (ECF Dkt. No. 266). *Accord* Memorandum of Law In Support of Defendants' Response in Opposition to Plaintiffs' Motion for Order to Show Cause at 21 (ECF Dkt. No. 286).

In supporting their Show Cause Motion, Plaintiffs addressed this threshold element of the standard for civil contempt as follows:

> Subject to and in accordance with Findings of Fact and Conclusions of Law submitted by the Plaintiff with the Defendants' express consent, this Court "ordered, adjudged and decreed" that the Parties' Settlement Agreement was approved and became legally effective on February 5, 2016. *See* Final Judgment Order at 1 at 1-2, ¶1 (ECF Dkt. No. 262). *Accordingly, a valid and fully enforceable Consent Judgment is in effect*.

ECF Dkt. No. 266 at 18 (emphasis added). In opposing the Plaintiffs' Motion, the Defendants failed to take issue with the Plaintiffs' assertion that the "valid decree" element of the text for civil contempt was met. *See generally* ECF Dkt. No. 286.

2

Nor did the Defendants contest the proposition that this Court's Final Judgment Order was a "valid decree" that could serve as the basis for a civil contempt proceeding at relevant times thereafter. *See, e.g.*, Defendants' Memorandum of Law in Support of Motion for Summary Judgment at 5 (noting that "[t]he Final Judgment Order stated that 'the Settlement Agreement is deemed implemented as of the date of entry of this order' [and that] [t]he Court . . . retained 'jurisdiction for purposes of ensuring the implementation of the Settlement Agreement and shall preside over such further proceedings as may be necessary or appropriate to enforce its terms and conditions,'" without raising any question as to the validity of these measure(s)) (ECF Dkt. No. 419); *see* Trial Transcript, Vol. 4 (6/12/18) at 70-77 (argument of Ms. Londos) (Defendants' argument for a judgment of dismissal at close of Plaintiffs' case-in-chief did not mention absence of a "valid decree" as grounds for denying a contempt finding).

Only in their Post-Trial Brief do the Defendants -- *for the first time* -- contend that this Court's February 5, 2016 Final Judgment Order cannot, as a matter of law, serve as the foundation for a contempt finding against them, ostensibly on the grounds that the Order failed to comply with the requirements of Rule 65(d) of the Federal Rules of Civil Procedure. *See* [Defendants'] Memorandum in Response to Court's Order to Show Cause at 4 (ECF Dkt. No. 536).[1] Specifically, the Defendants charge that because the Final Judgment Order "did not make

---

[1] Fed. R. Civ. P. 65 provides, in pertinent part, as follows:

    (d)   **Contents and Scope of Every Injunction and Restraining Order**

        (1)   **Contents.** Every order granting an injunction and every restraining order must:

            (A)   state the reasons why it issued;
            (B)   state its terms specifically; and
            (C)   describe in reasonable detail -- and not by referring to the complaint or other document -- the act or acts restrained or required.

3

the Settlement Agreement itself an Order and did not contain the terms of the Settlement Agreement [. . . .] the Order does not comply with Rule 65 . . . and may not serve as the basis for a finding of contempt." *Id.*

The Defendants' desperate, eleventh-hour bid to avoid this Court's determination of their liability for civil contempt, as clearly dictated by the overwhelming evidence presented at trial demonstrating their failure to meet the obligations to improve medical care at FCCW they assumed under the Parties' Settlement Agreement, should be seen for what it is and summarily rejected. Rule 65(d) constitutes no impediment to a contempt finding in the circumstances of this case.

### A. The Requirements of Rule 65(d) Have No Bearing Whatsoever On This Court's Exercise Of Subject-Matter Jurisdiction Over Plaintiffs' Show Cause Motion

The linchpin of the Defendants' belated effort to invoke non-compliance with Rule 65(d) as a basis for avoiding a contempt finding is their assertion that such non-compliance deprives this Court of jurisdiction to grant the Plaintiffs' Show Cause Motion. *See* ECF Dkt. No. 536 at 4-5. In obvious recognition of the untimely nature of their attempt to raise this argument, the Defendants seek refuge in the principle that "'a litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance.'" ECF Dkt. No. 536 at 5 n.2, *quoting Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 576 (2004) (other citation omitted). Notably, however, the Defendants do not cite a single authority for the proposition, necessarily implicit in their argument, that failure to comply with Rule 65(d) is a concern of *jurisdictional* significance. It is plain, though, that this is simply not the case.

Contrary to the Defendants conspicuously unsupported presumption, Rule 65(d) is *not* jurisdictional. *See generally Central States, Southeast and Southwest Areas Pension Fund v.*

4

*Wintz Properties, Inc.*, 155 F.3d 868, 874 (7th Cir. 1998) ("Rule 65 is not jurisdictional in the way Wintz wants it to be -- 'in the sense that its requirements are non-waivable, so that any [technical] failure to comply with those requirements would make the injunction a nullity even if no party had ever objected.'" (*quoting Chicago & N.W. Transp. Co. Railway Labor Executives' Assoc.*, 908 F.2d 144, 149 (7th Cir. 1990) ("[Rule 65] is not jurisdictional in that sense[.]" (Citations omitted.)); *see U.S. v. McAndrew*, 480 F. Supp.1189, 1192 (E.D. Va. 1979) (Rule 65(d)'s "requirements . . . are not jurisdictional," *citing Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624, 632-33 (2d Cir. 1976), *citing Bethlehem Mines Corp. v. United Mine Workers*, 476 F.2d 860, 862 (3d Cir. 1973) (failure to comply with formal requisites for preliminary injunction does not deprive the court of jurisdiction or of power to hold violators in contempt))).[2] The Defendants have failed to identify any authority to the contrary.[3]

---

[2] Further clear evidence that compliance with Rule 65(d) is not jurisdictional in nature is embodied in the fact that the U.S. Commodities Future Trading Commission, as a matter of routine, incorporates a provision waiving compliance with the Rule in settlement agreements it enters into with individuals and entities it has charged with violations of the Commodities Exchange Act. Consent Orders incorporating this waiver provision have been perfunctorily approved by federal district courts within the Fourth Circuit. *See, e.g., U.S. Comm. Fut. Trad. Comm'n v. Dupont*, No. 9:16-cv-03258-TMC-JDA, 2018 WL 3134421, at *1 (D.S.C. June 8, 2018); *U.S. Comm. Fut. Trad. Comm'n v. Shephard*, No. 13-cv-00370-FDW-DSC, 2016 WL 8257689, at *1 (W.D.N.C. Sept. 7, 2016); *U.S. Comm. Fut. Trad. Comm'n v. The Borrowing Station, LLC*, No. 8:12-cv-01225-PWG, 2013 WL 5211469, at *2 (D. Md. Aug. 23, 2013); *U.S. Comm. Fut. Trad. Comm'n v. Giap*, No. 1:12-cv-193, 2012 WL 6930327, at *2 (E.D. Va. Dec. 17, 2012).

