IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CYNTHIA B. SCOTT, *et al.*, )
)
    Plaintiffs, )
) Case No. 3:12-cv-00036-NKM
v. ) Sr. Judge Norman K. Moon
)
HAROLD W. CLARKE, *et al.*, )
)
    Defendants. )
_____)

## DECLARATION OF LAUREN BEDARD

1. I have personal knowledge of the facts and matters hereinafter deposed to, save and except where same are stated to be made on information and belief, and where so stated, I verily believe them to be true.

2. My name is Lauren Bedard. I am a Registered Nurse at the University of Virginia ("UVA") Hospital. I have personal knowledge of the facts in this declaration.

3. I have worked in the Coronary Care Unit at UVA since 2005 and have been in the role of UVA Pulmonary Hypertension Quality Support Team Co-Chair for a year. Not only do I care for pulmonary hypertension patients when they arrive in my unit, I also coordinate the inpatient nursing education and quality measures to ensure patient safety when they have IV Remodulin prescribed. In the course of my work at UVA Hospital, I have provided care at various times to Ms. Margie Ryder, a prisoner at the Fluvanna Correctional Center for Women ("FCCW"). Ms. Ryder has been diagnosed with pulmonary arterial hypertension, an enlarged heart, and congestive heart failure. Her conditions necessitate a strict regimen of numerous medications, including the fast-acting intra-venous medication Remodulin, which must be administered continuously through a pump. Deviation from her Remodulin regimen either by

1

infusion interruption or inadvertent bolus, erroneous concentrations of the medication, or inaccessibility to back-up medication place Ms. Ryder at severe risk of a fatal cardiac episode.

4. In the past year, I have cared for Ms. Ryder three times due to FCCW's failure to correctly administer her Remodulin. I believe each of these failures put Ms. Ryder at risk of death.

5. My first contact with Ms. Ryder was in May 2018, when FCCW medical staff transferred her to the UVA Emergency Room. When Ms. Ryder arrived, her Remodulin cartridge was extremely low. We provided Ms. Ryder with her medication and treated the conditions she suffered as a result of receiving too little Remodulin. We then released her back into FCCW's care.

6. On June 21, 2018, just weeks after the May 2018 incident, Ms. Ryder was again transferred from FCCW to the UVA Emergency Room with her Remodulin pump almost completely depleted. We succeeded in stabilizing Ms. Ryder, but many of us at UVA were concerned about releasing her back to FCCW again. We decided not to send Ms. Ryder back to FCCW until we received some assurance from FCCW medical staff that administration of Ms. Ryder's medications would improve. FCCW ultimately made these assurances, including saying that Ms. Ryder would be allowed to observe nurses as they prepared her Remodulin cartridges, but I do not know if these assurances were honored.

7. On the evening of February 11, 2019, Ms. Ryder again came to UVA from FCCW, this time with classic symptoms of toxicity from overdosage of Remodulin. At the point in which she arrived a UVA, Ms. Ryder's Remodulin pump had also been turned off, so she was not receiving any medication at all. Because of its fast-acting nature, suddenly stopping Remodulin for a patient like Ms. Ryder is extremely dangerous.

2

8. UVA medical staff were able to successfully treat Ms. Ryder after this episode, but given these repeated hospitalizations, we remained concerned that such an occurrence would soon happen again. Before we released Ms. Ryder back to FCCW this time, UVA sent a specialty-pharmacy nurse to FCCW to train the nurses there in how to properly mix and administer Remodulin.

9. I am glad that the nurses at FCCW have received some training in how to handle Ms. Ryder's medication; however, UVA has provided this training to FCCW nurses before, and it seems it did not solve the problem. I am aware that FCCW has had very high nursing turnover in the past and believe that when the trained staff leave, their replacements do not get that training. At UVA, all nurses who care for Remodulin patients must have a current competency in its safe administration.

10. I am aware that there have been other instances where Ms. Ryder was transferred to Virginia Commonwealth University's emergency room when FCCW medical staff have incorrectly administered her medication.

11. I make this declaration because my conscience says I have to speak out on Ms. Ryder's behalf. Every time I see this patient at UVA, I wonder whether it will be the last time I see her alive.

I swear under penalty of perjury that the foregoing facts are true to the best of my knowledge and belief.

SIGNED: *Lauren Bedard RN*
Lauren Bedard, R.N.
March 12, 2019

3