CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

05/22/2019

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CYNTHIA B. SCOTT, *ET AL.*, <br> *Plaintiffs*, <br> v. <br> HAROLD W. CLARKE, *ET AL.*, <br> *Defendants*. | CASE NO. 3:12-cv-00036 <br><br> <u>MEMORANDUM OPINION AND ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW</u> <br><br> SENIOR JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiffs' Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) (dkt. 554) and Defendants' Motion Pursuant to Rule 59(e) (dkt. 556). Both motions request alteration or amendment of the Court's January 2, 2019 Injunction (dkt. 545). For the reasons stated below, the Court will grant in part and deny in part each motion.

## I. PROCEDURAL BACKGROUND

On January 2, 2019, the Court issued its Findings of Fact and Conclusions of Law (dkt. 544) and entered an Injunction requiring remedial action on the part of the Virginia Department of Corrections ("VDOC") with respect to medical care to inmates at the Fluvanna (Va.) Correctional Center for Women ("FCCW") (dkt. 545). The Findings of Fact set out the procedural history of the case as well as the Court's factual findings from a one-week trial. The Court concluded that, in some respects, Defendants breached the Settlement Agreement and the Court enforced the Agreement's terms through an Injunction. (Dkt. 544). The pending motions followed.

## II. STANDARD OF REVIEW

Noting that the parties and Compliance Monitor had expertise that the Court necessarily lacks, the Court provided that the parties "may thus seek reconsideration of the relief tailored by the Court within the period provided by Fed. R. Civ. P. 59(e)." (Dkt. 544 at 51). Although Rule 59(e) provides no standard for when a court may grant such motion, courts recognize the following

grounds: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993).

## III. ANALYSIS

Defendants address four issues with respect to the Injunction. First, Defendants assert that Nurse Ellen Katzman did not testify that the equivalent of "78 full-time" nurses are needed to adequately staff FCCW. Second, Defendants assert that only pharmacists and physicians, not nurses or other personnel, may "dispense" medications and, therefore, the related provisions of the Injunction should be amended to use "administer" rather than "dispense." Third, Defendants argue that the Court granted relief for a "cause of action" not pled. Fourth, Defendants assert that the Injunction improperly rewrites the Settlement Agreement. (Dkt. 557 at 1-10).

Plaintiffs do not dispute Defendants' assertion that the "78 full-time" equivalents noted above refer to the FCCW medical team, including individuals other than nurses. Plaintiffs, however, request the Court amend the Injunction to require Defendants to staff the equivalent of 29 full-time Registered Nurses as well as require FCCW to have a sufficient proportion on a consistent basis to assure coverage on every shift, together with adequate Registered Nurse oversight of Licensed Practical Nurses on duty. Plaintiffs agree with Defendants that an amendment is appropriate to reflect that nurses "administer" medications rather than "dispense" medications.

Plaintiffs request the Court order Defendants to collect certain information and findings, to be shared with the Compliance Monitor. Plaintiffs also request an amendment ordering Defendants to share with Plaintiffs all performance measure information provided by Defendants

to the Compliance Monitor. Finally, Plaintiffs request the Court incorporate specific provisions of the Settlement Agreement into any amended Injunction. (Dkt. 555 at 1-16).

A.     **Injunction Paragraph 5a.: Staffing Levels at FCCW**

    1.     **Number of Equivalent Full-Time Nurses**

Injunction Paragraph 5a. currently provides that "Defendants shall . . . continuously staff FCCW with the equivalent of seventy-eight full-time nurses. Defendants shall document their daily staffing levels and make[] such documents(s) available to the compliance monitor." (Dkt. 545 ¶ 5a.). The Injunction defines "nurse(s)" as "either license[d] practical nurse (LPN) or registered nurse (RN)." (Dkt. 545 ¶ 2g.). This provision was based, in part, on the Court's factual finding that FCCW Nurse "Katzman and another nurse determined that the equivalent of '78 full-time' nurses are needed to adequately staff FCCW." (Dkt. 544, Finding of Fact ("FF") ¶ 110 (citing dkt. 523 at 127)).

