# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

CYNTHIA B. SCOTT, *et al.*,　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　*Plaintiffs,*　　　　)
　　　　　　　　　　　　　　　　)　　Case No. 3:12-cv-00036-NKM/JCH
　　　　v.　　　　　　　　　　　)　　Sr. Judge Norman K. Moon
　　　　　　　　　　　　　　　　)
HAROLD W. CLARKE, *et al.*,　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　*Defendants.*　　　　)
_____)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PETITION
## FOR AWARD OF ENFORCEMENT PHASE ATTORNEYS' FEES AND COSTS

Angela Ciolfi, VSB No. 65337
Brenda E. Castañeda, VSB No. 72809
Abigail Turner, VSB No. 74437
Shannon M. Ellis, VSB No. 89145
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
(434) 977-0553

Theodore A. Howard (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................................ ii

INTRODUCTION ......................................................................................................... 1

A.      THE LITIGATION ............................................................................................ 1

B.      THE SETTLEMENT AGREEMENT .............................................................. 2

C.      THE ENFORCEMENT PHASE ....................................................................... 4

D.      THE COURT'S DECISION ............................................................................. 6

GOVERNING LEGAL STANDARDS ............................................................................ 8

ARGUMENT ................................................................................................................. 9

     I.     THE DETERMINATION OF A REASONABLE FEE IS GOVERNED BY APPLICATION OF THE LODESTAR ANALYSIS ........................................... 9

          A.     THE CAPPED RATE ON RECOVERABLE FEES IMPOSED BY THE PLRA IS $220.50/HR. FOR ATTORNEYS, WITH LESSER RATES FOR COMPENSABLE NON-LAWYER SUPPORT ............................... 13

          B.     THE HOURS EXPENDED BY PLAINTIFFS' COUNSEL FOR WHICH AN AWARD IS SOUGHT WERE REASONABLY INCURRED ........ 14

              1.     Analysis Of The *Perdue/McAfee/Johnson* Factors ....................... 14

              2.     The Litigation Tasks Performed .................................................... 16

              3.     Plaintiffs' Counsels' Time Charges ............................................. 19

                    a.     The Legal Aid Justice Center ............................................ 19

                    b.     Wiley Rein LLP ................................................................ 23

                    c.     Kelly & Crandall, PLC ..................................................... 26

                    d.     Consumer Litigation Associates, P.C. .............................. 28

          C.     THE LODESTAR AMOUNT OF $1,879,627.93 IS REASONABLE AND SHOULD NOT BE SUBJECT TO ANY DOWNWARD ADJUSTMENT ........................................................................................ 29

II.    THE PLAINTIFFS' DOCUMENTED AND REASONABLY-INCURRED
ENFORCEMENT PHASE LITIGATION COSTS IN THE AMOUNT OF
$116,624.44 SHOULD BE INCLUDED IN THIS COURT'S AWARD ............ 33

CONCLUSION ........................................................................................................................ 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abrams & Abrams, P.A.*,
605 F.3d 238 (4th Cir. 2010) ...................................................................28

*Alexander S. v. Boyd*,
113 F.3d 1373 (4th Cir. 1997) ...............................................................9, 13

*Barnard v. Piedmont Reg. Jail Auth.*,
Case No. 3:07CV566, 2009 WL 3416228 (E.D. Va. 2009) ....................................30

*Blake v. Maynard*,
Case No. 09-cv-2367-AW, 2013 WL 3659421 (D. Md. July 11, 2013) ................................14

*Blum v. Stenson*,
464 U.S. 886 (1984)..............................................................................10

*Cook v. Andrews*,
7 F. Supp. 2d 733 (E.D. Va. 1988) ...............................................................34

*Crossroads Equity Partners, LLC v. Dogmatic Products, Inc.*,
Case No. 3:11-cv-00069, 2014 U.S. Dist. LEXIS 99338 (W.D. Va. July 22,
2014) ...........................................................................................10

*Doe v. Chao*,
435 F.3d 492 (4th Cir. 2006) ....................................................................28

*Grissom v. The Mills Corp.*,
549 F.3d 313 (4th Cir. 2008) ................................................................10, 11

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..........................................................................*passim*

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ................................................................*passim*

*Lefemine v. Wideman*,
758 F.3d 551 (4th Cir. 2014) ...............................................................10, 28

*McAfee v. Boczar*,
738 F.3d 81 (4th Cir. 2013) ...............................................................*passim*

*McAfee v. Boczar*,
906 F. Supp. 2d 484 (E.D. Va. 2012) ......................................................15, 16, 28

*Mercer v. Duke University,*
   401 F.3d 199 (4th Cir. 2005) ..................................................................8, 10

*Newport News Shipbuilding and Dry Dock Co. v. Holiday,*
   591 F.3d 219 (4th Cir. 2009) ......................................................................10

*Perdue v. Kenny A. ex rel. Winn,*
   559 U.S. 542 (2010) ...........................................................................*passim*

*Plyer v. Evatt,*
   902 F.2d 273 (4th Cir. 1990) ........................................................................9

*Robinson v. Equifax Information Servs.,*
   LLC, 560 F.3d 235 (4th Cir. 2009) .........................................................10, 11

*Rum Creek Coal Sales, Inc. v. Caperton,*
   31 F.3d 169 (4th Cir. 1994) ........................................................................10

*Spell v. McDaniel,*
   852 F.2d 762 (4th Cir. 1988).......................................................................33

*Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC,*
   Case.......................................................................................................10, 11

*Vienna Metro LLC v. Putte Home Corp.,*
   Case No. 1:10-cv-00502, 2011 U.S. Dist. LEXIS 158648 (E.D. Va. Aug, 24,
   2011) .....................................................................................................11

**Statutes**

18 U.S.C. § 3006A ...............................................................................................13

42 U.S.C. § 1983 ...............................................................................................1, 8

42 U.S.C. § 1988 .................................................................................3, 10, 28, 31

42 U.S.C. § 1997e(d)(3) ......................................................................................13

**Rules and Regulations**

Fed. R. Civ. P. 23(b)(2)........................................................................................1

Fed. R. Civ. P. 59(e) ...............................................................................8, 19, 21

Fed. R. Civ. P. 65(d)(1)(C) ...............................................................................6, 29

Case 3:12-cv-00036-NKM-JCH   Document 583   Filed 06/12/19   Page 5 of 42   Pageid#: 14119

**Other Authorities**

Admin. Office of the U.S. Courts, *The Judiciary FY2018 Congressional Budget Summary* (Rev. June 2017) ......................................................................................13

Plaintiffs, Cynthia B. Scott, *et al.*, by their attorneys, hereby submit their Memorandum of Law in Support of their Petition for an Award of Enforcement Phase Attorneys' Fees and Costs.

## INTRODUCTION

### A.     THE LITIGATION

The Plaintiffs, prisoners residing at the Fluvanna Correctional Center for Women (FCCW), a facility of the Virginia Department of Corrections (VDOC), initiated this class-action lawsuit on July 24, 2012, pursuant to the Eighth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, seeking declaratory and injunctive relief with respect to alleged constitutionally-deficient medical care afforded to themselves and all other women residing at FCCW reflecting deliberate indifference on the part of the VDOC Defendants to the Plaintiffs' serious medical needs. The VDOC Defendants have consistently denied liability for the alleged constitutional violations.

By Memorandum Opinion and Order dated November 20, 2014, the Court granted the Plaintiffs' Motion for Class Certification and certified a class consisting of "all women who currently reside or will in the future reside at FCCW and have sought, are currently seeking or will seek adequate, appropriate medical care for serious medical needs, as contemplated by the Eighth Amendment to the U.S. Constitution," pursuant to Fed. R. Civ. P. 23(b)(2). *See* ECF Docket No. 188. Thereafter, the Court entered an Order granting Partial Summary Judgment in favor of the Plaintiffs and denying the VDOC Defendants' Motion for Summary Judgment in its entirety on November 25, 2014, holding, *inter alia*, that:

1.     the Plaintiffs established, as a matter of law, that they fully and properly exhausted all pre-litigation administrative remedies available to them, as required by applicable provisions of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e (see Memorandum Opinion dated November 25, 2014, at 23-33 & nn.8-10 (ECF Dkt. No. 201));

2. the Plaintiffs established, as a matter of law, that individually and as a class, they suffer from "serious medical needs" as a predicate to a viable cause of action for "deliberate indifference" under the Eighth Amendment (Id. at 13-18 & n.7);

3. the Plaintiffs established, as a matter of law, that the VDOC Defendants have a non-delegable duty under the Eighth Amendment to provide constitutionally-adequate medical care to all prisoners within their custody, including the Plaintiffs (Id. at 8-13); and that

4. the VDOC Defendants failed, as a matter of law, to demonstrate on the basis of material facts as to which there is no genuine issue in dispute, that they could not be found liable for providing insufficient medical care, or failing to provide medical care under circumstances in which such care was due, reflecting "deliberate indifference" to the Plaintiffs' and the class members' serious medical needs in violation of the Eighth Amendment (Id. at 33-46).

