**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **CYNTHIA B. SCOTT, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:12-cv-36** |
| | ) | |
| **HAROLD W. CLARKE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' PETITION FOR AWARD OF ENFORCEMENT PHASE ATTORNEYS' FEES AND COSTS

Defendants Harold W. Clarke, A. David Robinson, Stephen Herrick, Eric Aldridge, and Dr. Paul Targonski (collectively "Defendants"), by counsel, submit this Memorandum in Opposition to Plaintiffs' Petition for Award of Enforcement Phase Attorneys' Fees and Costs, ECF No. 583. In support thereof, Defendants state as follows:

### INTRODUCTION

After approximately nine months of litigation, the conclusion of a five-day bench trial, and post-trial briefing, the Court ruled that Defendants breached the parties' Settlement Agreement in regard to eight of the seventeen standards Plaintiffs' claimed Defendants violated. The Court entered an accompanying injunction requiring Defendants to accomplish certain tasks within certain dates, while largely declining to order the relief requested by Plaintiffs. The Court then entertained Rule 59 motions and again largely declined to order Plaintiffs' requested relief. Plaintiffs' fee petition followed.[1]

---

[1] At the outset, the aspersions Plaintiffs lob at defense counsel in their various affidavits and brief are not only inaccurate but wholly inappropriate. We will not engage in such inappropriate behavior but rather direct the Court's attention to substantive matters on behalf of our clients.

- 1 -

629.0303\MAE
4822-6184-6939 .v3

<u>**PARTIES' EXPERTS ON FEE ISSUES**</u>

## I. Plaintiffs' Experts on Attorney's Fees

Plaintiffs identified Professors A. Benjamin Spencer and George Rutherglen to opine as to the reasonableness of Plaintiffs' counsels' various hourly rates and time expended on this matter. With all due respect to Professor Spencer, he is not qualified to opine as to the reasonableness of attorney's fees in the Western District of Virginia. Professor Spencer is not listed as ever serving as counsel of record in a single case in the Western District of Virginia, the Eastern District of Virginia, the District for the District of Columbia, or the District of Maryland. Professor Spencer was counsel of record in only six cases before the Fourth Circuit Court of Appeals, presumably during his tenure as a Special Assistant United States Attorney, as all of those cases were criminal matters. Thus, while Professor Spencer contends that he "is familiar with legal fees charged in the Western District of Virginia," there appears to be no factual basis for that assertion. <u>See Robinson v. Equifax Info. Servs., LLC</u>, 560 F.3d 235, 244 (4th Cir. 2009) (requiring "satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which" attorney's fees are sought); <u>see</u> <u>also</u> Fed. R. Evid. 702; <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 141–42 (1999); <u>Westberry v. Gislaved Gummi, AB</u>, 178 F.3d 257, 261 (4th Cir. 1999). Spencer provides no basis to substantiate his familiarity with billing practices, staffing of cases, or market rates. Likewise, Professor Rutherglen has limited practice experience, the vast majority of which occurred over twenty years ago as evidenced by his affidavit.



FRITH ANDERSON + PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\MAE
4822-6184-6939 .v3

## II. Defendants' Expert: Jeff Rosen

Rosen has been engaged in the active practice of law and litigating 42 U.S.C. § 1983 actions and medical malpractice actions for over thirty-four years. He has handled over 500 section 1983 cases during his career. According to court records, Rosen has been counsel of record in 429 cases in the Eastern District of Virginia and forty-three cases in the Western District of Virginia. Mr. Rosen has executed an affidavit regarding his opinions as to Plaintiffs' fee petition, which is attached as **Exhibit 1**.

### ARGUMENT & AUTHORITY

## I. <u>Plaintiffs' Fees Must be Reduced</u>

42 U.S.C. § 1988 provides for an award of attorneys' fees to a prevailing plaintiff. Under <u>McAfee v. Boczar</u>, Plaintiffs bear the burden of establishing their requested amount of § 1988 attorneys' fees is reasonable. <u>McAfee v. Boczar</u> 738 F.3d 81, 88 (4th Cir. 2013).