[3] Although certain of the language used in the Defendants' Post-Trial Brief may be read to suggest that the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994), supports their position regarding an absence of subject-matter jurisdiction -- *see* ECF Dkt. No. 536 at 4-5 -- *Kokkonen* does no such thing and has no bearing here. *Kokkonen* was a state-law governed contract dispute before a federal district court based upon diversity jurisdiction. The parties settled their dispute and the Court signed and entered a Stipulation and Order dismissing the case that neither referenced the settlement agreement nor reserved jurisdiction for purposes of enforcing the agreement in the event of an alleged breach. When a dispute subsequently arose and the alleged non-breaching party returned to the district court seeking to enforce their agreement, a challenge to the jurisdictional basis for the court's further action was brought. Although the district court and the Ninth Circuit both held that "inherent

## B.    Defendants' Invocation of Rule 65(d) Is Both Untimely And Legally Unfounded

Absent the capacity to rely upon the purported absence of subject-matter jurisdiction as a shield to ward off a timeliness inquiry, the Defendants, inevitably, must explain why their challenge to the validity of this Court's Final Judgment Order based on Rule 65(d) was not made sooner. It is significant in this regard that the Defendants do not even attempt to make the case -- apart from their misplaced reliance upon a claimed lack of jurisdiction -- that their Rule 65(d) challenge is asserted in a timely matter. Nor could they do so.

### 1.    Defendants' Dilatory Assertion Of Protections Purportedly Afforded By Rule 65(d) Supports A Finding of Waiver

While it has been recognized that "[c]ourts are split on whether Rule 65(d) requires a strict interpretation" -- *see generally Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 70, 74 (D.D.C. 2003), *citing Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 371 (10th Cir. 1996) -- the Fourth Circuit is among the appellate courts that have endorsed a literal reading of the Rule. *See, e.g., Thomas v. Brock*, 810 F.2d 448, 450 (4th Cir. 1987) ("We have held that the requirements of Rule 65(d) 'are mandatory and must be observed in every instance.'" (*quoting Alberti v. Cruise*, 383 F.2d 268, 272 (4th Cir. 1967)). However, even those courts that have embraced a strict construction of Rule 65(d)'s mandate have recognized that

power" existed sufficient to allow for enforcement proceedings, the Supreme Court reversed, holding, in pertinent part, that: "The suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that connection (if it constitutionally could) the basis for federal court jurisdiction over the contract dispute." 511 U.S. at 381. The Court, in so ruling, did, however, note that if the district court's order of dismissal had included a provision retaining jurisdiction for purposes of presiding over any needed enforcement proceedings, the outcome it reached would have been different. *Id.* at 381-82. Since, without regard to compliance with the structures of Rule 65(d), it is clear that the Final Judgment Order in this case expressly reserved this Court's continuing jurisdiction to oversee compliance with and enforcement of the Parties' Settlement Agreement, *Kokkonen's* ruling on the limits of "ancillary jurisdiction" is wholly inapposite here -- a conclusion Defendants ultimately concede. *See* ECF Dkt. No. 536 at 8 n.3.

6

reliance on the Rule as a bar to a contempt finding can be waived if not invoked in a timely manner. Such a waiver should be found here.

Defendants could have challenged the Final Judgment Order's failure to comply with the requirements of Rule 65(d) by way of an appeal of that Order. Their failure to pursue such an appeal should, in and of itself, properly foreclose their attempt to avoid a contempt finding based upon purported non-compliance with Rule 65(d). *See Central States*, 155 F.3d at 87 ("[A]t this point, Wintz's failure to appeal the grant of the injunction" bars an attempted challenge, in context of the contempt proceeding, to subject injunctive order's failure to adhere to Rule 65(d)); *Szabo v. U.S. Marine Corp.*, 819 F.2d 714, 814 (7th Cir. 1987) ("Not having appealed from the grant of the injunction, *U.S. Marine* cannot argue that it is too vague to be enforced, or that it violates Rule 65(d) of the Federal Rules of Civil Procedure[.]" (Citations omitted.)).

Moreover, even if VDOC's initial failure to act upon the purported procedural deficiency of this Court's Final Judgment Order under Rule 65(d) by taking a timely appeal could be overlooked, it has had ample opportunity -- well before the Post-Trial briefing stage -- to interpose non-compliance with Rule 65(d) as a defense to a contempt finding. Through lack of attentiveness, lack of concern or a justifiable lack of conviction in the correctness of its intended argument until more than one month after a full week of trial proceedings, VDOC failed to do so.

Logical opportunities for VDOC to invoke Rule 65(d) as an impediment to a contempt finding were when it filed its Response in Opposition to the Plaintiffs' Show Cause Motion; when it, in lieu of the Pretrial Brief contemplated by the Scheduling Order, chose instead to file a Motion for Summary Judgment; at the omnibus hearing on pretrial Motions convened by the Court on June 8, 2018; and when it made its oral Motion for Judgment at the close of the Plaintiffs' affirmative case at trial on June 12, 2018. VDOC was silent as to the purported

7

import or implications of Rule 65(d) in each of those instances. As a result, a finding of waiver is entirely warranted and appropriate. *See, e.g., Retiree, Inc. v. Anspach*, 660 F. App'x 582, 591 n.4 (10th Cir. 2016) (defendant's failure, in opening brief on appeal, to challenge injunction entered by district court on grounds that order referred to, but did not specifically enumerate, "five factors" described in prior order of the court, in violation of Rule 65(d), constitutes a waiver of that argument); *H-D Michigan, LLC v. Hellenic Duty Free Shops, S.A.*, 694 F.3d 827, 845-46 (7th Cir. 2012) ("The district court's September 6 TRO provided a short explanation that was not supplemented until the preliminary injunction was issued. If either party had thought the original explanation was not sufficient under Rule52(a)(2) or Rule 65(d)(1)(A), it could have raised the issue and the court could have corrected any oversight very quickly. DFS did not raise such an issue before the district court or on appeal and has waived any argument it might have made in that regard." (Citations omitted.)); *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 596 n.33 (5th Cir. 2003) ("J&J and Wal-Mart do not argue that the injunction, based on IOA's breach of contract, is unenforceable as to them under Federal Rule of Civil Procedure 65(d), which provides than an injunction is only binding upon a party against whom the claim is asserted[.] . . . . Therefore, this argument is waived." (Citation omitted.)).

## 2. The Fair Notice Function Served By Rule 65(d) Was More Than Satisfied In This Case

The Supreme Court of the United States has explained that Fed. R. Civ. P. 65(d) "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974); *see Thomas*, 810 F.2d at 450 (purpose of Rule 65(d) "is to give notice of the acts prohibited." (Citations omitted.)). Here, there is simply no chance that the "uncertainty and confusion" or potential unfairness that the fair

8

notice objectives fostered by Rule 65(d) were intended to prevent would be realized, because VDOC officials and counsel were active participants in the formulation of the Settlement Agreement and the design of the procedures by which it would be enforced. Here, the Court's Final Judgment Order, entered in accordance with lengthy and detailed Findings of Fact and Conclusions of Law developed with VDOC's active involvement (*see* ECF Dkt. No. 261), clearly provided VDOC with "notice" of the obligations it knowingly and willingly assumed under the terms of the Settlement Agreement. VDOC cannot credibly argue otherwise.