Defendants assert that Katzman's testimony was that the total number of *staff* (not just nurses) needed to adequately staff FCCW's medical department was 78 full-time equivalents. (*See* Dkt. 523 at 127 (Katzman responding affirmatively to counsel's question if 78 full-time equivalents were necessary to "adequately staff" FCCW)). Defendants also point to the assessment of staff employed at FCCW as of May 10, 2018, which equaled 77.65 full-time equivalents, comprised of both nurse and non-nurse personnel, the latter including technicians, administrative personnel, physicians and physician assistants. (Dkt. 557-2 at 5; *see* dkt. 523 at 129 (Katzman testimony)).

In sum, Defendants ask that Paragraph 5a. be amended to read: "The Medical Department at FCCW shall be staffed with a weekly average of seventy-eight full-time equivalents to include

certified and non-certified medical personnel." (Dkt. 557 at 4). The reference to "weekly average" is discussed below.

Plaintiffs do not dispute that the seventy-eight full-time equivalents include non-nursing positions but reiterate the need for an injunction specifying that a certain number of nursing staff must be Registered Nurses, rather than Licensed Nurse Practitioners. Plaintiffs assert the Court can do so by relying upon the staffing needs set out by Katzman in the April 5, 2018 FCCW QA/CQI (Continuous Quality Improvement) Meeting Minutes, which identified 15 total registered nurses working at FCCW (12 VDOC employees and 3 Armor employees) and a total of 13.7 full-time employee vacancies (3 VDOC employees and 10.7 Armor employees), indicating the need for a total of 28.7 Registered Nurses at a minimum. (Dkt. 559 at 2 (citing DTX 12 at RFP900002918-49 and, specifically, RFP900002919-22)). Alternatively, Plaintiffs give the number 25.2 as a minimum full-time equivalent for Registered Nurses if the Court were to rely on the May 10, 2018 FCCW QA/CQI Meeting Minutes attached to Defendants' brief in support of their Rule 59(e) motion. (Dkt. 559 at 2 n.2). Defendants reply that to the extent the Court relies upon the staffing as set forth in the chart in DTX 12 at RFP900003030 from May 10, 2018, it shows staffing of the equivalent of 26.2 full-time Registered Nurses. (Dkt. 560 at 3).

The Court finds that a staffing full-time equivalent of 29 Registered Nurses is in accord with the desired level stated by FCCW personnel as shown in Defendants' FCCW exhibits. The Court further finds that an equivalent of 78 full-time personnel is the corresponding number for the entire medical department based on the evidence at the trial. (*See* Dkt. 523 at 127; DTX 12 at RFP 900002919-22). The Court, therefore, will replace Finding of Fact 110 and substitute a new finding consistent with the foregoing analysis and evidence presented by the parties. The Court will amend the Injunction to reflect that finding.

### 2. Use of Word "Continuously"

Separately, Defendants request that the word "continuously" be stricken from Injunction Paragraph 5a. and be replaced with "weekly average." As justification for the request, Defendants state that "continuously" means that if a nurse has an emergency one morning before her shift, fails to appear, and Defendants are unable to find any replacement that day, then they could be out of compliance. (Dkt. 557 at 3-4).

Plaintiffs respond by asserting that using "weekly average" would permit significant understaffing on weekends, holidays, and nights, which Plaintiffs allege to be a longstanding practice at FCCW. Plaintiffs suggest that the Injunction be amended to require FCCW to "consistently staff FCCW" with the appropriate number and type of medical personnel. (Dkt. 559 at 3). Defendants counter, arguing the word "consistently" does not remedy the problem Defendants identified above. (Dkt. 560 at 3).

The Court concludes that "consistently" best addresses the deficiencies set out in its Findings of Fact and Conclusions of Law relating to personnel and nursing levels. (*See* Dkt. 544 FF ¶¶ 95-96, 98-108). The court, therefore, will amend Paragraph 5a. by substituting "consistently" for "continuously."