## B.     THE SETTLEMENT AGREEMENT

With this Court's imminent rulings granting class certification and the Plaintiffs' Motion for Partial Summary Judgment and denying the Defendants' Motion for Summary Judgment, and a December 1, 2014 trial date looming, the parties conducted settlement negotiations. Those negotiations culminated in their execution of a Memorandum of Understanding which set forth agreed-upon terms for a comprehensive resolution of this case. Thereafter, the parties' respective counsel, medical consultants and representatives engaged in extensive communications, further negotiations and other activities focused upon implementation and performance of the various measures described in the Memorandum of Understanding as required in order to achieve the terms of the comprehensive Settlement Agreement to which they had agreed in principle. Upon their completion of this process, the Plaintiffs, subject to the Defendants' express consent, presented the Settlement Agreement to this Court for its preliminary approval on September 15, 2015. *See* ECF Dkt. Nos. 220, 221 & Exhibit 1 thereto.

Under the final terms and conditions of the Settlement Agreement, the Defendants undertook or agreed to undertake a host of measures that were designed to insure that the

medical care afforded to the Plaintiffs and other Class members residing at FCCW would meet or exceed constitutional standards under the Eighth Amendment by, *inter alia*:

- the adoption and implementation of revisions to existing VDOC Operating Procedures governing or relating to the provision of medical care at FCCW in order to enhance the quality and quantity of care;

- their commitment to adhere to specific Guidelines and Standards beyond the VDOC Operating Procedures, as set forth in the Settlement Agreement, in order to maximize the prospects for provision of a constitutionally-adequate level of medical care at FCCW;

- their commitment to work cooperatively with the Plaintiffs' counsel and the parties' medical consultants on the development of new Operating Procedures designed to assure the VDOC's fulfillment of its legal obligations to women with disabilities under the Americans With Disabilities Act and to provide the VDOC with a basis for self-evaluation of its own performance in providing medical care at FCCW on an on-going basis in accordance with well-established Continuous Quality Improvement principles; and

- their commitment to submit the quality and quantity of the medical care provided at FCCW to the critical oversight of a Compliance Monitor agreed upon by the parties, who would develop Performance Measuring Tools to be utilized in conducting his periodic evaluations, subject to the continuing supervisory jurisdiction and sanctioning authority of this Court for any persisting or new constitutional violations.

In addition to the foregoing, the Defendants agreed that the Plaintiffs were "prevailing parties" in this litigation, in light of the terms of the Settlement Agreement reached, and that, as such, the Plaintiffs were entitled to the recovery of the reasonable attorneys' fees and litigation costs they had incurred, pursuant to 42 U.S.C. § 1988. *See* ECF Dkt. No. 221-1, Sec. VII at 26-27.[1]

---

[1] The Plaintiffs submitted their Petition for Award of Attorneys' Fees and Litigation Costs Pursuant to 42 U.S.C. § 1988 and supporting documentation on October 19, 2015, requesting a fee award in the amount of $2,063,198.82 and costs in the amount of $58,674.13. *See* ECF Dkt. Nos. 226, 227. Thereafter, the Parties reached a negotiated compromise pursuant to which Plaintiffs were awarded $1.5 million in attorneys' fees and costs as reflected in the Court's subsequent Final Judgment Order. *See* ECF Dkt. No. 262, ¶ 2 at 2.

Following the Court's entry of an order granting preliminary approval (ECF Dkt. No. 222), notice to the class and an appropriate period for the filing of comments and/or objections, the Court held a Fairness Hearing on November 9, 2015 and heard testimony from four of the Named Plaintiffs, the Compliance Monitor and a few objectors, as well as argument by Plaintiffs' counsel. Thereafter, on February 5, 2016, the Court issued its Findings of Fact and Conclusions of Law setting forth the basis of its determination to approve the Settlement Agreement, as well as a final Order approving the Agreement and retaining jurisdiction to oversee, as necessary or appropriate, the enforcement of its terms and conditions. ECF Dkt. Nos. 261, 262.

### C. THE ENFORCEMENT PHASE

For many months after the parties' Settlement Agreement was formally approved by this Court and entered as a Consent Order, the Compliance Monitor designated by the Order – Nicholas Scharff, M.D. – rendered Reports reflecting findings focused on the host of ways in which the VDOC and FCCW were failing to comply, or even make meaningful progress towards compliance, with many of the critical requirements for meeting the standard for constitutionally-adequate medical care addressed in the Settlement Agreement. *See generally* Memorandum of Law in Support of Plaintiffs' Motion for Order to Show Cause at 5-13 (summarizing Dr. Scharff's Reports and findings set forth therein) & Exhibits 4-8 thereto (ECF Dkt. No. 266).

Gravely disappointed by the VDOC's lack of significant progress towards the objectives of the Settlement Agreement and confronted, on a day-to-day basis, by the substantial risk of harm attributable to FCCW's continuing lack of responsiveness to their serious medical needs, the Plaintiffs, by counsel, served the VDOC with a Notice Letter on April 20, 2017, pursuant to Section V.2. of the Agreement. *See* ECF Dkt. No. 266, Exh. 2. Drawing upon the first-hand accounts of class members continuing to experience substandard care of an ongoing and harmful

nature, as well as Dr. Scharff's reported findings, the Plaintiffs demanded immediate remedial efforts from VDOC, suggesting concrete courses of action that the VDOC and its contractor might adopt, where possible, to address the problems highlighted.

The VDOC, by counsel, provided its response to the Plaintiffs' Notice Letter on May 22, 2017 (ECF Dkt. No. 266, Exh. 9), flatly rejecting the core premise of the Plaintiffs' submission and unreservedly declaring that "FCCW is not in breach of the settlement agreement with [regard to] any of the provisions you cite." *Id.* at 10. This unequivocal refusal on the part of the VDOC to acknowledge any continuing deficiencies in the quality of the medical care provided at FCCW, or to meet with Plaintiffs' representatives to discuss working cooperatively on possible solutions, left the Plaintiffs with no viable alternative to the preparation and filing of their Show Cause Motion.

By filing dated October 10, 2017, the VDOC opposed the Show Cause Motion and requested that it be dismissed with prejudice. ECF Dkt. Nos. 285, 286. However, as demonstrated in the Plaintiffs' Reply submission, filed October 31, 2017 (ECF Dkt. No. 293), the VDOC Opposition failed to identify any viable basis for such dismissal and this Court, *sub silentio*, denied the requested relief.

Following the completion of briefing on the Plaintiffs' Motion and the establishment of a procedural schedule culminating in a June 11, 2018 trial date, the Court conducted a Status Conference by telephone on January 29, 2018, at which time it advised the Parties that the threshold question of whether a Show Cause Order should issue would be addressed and resolved at trial before proceeding, as necessary, to the Plaintiffs' contempt claim on its merits. Thereafter, the Parties engaged in extensive document and deposition discovery, significant discovery-related motions practice, and an unsuccessful mediation before appearing before the

Court for a bench trial conducted from June 11 through June 15, 2018. At the close of the evidence, the Court requested post-trial briefing, which the Parties completed by late August 2018.

### D. THE COURT'S DECISION

After due deliberations following the completion of the Parties' post-trial briefing, this Court issued its Findings of Fact and Conclusions of Law, accompanied by an Order mandating the implementation of certain injunctive relief, on January 2, 2019. *See* ECF Dkt. Nos. 544, 545.

Invoking a strict interpretation of the provisions of Fed. R. Civ. P. 65(d)(1)(C), dictated in its view by controlling Fourth Circuit precedent, the Court declined to enter the contempt finding against the VDOC Defendants that Plaintiffs sought. *See* ECF Dkt. 544 at 27-29. However, recognizing "[t]hat the Court cannot enforce the Settlement Agreement through contempt does not mean the Court cannot enforce it at all" (*id.* at 29), this Court exercised its jurisdiction to "consider whether the Settlement Agreement has been violated" in light of its application of "standard contract principles." *Id.* at 29-30 (citations and footnote omitted). The Court answered this inquiry in the affirmative, stating at the outset of its detailed analysis as follows:

> In addition to other discrete requirements, the Settlement Agreement sets out twenty-two standards governing FCCW. (Dkt. 222-1 at 8-15). The Court concludes that the Defendants are in violation of eight of them. Indeed, the record shows that VDOC's and FCCW's *own officials*, had – by their *own admission* – actual knowledge that FCCW was not complying with parts of the Settlement Agreement. (*See, e.g.*, *supra*, FF ¶¶ 2, 8-12, 116).

*Id.* at 33 (emphasis in original).

Supporting this preliminary assessment, the Court proceeded to set forth its specific findings and conclusions concerning the VDOC's breach of the obligations it assumed under the Settlement Agreement with respect to:

establishing and maintaining sufficient medical staff at FCCW;

providing appropriate and timely responses to medical emergencies and well-maintained and readily available emergency medical supplies and equipment;

providing durable medical equipment in appropriate working order, available for daily use as necessary;

conducting and memorializing self-critical analysis in connection with mortality reviews;

establishing safe, consistent, reliable practices concerning medication administration, including timely reordering, maintenance and dispensation of prescription medications;

provision of unimpeded access to timely medical care;

provision and maintenance of a meaningful, appropriately responsive Sick Call process; and

provision and maintenance of a meaningful, appropriately responsive Medical Grievance process.