Calculation of a reasonable attorneys' fee award follows a familiar three-step process: (1) determining the lodestar figure by deciding the reasonable hours expended and rate charged using the <u>Johnson v. Georgia Highway Express, Inc.</u> factors; (2) deducting fees spent on unsuccessful claims unrelated to successful ones; and (3) awarding some percentage of the remaining amount based on the plaintiff's degree of success. <u>Id.</u> (citations omitted). The <u>Johnson</u> factors the Court must consider are the:

> (1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) skill required to properly perform the legal services rendered; (4) attorneys' opportunity costs in pressing the instant litigation; (5) customary fee for like work; (6) attorneys' expectations at the outset of the litigation; (7) time limitations imposed by the client or circumstances; (8) amount in controversy and the results obtained; (9) experience, reputation, and ability of the attorney; (10) undesirability of the case within the legal community in which the suit arose; (11) nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\MAE
4822-6184-6939 .v3

Id. at 88 n.5 The Court must make detailed findings of fact regarding its consideration of the Johnson factors. Newport News Shipbuilding & Dry Dock Co. v. Holiday, 591 F.3d 219, 228 (4th Cir. 2009).

### a. Lodestar calculation

"It is important to recognize that billing practices in the private sector may differ from those acceptable in a § 1983 case, as a fee-shifting statute requires transparency and consistency in determining fees to award to a prevailing party." Supinger v. Virginia, No. 6:15cv17, 2019 U.S. Dist. LEXIS 55612, at *23 (W.D. Va. Mar. 4, 2019) (citing Guidry v. Clare, 442 F. Supp. 2d 282, 295 (E.D. Va. 2006)).

### 1. Pre-litigation Fees and Costs

Plaintiffs request fees and costs for the nine months preceding their filing of their motion to show cause. While "**some** of the services performed before a lawsuit is formally commenced" are recoverable under § 1988, not all pre-litigation efforts are compensable. Webb v. Cnty. Bd. of Educ., 471 U.S. 234, 243 (1985) (emphasis added). Plaintiffs contend that they had a basis for filing their contempt motion by January 2017, but they did not file the motion until nine months later. Nine months is an unreasonable amount of time for preparing a theory of a case and drafting a motion to show cause and supporting brief. See A.V. v. Lemon Grove Sch. Dist., No. 3:16cv803, 2017 WL 2959242, 2017 U.S. Dist. LEXIS 107168, at *17–18 (S.D. Cal. July 11, 2017) (limiting pre-litigation fees to fees incurred one month prior to filing of the complaint); R.L. v. Miami-Dade Cnty. Sch. Bd., No. 07-20321, 2012 U.S. Dist. LEXIS 58277, at *10–11 (S.D. Fla. Apr. 26, 2012). Accordingly, Defendants submit that all fees and costs incurred more than four months prior to the



629.0303\MAE
4822-6184-6939 .v3

filing of the show cause motion (the month of Defendants' response to Plaintiffs' Notice Letter) should be rejected.

> **2. Hourly rates for attorneys Ellis, Young, and Yates and "clerical" rate are too high.**

Plaintiffs claim that attorneys Ellis, Young, and Yates, who graduated from law school in 2015, 2016, and 2017, respectively, should be compensated at the full PLRA rate of $220.50/hour. The prevailing rate for a second-year associate in the community with no prior experience litigating civil rights claims, medical malpractice claims, or any other federal litigation experience, however, is $180/hour. **Exhibit 1**, at 8–9. Additionally, Ms. Ellis had no prior experience in handling either section 1983 claims or medical malpractice claims before her involvement in this lawsuit. Accordingly, her billable time is excessive and should be reduced by fifty percent. **Ex. 1**, at 9.

Plaintiffs also arbitrarily claim a billing rate of $150/hour for "clerical work" performed by attorneys, law students, law firm staff, and volunteers. Notwithstanding the fact that clerical work is not recoverable, the Plaintiffs have not provided any evidence to substantiate that $150/hour is an appropriate rate for paralegal work in the community. McAfee, 738 F.3d at 91; E. Assoc. Coal Corp. v. Dir., OWCP, 724 F.3d 561, 570–71 (4th Cir. 2013); Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994).[2] Furthermore, Plaintiffs' LAJC counsel relied on inexperienced medical students and law