Under such circumstances, numerous courts -- *including the Fourth Circuit* -- have held that parties seeking to opportunistically avail themselves of the benefit of technical noncompliance with the requirements of Rule 65(d) should not be liberated from a finding of contempt where the purposes underlying the Rule have otherwise been met. Thus, in *U.S. v. Fuller*, 919 F.2d 139 (table), 1990 U.S. App. LEXIS 20896 (4th Cir. Sept. 4, 1990), in an appeal from an order imposing criminal contempt against an individual who was found to have willfully disobeyed the district court's prior injunction prohibiting mass picketing or acts of vandalism or harassment by union members against Clinchfield Coal Co., the Court rejected the defendant's effort to rely upon Rule 65(d) in challenging the underlying injunctive order on vagueness grounds.[4] After acknowledging the important function served by Rule 65(d) and its equally important purpose, the Court held as follows:

---

[4] The district court, in response to the initiation of a general strike against Clinchfield and affiliated entities, initially entered a temporary restraining order prohibiting the Union and those acting in concert with it "from mass picketing, inflicting property damage, and obstructing, hindering or preventing company employees or other persons doing business with the company from entering or leaving the Clinchfield . . . sites." 1990 U.S. App. LEXIS 20896, at *2. Subsequently, a temporary injunction order was issued, superseding the TRO and on the same terms, except that it did not reference Clinchfield Coal Co. by name, referring instead to "the 'Charging Party.'" *Id.* This modification, according to the defendant, rendered the superseding injunctive order "unconstitutionally vague." *Id.* at *7.

9

> [W]here [the injunction] gives fair warning of the acts that it forbids, an
> injunction may not be avoided on merely technical grounds. Moreover, the
> language of an injunction must be read in light of the circumstances surrounding
> its entry. In the present case, there is very little doubt that all parties familiar with
> the strike, including the Union, the striking coal miners, and their collaborators,
> were not only aware of the existence of the temporary injunction but also of the
> fact that the temporary injunction, like the TRO which preceded it, was intended
> specifically for the protection of Clinchfield. . . . The order granting the
> injunction, when read in its entirety and in light of the events taking place in the
> Western District of Virginia at that time, could only refer to the Union's strike
> against Pittston and Clinchfield.
>
> Under these circumstances, credibility would be strained to accept the proposition
> that Fuller was not chargeable with knowing that it was Clinchfield the strikers
> were enjoined against harassing. . . . *To accept Fuller's argument would be to
> elevate flawless draftsmanship of court orders over the substantive concerns
> underlying Rule 65(d). Such perfection is not required, however, when the twin
> dangers of uncertainty and uninformed review are absent, as they are in this case.*

*Id.* at \*8-\*10 (emphasis added; citations omitted).

A closely analogous result was reached in *U.S. v. McAndrew*, 480 F. Supp. 1189 (E.D.

Va. 1979), which preceded *Fuller*. In *McAndrew*, also a case involving criminal contempt, the

defendants raised a challenge under Rule 65(d) to an order of the district court which approved

and incorporated by reference the terms of a consent decree, the provisions of which they were

charged with violating. 480 F. Supp. at 1191. The Court, noting that "Rule 65(d) embodies the

elementary due process requirement of notice," *id.* at 1192 (citation omitted), addressed and

dispensed with the defendants' challenge as follows:

> The defendants contend that the order which they are charged with violating
> contravenes [Rule 65(d)] by reason of its reference to an outside document, the
> consent decree, and is therefore totally defective. Moreover, they contend that
> this infirmity is compounded by the further reference in paragraph five of the
> decree to certain procedures, described simply as the "directions and instructions
> issued pursuant to *Gutierrez v. Butz*."
>
>     \*            \*            \*
>
> Compliance with this Rule is mandatory. *Alberti v. Cruise*, 383 F.2d 268, 272
> (4th Cir. 1967). Its requirements, however, are not jurisdictional and a court's
> failure to adhere to every detail of that Rule's requirement does not necessarily

10

render the order void under all circumstances and for all purposes. The object of the Rule may, in some instances, be satisfied by evidence that the parties charged with violating an order had actual knowledge of its terms and their obligation to carry out its command and that they . . . have waived compliance with this Rule's formal requirements. *The Court's inherent power to vindicate its authority, necessary to the preservation of the judicial institution, should not be inflexibly bound by procedural niceties where no actual prejudice to the defendants results and the evidence of a knowing and willful violation is clear.*

The consent decree and accompanying order in this case were drafted by the parties in the underlying case. At least some of the defendants in this contempt proceeding allegedly participated in the negotiations and drafting process which produced these documents. . . . This intimate familiarity with the terms of the order and consent decree and the defendants' awareness of their duties under them . . . clearly would satisfy the notice requirement advanced by Rule 65(d). To permit persons with such knowledge to avoid sanctions for failing to comply with the terms of an order enforcing a consent decree on the grounds that the form of the order is procedurally inadequate in the manner alleged by the defendants would unduly undermine the Court's authority to compel obedience to its lawful orders and to punish willful violations of those orders.

*Id.* at 1192 (emphasis added; citations omitted). *McAndrew* was cited with approval by the

Fourth Circuit in its decision in *Fuller* -- *see* 1990 U.S. App. LEXIS 20896, at *10 -- and its

reasoning, Plaintiffs submit, is equally persuasive here. *See also U.S. v. Myers*, Crim. Action

No. 5:12-CR-17, 2012 U.S. Dist. LEXIS 192349, at *2-*4 (N.D. W.Va. Aug. 15, 2012)

(following *Fuller* and *McAndrew* in rejecting defendant's challenge to validity of Final Divorce

Decree on the grounds that its incorporation by reference of an earlier domestic violence order of

protection failed to comply with Rule 65(d)); *S.E.C. v. SBM Investment Certificates, Inc.*, Civ.

Action No. DKC 06-0866, 2012 WL 706999, at *4 (D. Md. March 2, 2012) ("The SBM

companies wholly fail to articulate how brief references to three external sources would render

the [Final Consent Judgment] -- an agreement that the parties reached following extensive

negotiation and drafting -- uncertain and confusing. Indeed, beyond a conclusory assertion that

these references create ambiguity, the companies provide no support for this contention. Their

Rule 65(d) argument thus appears to be merely a last-ditch attempt to avoid the FCJ's

11

requirements on 'technical grounds." *Fuller*, 919 F.2d 139, at *3."); *S.E.C. v. Dowdell*,

No. 301CV00116, 2002 WL 31248028, at *3 (W.D. Va. Sept. 30, 2002) ("'[W]here it gives fair

warning of the acts that it forbids, an injunction may not be avoided on merely technical

grounds.' [*Citing Fuller*.] If the court were to hold that defendant Mason was not in contempt of

the TRO and other court orders because the accounting provisions reference the complaint,

Mason would be avoiding compliance on merely technical grounds. Moreover, although there is

a reference to the complaint, the two specificity requirements of Rule 65(d) have been met in all

other respects. Notwithstanding the technical violation, therefore, the decrees at issue are

valid.").

   As this Court well knows and specifically addressed in its Findings of Fact and

Conclusions of Law supporting the entry of the Final Judgment Order, the Parties' Settlement

Agreement was the product of extensive negotiations involving "counsel and medical experts for

both sides and VDOC officials" over a nine-month period. ECF Dkt. No. 261 at 4; *see also id.*

at 21. Through this process, the Parties "agreed upon extensive revisions to the FCCW

Operating Procedures in order to enhance the prospects for improved medical care that will meet

standards for constitutional adequacy." *Id.* at 30. In addition:

> the parties negotiated and reached agreement regarding an additional set of
> medical Guidelines and Standards to address specific issues and problem areas
> revealed by the Plaintiffs' evidentiary submissions. *Adherence to these
> Guidelines and Standards is deemed necessary to assure the constitutional
> standards are met at FCCW going forward* with respect to such matters as
> staffing levels, the medical intake process, comprehensive health assessments, the
> sick call process, the copay policy, diagnosis and treatment practices, responses to
> medical emergencies, infirmary conditions, chronic care practices, infectious
> disease control, utilization management, medication administration, physical
> therapy, response to medical grievances, provision of diagnostic testing and
> course of treatment information, correctional staff training, care for and release of
> terminally-ill prisoners and mortality review practices.