### B. Injunction Paragraphs 5b. and 5c.: Terminology

Injunction Paragraph 5b. currently provides that Defendants shall "train FCCW nurses, and any other individuals who dispense medication to Plaintiffs, on how and when to reorder or refill medications to ensure a continuity of supply." Paragraph 5c. provides that Defendants shall "train [FCCW] nurses on the importance of, and how to, accurately record or chart the distribution of medication, as well as a patient's vital signs, including but not limited to weight and pulse rate." (Dkt. 545 at 2-3).

Defendants assert that only pharmacists and physicians can "dispense" medication while "professional nursing," "registered nursing," and "registered professional nursing" includes the "administration" of medications and treatments as prescribed by any person authorized by law to do so. *See* Va. Code §§ 54.1-3000, 54.1-3401. Plaintiffs do not object and the Court will amend Paragraphs 5b. and 5c. to comport to the statutory language regarding "administration" of medications.

## C. Specific Amendments Requested by Plaintiffs

Injunction Paragraph 12 addresses the medical grievance process at FCCW. Plaintiffs request the Court clarify that in Paragraph 12 "grievances" includes all levels of the grievance process and add a requirement that Defendants provide documentation and data demonstrating meaningful and timely responses. (Dkt. 555 at 14; *see* dkt. 561-2 at 9-10). Defendants respond that Plaintiffs had not made this request before their Rule 59(e) motion.

The Court found Defendants' failure to adequately respond to medical grievances to be a systemic problem at FCCW. (Dkt. 544 FF ¶ 127). The Court also found that a few weeks after final approval of the Settlement Agreement almost all responses to grievances "were in fact non-responses." (Dkt. 544 FF 123). The report cited for this finding noted that the responses to regular grievances were in fact non-responses, and about 80% of responses to informal complaints were considered adequate. (PTX34 (Report of 3/25/2016) at 3). In other words, about 20% of responses to informal complaints were inadequate.

The Injunction's reference to "handling medical grievances" was not intended to be limited only to regular grievances. The Settlement Agreement itself refers to the "medical grievance process" and the "grievance mechanism" without limitation, and requires FCCW to be responsive to an inmate's "complaint in a timely and meaningful manner." (Settlement Agreement ¶ III.2.b.xv

6

(Dkt. 221-1 at 12)). The Court concludes that it is appropriate to clarify that the Injunction's provision with respect to medical grievances includes all levels of the grievance process but will deny Plaintiffs request for additional relief relating to the grievance process.

The Court has considered Plaintiffs' additional paragraph-specific requested amendments regarding: (1) nurse training; (2) emergency care and equipment; (3) mortality reviews; (4) medication supply, distribution, and administration; (5) access to timely medical care; and (6) sick call. (Dkt. 555 at 6-13). The Court concludes that the existing language in the Injunction adequately addresses these topics.

The Court also concludes that Plaintiffs' requested inclusion of a provision giving them access to all performance measure information provided to the Compliance Monitor is not warranted. The Settlement Agreement provides that "[p]erformance shall be tracked and trended over time and shared with the Parties through counsel on a quarterly basis while this Settlement Agreement is in effect." (Settlement Agreement ¶ III.2.b.xxi (Dkt. 221-1 at 15)). Plaintiffs may bring any specific reporting failures to the Court's attention.

Finally, Plaintiffs request that provisions of the Settlement Agreement be incorporated directly into any amended Injunction. The Court's final judgment order was not a consent decree, which is both an injunction and a settlement, approved and entered by the Court at the request of the parties. (Dkt. 544 at 26 n.14 (citing cases)). The Court will, at this time, decline Plaintiffs' request to include provisions of the Settlement Agreement in the Injunction, as amended.