*Id.* at 33-41 & nn. 19-20. In the course of setting forth its analysis regarding each of these areas in which the Settlement Agreement was violated due to the VDOC's wrongful acts or omissions, the Court addressed and rejected a host of excuses and rationalizations proffered by the VDOC Defendants to justify their non-compliance as factually unsupported, legally immaterial, or both. *Id.*; *see also id.* at 42-50 & nn. 21-27 (addressing and rejecting, *seriatim*, the VDOC Defendants' contentions that Plaintiffs' charges of non-compliance were premature; that the standards of compliance established by the Settlement Agreement are "unenforceably subjective"; and that the VDOC Defendants acted in "good faith" and achieved "substantial compliance" with the Settlement Agreement's terms and conditions).

In sum, this Court concluded that "Defendants have upheld neither their Eighth Amendment obligations nor the Settlement Agreement they reached to effectuate those obligations." *Id.* at 51.[2]

## GOVERNING LEGAL STANDARDS

Section V.2 of the Parties' Settlement Agreement provides, in pertinent part, as follows:

> In the event that a problem of constitutionally-deficient medical care on the part of the Defendant, and brought to the Defendant's attention by the Compliance Monitor or the Plaintiffs' counsel pursuant to the provisions of Section IV.2.c. of this Settlement Agreement, has not been cured or otherwise resolved to the satisfaction of the Plaintiffs or the Compliance Monitor upon expiration of the 30-day period following the provision of such notice to the Defendant, the Plaintiffs . . . may initiate proceedings before the Court seeking specific performance of the terms of this Settlement Agreement, contempt sanctions against the Defendant, or both . . . *In the event the Plaintiffs prevail in the prosecution of such enforcement action, they may petition the Court for an award of their reasonable costs and attorneys' fees incurred in bringing the action.*

*See* ECF Dkt. No. 221-1 at 23-24 (emphasis added).

In actions such as the instant case, arising under Section 1983, a plaintiff "prevails" when "actual relief on the merits of [her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Mercer v. Duke University*, 401 F.3d 199, 203 (4th Cir. 2005), *citing Farrar v. Hobby,* 506 U.S. 103, 111-12 (1992); *see generally Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("A typical

---

[2] With respect to the specific items of relief set forth in this Court's accompanying Injunction Order, the Court observed that "the parties, and the compliance monitor have expertise that the Court necessarily lacks. The parties may thus seek reconsideration of the relief tailored by the Court within the period provided by Fed. R. Civ. P. 59(e)." *Id.* at 51. Plaintiffs and Defendants both availed themselves of the Court's invitation in this regard. *See generally* Plaintiffs' Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) (ECF Dkt. No. 554); Defendants' Motion Pursuant to Rule 59(e) (ECF Dkt. No. 556). On May 22, 2019, this Court issued its ruling granting these Motions in part and denying them in part. *See* Memorandum Opinion and Additional Findings of Fact and Conclusions of Law (ECF Dkt. No. 573). For purposes of the instant Attorneys' Fees Petition, the Court's May 22 ruling did not alter the *status quo* resulting from its earlier January 2 decision in any respect material to Plaintiffs' "prevailing party" status.

formulation is that 'plaintiffs may be considered "prevailing parties" if they succeed on any significant issue in litigation which achieves some of the benefit [they] sought in bringing suit.'" (Citation omitted.)); *accord Alexander S. v. Boyd,* 113 F.3d 1373, 1389-90 (4th Cir. 1997). This principle encompasses a party's success in the context of post-judgment litigation brought in order to "preserve the fruits" of a prior favorable judgment. *See Plyer v. Evatt,* 902 F.2d 273, 281 (4th Cir. 1990).

Plaintiffs respectfully submit that it is clear from the substance of this Court's Findings of Fact and Conclusions of Law and the Injunction Order it entered in conjunction therewith, requiring the Defendants to undertake affirmative measures to bring themselves into conformity with the obligations they accepted but failed to fulfill under the Settlement Agreement, that the Plaintiffs, notwithstanding the denial of a contempt finding, have prevailed in the enforcement action that they initiated. *See* Injunction, ¶ 1 at 1 ("The Court has jurisdiction to enforce the terms of the parties' Agreement to provide for constitutionally adequate medical care, and the Defendants are in violation of those terms.") (ECF Dkt. No. 545).

Accordingly, per the applicable provision of the Settlement Agreement, the Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs incurred in the Enforcement Phase of this action, as quantified on the basis of the application of the standards addressed below.

## ARGUMENT

## I. THE DETERMINATION OF A REASONABLE FEE IS GOVERNED BY APPLICATION OF THE LODESTAR ANALYSIS

In *Hensley,* the Supreme Court declared that "[t]he most useful starting point in determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on

which to make an initial estimate of the value of the lawyer's services." 461 U.S. at 433; *see also Blum v. Stenson*, 464 U.S. 886, 888 (1984) ("The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended . . . times a reasonable hourly rate. Adjustments to that fee then may be made as necessary in the particular case." (Citation omitted.)).

Following *Hensley and Blum*, the Fourth Circuit has repeatedly applied this lodestar methodology in reviewing the reasonableness of fee awards entered by district courts in a host of cases brought pursuant to federal statutes, such as Section 1988, expressly providing that a prevailing party may be awarded the fees its counsel reasonably incurred in successfully representing that party's interests in the subject litigation. *See, e.g.*, *Lefemine v. Wideman*, 758 F.3d 551, 559 n.4 (4th Cir. 2014); *see McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013); *Eastern Assoc. Coal Corp. v. Director*, OWCP, 724 F.3d 561, 569-70 (4th Cir. 2013); *Newport News Shipbuilding and Dry Dock Co. v. Holiday*, 591 F.3d 219, 226-27 (4th Cir. 2009); *Robinson v. Equifax Information Servs.*, LLC, 560 F.3d 235, 243-44 (4th Cir. 2009); *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *Mercer*, 401 F.3d at 209; *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174-75 (4th Cir. 1994). The same methodology has been applied by courts in the Fourth Circuit in cases involving purely private contractual disputes wherein the contract in question contains a free-shifting provision. *See, e.g., Crossroads Equity Partners, LLC v. Dogmatic Products, Inc.,* Case No. 3:11-cv-00069, 2014 U.S. Dist. LEXIS 99338, at *4-6 (W.D. Va. July 22, 2014) (Conrad, J.); *Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC,* Case no. 7:11-cv-00025, 2014 U.S. Dist. LEXIS 55871, at *4-8

(W.D. Va. April 21, 2014) (Turk, Sr. J.); *Vienna Metro LLC v. Putte Home Corp.*, Case No.

1:10-cv-00502, 2011 U.S. Dist. LEXIS 158648, at *7-8 (E.D. Va. Aug, 24, 2011).[3]

As a guide to aid the lower courts in performing the lodestar analysis to determine the

measure of reasonable attorneys' fees in those cases in which they may be awarded, the Fourth

Circuit has instructed district judges to consider the following twelve factors originally identified

in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions
> raised; (3) the skill required to properly perform the legal services rendered; (4)
> the attorney's opportunity costs in pressing the instant litigation; (5) the
> customary fee for like work; (6) the attorney's expectations at the outset of the
> litigation; (7) the time limitations imposed by the client or circumstances; (8) the
> amount in controversy and the results obtained; (9) the experience, reputation and
> ability of the attorney; (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and length of the professional
> relationship between attorney and client; and (12) attorneys' fees awards in
> similar cases.

*Robinson*, 560 F.3d at 243-44, citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir.

1978); *see also Grissom*, 549 F.3d at 320-21 ("Here, the parties agree that in calculating an

appropriate attorneys' fee award, a district court must first determine the lodestar amount

(reasonable hourly rate multiplied by hours reasonably expended), applying the *Johnson/Barber*

factors when making its lodestar determination." (Citations omitted.)).[4]

---

[3] A "nearly identical" mode of analysis would apply if the award of attorneys' fees in a contract action were subject to determination under Virginia law. *Three Rivers Landing,* 2014 U.S. Dist. LEXIS 55871, at 7 & n.3 (citing Virginia authorities).

[4] To the extent that any particular *Johnson* factor is taken into account in determining and/or effectively duplicates either of the core lodestar elements (*e.g.,* the "hours reasonably expended" component of the lodestar formula is essentially the same as the first *Johnson* factor – "the time and labor expended" – and likewise implicates *Johnson* factor No. 2 – "the novelty and difficulty of the questions raised"), those *Johnson* factors are not to be "double counted" by using them as a basis for further adjustments to the lodestar amount, once it has been determined. *See Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 553 (2010); *McAfee,* 738 F.3d at 89; *Eastern Assoc. Coal,* 724 F.3d at 570 & n.5.