---

[2] To the extent Plaintiffs rely on the Laffey Matrix attached to attorney Howard's affidavit for purposes of their claimed $150/hour rate for clerical work, such reliance is erroneous. The Laffey Matrix has no bearing on fee applications in the Western District of Virginia or the Eastern District of Virginia, particularly when there has been no showing that the litigation was so complex or specialized that it required counsel from outside the local community. See, e.g., Holmes v. Gen. Dynamics Ordinance & Tactical Sys., No. 1:18cv19, 2019 U.S. Dist. LEXIS 100417, at *14 n.5 (W.D. Va. June 17, 2019); United States ex rel. Kirchgessner v. James River Air Conditioning Co., No. 3:16cv232, 2019 WL 413547, 2019 U.S. Dist. LEXIS 16795, at *4–6 (E.D. Va. Feb. 1, 2019); Latson v. Clarke, No. 1:16cv39, 2018 U.S. Dist. LEXIS 189385, at *2–4 (W.D. Va. Nov. 6, 2018).

629.0303\MAE
4822-6184-6939 .v3

FAP
FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

students rather than experienced paralegals. Accordingly, to the extent any clerical work is even recoverable, the rate for paralegal work should be reduced to no more than $90/hour.

### 3. Block billing, insufficient detail, & duplicative work

As set forth more fully below, Defendants seek a reduction in LAJC's fees in the amount of $708,870.02 for block billing, insufficient, detail, and excessive/duplicative work. Defendants have identified a number of fee entries in LAJC's timesheets that overlap various categories of improper billing (i.e., block billing, insufficient detail, and excessive team meetings and/or communications). Accordingly Defendants have submitted a "Master" chart that shows every LAJC fee entry that should be reduced in order to reach the total number of hours that should be reduced to prevent "double-counting." <u>See</u> **Exhibit 2**. Exhibits A–E attached to Mr. Rosen's affidavit are highlighted timesheets identifying the deficiencies in LAJC's timesheets by category. Noted deficiencies reflect, for example, whether a particular entry constitutes block billing and also identifies if an entry fails to provide sufficient detail. Likewise, Defendants seek a reduction in Wiley Rein's fees in the amount of $59,094 for block billing as shown in Exhibit G to Mr. Rosen's affidavit.

### A. Block billing

Block billing is disfavored by federal courts and consists of combining "several tasks together under a single entry, without specifying the amount of time spent on each particular task." <u>Lusk v. Va. Panel Corp.</u>, 96 F. Supp. 3d 573, 582 (W.D. Va. 2015) (internal quotations omitted). When presented with evidence of block billing, the Court may "reduce the fee award by either identifying the specific hours that are not sufficiently



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\MAE
4822-6184-6939 .v3

documented or by reducing the overall fee award by a fixed percentage." Id. (internal quotations omitted).

Plaintiffs' block billed entries are highlighted in Exhibits F and G to Mr. Rosen's Affidavit and amount to 802.1 hours of LAJC time and 268 hours of attorney Howard's time.

### B. Insufficient detail

Billing entries that make "'no mention of the subject matter of a meeting, telephone conference or the work performed during the hours billed'" are not compensable. Abusamhadaneh v. Taylor, No. 1:11cv939, 2013 WL 193778, 2013 U.S. Dist. LEXIS 7451, at *63–64 (E.D. Va. Jan. 17, 2013) (quoting In re Meese, 907 F.2d 1192, 1204 (D.C. Cir. 1990)); Rum Creek Coal Sales v. Caperton, 31 F.3d 169, 180 (4th Cir. 1994).

Exhibit A to Mr. Rosen's Affidavit highlights LAJC's fee entries which fail to provide sufficient detail to be compensable, amounting to 1,100.7 hours.

### C. Duplicative work

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). "Generalized billing by multiple attorneys on a large case often produces unacceptable duplication" and counsel should avoid the use of multiple attorneys "for tasks where such use is not justified by the contributions of each attorney." Rum Creek Coal Sales, 31 F.3d at 180. When coupled with practices like block billing and insufficient documentation, billing by multiple attorneys exacerbates the danger of duplication, excessive staffing, and waste of resources  and



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\MAE
4822-6184-6939 .v3

warrants further reductions to a fee request. <u>Abusamhadaneh</u>, 2013 U.S. Dist. LEXIS 7451, at *66–68. Moreover, prevailing plaintiffs are not entitled to compensation for the time spent by new counsel familiarizing themselves with the case. <u>Supinger v. Virginia</u>, No. 6:15cv17, 2019 U.S. Dist. LEXIS 56957, at *12 (W.D. Va. Apr. 2, 2019) (citing <u>Personhuballah v. Alcorn</u>, 239 F. Supp. 3d 929, 949 (E.D. Va. Mar. 3, 2017)).