*Id.* at 31 (emphasis added).  Moreover, the Parties expressly agreed on the procedural mechanism by which the Settlement Agreement would be enforced "to the extent the Defendants fail or refuse to effectively remedy a constitutional deficiency brought to their attention by Plaintiffs or the compliance monitor under the terms of the Agreement" -- *i.e.*, by way of an action before this Court "seeking specific performance . . . contempt sanctions, or both." *Id.* at 34; *see* Pl. Trial Ex. 1, Settlement Agreement, ECF Dkt. No. 221-1, Sec. V, ¶ 2.

In short, there is no possible good-faith basis for any contention by VDOC that it either lacked notice of the obligations it assumed under the Settlement Agreement or of the manner in which those obligations would be redressed if breached.  The "fair notice" purposes of Rule 65(d)  have clearly been met, and any technical noncompliance with the Rule that the Final Judgment Order reflects can and should be excused under *Fuller* and its progeny.  As in those cases, VDOC's attempt to hide behind Rule 65(d) to avoid the consequences of its failure to comply with the Settlement Agreement must be rejected.[5]

## II.  THIS COURT'S REQUIRED FINDINGS UNDER THE PLRA AS A CONDITION OF APPROVING THE SETTLEMENT AGREEMENT FORECLOSE THE DEFENDANTS' COLLATERAL ATTACKS PREMISED UPON ASSERTIONS OF VAGUENESS AND/OR AMBIGUITY

Defendants' bald assertions that "Plaintiffs moved for the Settlement Agreement's approval pursuant to Rule 23 only" and that "[t]he court's Memorandum Opinion and Final Judgment Order approved the Settlement Agreement only as required by Rule 23" -- *see* ECF

---

[5]      Defendants concede that, purported noncompliance with Rule 65(d) aside, this Court has jurisdiction and authority to order specific performance of the Settlement Agreement. *See* ECF Dkt. No. 536 at 5; *see also id.* at 8 n.3. Therefore, if the Court is not inclined to impose a finding of contempt at this stage due to Rule 65(d) concerns, it may nevertheless adopt and enter a slightly-modified version of the  proposed Order submitted by Plaintiffs as Exhibit 1 hereto, deleting the express contempt finding but commanding that VDOC undertake immediate and effective measures to bring itself into compliance with the requirements of the Settlement Agreement in light of the evidence presented at trial which was more than sufficient to support a contempt finding.

13

Dkt. No. 636 at 10-11 (citations omitted) -- are flatly, demonstrably, false. Contrary to those contentions, it is clear that because the Settlement Agreement concerned the subject of prospective relief with respect to prisoners' conditions of confinement, it was required to satisfy the specific and stringent requirements of the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626(a)(1)(A). The Parties, in requesting approval of the Settlement Agreement, acknowledged this prerequisite -- *see* ECF Dkt. No. 221 at 14 -- and the Court, upon conducting the necessary comprehensive analysis, found that it did so. ECF Dkt. No. 261 at 28-36.

In particular, after reviewing the various component parts of the Settlement Agreement and addressing the nature and substance of the range of obligations that VDOC voluntarily assumed thereunder, this Court concluded as follows:

> Here, Plaintiffs have alleged, and their voluminous evidentiary presentation supports, systemic violations of the Eighth Amendment in the provision of medical care to prisoners residing at FCCW, as reflected in a host of deficient policies, practices and procedures employed by Defendants and their medical care contractors. *The provisions of the Settlement Agreement are specifically geared to modification of the Defendants' constitutionally-deficient medical care with the objective of raising the level of the overall quality and quantity of medical care at FCCW to meet the constitutional standards of the Eighth Amendment on a consistent, on-going basis.* The Court concludes that the "fit" between the objective of constitutionally-adequate medical care at FCCW and the means chosen by the Parties to meet that objective is both reasonable and appropriate under all the circumstances of this case. Accordingly, the Court holds that the prospective relief contemplated by the provisions of the Settlement Agreement is narrowly drawn and extends no further than necessary to correct the violations of federal rights alleged by Plaintiffs and supported by the evidence they have submitted.

*Id.* at 33.

The Defendants' effort to collaterally attack the Settlement Agreement on the grounds of purported vagueness and/or ambiguity so pervasive as to foreclose its enforcement by contempt -- ECF Dkt. No. 536 at 11-14 -- not only disregards, but essentially repudiates, this Court's PLRA findings. Fundamentally, the Defendants fail to explain how this Court could have concluded

14

that the Parties' Settlement Agreement was "narrowly drawn, extend[ed] no further than necessary to correct the violation of . . . federal right[s], and [was] the least intrusive means necessary to correct the violation" with respect to a document as subjective and rife with uncertain meaning as Defendants now cynically attempt to portray it.

Simply stated, the Court's PLRA findings -- *to which VDOC consented and with which it fully agreed* (*see* ECF Dkt. No. 221 at 14 ("The Parties agree that the prospective relief established by this Settlement Agreement is narrowly drawn, extends no further than is necessary to address and remedy the violations of federal rights alleged by the Plaintiffs . . . [and] is the least intrusive means necessary to correct these alleged violation[s]")) -- cannot be reconciled with VDOC's current insistence that the Settlement Agreement is so unclear in intent and meaning as to defy enforceability. Accordingly, the Defendants' belated collateral attack on the Settlement Agreement cannot be sustained.

## III.    A *DE NOVO* FINDING OF "DELIBERATE INDIFFERENCE TO PLAINTIFFS' SERIOUS MEDICAL NEEDS" IS NOT REQUIRED

Defendants' Brief resurrects their contention that the Plaintiffs must demonstrate -- anew -- the Defendants' deliberate indifference to the serious medical needs of the women incarcerated at FCCW in order to establish the basis for a finding of contempt. *See* ECF Dkt. No. 536 at 17-19.

However, as Plaintiffs have already explained, this argument is groundless. *See* Plaintiffs' Pretrial Brief at 44-45, *citing Coleman v. Brown*, Case No. 2:90-cv-0520 KJM/DBP, Order at 4-5 (E.D. Cal. April 19, 2017), *following Coleman v. Brown*, 938 F. Supp. 2d 955, 988 (E.D. Cal. 2013). As set forth in clear terms in those authorities, where a corrections facility, in order to redress established Eighth Amendment violations involving deficient health care, enters into a settlement agreement containing provisions designed to remedy the violations, a

15

subsequent breach of those provisions establishes a basis for contempt; no new and independent showing of "deliberate indifference" is required. *Id.* VDOC has made no showing to the contrary.