**D.  Defendants' General Objection to the Relief Provided by the Court**

Defendants argue that Plaintiffs never alleged a "cause of action" for breach of contract and never sought enforcement of the Settlement Agreement under standard contract law, despite provisions in the Agreement permitting Plaintiffs to initiate proceedings "seeking specific

7

performance of the terms of the Settlement Agreement, contempt sanctions against the Defendant, or both." (Dkt. 557 at 5-6 (quoting Settlement Agreement (Dkt. 221-1 at 15))). Defendants assert that Plaintiffs did not move for specific performance, even in the alternative, in their motion for contempt. (Dkt. 557 at 6). The Court, however, concluded that it could and would enforce the Settlement Agreement, although not through contempt in this instance but via standard contract principles. (Dkt. 544 at 25-26).

Defendants argue that the issue is not one of jurisdiction but rather assert that the Court is not permitted to grant the relief in the Injunction because Plaintiffs never requested such relief. Defendants rely on *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008), in which the Court noted that in the first instance and on appeal, courts follow the principle of party presentation in which courts rely on the parties to frame the issues for decision with the court acting as a neutral arbiter. Defendants argue that Plaintiffs never argued nor sought specific performance of the terms of the Settlement Agreement and the Court, therefore, cannot interpose a new theory of recovery after the close of the evidence.[1]

The Court recognizes and follows the principle, although as noted by the Fourth Circuit the principle as expressed in *Greenlaw* is not as broad as Defendants argue:

> But although *Greenlaw* paints the concept of party presentation in broad brushstrokes, its holding is much narrower, *i.e.*, "an appellate court may not alter a judgment to benefit a nonappealing party." *Greenlaw*, 544 U.S. at 244. In fact, other than in *Greenlaw*, the Court has invoked the party presentation principle only

---

[1] Defendants assert that they were deprived of the opportunity to raise defenses they would have been able to bring against a breach of contract claim. Defendants argue they would have been entitled to raise the defenses of unclean hands and equitable estoppel but focus on the defense that a party that materially breaches a contract cannot enforce it, in this case an alleged failure of Plaintiffs to respond to Defendants' proposed Continuous Quality Improvement (CQI) policy. The Court notes that Defendants asserted as a triable issue "[w]hether Plaintiffs[] have inhibited Defendants' compliance with the Settlement Agreement." (Dkt. 477 at 6; dkt. 485 at 6). Defendants' counsel also questioned witnesses in this regard. (*E.g.*, Dkt. 522 at 79-80, 149-53 (CQI policy)).

> twice, both times stressing the limits of the principle. *See Wood v. Milyard*, [566 U.S. 463, 472-73] (2012) (courts may sua sponte consider statute-of-limitations defenses overlooked by the State in habeas cases); *Arizona v. California*, 530 U.S. 392, 412-13 (2000) (courts may sua sponte raise a preclusion defense the parties failed to raise in special circumstances).

*Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 783 F.3d 976, 980 (4th Cir. 2015).

Significantly, the Settlement Agreement provides that the Court "shall retain jurisdiction over the Parties for purposes of ensuring the implementation of this Settlement Agreement and shall preside over such further proceedings as may be necessary or appropriate to enforce its terms and conditions." (Dkt. 221-1 at 23). The Order approving the Settlement Agreement tracked this language: "As contemplated by the Settlement Agreement, the Court shall retain jurisdiction for purposes of ensuring the implementation of the Settlement Agreement and shall preside over such further proceedings as may be necessary or appropriate to enforce its terms and conditions." (Dkt. 262). As the Court concluded as a matter of law, the Court possesses jurisdiction to enforce the Settlement Agreement. (*See* Dkt. 544 at 23-25).

As noted in this Court's Findings of Fact and Conclusions of Law, Defendants' argument that application of Fed. R. Civ. P. 65(d)(1)(C) deprived this Court of jurisdiction, even when initially made, was a *post hoc* one, as Defendants jointly with Plaintiffs submitted a pretrial order, which the Court entered, stating that the Court has jurisdiction over this case. (Dkt. 544 at 23 n.11 (citing dkt. 477 at 2; dkt. 479 at 2)). The Court extensively reviewed the history of Defendants' failure to press, prior to or at trial, their post-trial Rule 65(d)(1)(C) argument. (Dkt. 544 at 27-29).