Once it is determined that the hours incurred and the hourly rate requested by the prevailing party's attorneys are reasonable, the Court "is obligated to subtract fees for hours spent on unsuccessful claims unrelated to the successful ones." *McAfee*, 738 F.3d at 91, citing *Grissom*, 549 F.3d at 321 ("The parties agree that after calculating the lodestar figure, the 'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)). And finally, after deductions for fees associated with unsuccessful and unrelated claims, the Court then awards all or a percentage of the remaining lodestar amount, depending on the degree of success enjoyed by the prevailing party. *Id.*

Accordingly, based on the foregoing authorities, this Court's task in determining the reasonable attorneys' fees the Plaintiffs should be awarded turns on performance of the following analytical steps:

(i)    evaluation of the hourly rates claimed by Plaintiffs in light of the prevailing market rate in the relevant geographic jurisdiction for legal services of the type performed by counsel on Plaintiffs' behalf, including consideration of any pertinent *Johnson* factors, to determine the reasonable hourly rate to be utilized in the lodestar calculation;

(ii)    evaluation of the time charges claimed by Plaintiffs in light of the nature and extent of the tasks performed, including consideration of any pertinent *Johnson* factors, to determine the number of hours reasonably expended;

(iii)    performance of the lodestar calculation;

(iv)    deduction from the lodestar amount of any fees specifically attributable to hours devoted to unsuccessful claims distinct from the successful ones; and

(v)    determination of whether any other adjustments are necessary or appropriate under the particular circumstances of the case in light of the overall level of success the prevailing party achieved.

Subject to acknowledgment of one preliminary consideration, the Plaintiffs address each of these steps below.

## A. THE CAPPED RATE ON RECOVERABLE FEES IMPOSED BY THE PLRA IS $220.50/HR. FOR ATTORNEYS, WITH LESSER RATES FOR COMPENSABLE NON-LAWYER SUPPORT

As a threshold matter due to the fact that this case involves claims implicating prisoners' conditions of confinement, under the provisions of the Prison Litigation Reform Act ("PLRA"), the Court must undertake a three-step process in order to determine the hourly rate to utilize for purposes of its lodestar calculations to arrive at an appropriate fee award. *See* 42 U.S.C. § 1997e(d)(3). First, the Court must refer to the "rate established" by the Criminal Justice Act, 18 U.S.C. § 3006A (CJA), "for payment of court-appointed counsel" under the provisions of that statute as adjusted periodically by the U.S. Judicial Conference. Then the Court must identify an amount constituting 150% of the applicable CJA rate to derive the maximum rate allowable under the PLRA. Finally, the Court must then compare the PLRA-capped rate against the hourly rate reasonably recoverable by the prevailing party's attorneys in the absence of the PLRA's limitation in order to determine whether the PLRA rate or some lesser rate should apply. *See Alexander S.*, 113 F.3d at 1388 (describing methodology).

The maximum hourly rate established by the Judicial Conference for the time period during which the Enforcement Phase has been actively contested is $147.00. *See* Admin. Office of the U.S. Courts, *The Judiciary FY2018 Congressional Budget Summary* at 37 (Rev. June 2017) ("the maximum [CJA] rate authorized in statute is $147 per hour"). Thus, under the PLRA, this Court's award of fees to Plaintiffs as the prevailing parties for purposes of its lodestar analysis may not exceed 150% of $147.00, the maximum statutory rate established by the CJA, or $220.50 per hour.[5] By comparison, the Declarations submitted in support of the

---

[5] Utilizing the same calculation methodology when the Plaintiffs sought a fee award in connection with the proceedings in which the Parties' Settlement Agreement was approved, this was $211.50. *See* ECF Dkt. No. 261 at 34.

Petition by the attorneys providing representation to the Plaintiffs in this action uniformly reference reasonable hourly rates that, in every instance, substantially exceed the PLRA-capped rate of $220.50. Accordingly, this Court should apply $220.50 as the hourly rate to be utilized for purposes of multiplication by the number of hours reasonably incurred by all of Plaintiffs' counsel to determine a reasonable fee award under the governing lodestar analysis. *See, e.g.*, *Blake v. Maynard*, Case No. 09-cv-2367-AW, 2013 WL 3659421, at *1-2 (D. Md. July 11, 2013) (applying then-applicable PLRA-capped maximum hourly rate of $187.50 to all hours accrued by plaintiff's counsel where all of their respective individual hourly rates exceeded the PLRA rate).

    **B.**     **THE HOURS EXPENDED BY PLAINTIFFS' COUNSEL FOR WHICH AN AWARD IS SOUGHT WERE REASONABLY INCURRED**

    **1.**     **Analysis Of The *Perdue/McAfee/Johnson* Factors**

Fourth Circuit jurisprudence has been clear and consistent on the point that at the stage at which the Court determines the reasonableness of the hours expended by the prevailing party's counsel for which a recovery of fees is requested, the Court must undertake analysis of the *Johnson* factors in assessing the suitability of the time charges at issue to serve as the basis for reimbursement. *See McAfee*, 738 F.3d at 88 ("To ascertain what is reasonable in terms of hours expended . . . the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 14, 717-19 (5th Cir. 1974)." (Footnote omitted.)). And, as noted above, Johnson factors that are effectively subsumed by the process of determining the hours reasonably incurred for which a fee award is sought generally should not be taken into account more than once. *See supra* Arg. Section I at 11 n.3 (*citing* authorities).

On this latter point, the Fourth Circuit, in its decision in the *McAfee* case, based upon an analysis of the substance and implications of *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542

-14-

(2010), endorsed a modified treatment of the *Johnson* factors articulated by the district court in the case before it for review. *See* 783 F.3d at 89, *citing McAfee v. Boczar,* 906 F. Supp. 2d 484, 490-92 (E.D. Va. 2012).

The district court's decision in *McAfee* (Payne, Sr. Dist. Judge) noted that in *Perdue*, the Supreme Court -- in a departure from its prior analysis in *Hensley*, indicating that the 12-part *Johnson* analysis was a tool to be utilized to inform the lodestar calculation, *see* 461 U.S. at 434 n.9 -- presented the *Johnson* analysis and the lodestar methodology as *distinct alternative* approaches to determining reasonable attorneys' fees, and expressed its clear preference for the lodestar approach, noting that the *Johnson* approach "gave very little actual guidance to district courts. Setting attorney's fees by reference to sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." *Perdue*, 559 U.S. at 551 (citations omitted). Based on this analysis, Judge Payne concluded in *McAfee* that "the necessary consequence of *Perdue*" is that "the *Johnson* approach ha[s] been relegated to the sidelines in fee analysis." 906 F. Supp. 2d at 491. Elaborating on this concept, the Court stated:

> What then is left of *Johnson* after *Perdue*? That question is best answered by assessing the individual *Johnson* factors to determine if they are subsumed in the lodestar calculus.
>
> The reasonableness of the rate implicates, it seems, Factor [3] (the skill required to properly perform the legal services rendered); Factor 5 (the customary fee); Factor 6 (the attorney's expectation at the outset of the litigation, i.e., whether the fee is fixed or contingent); Factor 9 (the experience, reputation and ability of the attorney); and Factor 4 (the attorney's opportunity cost in pressing the instant litigation). In one way or another, those factors play a role in determination of a reasonable hourly rate, just as they do in a law firm's rat[e] setting process. . . .
>
> The assessment of the number of hours reasonably expended implicates Factor [1] (the time and labor expended); Factor [2] (the novelty and difficulty of the questions raised); and Factor [7] (the time limitations imposed by the client or the circumstances). Each of those factors rather obviously bears on the time that reasonably should be devoted to a case.

That leaves four *Johnson* factors: Factor [8] (the amount in controversy and the results obtained); Factor [10] (the undesirability of the case within the legal community within which the case arose); Factor [11] (the nature and length of the professional relationship between the attorney and the client); and Factor [13] (attorney's fees awards in similar cases).

*Id.* at 491-92. The Fourth Circuit adopted the district court's analysis in this regard in its entirety. *See* 738 F.3d at 89 ("Ultimately, pursuant to the court's lodestar analysis, *Perdue* reserved four *Johnson* factors for use in adjusting the lodestar fee amount: [Factors 8, 10, 11 and 12]." (Citation omitted.)).

Accordingly, in light of *McAfee*, the impact -- if any -- of *Johnson* Factors 8, 10, 11 and 13 will be considered after the reasonableness of the hours expended by Plaintiffs' counsel is addressed, and then multiplied by the applicable PLRA-capped hourly rate, below to arrive at the lodestar amount.

## 2.    The Litigation Tasks Performed

On January 10, 2017, Dr. Scharff, the Compliance Monitor, issued a Report summarizing his observations and findings derived from his visit to FCCW in October 2016 – eight months after the entry of this Court's Order approving the Parties' Settlement Agreement and requiring the prompt implementation of its terms and conditions. At the conclusion of the January 10 Report, Dr. Scharff expressed his serious concerns with and reservations regarding the adequacy of the VDOC's efforts to meet its obligations under the Settlement Agreement, stating, in pertinent part, as follows:

> For its part, VA DOC has not yet addressed any of the most troublesome problems at FCCW[.] . . . Whether this is institutional inertia or simply lack of concern is not clear to me. In either case, VA DOC's level of performance and involvement is not adequate in the setting of so many problems and so much patient dissatisfaction, nor is it consistent with its obligations under the Settlement Agreement.

*See* Scharff Jan. 2017 Rpt. at 20 (ECF Dkt. No. 266, Exh. 6).

Despite the fact that, by that time, Plaintiffs' counsel had already expended hundreds of hours since February 2016 monitoring the VDOC's and its contractor's performance under the terms of the Settlement Agreement and reporting on deficiencies in that performance to Dr. Scharff and to FCCW directly on behalf of the Plaintiffs, Plaintiffs' counsel have utilized the January 10, 2017 Compliance Monitor's Report as a bright-line starting point for measuring the attorneys' fees and costs for which they seek recovery in their instant Petition.

Thereafter, the sequence of significant tasks undertaken by Plaintiffs' counsel in their efforts to obtain relief from this Court premised upon the VDOC Defendants' clear failure to achieve and maintain a constitutionally-adequate level of medical care at FCCW in accordance with the obligations they assumed under the Settlement Agreement includes at least the following:

- Investigation, marshalling of evidence, legal research, drafting and presentation to the VDOC Defendants on April 20, 2017 of the Plaintiffs' pre-enforcement action Notice Letter pursuant to Section IV.2.c. of the Settlement Agreement.

- Ongoing review and analysis of the Compliance Monitor's periodic Reports, including meetings with Dr. Scharff in conjunction with his visits to FCCW, reviewing his draft Reports in light of ongoing feedback from Class Members regarding their day-to-day experiences with the medical care system at FCCW, and preparation and submission of formal comments to Dr. Scharff on each draft Report pursuant to Section IV.2.c. of the Settlement Agreement.

- Preparing and filing of the Plaintiffs' Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt, with Memorandum of Law and supporting Declarations and medical record evidence.

- Reviewing the VDOC Defendants' Opposition to and request for dismissal of Plaintiffs' Motion for Order to Show Cause and preparing and filing of the Plaintiffs' Reply Memorandum.

- Visiting FCCW on a regular basis to interact with Class Members, monitor and make note of their concerns, and advocate to Dr. Scharff or to the Attorney General's Office as FCCW's representatives in pursuit of remedial actions to address particular problems with respect to medical care arising from time to time.

- Participating in the full range of discovery activities required to prepare for trial in the Enforcement Phase, including, among other things:

  - reviewing and responding to the Defendants' written discovery requests;

  - preparing and propounding written discovery requests to the Defendants and receiving and reviewing written answers and documents provided in response thereto;

  - conducting numerous depositions of Defendants' witnesses pursuant to Rules 30(b)(1) and 30(b)(6), Fed. R. Civ. P.;

  - researching, preparing and filing legal memoranda in support of Plaintiffs' discovery motions focused upon deficiencies in Defendants' discovery responses to the extent negotiations to resolve those deficiencies failed;

  - researching, preparing and filing legal memoranda in response to Defendants' discovery-related motions seeking a variety of procedural remedies to the extent negotiations to resolve those requested remedies failed; and

  - participating in numerous telephonic hearings conducted by Magistrate Judge Hoppe to address and decide the Parties' various discovery-related and scheduling disputes.

- Working with Plaintiffs' Enforcement Phase expert witnesses on their Reports and preparing and defending those experts at depositions conducted by Defendants' counsel.

- Reviewing and analyzing the Reports submitted by Defendants' expert witnesses and preparing for and conducting depositions of those experts.

- Preparing for and participating in an unsuccessful 18-hour Mediation in an effort to resolve the Enforcement Phase a short time before the trial date.

- Researching, drafting and filing of Plaintiffs' Pre-Trial Brief and analyzing, researching and preparing a Response to Defendants' Motion for Summary Judgment.

- Preparing for and participating in the Pretrial Conference, including presentation of argument on all unresolved Motions *In Limine* and other pretrial motions.

- Preparing for and participating in the five-day bench trial of all claims, defenses and issues presented by the Parties for resolution in the Enforcement Phase.

- Conducting an exhaustive review of the trial record and preparation of comprehensive Proposed Findings of Fact and Conclusions of Law as well as the Post-Trial Brief on Plaintiffs' behalf.

- Analyzing, researching and preparing Responses to the Defendants' Proposed Findings of Fact, Conclusions of Law and Post-Trial Brief.

- Reviewing the Court's January 2, 2019 Findings of Fact, Conclusions of Law and Injunction Order, identifying concerns relating thereto and preparing Plaintiffs' Motion pursuant to Rule 59(e), Fed. R. Civ. P.

- Analyzing, researching and preparing Plaintiffs' Response to the Defendants' Rule 59(e) Motion and Plaintiffs' Reply to the Defendants' Response to Plaintiffs' Motion.

As reviewed in further detail below, these tasks consumed thousands of hours of time on the part of Plaintiffs' entire litigation team that were, under challenging circumstances, reasonably incurred in order to vindicate the Plaintiffs' critically-important claims that their Eighth Amendment right to adequate medical care has yet to be satisfied at FCCW.

### 3. Plaintiffs' Counsels' Time Charges

#### a. The Legal Aid Justice Center

Commencing no later than 2008, the dedicated and experienced advocates employed by the Legal Aid Justice Center (LAJC) have been the principal moving force behind the quest of the women residing at FCCW to hold the VDOC and its medical-care contractor(s) to their obligations under the Eighth Amendment to provide constitutionally-adequate medical care on a reliable, consistent basis at the Prison – a quest which, as this Court has aptly noted, sadly continues. *See* ECF Dkt. No. 544 at 51.

In the Enforcement Phase of this litigation, LAJC attorneys have served as the principal on-going contact with the Class Members, and had the main responsibility for building the extensive factual record upon which the Plaintiffs' April 2017 pre-enforcement Notice Letter to the Defendants and the Plaintiffs' subsequent Motion for Order to Show Cause were based, through the conduct of hundreds of hours of interviews and procurement and in-depth review of thousands of pages of medical and institutional records resulting, *inter alia,* in the generation of the 36 sworn Declarations that were attached as exhibits to Plaintiffs' Show Cause Motion. *See*

Declaration of Abigail Turner ("Turner Decl."), dated June 9, 2019, ¶¶ 19-20 at 5-6 true and correct copy attached hereto as Exhibit A); Declaration of Shannon Ellis ("Ellis Decl."), dated June 12, 2019, ¶ 17 at 6-7 (true and correct copy attached as Exhibit B); Declaration of Adeola Ogunkeyede ("Ogunkeyede Decl."), dated June 11, 2019, ¶¶ 9-10 at 2-3 (true and correct copy attached as Exhibit C).

Once the briefing of the Show Cause Motion, to which LAJC attorneys significantly contributed, was completed, the LAJC had principal responsibility for crafting and propounding the written discovery that the Plaintiffs sought from the Defendants regarding Enforcement Phase issues, and in reviewing and analyzing the Defendants' written discovery responses and the extensive volume of documents the Defendants produced in response to Plaintiffs' inquiries. Ellis Decl., ¶ 23 at 8; *see also* Declaration of Theodore A. Howard ("Howard Decl."), dated June 12, 2019, ¶ 14 at 7 (true and correct copy attached as Exhibit D). Members of the LAJC team likewise expended numerous hours preparing for and conducting the depositions of the majority of FCCW and VDOC witnesses concerning the policies and practices implicated in the medical care issues serving as the basis for the Plaintiffs' claims. Turner Decl., ¶¶ 24-25 at 7-8; Ellis Decl., ¶¶ 18, 20-22 at 7-8; Ogunkeyede Decl., ¶13 at 3-4; Declaration of Angela Ciolfi ("Ciolfi Decl."), dated June 12, 2019, ¶¶ 45, 47 at 13-14 (true and correct copy attached as Exhibit E); Declaration of Brenda Castañeda ("Castañeda Decl."), dated June 12, 2019, ¶¶ 14-16 at 5-6 (true and correct copy attached as Exhibit F).

LAJC attorneys were integral participants in and contributors to the development of the Plaintiffs' trial strategy and themes, and they took the lead in identifying, selecting and preparing Plaintiffs' fact witnesses for their testimony at trial. Ellis Decl., ¶ 27 at 9-10; Ogunkeyede Decl., ¶ 12 at 3; Ciolfi Decl., ¶¶ 43-47 at 11-14; Castañeda Decl., ¶¶ 11-12 at 4-5. The LAJC worked

extensively with Plaintiffs' expert witness, Jackie Clark-Weissman, R.N., on her initial and rebuttal Reports, prepared Ms. Clark-Weisman for her deposition and defended the deposition, and presented her trial testimony. Ellis Decl., ¶ 24 at 9; Castañeda Decl., ¶¶ 13, 17 at 5-6. They also assumed principal responsibility for analyzing the Reports submitted by the Defendants' proffered expert witnesses and deposing those witnesses. Turner Decl., ¶ 24 at 7; Ellis Decl., ¶¶ 20, 22 at 7-8; Castañeda Decl., ¶ 14 at 5.

LAJC attorneys were fully and actively engaged in assisting with the briefing and argument of a host of discovery-related and procedural motions contested by the Parties; participated in the protracted but ultimately unsuccessful Mediation in which the Parties engaged shortly before trial; had substantial involvement in the preparation and submission of the Plaintiffs' Pre-Trial Brief and the Plaintiffs' Motion to Strike the Defendants' belated Motion for Summary Judgment; and were full and active participants in the Pretrial Conference at which motions *in limine* and other pretrial motions were addressed. Ellis Decl., ¶ 26 at 9; Ogunkeyede Decl., ¶ 14 at 4; Ciolfi Decl., ¶¶ 46-47 at 13-14; Castañeda Del., ¶ 12 at 4-5. LAJC attorneys assumed crucial roles in presenting the Plaintiffs' case at trial, including their Opening Statement, and contesting the Defendants' case. Ellis Decl., ¶¶ 28-24 at 10-12; Ogunkeyede Decl., ¶ 15 at 5; Ciolfi Decl., ¶ 47 at 14; Castañeda Decl., ¶¶ 14, 17 at 5-6.[6] After trial, the LAJC took the lead on exhaustively reviewing the record and preparing Plaintiffs' Proposed Findings of Fact and responding to the Defendants' parallel submission, as well as in the briefing of the Parties' competing Rule 59(e) submissions. *See* Ciolfi Decl., ¶ 47 at 14; Howard Decl., ¶ 12 at 5-6.

---

[6] *See also* Declaration of Rachel Deane ("Deane Decl."), dated June 10, 2019 (true and correct copy attached as Exhibit G); Declaration of Kimberly Rolla ("Rolla Decl."), dated June 10, 2019 (true and correct copy attached as Exhibit H).

Meanwhile, concurrently with all of the foregoing Enforcement Phase litigation activities, LAJC attorneys maintained continuous interaction with the women at FCCW concerning their on-going day-to-day experiences and adverse encounters with the medical care system at the Prison, interceded and advocated on the women's behalf with Dr. Scharff and/or FCCW as necessary or appropriate, and participated in meetings with Dr. Scharff during his monitoring visits and in analyzing and commenting upon each of his Reports on the Plaintiff's behalf. Turner Decl., ¶ 20 at 6; Ellis Decl., ¶¶ 13-14 at 5; Ogunkeyede Decl., ¶¶ 9-11 at 2-3; Ciolfi Decl., ¶¶ 22-23 at 6 & *id.*, ¶ 31 at 8; Deane Decl., ¶ 6 at 2; Rolla Decl., ¶ 10 at 3.

For all of the activities described, as more fully detailed and documented in the Declarations and Time Records submitted herewith, the Plaintiffs seek an award for the LAJC's attorneys' hours reasonably and necessarily incurred in successfully pursuing Enforcement Phase relief for the Plaintiffs, charging the PLRA rate of $220.50 for attorney time, $150.00 for time spent by attorneys and others on clerical work, and $110.25 for travel time (*see* Ciolfi Decl., Exh. 6), as follows:

| TIMEKEEPER | REASONABLE HOURS | RATE | TOTAL |
|---|---|---|---|
| Mary Bauer | 86.40 | $220.50 | $17,397.45 |
| Brenda Castaneda | 773.10 | $220.50 | $164,510.25 |
| Angela Ciolfi | 1,007.60 | $220.50 | $218,974.50 |
| Rachel Deane | 132.70 | $220.50 | $27,187.43 |
| Shannon Ellis | 2,535.40 | $220.50 | $536,869.87 |
| Adeola Ogunkeyede | 218.80 | $220.50 | $43,909.50 |
| Kimberly Rolla | 251.60 | $220.50 | $52,351.13 |
| Abigail Turner | 770.30 | $220.50 | $165,482.63 |
| Maggie Yates | 275.50 | $220.50 | $53,754.83 |
| Henry Young | 198.10 | $220.50 | $38,675.40 |

In addition, although in an exercise of professional judgment the LAJC has determined to forego seeking recovery for many hundreds of hours committed to the investigation and prosecution of the Enforcement Phase by numerous volunteer attorneys, paralegals, law clerks,

law student interns and lay volunteers, it does seek recovery for a portion of the reasonable hours incurred by Debra Bremer, John Costello, Calvin Dorsey, Sarah Hour, Collin Hunt, Taylor Mitchell, Shivani Patel and Amie Simmons, as explained more fully in the Declaration of Shannon Ellis (*see id.*, ¶ 36.a.-h. at 12-15), as follows:

| TIMEKEEPER | REASONABLE HOURS | RATE | TOTAL |
|---|---|---|---|
| Debra Bremer | 411.00 | $150.00 | $61,650.00 |
| John Costello | 27.00 | $150.00 | $ 4,050.00 |
| Calvin Dorsey | 30.00 | $150.00 | $ 4,500.00 |
| Sarah Hour | 30.00 | $150.00 | $ 4,500.00 |
| Collin Hunt | 58.50 | $150.00 | $ 8,775.00 |
| Taylor Mitchell | 144.00 | $150.00 | $21,600.00 |
| Shivani Patel | 69.40 | $150.00[7] | $ 9,195.60 |
| Amie Simmons | 124.90 | $150.00 | $18,735.00 |

In sum, the fees as to which recovery is sought by the Plaintiffs associated with efforts undertaken on their behalf by the LAJC total $1,319.112.98 (attorney time) and $133,005.60 (volunteer time) = $1,452,118.58.

### b.    **Wiley Rein LLP**

After the entry of the Court's Findings of Fact and Conclusions of Law and Final Judgment Order approving and requiring implementation of the Parties' Settlement Agreement in February 2016, the attorneys comprising Wiley Rein LLP's litigation team – *see* ECF Dkt. No. 227 at 34-38 – dispersed; since that time, and in connection with the Firm's participation in the Enforcement Phase proceedings, only lead partner Theodore Howard has been involved, subject to the assistance of certain paralegals and Litigation Support personnel.

Once it became clear to Plaintiffs' counsel that FCCW was not meeting its obligations under the Settlement Agreement and that compliance was unlikely to be forthcoming without

---

[7] $110.25 for hours devoted to travel time.

further intervention on the part of this Court, Mr. Howard, in collaboration with his co-counsel at LAJC, assumed the responsibility to prepare and submit the Plaintiffs' April 2017 Notice Letter to the VDOC setting forth the Plaintiffs' concerns regarding the on-going insufficiency of the medical care at FCCW. Howard Decl., ¶ 12 at 5. Thereafter, when the VDOC categorically rejected the premises of the Notice Letter, Mr. Howard took the lead role in drafting the Plaintiffs' Motion for Order to Show Cause and supporting Memorandum, subject to substantial input and assistance from LAJC, which developed the factual foundation for these submissions. *Id.* Mr. Howard likewise prepared the Plaintiffs' Reply Memorandum in response to the Defendants' Opposition to the Show Cause Motion. *Id.*

Throughout the course of the Enforcement Phase, Mr. Howard regularly conferred and collaborated with co-counsel at LAJC on the coordination of strategy with respect to all aspects of the case in order to maximize efficiency and avoid duplication of efforts to the greatest extent reasonably achievable. This included participation in weekly conference calls and occasional multihour in-person meetings at the LAJC's Charlottesville office to address discovery status and strategy, trial themes, allocation of responsibilities concerning motions practice, the nature and substance of interactions with the Compliance Monitor, any prospects for a negotiated resolution, and the like. *Id.*

Once written discovery commenced, Wiley Rein served as the repository for the voluminous documents that Defendants provided in response to the Plaintiffs' document requests. Legal Assistants Hannah Lynn and Rachel Williams and Litigation Support Assistant Paul Michel devoted substantial hours to management and administration of the Firm's document databases and the coordination of tasks to assist Plaintiffs' counsel in responding to

the Defendants' written discovery and Mr. Howard and LAJC attorneys in preparing for depositions of Defendants' witnesses. *Id.*, ¶ 14 at 7.

Mr. Howard took on principal responsibility for one of the Defendants' key witnesses – Stephen Herrick, Ph.D., the VDOC's Health Services Director. Mr. Howard prepared for and conducted Dr. Herrick's deposition over a total of three sessions pursuant to Rules 30(b)(1) and 30(b)(6), Fed. R. Civ. P., and conducted Dr. Herrick's cross-examination at trial. *Id.*, ¶ 12 at 5-6.

Mr. Howard also took on a lead role in interaction with Defendants' counsel concerning various discovery and scheduling issues as they arose, authoring meet-and-confer letters and participating in telephone conferences with opposing counsel in an effort to reach resolutions of various disputes and participating in the preparation, filing and argument of discovery motions addressing matters that the Parties were unable to resolve informally. *Id.* Mr. Howard likewise had substantial involvement in the briefing and argument of the various Motions addressed by the Court at the Pretrial Conference; was the co-lead representative for the Plaintiffs at Mediation; and was the principal draftsman of the Plaintiffs' Pre-Trial Brief. *Id.*

Mr. Howard took the lead in working closely with the Plaintiffs' correctional medical care expert witness, Robert Greifinger, M.D., in the preparation and service of Dr. Greifinger's expert Reports, and he conducted Dr. Greifinger's direct examination at trial. He also handled the cross-examination of one of the Defendants' experts at trial, Alfred Joshua, M.D., in addition to Dr. Herrick; argued for the denial of the Defendants' Motion for Judgment at the end of the Plaintiffs' case-in-chief; and would have presented the Plaintiffs' Closing Argument if the Court had entertained such arguments. *Id.*

Following trial, Mr. Howard had principal responsibility for the preparation of the Post-Trial Brief and Proposed Conclusions of Law accompanying the Plaintiffs' Proposed Findings of

Fact prepared by the LAJC, as well as the Plaintiffs' Response to the Defendants' post-trial submissions. *Id.* An additional Legal Assistant, Elizabeth White, assisted with the coordination and filing of Plaintiffs' post-trial submissions. *Id.*, ¶ 14 at 7.

Finally, outside the scope of the litigation, Mr. Howard handled the responsibility of aggregating, synthesizing and presenting, in writing, the Plaintiffs' comments on each draft Monitoring Report provided by Dr. Scharff to the Parties for their review prior to issuance in final form pursuant to Section IV.2.C. of the Settlement Agreement and on several occasions, he participated in telephone conferences with Dr. Scharff to clarify or elaborate on those comments. *Id.*, ¶ 12 at 6.

Based upon all of the Implementation Phase activities described, the Plaintiffs seek recovery of fees attributable to Wiley Rein's work as follows:

| TIMEKEEPER | REASONABLE HOURS | RATE | TOTAL |
|---|---|---|---|
| Theodore Howard | 993.00 | $220.50 | $218,956.50 |
| Hannah Lynn | 285.00 | $150.00 | $42,750.00 |
| Rachel Williams | 118.00 | $150.00 | $17,700.00 |
| Elizabeth White | 49.25 | $150.00 | $7,387.50 |
| Paul Michel | 386.25 | $150.00 | $57,937.50 |

In sum, Plaintiffs seek recovery of $344,731.50 in fees based on the work of Wiley Rein LLP.

c.     **Kelly & Crandall, PLC**

As described in detail in the Declaration of Angele Ciolfi, Plaintiffs' lead trial counsel at the LAJC, there came a point in time in the months before the Enforcement Phase trial at which it seemed that the Defendants, as a matter of conscious strategy, sought to overwhelm Plaintiffs' counsel by the sheer volume of filings made by the Defendants concerning discovery and scheduling-related matters. *See generally* Ciolfi Decl., ¶¶ 32-42 at 8-11. In order to cope with

this barrage of filings while attempting to stay on track with respect to trial preparation, the LAJC enlisted the assistance of two additional law firms with which it had previously collaborated on prior unrelated matters – Kelly & Crandall, PLC of Fairfax, VA and Consumer Litigation Associates, P.C. of Newport News, VA.

Two attorneys at Kelly & Crandall – Kristi Kelly, a senior litigation partner and Casey Nash, a senior litigation associate – and two of the Firm's experienced paralegals – Julie Fitzgerald and Jennifer Doughton – were involved in providing assistance to the Plaintiffs' litigation team by reviewing Defendants' document productions; drafting and serving follow-up discovery requests and reviewing Defendants' responses thereto; drafting Plaintiffs' discovery motions and responding to Defendants' discovery and procedural motions; participating in telephone conferences with co-counsel regarding strategy and with Defendants' counsel to confer with respect to matters in dispute; and participating in oral argument of such motions during the Parties' several telephonic hearings before Magistrate Judge Hoppe. *See* Declaration of Kristi C. Kelly ("Kelly Decl."), dated June 12, 2019, ¶¶ 11-12, 19 at 4-6 (true and correct copy attached as Exhibit I).

Based on the activities described, the Plaintiff seek recovery of fees attributable to the work of Kelly & Crandall, PLC, as follows:

| TIMEKEEPER | REASONABLE HOURS | RATE | TOTAL |
|---|---|---|---|
| Kristi C. Kelly | 3.40 | $220.50 | $749.70 |
| Casey Nash | 154.40 | $220.50 | $34,045.20 |
| Julie Fitzgerald | 1.30 | $150.00 | $195.00 |
| Jennifer Doughton | 2.00 | $150.00 | $300.00 |

In sum, Plaintiffs seek recovery of $35,289.90 based on the work of Kelly & Crandall, PLC.

### d. Consumer Litigation Associates, P.C.

Like Kelly & Crandell, Consumer Litigation Associates, P.C. (CLA) did not come into the case until the latter stages of the discovery process, in order to provide assistance to the Plaintiffs' established litigation team in addressing a host of then-pending discovery and scheduling issues in dispute between the Plaintiffs and the Defendants.

Three CLA attorneys – founding partner and principal Leonard Bennett, and experienced colleagues Craig Marchiando and Elizabeth Hanes – all experienced consumer protection litigators, participated in the case. In addition to providing substantial assistance with reviewing Defendants' discovery documents, aiding in the drafting and serviced follow-up discovery requests to Defendants and reviewing the sufficiency and substance of Defendants' responses, drafting and responding to discovery-related motions and preparing for and participating in the argument of those motions in telephonic hearings before Magistrate Judge Hoppe, the CLA attorneys also participated in the depositions of several of the Defendants' proffered expert witnesses and prepared *Daubert* motions to exclude certain of those experts and other motions *in limine*. In addition, Mr. Bennett was a moving force in encouraging both sides' representatives to explore possible resolution of their differences through mediation, engaged and retained an experienced and highly-respected mediator, and actively participated in a significant portion of the lengthy mediation session in which the Parties engaged on May 16, 2018. *See* Declaration of Leonard A. Bennett ("Bennett Decl."), dated Jan. 4, 2019, ¶¶ 19-21 at 7-8 (true and correct copy attached as Exhibit J).

Based on the activities described, the Plaintiffs seek recovery of fees attributable to CLA's work as follows:

| TIMEKEEPER | REASONABLE HOURS | RATE | TOTAL |
|---|---|---|---|
| Leonard Bennett | 71.60 | $220.50 | $15,787.80 |
| Craig Marchiando | 52.00 | $220.50 | $11,466.00 |
| Elizabeth Hanes | 96.30 | $220.50 | $21,234.15 |

In sum, Plaintiff seek recovery of $48,487.95 in fees based on the work of CLA.

### C. THE LODESTAR AMOUNT OF $1,879,627.93 IS REASONABLE AND SHOULD NOT BE SUBJECT TO ANY DOWNWARD ADJUSTMENT

The combined lodestar amount of fees incurred by the LAJC, Wiley Rein, Kelly & Crandall and Consumer Litigation Associates collectively in litigating the Enforcement Phase of this case to a successful resolution on behalf of the Plaintiffs is $1,879,627.93.

"The Supreme Court has indulged a 'strong presumption' that the lodestar number represents a reasonable attorney's fee." *McAfee*, 738 F.3d at 88-89; *see generally Perdue*, 559 U.S. at 552 ("the presumption is a 'strong' one" (citations admitted); *Lefemine*, 758 F.3d at 559 n.4 ("'[A] proper computation of the lodestar fee will, in the great majority of cases, constitute the "reasonable fee" contemplated by [Section] 1988'" (*quoting Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986)). Moreover, "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 440; *accord In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010); *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006). Thus, "'[w]here a plaintiff has obtained excellent results, [her] attorney should receive a fully compensatory fee.'" *McAfee*, 906 F. Supp. 2d at 502, *quoting Hensley*, 461 U.S. at 435.

Here, recovery of a "fully compensatory fee" by Plaintiffs' counsel is simply not possible due to the statutory cap on hourly rates imposed by the PLRA. There is, however, no basis for questioning the "excellent results" that were achieved on behalf of the Plaintiffs in the Enforcement Phase of this case, despite the many obstacles placed in the path to a successful

outcome by the Defendants. Although, for technical reasons related to strict construction of the provisions of Rule 65(d)(1)(C), Fed. R. Civ. P., for which the Defendants never even argued until after trial, the Court was prevented from entering a finding of contempt, the Plaintiffs nevertheless succeeded in establishing – by a heightened "clear and convincing" standard of proof – that the Defendants breached their obligations under the Parties' Settlement Agreement in numerous particulars, causing the Court to conclude, *sua sponte*, that entry of an immediate Injunction Order was necessary and appropriate. This outcome certainly constitutes an excellent result under the circumstances, as the Declarations submitted by Professors Spencer and Rutherglen submitted in support of the Plaintiffs' Petition readily attest.[8]

Consideration of the four *Johnson* factors not already taken into account in calculating the lodestar amount – *see McAfee*, 738 F.3d at 89 – does not give rise to a different conclusion.

As regards *Johnson* Factor No. 8, "the amount in controversy and the results obtained," the Plaintiffs did not seek damages, but rather declaratory and injunctive relief in order to bring the Defendants, for once and for all, into compliance with obligations under the Settlement Agreement that they previously acknowledged were necessary in order to bring about a regime of constitutionally-adequate medical care for FCCW. The Court's post-trial Findings of Fact, Conclusions of Law and Injunction Order reflect the degree of Plaintiffs' success in obtaining the relief they sought in the Enforcement Phase.

Concerning *Johnson* Factor No. 10, "the undesirability of the case within the legal community within which the case arose," the lack of attractiveness of prisoner litigation in

---

[8] *See* Declaration of Prof. A. Benjamin Spencer ("Spencer Decl."), dated June 7, 2019, ¶¶ 8-10 at 2-3 (true and correct copy attached as Exhibit K); Declaration of George Rutherglen ("Rutherglen Decl."), dated June 12, 2019, ¶¶ 7-10 at 3-5 (true and correct copy attached as Exhibit L).

general noted by the Court in *Barnard v. Piedmont Reg. Jail Auth.*, Case No. 3:07CV566, 2009 WL 3416228, at *4 n.4 (E.D. Va. 2009), is well confirmed by the accounts by Plaintiffs' counsel and their supporting Declarants in the submissions accompanying the Petition. Turner Decl., ¶¶ 28-31 at 8-9; Ellis Decl., ¶¶ 6-16 at 2-6; Ciolfi Decl., ¶¶ 24-26 at 6-7; Castañeda Decl., ¶ 11 at 4; *see generally* Spencer Decl., ¶ 9 at 2; Rutherglen Decl., ¶ 8 at 4. These considerations weigh heavily in favor of sustaining an award in the amount of Plaintiffs' lodestar.

So too does *Johnson* Factor No. 11, "the nature and length of the professional relationship between the attorney and client," to the extent that this factor has any bearing here. The Plaintiffs' core group of attorneys have represented the women residing at FCCW tirelessly since 2008, without promise of success or remuneration and, even assuming a successful outcome, full and fair compensation for their services could not be realized because of the PLRA's cap on hourly rates. The loyal and steadfast representation provided to Plaintiffs by their counsel under these circumstances merits recognition in the awarding of the lodestar.

Finally, concerning *Johnson* Factor No. 13 – attorneys' fees awards in similar cases – the Plaintiffs' submit that while the amounts of attorneys' fees awarded to prevailing claimants in prisoners' conditions cases, including class actions, vary widely in light of the differences in nature, scope and duration of the cases, the difficulty of the issues presented, the degree of resistance interposed, and the like, the lodestar amount sought by the Plaintiffs here is comfortably within the range of awards identified by their research. For example:

- *Parsons v. Ryan*, Case No. CV-12-0601-PHX-ROS, Order Granting Attorneys' Fees (D. Ariz. May 8, 2019) – After district court found defendant Arizona Department of Corrections in civil contempt for failure to fulfill obligations it assumed under settlement resolving State prisoners' Eighth Amendment claims challenging constitutionally-inadequate medical care, dental care, mental health care and other conditions of confinement, court approved award to Plaintiffs of attorneys' fees and costs in the amount of $1,633,121.80.

- *Asher v. Cate*, Case No. 09-cv-05796-CW (MEJ), 2018 U.S. Dist. LEXIS 105989 (N.D. Cal. June 25, 2018) – In connection with negotiated settlement of class action brought by inmates housed in solitary confinement at Pelican Bay State Prison challenging their conditions of confinement under the Eighth Amendment, court approved fee award in the amount of $1,032,419.52.

- *Cole v. Collier*, Case No. 4-14-cv-1698, 2018 U.S. Dist. LEXIS 97110 (S.D. Tex. June 8, 2018) – Following negotiated settlement resolving Eighth Amendment claims of prisoners alleging exposure to extreme heat during summer months at Wallace Pack Unit of Texas Department of Corrections, court approved award of attorneys' fees and costs totaling $4,500,000.00.

*See also* ECF Dkt. No. 227 at 41-42 (referencing fee awards in additional comparable prisoners' rights cases). This sampling of results reached with respect to the awarding of fees under Section 1988 in analogous actions bears witness to the position that the lodestar amount that Plaintiffs seek to recover here is presumptively reasonable and well within the mainstream.

Moreover, the Defendants should not be heard to complain about the magnitude of the Plaintiffs' lodestar. While Plaintiffs recognize that the award requested is significant, in the abstract, it is neither disproportionate to the nature of the relief they achieved in the Enforcement Phase nor in any way unfair given the extent of the contumacious conduct in which the Defendants engaged throughout this Phase of the proceedings. As is detailed at some length in Ms. Ciolfi's supporting Declaration, the series of groundless procedural motions that the Defendants pursued, some of which were unilaterally withdrawn by the Defendants after subjecting Plaintiffs' counsel to the time and trouble of responding thereto, and the remainder of which were found to be utterly lacking in merit by Magistrate Judge Hoppe, drastically increased the volume of work that was required of the Plaintiffs during the Enforcement Phase. *See* Ciolfi Decl., ¶¶ 34-39, 42 at 9-11; *see also* Turner Decl., ¶¶ 22-24 at 7. In the same vein, in lieu of the Pre-Trial Brief they were entitled to submit under the operative Scheduling Order, Defendants instead chose to file a 47-page Motion for Summary Judgment, with 61 attachments, that they had every reason to know was untimely and otherwise improper, only two weeks before trial,

requiring Plaintiffs' counsel to prepare and file a response asking that the Motion be stricken, which this Court summarily granted. Ciolfi Decl., ¶ 41 at 11. Thus, a substantial portion of the hours incurred by the Plaintiffs for which the Defendants are now asked to pay could have been wholly avoided but for Defendants' unprincipled machinations.

Accordingly, putting to one side the obvious fact that the Enforcement Phase would have never been needed had the VDOC, FCCW and its contractor simply honored the obligations they undertook pursuant to the Settlement Agreement in the first place, the Defendants have no good-faith basis for challenging Plaintiffs' lodestar as excessive.

## II. THE PLAINTIFFS' DOCUMENTED AND REASONABLY-INCURRED ENFORCEMENT PHASE LITIGATION COSTS IN THE AMOUNT OF $116,624.44 SHOULD BE INCLUDED IN THIS COURT'S AWARD

"A prevailing plaintiff in a civil rights action is entitled, under [Section] 1988, to recover those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (*quoting Northross v. Bd. Of Educ. Of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir. 1979); *see generally Daly v. Hill*, 790 F.2d 1071, 1082-83 (4th Cir. 1986) (citing authorities).

Here, Plaintiffs seek recovery on the basis of substantial litigation expenses that were incurred by the LAJC, Wiley Rein, Kelly & Crandall and Consumer Litigation Associates, respectively.

The costs incurred by the LAJC for which recovery is sought totaled $10,156.45. *See* Ciolfi Decl., ¶ 59 at 18-19. Wiley Rein's Enforcement Phase incurred costs totaled $206,956.34. Deducting from that amount the sum of $122,196.22 attributable to payments for the services rendered by Plaintiffs' experts, Dr. Greifinger and Nurse Clark, as to which recovery appears to

be precluded under 42 U.S.C. §1988(c),[9] a balance of $84,760.12 remains, from which a further modest discretionary deduction was made, resulting in a balance of $84,615.64. *See* Howard Decl., ¶ 17 at 8. Kelly & Crandall incurred reimbursable expenses of $79.62, and Consumer Litigation Associates incurred costs of $21,772.73 for which recovery is sought. *See* Kelly Decl., ¶ 17 at 6; Bennett Decl., ¶ 22 at 8.

Based on the foregoing amounts, Plaintiffs seek and request an award of recoverable costs in the total amount of $116,624.44

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Petition for Award of Enforcement Phase Attorneys' Fees and Costs should be granted.

---

[9] Because Section 1988, on its face, appears to limit recovery of expert witness fees to only those civil rights actions premised upon claims under 42 U.S.C. §1981 and 1981a, the Plaintiffs have excluded their expert fees from their recoverage costs. *But cf*. *Cook v. Andrews*, 7 F. Supp. 2d 733, 736-37 (E.D. Va. 1988) (allowing prevailing plaintiff recovery of a portion of expert fees in a Section 1983 action).

DATED:     June 12, 2019

Respectfully submitted,

Angela Ciolfi, VSB No. 65337
(angela@justice4all.org)
Brenda E. Castañeda, VSB No. 72809
(brenda@justice4all.org)
Abigail Turner, VSB No. 74437
(abigail@justice4all.org)
Shannon M. Ellis, VSB No. 89145
(shannon@justice4all.org)
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
(434) 977-0553

            and

Theodore A. Howard (admitted *pro hac vice*)
(thoward@wileyrein.com)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000


By: ___/s/_____
    Shannon M. Ellis

    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June 2019, true and correct copies of the foregoing Plaintiffs Memorandum of Law in Support of Plaintiffs' Petition for Award of Enforcement Phase Attorneys' Fees and Costs were served via the Court's electronic case filing system upon the following:

Diane M. Abato, Esq.
Senior Asst. Attorney General/Chief
OFFICE OF THE ATTORNEY GENERAL
202 N. 9th Street
Richmond, VA 23219
DAbato@oag.state.va.us

and

Edward J. McNelis III, Esq.
SANDS ANDERSON PC
111 E. Main Street
Suite 2400
Richmond, VA 23218-1998
EMcNelis@sandsanderson.com

and

Katherine C. Londos, Esq.
FRITH ANDERSON & PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1420
Roanoke, VA 24006-1240
klondos@faplawfirm.com

_____/s/_____
Shannon Ellis