As set forth in Mr. Rosen's Affidavit, Plaintiffs utilized sixteen attorneys at four law firms spread across the Commonwealth and the District of Columbia.[3] Staffing the case in this manner led to overstaffing, duplication of efforts amongst the attorneys and clerical staff, excessive travel for "team" meetings, excessive travel for client meetings (sending LAJC counsel from Richmond office to FCCW when other LAJC counsel are located in Charlottesville) and other instances of excessive billing (such as attorneys from multiple offices reviewing discovery and motions/briefs). In addition, multiple attorneys at LAJC, Wiley Rein, Consumer Litigation Associates, and Kelly and Crandall, claim fees for "getting up to speed" as they were brought on board during various phases of the litigation. Examples of the duplicative, excessive, redundant, and unnecessary billing by LAJC are attached to Mr. Rosen's affidavit as Exhibit B, Exhibit C and Exhibit E. Accordingly, Plaintiffs' fee request should be adjusted downward for duplication of efforts and excessive communications and "team" meetings.

### 4. Clerical work

"Purely clerical activities, regardless of who performs them, are considered overhead and are not compensable as . . . attorney fees." <u>Abusamhadaneh v.Taylor</u>, 2013 U.S. Dist. LEXIS 7451 at 110; <u>Supinger</u>, 2019 U.S. Dist. LEXIS 55612, at *20–21 (citing

---

[3] Charlottesville, Richmond, Newport News, Fairfax, and Washington D.C.

629.0303\MAE
4822-6184-6939 .v3

Brown v. Mountain View Cutters, LLC, 222 F. Supp. 3d 504, 514 (W.D. Va. 2016)). "Examples of clerical tasks include filing documents with the court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings, organizing documents, creating notebooks or files, assembling binders, emailing documents, and making logistical telephone calls." Id. at *21 (citing Two Men & A Truck/Int'l, Inc. v. Mover, Inc., 128 F. Supp. 3d 919, 929 (E.D. Va. 2015)).

Plaintiffs' request for approximately $165,000 in self-described clerical work should be summarily denied. Moreover, much of the work billed by project assistants, e-discovery specialists, and legal assistants at Wiley Rein lacks sufficient detail, represents block billing, and represents excessive billing as shown in **Exhibit 3**.

### 5. Unrelated work

Plaintiffs have requested fees for their communications with Dr. Scharff and review of Dr. Scharff's reports. These activities do not represent fees "expended on the litigation," Webb, 471 U.S. at 242, but rather Plaintiffs' counsels' efforts to monitor the Settlement Agreement regardless of the contempt litigation. Accordingly, the time highlighted in Exhibit D to Mr. Rosen's affidavit is not recoverable.

### 6. Revision of time sheets

Billing for revision of time sheets is unreasonable and inconsistent with the recognized practice in Virginia. Accordingly, twenty-five hours of Plaintiffs' fee request should be cut. **Exhibit 1**, at 10.

### 7. Wiley Rein quarter-hour increments

As evidenced in Wiley Rein's timesheets, that firm uses quarter-hour increments for purposes of billing as opposed to tenth-hour increments. "[T]he practice of quarter-



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\MAE
4822-6184-6939 .v3

hour billing may lead to overbilling." E. Assoc. Coal Corp. v. Dir., OWCP, 724 F.3d 561, 576 (4th Cir. 2013) (citing Broyles v. Dir., OWCP, 974 F.2d 508, 510–11 (4th Cir. 1992); Yellowbrook, Inc. v. Brandeberry, 708 F.3d 837, 849 (6th Cir. 2013)). While the Eastern Associated Coal Corp. did not reduce the fees in that case based on the quarter-hour billing practices at issue in that case, the regulations for fee petitions in black lung cases specifically required fee entries to be listed in quarter-hour increments. Id. Plaintiffs', however, have not provided any evidence to substantiate that billing in quarter-hour increments is the ordinary practice in the community. Indeed, their own evidence proves the opposite. Wiley Rein was the only firm representing Plaintiffs that billed in quarter-hour increments. Accordingly, a reduction of up to 60% of Wiley Rein's fees may be warranted, Yellowbrook, Inc., 708 F.3d at 849, to address billing tasks that likely took a fraction of fifteen minutes, Welch v. Metropolitan Life Insurance Co., 480 F.3d 942, 949 (9th Cir. 2007). Of course, this problem compounds the numerous examples of block billing and insufficient detail highlighted previously.

### 8. Costs

Only those costs and expenses associated with the case and substantiated to a reasonable degree of specificity are recoverable under § 1988. Supinger, 2019 U.S. Dist. LEXIS 55612, at *35 (citing Design & Prod. Inc. v. Am. Exhibitions, Inc., No. 1:10cv889, 2011 U.S. Dist. LEXIS 137455, 2011 WL 6002598, at *3 (E.D. Va. No. 30, 2011)). First, the request for costs claimed by Consumer Litigation Associates does not provide any documentation, particularly for the outrageous costs associated with "Flights for travel to New York, Delaware, **Charlottesville**." ECF No. 583-36, *8 (emphasis added).[4] There is

---

[4] It is just over a two-hour drive from Consumer Litigation Associates' office to Charlottesville.

629.0303\MAE
4822-6184-6939 .v3

also no documentation for the "Court Reporter" costs claimed or the "Travel and other related expenses for Moorjani deposition, including office rental for deposition." Id.

Plaintiffs' request for costs related to local travel should be denied, including costs claimed for mileage to and from FCCW and the Legal Aid Justice Center (using the current government rate, these trips are less than thirty miles round trip). "Courts routinely do not permit recovery of local transportation and meal costs and require such costs to be treated as part of overhead." S.W. v. City of New York, No. cv2009-1777, 2017 U.S. Dist. LEXIS 17391, at *25–26 (E.D.N.Y. Feb. 5, 2017) (collecting cases). Moreover, much of the local travel to FCCW claimed by attorney Ellis appear to be duplicate entries and lack sufficient descriptions. See **Exhibit 4**.

Plaintiffs' documentation for copying costs is insufficient as it fails to describe the documents copied, the charge per copy, or the number of documents copied. Supinger, 2019 U.S. Dist. LEXIS 55612, at *36 (citing Adkins v. Crown Auto, Inc., No. 4:04cv42, 2005 U.S. Dist. LEXIS 43459, 2005 WL 256308, at *5 (W.D. Va. Oct. 11, 2005)). Accordingly, the copying costs claimed by Wiley Rein should be denied. See **Exhibit 5**. Wiley Rein has also failed to substantiate the "Database Res. Service" costs, "Local Courier Service" costs, and the "Miscellaneous" costs. Id.

**b. Degree of Success**

Whether to reduce a fee award based on the results obtained hinges on two considerations: "[f]irst did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). It is appropriate to award a reduced fee


FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

amount if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Id. at 440; Supinger, 2019 U.S. Dist. LEXIS 55612, at *28 ("However, when a plaintiff achieves only partial or limited success, the lodestar figure may be excessive notwithstanding the fact that all claims were interrelated, nonfrivolous, and raised in good faith."). Section 1988 fees are not meant to produce "windfalls to attorneys." McAfee, 738 F.3d at 92.

Plaintiff's Memorandum in Support of their Motion for Order to Show Cause sought the following:

1. Finding Defendants in civil contempt "with respect to each of the Performance Indicators set forth in Appendix B to the Settlement Agreement in regard to which VDOC's performance has never advanced beyond 'partially compliant' . . . as well as the two categories of chronic care and referrals to outside providers . . . ."; and
2. Graduated sanctions in the form of daily fines and, if necessary, appointment of a Special Master.

ECF No. 266, at *42, 44–45

In their Post-Trial Briefs, ECF Nos. 534 and 537, Plaintiffs sought the following:

1. A finding that Defendants failed to comply with the following areas of the Settlement Agreement:

   a. Provider Staffing Levels (Settlement Agreement § III.2.b.i);
   b. Sick Call Process/Access to Health Services (Settlement Agreement § III.2.b.iv)
   c. Co-Pay Policy (Settlement Agreement § III.2.b.v);
   d. Diagnosis & Treatment (Settlement Agreement § III.2.b.vi)
   e. Response to Medical Emergencies (Settlement Agreement § III.2.b.vii);
   f. Infirmary Conditions and Operations (Settlement Agreement § III.2.b.viii);
   g. Chronic Care (Settlement Agreement § III.2.b.ix);
   h. Infectious Disease Control (Settlement Agreement § III.2.b.x);
   i. Utilization Management (Settlement Agreement § III.2.b.xi)
   j. Continuity in Supply and Distribution of Medication (Settlement Agreement § III.2.b.xii);
   k. Continuity of Medical Equipment/Supplies (Settlement Agreement § III.2.b.[x]iii);



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 12 -

l.  Medical Grievance Process (Settlement Agreement § III.2.b.xv)
m.  Guidance and Training of Correctional Staff (Settlement Agreement § III.2.b.xviii);
n.  Care and Release of Terminally Ill Inmates (Settlement Agreement § III.2.b.xix); and
o.  Conduct of and Follow-Up with Mortality Reviews (Settlement Agreement § III.2.b..xx)

2.  A remedial action plan(a) requiring working with and communicating with Plaintiffs to develop and implement the plan; (b) containing action steps, strategies, and concrete intermediate deadlines and quarterly benchmarks; and (c) containing data and analyses regarding changes in operations, descriptions of consultations with Plaintiffs; and confirmation of specific steps taken during initial 90 days developing the plan;

3.  Unannounced visits by the Compliance Monitor at least once per quarter in addition to regularly scheduled visits; quarterly reports by the Compliance Monitor to the Court;

4.  Hiring of a full-time Medical Director with Plaintiffs' participation in hiring process;

5.  Vesting of various financial and administrative authority in Medical Director;

6.  Specific requirements for any future RFPs with respect to medical care at FCCW, including participation by Plaintiffs in selection committee and vesting Plaintiffs with ability to challenge any selection by VDOC;

7.  Timely and unimpeded access to information requested by Plaintiffs and deeming any information provided to Plaintiffs as relevant and admissible at any hearing; giving Plaintiffs' access to communicate directly with FCCW Medical Director; and

8.  Quarterly hearings before the Court regarding progress and nature and extent of Defendants' compliance with the Court's Order; appointment of an expert witness pursuant to Federal Rule of Evidence 706 at Defendants' expense; fines; and appointment of a special master.

ECF No. 537, at *28–37.

In its Findings of Fact and Conclusions of Law, the Court found violations of only 8

of the 17 standards identified by Plaintiffs (15 standards identified above plus the



629.0303\MAE
4822-6184-6939 .v3

standards regarding CQI and ADA policies). ECF No. 544, at *33.[5] The Court rejected Plaintiffs' contention that actions predating the Settlement Agreement could be considered for purposes of the contempt motion,[6] and the Court ultimately did not find the Defendants in contempt. Id. at *29, *32. The Court also declined to construe the Settlement Agreement as a Consent Order as Plaintiffs tried to do throughout the proceedings. Id. at *26 n.14. Furthermore, the Court expressly found "[s]ome facets of Plaintiffs' proposal appear no longer needed . . . . Other aspects, in the Court's view, are not narrowly drawn, or extend further than necessary, or are not the least intrusive means of providing a remedy, or might adversely affect the criminal justice system's operation at FCCW . . . ." Id. at *50. In essence, the Court rejected the majority of item 1 and all of items 2–8 above. Because of these flaws, the Court drafted its own injunction order.

The Court's Injunction Order required the following:

1. Maintain staff of 78 full-time "nurses," document daily staffing, and make that documentation available to the Compliance Monitor;
2. Train FCCW nurses (a) how to reorder or refill medications to ensure continuity of supply; (b) how to accurately record/chart distribution of medication and patient's vital signs; and (c) how to timely respond to medical emergencies and how to identify and address signs of cardiovascular and pulmonary afflictions.
3. Provide a report to the Compliance Monitor regarding aforementioned nurse training;
4. Place in every building that "houses" at least one Plaintiff a backboard/stretcher; oxygen tank and mask; and a suction machine;
5. Develop protocol for timely access to medical care and submit to Compliance Monitor and Plaintiff's counsel;



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[5] Plaintiffs originally claimed that Defendants breached their duties with respect to development of a CQI program and ADA policy. See ECF No. 266, at *14, *17. Plaintiffs dropped these claims at trial.

[6] Further calling into question all fees and costs more than four months prior to the Plaintiffs' filing the motion to show cause.

- 14 -

629.0303\MAE
4822-6184-6939 .v3

6. Ensure all mortality reviews contain heading "self-critical analysis" with explanation of how medical care could be improved; if care could not be improved, the mortality review shall be provided to the Court, Plaintiff's counsel, and the Compliance Monitor. Information contained in the report shall be treated as confidential.
7. Train individuals handling medical grievances to provide meaningful responses in a timely manner and implement a system of documenting that such meaningful response is supplied.

ECF No. 545.

Some of the items mentioned in the Court's injunction order were already in place prior to the hearing. Warden Aldridge instituted a process for emergency medical grievances such that prisoners are taken immediately to the triage station to be assessed by a registered nurse effective March 21, 2018. ECF No. 536, Defs. FF 130. Dr. Herrick instituted a new grievance process classifying medical grievances into three categories and providing varying levels of meaningful responses depending on the concerns raised in the grievances in early 2017. Id., Defs. FF 99. Agency nurses already received 8 hours of VDOC training as well as two to three shifts of training and may request additional training. Id., Defs. FF 123.

The parties then submitted Rule 59 motions seeking to alter the Court's Injunction Order. Plaintiffs renewed some of their requests for relief from their post-trial briefs and, in some instances, asserted entirely new requests for relief. See ECF No. 558-1. Of all of their requests, however, the Court granted only one: requiring FCCW to employ 29 full-time registered nurses. Compare ECF No. 555 with ECF No. 574.

Accordingly, while the Court ultimately found that Defendants breached the Settlement Agreement, it did not find breaches of every specific requirement identified by Plaintiffs and awarded almost none of the relief requested by Plaintiffs. This warrants another basis for reduction in Plaintiffs' fee request.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 15 -

629.0303\MAE
4822-6184-6939 .v3

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs have not established the reasonableness of their requested attorneys' fees, and as a result, a reduction in their requested fees and costs is necessary. Accordingly, Defendants respectfully request entry of an Order granting in part and denying in part Plaintiffs' Petition for Award of Enforcement Phase Attorneys' Fees and Costs, and awarding Plaintiffs attorney's fees and costs in an amount not exceeding thirty percent of their requested fees and costs.

Respectfully Submitted,

HAROLD W. CLARKE, A. DAVID ROBINSON, STEPHEN HERRICK, ERIC ALDRIDGE, AND PAUL TARGONSKI, M.D.

/s/_____
Katherine C. Londos (VSB #: 36848)
John C. Johnson (VSB #: 33133)
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:     540/772-9167
Email: klondos@faplawfirm.com
            jjohnson@faplawfirm.com
            nschnetzler@faplawfirm.com

Edward J. McNelis, III
Elizabeth M. Muldowney
Ruth T. Griggs
Sands Anderson PC
1111 East Main Street, Suite 2400
Richmond, VA 23218-1998
Phone: 804-648-1636
Fax:     804-783-7291
Email: emcnelis@sandsanderson.com
            emuldowney@sandsanderson.com
            rgriggs@sandsanderson.com



629.0303\MAE
4822-6184-6939 .v3

Diane M. Abato
SAAG/Chief
Office of the Attorney General
Criminal Justice and Public Safety Division
202 North 9th Street
Richmond, VA 23219
Phone: 804-786-8191
Fax:    804-786-4239
Email: dabato@oag.state.va.us

*Counsel for Howard W. Clarke, A. David
Robinson, Stephen Herrick, Eric Aldridge,
and Paul Targonski, M.D.*



629.0303\MAE
4822-6184-6939 .v3

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2019 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to all counsel of record.

/s/_____

Of Counsel



629.0303\MAE
4822-6184-6939 .v3