Moreover, in the context of a Settlement Agreement that was specifically designed to remedy Eighth Amendment violations of a systemic nature, VDOC's breaches of the obligations it assumed under the Agreement of the scope and substance established by the evidence at trial created an ongoing substantial risk of serious harm to Plaintiffs more than sufficient to support findings of continuing deliberate indifference even if such findings were required. *See* Plaintiffs' Post-Trial Brief at 8-11 (ECF Dkt. No. 534), and Findings of Fact and Conclusions of Law cited therein; *see generally Helling v. McKinney*, 509 U.S. 25, 33-35 (1993) (conditions of confinement that pose a substantial risk of serious future harm as to which corrections officials are deliberately indifferent violate the Eighth Amendment). For these reasons, VDOC's assertion that *de novo* findings of "deliberate indifference" are necessary at this stage of the proceedings must be rejected.

## IV. VDOC'S "GOOD FAITH" AND "SUBSTANTIAL COMPLIANCE" DEFENSES CANNOT BE SUSTAINED AS A MATTER OF LAW

In seeking to evade a finding of contempt on the basis of its failure to comply with the obligations it assumed under the Settlement Agreement in reliance on claims of "good faith" efforts amounting to "substantial compliance," VDOC acknowledges, as it must, that these defenses depend upon the putative contemnor's showing that "all reasonable steps have been taken to ensure compliance" even if full compliance was not achieved. ECF Dkt. No. 536 at 19-20 (citing authorities).

VDOC suggests that in assessing the "all reasonable steps" standard, this Court's role "'is not . . . to examine every tactical decision made by the defendant[s]'" or to substitute its

16

judgment for that of VDOC "with the benefit of 20/20 hindsight." *Id.* at 19 (citation omitted). Thereafter, although VDOC sets forth a laundry list of measures it claims to have undertaken to make improvements in the delivery of medical care at FCCW -- *see id*. at 20-21 -- it does not even purport to address, much less prove, that "*all* reasonable steps" available to it to achieve compliance with the Settlement Agreement were undertaken. Nor could it credibly do so.

As is comprehensively demonstrated in Plaintiffs' Pretrial Brief, at virtually every critical juncture at which VDOC could have chosen a course of action that would result in meaningful progress toward meeting the objectives that the Settlement Agreement was intended to fulfill, VDOC either chose a contrary path or failed to act at all. *See* ECF Dkt. No. 534 at 11-13; *see also* ECF Dkt. No. 533, Findings of Fact Nos. 6-9, 12-15, 40-45, 84-92, 95-105, 107-112, 115-127, 138-153 & Conclusions of Law Nos. 11-14, 45-50.

VDOC has not shown -- and cannot show -- that despite its clear failure to accomplish compliance with the terms of the Settlement Agreement, it identified, undertook and exhausted all measures reasonably available to it in an effort to achieve that objective.[6] Accordingly, its attempted reliance on "good faith" and "substantial compliance" defenses must necessarily fail.

## V.   NOTHING DONE OR SAID BY THE COMPLIANCE MONITOR IMPEDED VDOC'S PROGRESS TOWARDS TIMELY AND APPROPRIATE COMPLIANCE WITH THE SETTLEMENT AGREEMENT

In a truly last-ditch effort to escape a contempt citation. the Defendants seek to attribute their failure to meet their obligations under the Settlement Agreement to purported "detrimental reliance" on views supposedly articulated by the Compliance Monitor, Dr. Scharff, that "he

---

[6]      No "20/20 hindsight" is required, for example, to conclude that after this Court had already found that the "virtually inevitable result" of a contract premised upon the "capitated" financing model was a reduced level of medical care (ECF Dkt. No. 201 at 43), entering into a new contract based on the same model would not allow VDOC to meet its obligations under the Settlement Agreement. *See* ECF Dkt. No. 533, FoF Nos. 6-9 & CoL Nos. 10-13, 45.

expected it to take several years for Defendants to achieve full compliance with the Settlement Agreement." ECF Dkt. No. 536 at 21. However, although they acknowledge that to establish "inability to comply" as a defense to a contempt finding, "[t]he evidence must be categorical and detailed, not simply unsubstantiated or conclusory assertions," (*id.* at 20 (citation omitted)), the Defendants offer only the latter.

The trial record is replete with references to Dr. Scharff's frequent admonitions to VDOC regarding its failure to comply with the Settlement Agreement, from the time his monitoring activities commenced in March 2016 through his last Report before trial in May 2018. *See* ECF Dkt. No. 533, FoF Nos. 68-77. But there is no evidence whatsoever that VDOC was "prevented from complying" with the Settlement Agreement more expeditiously as a result of Dr. Scharff's words or actions, irrespective of his expectation of how long it might take to accomplish full compliance.[7]

VDOC vaguely references FCCW's difficulty in hiring a full-time onsite medical director as an "obstacle" to its efforts to comply with the Settlement Agreement, and "the national nursing staff crisis" as another. ECF Dkt. No. 536 at 21. But the trial record reflects that VDOC's own bureaucratic impediments frustrated its efforts to hire at least one strong candidate to fill the medical director position -- *see* Trial Transcript, Vol. 5 (6/13/18), Herrick Cross, 209:23-211:14 -- and that when, with the trial date fast approaching, VDOC finally set its mind to addressing the nursing staffing shortage at FCCW, it was able to go from significantly understaffed to overstaffed in a matter of months. *See* ECF Dkt. No. 533, FoF Nos. 152-153.

---

[7]    In a report to the Virginia General Assembly in July 2016, VDOC specifically acknowledged its understanding that "[i]f conditions of inadequate care are identified by the monitor and not addressed within 30 days, DOC can be held in contempt of court." Trial Transcript, Vol. 7 (6/15/18), Scott Cross, 197:13-17, 198:2-6. Clearly, this could have happened at any time, not just only after "several years".

18

In short, the evidence before the Court does not even remotely support VDOC's assertion that compliance with the Settlement Agreement was impracticable. Simply stated, VDOC breached its obligations assumed under the Agreement as a matter of conscious choice. Its lame effort to blame circumstances beyond its control for its deficient performance must be rejected.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, a finding of civil contempt against VDOC is compelled by the evidence presented to this Court at trial, as comprehensively summarized in Plaintiffs post-trial submissions. As a result, entry of the proposed Order provided herewith is warranted and appropriate.

DATED:        August 20, 2018

Respectfully submitted,

Angela Ciolfi, VSB No. 65337
(angela@justice4all.org)
Brenda E. Castañeda, VSB No. 72809
(brenda@justice4all.org)
Abigail Turner, VSB No. 74437
(abigail@justice4all.org)
Adeola Ogunkeyede (admitted *pro hac vice*)
(adeola@justice4all.org)
Kimberly A. Rolla, VSB No. 85625
(kim@justice4all.org)
Shannon M. Ellis, VSB No. 89145
(shannon@justice4all.org)
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
(434) 977-0553

Philip Fornaci (admitted *pro hac vice*)
(phil_fornaci@washlaw.org)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000

Theodore A. Howard (admitted *pro hac vice*)
(thoward@wileyrein.com)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

Kristi C. Kelly, VSB No. 72791
kkelly@kellyandcrandall.com
Andrew Guzzo, VSB No. 82170
aguzzo@kellyandcrandall.com
Casey S. Nash, VSB No. 84261
casey@kellyandcrandall.com
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7576

By: *Theodore A. Howard*
        Theodore A. Howard

*Attorneys for Plaintiffs*

19

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

CYNTHIA B. SCOTT, *et al.*,              )
                                          )
                          *Plaintiffs,*   )
                                          )      Case No. 3:12-cv-00036-NKM
v.                                        )      Sr. Judge Norman K. Moon
                                          )
HAROLD W. CLARKE, *et al.*,               )
                                          )
                          *Defendants.*   )
_____)

## PROPOSED ORDER

This matter is before the Court on the Court's Order to Show Cause, upon Plaintiffs'

Motion, Why Defendants Should Not Be Held in Contempt.

### I. Procedural Background

Plaintiffs, prisoners incarcerated at the Fluvanna Correctional Center for Women

(FCCW), initiated this case as a proposed class action on July 24, 2012, seeking declaratory and

injunctive relief on behalf of a putative class of women similarly situated. Plaintiffs charged that

the medical care at FCCW violated constitutional minimum standards embodied in the Eighth

Amendment to the Constitution of the United States. Specifically, Plaintiffs asserted that the

substandard medical care provided to women incarcerated at FCCW reflected Defendants'

deliberate indifference on a systemic basis to the prisoner's serious medical needs.

Following extensive discovery and briefing, this Court issued an Order on November 20,

2014, certifying a class of "all women who currently reside or will in the future reside at FCCW

and have sought, are currently seeking or will seek adequate, appropriate medical care for serious

medical needs, as contemplated by the Eighth Amendment," pursuant to Rule 23(b)(2), Fed. R.

Civ. P. *See* ECF Docket No. 188. On November 25, 2014, this Court granted Plaintiffs' Motion

for Partial Summary Judgment and denied Defendants' Motion for Summary Judgment in its entirety. This Court held, *inter alia*, that: (i) the many and varied adverse health conditions and problems of which Plaintiffs complained constituted "serious medical needs" under settled Eighth Amendment jurisprudence; (ii) the Virginia Department of Corrections (VDOC) has a non-delegable duty under the Eighth Amendment to provide constitutionally-adequate medical care to all prisoners within its custody, including Plaintiffs; and (iii) based on all of the evidence presented, a reasonable fact-finder could find the VDOC Defendants liable, as a matter of law, for providing inadequate medical care or failing to provide appropriate medical care under circumstances in which such care was due, reflecting "deliberate indifference" to Plaintiffs' and class members' serious medical needs. *See generally* ECF Dkt. No. 201.

In November 2014, shortly before trial was scheduled to begin, the parties agreed on a structure to settle the case under a Memorandum of Understanding that broadly outlined the terms for settlement and described a process by which the parties would reach a final agreement. Thereafter, the parties—assisted by their attorneys, their respective correctional medical experts/consultants, and the proposed Settlement Compliance Monitor, Nicholas Scharff, M.D.— engaged in protracted negotiations leading finally to a comprehensive Settlement Agreement that they jointly presented to the Court on September 15, 2015. *See* ECF Dkt. Nos. 221, 221-1. The Settlement Agreement included provisions for procedures to enforce its terms in the event of actual or perceived breach, including Plaintiffs' ability to "initiate proceedings before the Court seeking specific performance of the terms of this Settlement Agreement, contempt sanctions against the Defendant, or both." Pl. Trial Ex. 1, Settlement Agreement, ECF Dkt. No. 221-1, Sec. V, ¶ 2.

2

Following the Court's entry of an Order granting preliminary approval (ECF Dkt. No. 222), notice to the class and an appropriate period for the filing of comments and/or objections, the Court held a Fairness Hearing on November 9, 2015 and heard testimony from four of the named Plaintiffs, the Compliance Monitor, and some of the objectors. Thereafter, this Court entered a Final Judgment Order granting final approval to and implementing the Settlement Agreement on February 5, 2016. *See* ECF Dkt. No. 262. Since then, the Compliance Monitor has visited FCCW ten times and issued nine reports regarding medical care at the facility. *See* Pl. Trial Ex. 34, Notebook of Compliance Monitor Reports; Pl. Trial Ex. 35, Final Compliance Monitor Report for May 2018.

On April 20, 2017, Plaintiffs served VDOC with a Notice Letter detailing failures in VDOC's performance under the Settlement Agreement and suggesting concrete remedial actions VDOC might take to redress those failures. Supp. Pl. Trial Ex. 2, Notice of Noncompliance. On September 6, 2017, Plaintiffs filed a Motion for Order to Show Cause Why Defendants Should Not Be Held In Contempt, alleging that Defendants have failed to comply—or even make significant progress towards compliance—with many of the critical obligations under the Settlement Agreement. *See* ECF Dkt. No. 221-1 (Settlement Agreement); ECF Dkt. No. 262 (Consent Order). Following the completion of briefing on Plaintiffs' Motion and the establishment of a procedural schedule culminating in a June 11, 2018 trial date, the Court conducted a Status Conference by telephone on January 29, 2018, at which time it advised the Parties that the threshold question of whether a Show Cause Order should issue would be addressed and resolved at trial before proceeding, if necessary, to Plaintiffs' contempt claims on the merits.

Thereafter, the Parties engaged in extensive document and deposition discovery, significant discovery-related motions practice, and an unsuccessful mediation. This Court heard evidence during a weeklong bench trial conducted June 11-15, 2018. Following trial, the Court conducted a site visit to FCCW and viewed, *inter alia*, the prison's medical facilities; cell wings; segregation housing; and recreational areas. The Parties subsequently submitted post-trial briefs and reply briefs.

## II. Relief Ordered

Based on the evidence presented and submitted during the five-day hearing, including the Compliance Monitor's reports, and based on the findings and conclusions set forth more fully in the Court's Findings of Fact and Conclusions of Law entered contemporaneously herewith, the Court finds that Defendants have failed to provide a constitutional level of health care at FCCW. Further, the Court finds that Defendants failed to comply with the Court's Final Judgment Order implementing the Settlement Agreement in the following areas:[1]

    a.   Provider Staffing Levels (Settlement Agreement § III.2.b.i.);

    b.   Sick Call Process/Access to Health Services (Settlement Agreement § III.2.b.iv);

    c.   Co-Pay Policy (Settlement Agreement § III.2.b.v);

    d.   Diagnosis & Treatment (Settlement Agreement § III.2.b.vi);

    e.   Response to Medical Emergencies (Settlement Agreement § III.2.b.vii);

    f.   Infirmary Conditions and Operations (Settlement Agreement § III.2.b.viii);

---

[1] Defendants' specific failures to comply with the listed areas are supported by, *inter alia*, Plaintiffs' Proposed Findings of Fact Nos. 16-20, 76, 81-92; 146-157, 168-173, 210-223 (provider staffing levels); 51, 55, 57, 58, 59, 69, 93-105 (sick call process/access); 71-72, 243-248 (co-pay policy); 56, 57, 58, 59, 93-105, 128-138, 176-181, 195-203 (diagnosis & treatment); 51, 56, 57, 58, 59, 139-145, 256-295 (response to medical emergencies); 57, 58, 59, 204-209 (infirmary); 48, 56, 57, 58, 160, 246-248 (chronic care); 48, 51, 160 (infectious disease control); 48, 69, 68-77, 106-112, 224-232 (medical grievance); 32 (training of correctional staff); 51 (care and release of terminally ill); 48, 256-295 (mortality reviews).

4

g. Chronic Care (Settlement Agreement § III.2.b.ix);

h. Infectious Disease Control (Settlement Agreement § III.2.b.x);

i. Utilization Management (Settlement Agreement § III.2.b.xi);

j. Continuity in Supply and Distribution of Medication (Settlement Agreement § III.2.b.xii);

k. Continuity of Medical Equipment/Supplies (Settlement Agreement § III.2.b.iii);

l. Medical Grievance Process (Settlement Agreement § III.2.b.xv);

m. Guidance and Training of Correctional Staff (Settlement Agreement § III.2.b.xviii);

n. Care and Release of Terminally Ill Inmates (Settlement Agreement § III.2.b.xix); and

o. Conduct of and Follow-Up with Mortality Reviews (Settlement Agreement § III.2.b.xx).

Based on the Defendants' knowing violation of the Court's Final Judgment Order implementing the Settlement Agreement, which caused actual harm, as well as serious risk of harm, to the Plaintiffs, the Court further finds Defendants to be in contempt. The Court determines that the relief ordered herein is appropriate to remedy Defendants' non-compliance:

Wherefore, it is **ORDERED** as follows:

**1. Settlement Agreement**

Except to the extent modified by this Order, the Settlement Agreement shall remain in effect, and Defendants are ordered to comply with its terms. The Settlement Agreement, attached as Exhibit __, is hereby incorporated by reference.

5

## 2. Remedial Action Plan

Within 90 calendar days of this Order, Defendants shall file with the Court a Remedial Action Plan (Plan) addressing the deficiencies leading to their noncompliance with the Final Judgment Order and setting forth in detail how Defendants will come into compliance.

### a. Development of the Plan.

Defendants shall work closely with and communicate with Plaintiffs to develop and implement the Plan. No later than 30 days after the date of this Order, Defendants, the FCCW Medical Director, and Defendants' attorneys shall meet with representative Class Members and their attorneys. The parties may include correctional health care experts in the meeting. At least two business days prior to the meeting, Defendants shall provide Plaintiffs a report on the development of the Remedial Action Plan and provide Plaintiffs with any data analyses used in drafting the Plan. A second such meeting shall be conducted no more than 60 days after the date of this Order. The Defendants shall provide a draft of the Plan to Plaintiffs at least two business days prior to the second meeting.

### b. Contents of the Plan.

The Plan shall include action steps, specific strategies, and concrete intermediate deadlines leading to full compliance with the Final Judgment Order implementing the Settlement Agreement within one year, including specific plans leading to compliance in the noncompliant areas listed above in Section II. For purposes of Defendants' Plan, the Section II list of areas is not exhaustive but rather is intended to prioritize critical areas. Tasks and reforms related to these areas are key to ensuring the sustained, durable change required by the Settlement Agreement. Although the identified areas are of utmost importance, unless otherwise ordered, the Court nonetheless expects sustainable compliance with all Settlement Agreement requirements.

6

The Plan shall include specific quarterly benchmarks by which to measure progress towards full compliance with the Final Judgment Order implementing the Settlement Agreement.

The Plan shall also include:

i. data analyses on which the changes in operations and quarterly benchmarks are based;

ii. a description of how Plaintiffs were consulted and involved in the Plan's preparation; and

iii. a description of steps taken during the 90-day period pursuant to Section II.2.e below ("Progress while developing the Plan").

The Plan shall be updated to include any additional areas of non-compliance identified by the Monitor in his reports post-dating submission of the Plan to the Court.

**c. Disputes regarding the Plan.**

Plaintiffs shall file any objections to Defendants' plan within 14 days of the date Defendants file the Plan with the Court. If Plaintiffs do not file any objections, the Court will order the Plan implemented. If Plaintiffs do file objections, the Court shall adjudicate the areas of dispute, and upon adjudication, shall order the Plan implemented.

**d. Failures to meet the Plan.**

In the event Defendants fail to meet a quarterly benchmark set forth in the Plan, the Plaintiffs may bring such failure to the Court's attention by oral or written motion seeking specific performance, contempt sanctions, and/or further relief during the quarterly hearings described in Section III of this Order, or, in the case of an emergency, may seek immediate relief from the Court.

7

**e. Progress while developing the Plan.**

The 90-day development period set forth herein for the Plan does not relieve Defendants of their duty to make efforts towards compliance during that time period. On the contrary, Defendants are expected to take steps as swiftly as practicable to remedy the deficiencies at FCCW. Examples of changes that could likely be accomplished within a 90-day period include, but are not limited to:

    a. requiring VDOC's Chief Physician to share autopsies with the FCCW Medical Director for use in Mortality Reviews;

    b. requiring the Chief Physician to include critical analysis in his own mortality reports about steps that could have been taken to lessen the likelihood of a fatality;

    c. ensuring availability of emergency equipment; and

    d. renewing prescriptions timely.

**3. Compliance Monitor's Duties**

Unless otherwise ordered or indicated below, subject to the Final Judgment Order, the Compliance Monitor shall continue to perform the duties described in the Settlement Agreement. It will remain the Monitor's obligation to evaluate progress toward compliance with the requirements of the Settlement Agreement. In addition, the Monitor shall:

    a. conduct unannounced visits at least once per quarter, in addition to regularly scheduled visits; and

    b. submit quarterly reports to the Court regarding Defendants' compliance with the Settlement Agreement and the Plan.

8

### 4. Hiring the Medical Director

Defendants shall make all reasonable efforts to hire and retain a new qualified full-time Medical Director at FCCW no later than October 1, 2018.

    a. The Medical Director shall be a physician with a minimum of 10 years of experience in internal or family medicine, with a preference for candidates with backgrounds in community health care. He or she shall also have training and/or experience in caring for patient populations with a diversity of trauma-associated conditions and outcomes.

    b. The Defendants shall allow the Plaintiffs to designate one person to participate on the selection committee for the Medical Director. Plaintiffs' designee can solicit and submit for consideration her own chosen applications for the position to be interviewed by the selection committee.

    c. The Defendants shall permit any candidate for Medical Director full access to the FCCW facility; permit them to interview and consult with medical and security staff, as well as patients; and provide the candidate an opportunity to meet privately with Plaintiffs' counsel.

    d. The Plaintiffs may, in their discretion, challenge the selection of a Medical Director they find unqualified to serve as the clinical lead at FCCW by filing an appropriate motion with the Court.

### 5. Supporting the Medical Director

Defendants shall provide the following resources and support to its Medical Director:

    a. adequate financial resources to enable the Medical Director and the medical staff to provide a constitutionally adequate level of health care;

9

b. provision of all requested information to the Medical Director immediately but no later than five (5) business days from the date of the request, unless otherwise agreed by Defendants and the Medical Director;

a. securing and paying for any expert consultants or evaluators requested by the Medical Director;

c. modifying FCCW policies and procedures to conform with the Plan;

d. vesting the Medical Director with authority to recruit, hire, discipline, terminate, promote, demote, transfer, and evaluate medical staff;

e. vesting the Medical Director with authority to competitively procure and contract or renegotiate contracts for such supplies, equipment, or services as are necessary to obtain compliance;

f. vesting the Medical Director with final authority to direct specific actions to attain or improve compliance levels, or remedy compliance errors, regarding all portions of the Final Judgment Order, Settlement Agreement, and this Order, including but not limited to: (i) changes to FCCW policies or standard operating procedures or practices; (ii) personnel decisions, including but not limited to engagement of consultants, assignments, findings and disciplinary actions in medical misconduct reviews, and the discipline and demotion of staff; and (iii) maintaining or eliminating programs or initiatives related to or affecting FCCW's compliance with the Final Judgment Order, Settlement Agreement, and this Order; and

g. all other necessary and reasonable steps to fully support the Medical Director.

10

The Medical Director shall update the Plan for anything the Compliance Monitor finds not fully compliant. The updated Plan, along with the data analyses on which the updates are based, shall be shared with Plaintiffs and the Compliance Monitor within 30 days of the Monitor's report.

VDOC, in consultation with the Medical Director and the Compliance Monitor, shall develop a quality assurance/audit program that effectively evaluates, on a monthly basis, whether FCCW is meeting the requirements of the Settlement Agreement and Plan and identifies any barriers to meeting such requirements, including those related to personnel.

**6. Future Requests for Proposals**

The Court has been advised that health care at FCCW will no longer be provided by Armor Correctional Health. If Defendants decide to include FCCW in any VDOC Request for Proposals (RFPs) related to health care, Defendants revise their Request for Proposals (RFP) procedure to ensure that:

    a. the contract funding model for FCCW shall not permit the provider to profit by providing less care to patients;

    b. the FCCW staffing plan shall provide sufficient medical staff, by position, to deliver health care in compliance with the Settlement Agreement as modified and approved by the Court;

    c. the scope of work for FCCW health services described in the RFP and any final contract shall include the specific healthcare standards provided for in the Settlement Agreement, as modified by this Order, and any Remedial Plan in effect at the time the RFP issues or the contract goes into effect;

11

d.   the system for scoring proposals for health care at FCCW shall increase the weight of factors related to quality and decrease the relative weight of factors related to price;

e.   the selection committee for an FCCW health services contract shall be composed of the VDOC Health Services Director or designee; a correctional health expert designated by the VDOC; Plaintiffs' designee; a correctional health expert designated by the Plaintiffs; and the Compliance Monitor. The Plaintiffs' designee can solicit and submit for consideration her own chosen applications for the health services vendor;

f.   the selection committee shall be required to review and evaluate indicators of quality outside the vendor's bid, such as a review of press stories and lawsuits involving the vendor, interviews with relevant references not supplied by the vendor, and any patient outcome data that may be available from other sites where the vendor has provided services; and

g.   The Plaintiffs may, in their discretion, challenge the selection of any vendor they find unqualified to provide health services at FCCW by filing an appropriate motion with the Court.

**7. Plaintiffs' Access to Information**

Defendants shall provide Plaintiffs' attorneys with timely, unimpeded access to information regarding the provision of health care at FCCW and FCCW's compliance with the Final Judgment Order, Settlement Agreement, and this Order. Within 14 days of Plaintiffs' request, Plaintiffs shall be provided with:

12

a. records relating to patients' medical care, including specifically but not limited to all medical records, incident reports, investigation files, and grievances;

b. documents relating to provision of health care at FCCW, including staff rosters, staff schedules, salary and payroll information, overtime files; patient visit logs; outside appointment transport logs; emergency transport logs; sick call logs; medical grievance logs; contract monitor or similar reports; quality assurance or improvement studies, reports, or plans; and corrective action plans;

c. documents and data provided by VDOC to the Compliance Monitor; and

d. any RFPs or contracts including health care at FCCW within the scope of work.

Any documents provided to Plaintiffs pursuant to this Order shall be deemed relevant and admissible at any hearing enforcing the Final Judgment Order or this Order.

Defendants shall ensure that Plaintiffs' attorneys have access to timely, confidential communication with their clients, including confidential access to clients via phone and email during normal business hours.

Defendants shall permit Plaintiffs to communicate directly with the FCCW Medical Director using the following procedure. Upon 24 hours' written notice to the Attorney General's Office of the general purpose of the communication, Plaintiffs shall be permitted to communicate with the FCCW Medical Director to discuss the care of individual clients and systemic issues in an effort to improve care at FCCW. In the event of a patient emergency, Plaintiffs shall be

13

permitted to contact the FCCW Medical Director without advance notice to the Attorney General's Office, but must provide such written notice as soon thereafter as practicable.

### III. Enforcement

The Court will conduct quarterly hearings regarding Defendants' progress on the Plan and the nature and extent of Defendants' compliance with this Court's Orders, including the Final Judgment Order and this Order, at which the Monitor may testify, and Plaintiffs and Defendants may present evidence, including declarations from Plaintiff class members in lieu of live testimony. Any quarterly hearing may be canceled by the Court, or by mutual agreement of the Parties. If the Court determines, after a hearing conducted pursuant to this section, that Defendants have not complied with either Order, the Court may, in its discretion:

  a. hold Defendants in contempt and order any appropriate remedies;

  b. at the expense of the Defendants, appoint an expert witness pursuant to Rule 706 of the Federal Rules of Evidence to make recommendations regarding specific changes to health care operations that Defendants shall make in order to come into compliance;

  c. order Defendants to comply with the recommendations made by the Rule 706 expert;

  d. order that Defendants pay fines;

  e. appoint a special master to oversee healthcare operations at FCCW; and/or

  f. order any other appropriate relief.

### IV. Prevailing Parties

The Court finds that Plaintiffs are prevailing parties in this matter for purposes of Section V.2 of the Settlement Agreement.

14

## V. Compliance with the Prison Litigation Reform Act (PLRA)

The Court further finds that:

a. As described in this Order and the accompanying Findings of Fact and Conclusions of Law, Defendants are in non-compliance with the Final Judgment Order implementing the Settlement Agreement;

b. As a result, more specific remedial relief is necessary, as set forth above; and

c. Based on a robust case record, including the evidence presented in these Show Cause proceedings, the Court finds that the additional relief set forth above complies in all respects with the provisions of 18 U.S.C. § 3626(a). The relief is narrowly drawn, extends no further than necessary to correct violations of federal rights affected by the Final Judgment Order, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of the criminal justice system.

ENTERED this _____ day of _____, 2018.

BY THE COURT:

_____

NORMAN K. MOON
UNITED STATES DISTRICT COURT JUDGE

15

WE ASK FOR THIS:

Angela Ciolfi, VSB No. 65337
(angela@justice4all.org)
Brenda E. Castañeda, VSB No. 72809
(brenda@justice4all.org)
Abigail Turner, VSB No. 74437
(abigail@justice4all.org)
Adeola Ogunkeyede (admitted *pro hac vice*)
(adeola@justice4all.org)
Kimberly A. Rolla, VSB No. 85625
(kim@justice4all.org)
Shannon M. Ellis, VSB No. 89145
(shannon@justice4all.org)
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
(434) 977-0553

Philip Fornaci (admitted *pro hac vice*)
(phil_fornaci@washlaw.org)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, N.W.
Suite 400
Washington, D.C. 20036
(202) 319-1000

Theodore A. Howard (admitted *pro hac vice*)
(thoward@wileyrein.com)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

Kristi C. Kelly, VSB No. 72791
kkelly@kellyandcrandall.com
Andrew Guzzo, VSB No. 82170
aguzzo@kellyandcrandall.com
Casey S. Nash, VSB No. 84261
casey@kellyandcrandall.com
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7576

By: _Theodore A Howard_
Theodore A. Howard

*Attorneys for Plaintiffs*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August 2018, I will electronically file the

forgoing Plaintiffs' Post-Trial Response Brief with the Clerk of the Court using the CM/ECF

system, which will then send a notification of such filing (NSF) to all counsel of record.

Theodore A. Howard