Here, Defendants were well aware of the Court's authority and proceeded, along with Plaintiffs, in extensive litigation regarding facts and issues applicable to Defendants' alleged noncompliance with the Settlement Agreement; that is, to whether Defendants breached specific provisions of the Settlement Agreement. As the Court noted in its Findings of Fact and

9

Conclusions of Law with respect to enforcing the Settlement Agreement via standard contract law, "Defendants' arguments instead address the interpretation of those [Settlement Agreement] terms and whether the evidence on hand shows a breach—i.e., the merits of whether the Settlement Agreement was violated." (Dkt. 544 at 30). The Court's Findings of Fact and Conclusions of Law as well as the resulting Injunction were a product of the facts and arguments, pro and con, presented by the parties through extensive briefing and a one-week trial. The parties also provided substantial post-trial argument, as well as proposed findings of fact and conclusions of law. (*See* Dkt. 544 at 51). The Court concludes that enforcing the Settlement Agreement in light of the circumstances of this case and the evidence presented was proper.

E.     **Defendants' Assertion the Injunction Rewrites the Settlement Agreement**

Finally, Defendants argue that the Injunction "rewrites" ambiguous provisions of the Settlement Agreement. Specifically, Defendants assert that "the Court entered an Order with specific requirements addressing some of the very ambiguous phrases Defendants identified." (Dkt. 557 at 10). In their trial brief, Defendants claim that the "vast majority" of the "Standards," including those for staffing and "diagnosis and treatment," provide no objective criteria for measurement. (Dkt. 536 at 12). Defendants complain that the Injunction inserts specific terms for exactly what Defendants claim to be ambiguous. (Dkt. 557 at 10).

To be sure, "[c]ourts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed." *Dewberry & Davis, Inc. v. C3NS, Inc.*, 732 S.E.2d 239, 244 (Va. 2012). As noted in the Court's Findings of Fact and Conclusions of Law, however, Defendants' position appears to be that their obligations under the Settlement Agreement are so "subjective" they do not inform Defendants what is required. (Dkt. 544 at 47). The Court, however, reviewed the eight standards it found Defendants had breached and found that "those standards are clear

10

enough that Defendants should easy have known that what has transpired at FCCW is unacceptable under the agreement. No reasonable person could read the Settlement Agreement and think that is was permissible . . . ." (Dkt. 544 at 48).

The Injunction was narrowly drawn to extend no further than necessary to remedy the violation of Plaintiffs' Eighth Amendment rights as provided for by the parties in the Settlement Agreement. (*See* Dkt. 544 at 33-41 (discussing Defendants' breaches of the Settlement Agreement)). The Court, therefore, will deny Defendants' motion in this regard.

## IV. ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Additional Findings of Fact

The Court finds that Finding of Fact ¶ 110 in the January 2, 2019 Injunction (dkt. 544) requires modification and is hereby modified to read: "110. Katzman determined that the equivalent of "78 full-time" medical personnel are needed to adequately staff the FCCW medical department. (Dkt. 523 at 127). FCCW documents presented as exhibits demonstrate a need of the equivalent of 28.7 Registered Nurses for sufficient care. (DTX 12, at RFP900002918-22 (April 5, 2018 QA/CQI Meeting Minutes))."

### B. Additional Conclusions of Law

The Court concludes that while physicians "dispense" medications, individuals engaged in "professional nursing," "registered nursing," and "registered professional nursing" "administer" medications to patients. *See* Va. Code §§ 54.1-3000, 54.1-3401.

## V. CONCLUSION

For the foregoing reasons, each parties' motion to alter or amend pursuant to Fed. R. Civ. P. 59(e) will be granted in part to the extent noted above and denied in part in all other respects. An amendment to the January 2, 2019 Injunction will issue.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion and Additional Findings of Fact and Conclusions of Law, along with the Amended Injunction issued this date, to all counsel of record.

**ENTERED** this  22nd  day of May, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE