CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
05/28/2020
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
       DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

CYNTHIA B. SCOTT, *et al.*,

*Plaintiffs*,

v.

HAROLD W. CLARKE, *et al.*,

*Defendants.*

CASE NO. 3:12-cv-00036

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court on the Report & Recommendation of U.S. Magistrate Judge Joel Hoppe pursuant to 28 U.S.C. § 636(b)(1)(B), proposing findings of fact and a recommended disposition of Plaintiffs' Petition for Award of Enforcement Phase Attorney's Fees and Costs. Dkt. 654 (hereinafter, "R&R"); Dkt. 582 ("Petition").

Originally, Plaintiffs sought an award of $1,879,627.93 in attorney's fees and $116,624.44 in costs. R&R at 6–8. Thereafter, Plaintiff made some "limited" cuts to Legal Aid Justice Center's ("LAJC") fee request, after which they sought $1,703,537 in attorney's fees—a reduction of just over nine percent from their original fee request. Dkt. 672 at 1 n.1; R&R at 7. Judge Hoppe recommended an overall award of $1,028,821.91 (which included $923,660.90 in attorney's fees and $105,161.01 in costs). R&R at 1, 47.

Plaintiffs have filed objections to three portions of the R&R, Dkt. 672; Defendants filed a response, Dkt. 676; and Plaintiffs have filed a reply in further support of their objections, Dkt. 684. Upon this Court's review of those materials and the underlying fee-request submissions, and this Court's *de novo* consideration of those portions of the R&R to which Plaintiffs have lodged an objection, this Court will overrule all objections to the R&R with the exception of Plaintiffs'

second objection as to the recommended reduction of a private lawyer's requested attorney's fees on account of vague billing, and Plaintiffs' third objection related to travel hours—both objections which the Court will sustain in part. In all other respects, the Court will adopt the R&R. Plaintiffs' Petition for Award of Enforcement Phase Attorney's Fees and Costs will be granted in part, and Plaintiffs will be awarded **$1,039,829.70** in attorney's fees and expenses.

## Background

The parties have not disputed the R&R's recapitulation of the background of this action, and so for purposes of its decision on the fee petition, the Court incorporates that background here. Dkt. 654 at 1–6. Briefly, this action is "an Eighth Amendment class action concerning the long-term failure to provide adequate medical care to inmates at the Fluvanna (Va.) Correctional Center for Women (FCCW)." *Scott v. Clarke*, 355 F. Supp. 3d 472, 477 (W.D. Va. 2019), *amended by* 391 F. Supp. 3d 610 (W.D. Va. 2019).

After years of litigation, the parties reached a settlement agreement that would provide for constitutionally adequate medical care at FCCW. Dkt. 221-1 ("Settlement Agreement"). Upon the parties' request, in February 2016, the Court approved the Settlement Agreement, and entered a final judgment order to that effect. *Scott*, 355 F. Supp. 3d at 477. The Settlement Agreement was meant to "insure that the quality and quantity of medical care to be provided by the Defendant to prisoners residing at FCCW … shall meet or exceed constitutional requirements under the Eighth Amendment." Settlement Agreement § III(1). "The point of the Settlement Agreement was to implement specific practices and standards to remedy that constitutional shortcoming" in the "ongoing failure to provide constitutionally adequate medical care at FCCW." *Scott*, 355 F. Supp. 3d at 494 (emphasis omitted). In the Final Judgment Order granting approval of the Settlement

2

Agreement, the Court granted in part Plaintiffs' fee petition, and awarded Plaintiffs $1,500,000 in attorney's fees and costs. Dkt. 262 at 2.[1]

The Settlement Agreement marked less of a conclusion of litigation than a new phase of hostilities. A year and a half later, Plaintiffs filed a motion to show cause why Defendants should not be held in contempt for failing to abide by the Settlement Agreement, including its standards on medical staffing, emergency care and life-saving equipment, and the conditions in FCCW's infirmary. *Scott*, 355 F. Supp. 3d at 479. The parties briefed the motion, and conducted discovery, "the volume and intensity" of which "rivaled the hardest-fought merits litigation." *Id.* Judge Hoppe held numerous hearings in discovery motions and other conferences, the parties filed *Daubert* motions, motions *in limine*, and trial briefs, and Defendants filed a summary judgment motion less than two weeks before the trial date. *Id.* A five-day bench trial commenced on June 11, 2018, and, at the close of Plaintiffs' evidence at trial, the Court granted the motion to show cause, concluding that a *prima facie* case had been made that Defendants had not carried out the Settlement in some respects. *See id.*

The Court ruled that Defendants violated eight standards in the Settlement Agreement, and indeed, "FCCW's *own officials* had—by their *own admission*—actual knowledge that FCCW was not complying with parts of the Settlement Agreement." *Id.* at 495. The Court subsequently issued an injunction to tailor the relief to be provided in light of the Court's findings of fact and evidence before the Court. Dkt. 545. The Court modified the injunction following the parties' motions pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, and the Court issued a further

---

[1] Plaintiffs originally requested an award of $2,063,298 in attorney's fees and $58,674 in litigation costs. Dkt. 227 at 44.

Memorandum Opinion and Additional Findings of Fact and Conclusions of Law in May 2019. Dkt. 573.

In June 2019, Plaintiffs filed their Petition for Award of "Enforcement Phase" Attorney's Fees and Costs. Dkt. 582. By the end of July 2019, the Petition was fully briefed, Dkt. 602, 603, 604, and Judge Hoppe held a hearing on the matter in early November 2019. Dkt. 624. Thereafter, Plaintiffs filed a supplemental brief in support of their request. Dkt. 637.

On March 12, 2020, Judge Hoppe issued a thorough 48-page Report & Recommendation on Plaintiffs' fee request, recommending that the Court award Plaintiffs in total $1,028,821.91 (including $923,660.90 in attorney's fees and $105,161.01 in costs). R&R at 1, 47. After the Court granted Plaintiffs an extension, Dkt. 663, Plaintiffs filed their Objections to the R&R on April 23, 2020, Dkt. 672. Defendants filed a response on May 7, 2020, Dkt. 676, and on May 14, 2020, Plaintiffs filed a reply in further support of their Objections to the R&R, Dkt. 684. No party has sought a hearing. This matter is fully briefed and ripe for review.

## Applicable Law

Courts can award reasonable attorney's fees to prevailing parties in civil rights litigation. 42 U.S.C. § 1988. The fee applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Prison Legal News v. Stolle*, 129 F. Supp. 3d 390, 396 (E.D. Va. 2015) ("The fee applicant bears the burden of proving the reasonableness of the hours expended and the requested hourly rates."). Furthermore, the fee applicant "bears the burden to document the hours" that attorneys spent on the lawsuit and must provide "standardized time records which accurately reflect the work done by each attorney." *Hudson v. Pittsylvania Cnty., Virginia*, No. 4:11-cv-43,

2015 WL 5690854, at *6 (W.D. Va. Sept. 28, 2015) (internal quotation marks and citation omitted).

Fee awards should be "adequate to attract competent counsel, but … not produce windfalls to attorneys." *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986). There is a three-step process to calculating an award of attorney's fees. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the Court determines the lodestar figure "by multiplying the number of hours *reasonably* expended on the litigation times a reasonable hourly rate." *Spell v. McDaniel*, 852 F.2d 762, 765 (4th Cir. 1988). The Court applies the factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), in making that determination of reasonableness. *McAfee*, 738 F.3d at 88. Second, the Court "subtract[s] fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* Third, the Court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.*

A district court reviews *de novo* portions of a magistrate judge's R&R to which objections were made. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); 28 U.S.C. § 636(b)(1). That requires articulating a specific rationale such as would permit meaningful appellate review. *Cruz v. Marshall*, 673 F. App'x 296, 299 (4th Cir. 2016). However, for those portions of the R&R to which no objection has been made, a district court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 Advisory Committee's Note).

## Discussion

At the outset, there are numerous issues that are not in dispute at this stage of the fees'

request. There is no dispute (1) Plaintiffs were "the prevailing party" in the enforcement phase of

litigation; (2) Plaintiffs may recover from Defendants reasonable attorney's fees and costs that

were directly and reasonably incurred in enforcing injunctive relief to cure the ongoing failure to

provide constitutionally adequate care to women at FCCW; (3) over the hourly rates that Judge

Hoppe determined applied for each of Plaintiffs' counsel; (4) Plaintiffs were generally entitled to

recover for work done starting in January 2017 forward; (5) Plaintiffs could not recover for work

performed by LAJC's pro bono support staff; (6) that a five-percent reduction in LAJC attorney

and paralegal hours for non-compensable clerical tasks was appropriate; (7) that a five percent

reduction in the lodestar figure for time spent on unsuccessful claims unrelated to successful claims

was appropriate; and (8) over the award of costs and expenses recommended by Judge Hoppe.  *See*

R&R at 1, 9–10, 19, 43, 45, 47; Dkt. 672; Dkt. 676; Dkt. 684. All of that is undisputed. The Court

is further satisfied there is no clear error in any of these determinations made in the R&R and to

which no objection has been lodged.

Plaintiffs raise three objections. First, Plaintiffs object to Judge Hoppe's proposed twenty-

percent reduction in lawyer time for "overstaffing, duplicative efforts, and excessive hours spent

on preparation." Second, Plaintiffs object to the proposed reductions in lawyer time for "block

billing and unacceptably vague descriptions"—private counsel's time was reduced by five percent,

while LAJC's was reduced by twenty percent (and thirty percent for one lawyer). Third, Plaintiffs

object to the exclusion of nearly ninety hours of travel time for LAJC lawyers. Dkt. 672 at 1–2.

Defendants raised no objections to Judge Hoppe's R&R. For the following reasons, the Court will

overrule Plaintiffs' objections to the R&R, except for Plaintiffs' second objection as it specifically

relates to the proposed five-percent reduction of Mr. Howard of Wiley Rein's hours, and Plaintiffs' third objection to the exclusion of almost ninety hours of travel time. The Court will sustain in part those two objections in those respects.

      1.   <u>Objection to Reduction for Overstaffing, Duplicative Efforts & Excessive Hours</u>

The Fourth Circuit has instructed courts to be "sensitive to the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994). Of course, "there is nothing inherently unreasonable about a client having multiple attorneys," especially in complex cases. *McAfee v. Bozcar*, 906 F. Supp. 2d 484, 501 (E.D. Va. 2012), *vacated and remanded on other grounds*, 738 F.3d 81 (4th Cir. 2013). But a reduction in hours is appropriate where the use of multiple attorneys on a large case produces "unacceptable duplication" of labor. *See Rum Creek Coal*, 31 F.3d at 180.

Judge Hoppe determined that a twenty-percent reduction in attorney hours claimed by all counsel, due to "duplicative efforts, overstaffing, and otherwise excessive hours" was appropriate. R&R at 41; *see also id.* at 32–41, 43. Judge Hoppe found that Plaintiffs' counsel "routinely billed for time they and their colleagues spent in meetings, depositions, and court proceedings without demonstrating how each attorney contributed to the work." R&R at 37. For example, Judge Hoppe took issue with Plaintiffs' counsel billing for regular weekly conference calls, claiming 171 attorney hours of time (resulting in a requested fee of $37,903.95), even though only a few contemporaneous time entries described the call's subject matter. *Id.* at 37–38. Plaintiffs' time entries for an all-day mediation raised similar concerns. Six attorneys billed 121.3 hours ($26,746.64) to attend the mediation, though Judge Hoppe concluded that Plaintiffs had not shown "why two or three of [Plaintiffs'] most experienced attorneys could not handle the mediation

themselves." *Id.* at 38–39. Similarly, eight LAJC attorneys attended the bench trial from June 11 to 15, 2018, billing 300.1 work hours ($66,172.05) and 37.5 travel hours ($4,125.00) to attend the bench trial. *Id.* at 39. Judge Hoppe again thought that Plaintiffs had not shown all those hours by each of the attorneys were reasonable—indeed, one LAJC attorney cross-examined one expert on one day, but seeks compensation for attending all five days of trial. *Id.* Finally, Judge Hoppe found overbilling for attorneys to second-chair depositions. *Id.* at 39–40.

Plaintiffs object to the twenty-percent reduction in lawyer time for "overstaffing, duplicative efforts, and excessive hours spent on preparation." Dkt. 672 at 1. The Court disagrees. A twenty-percent reduction for overstaffing, duplicative efforts and excessive hours is warranted. Plaintiffs seek fees for fifteen attorneys' time billed during the enforcement phase of this litigation. R&R at 7–8.[2] And while it is not inherently unreasonable to hire multiple attorneys, *McAfee*, 906 F. Supp. 2d at 501, as described below, Plaintiffs' counsel's records in numerous respects fail to support billing by numerous attorneys based on the documented contributions of each attorney, *Rum Creek Coal*, 31 F.3d at 180.

Plaintiffs first raise several general arguments on the issue. Plaintiffs argue that a twenty-percent reduction was unreasonable because that is "more than twice the hours Judge Hoppe identified as problematic." Dkt. 672 at 1. In other words, Plaintiffs argue, while Judge Hoppe identified 650 hours of attorney time as raising concerns of duplication and excessive billing, he had proposed cutting twice that: 1370 hours. Dkt. 672 at 14. But specifically identifying 650 hours of time entries reflecting concerns of duplication and excessive billing is no small feat. Indeed, as

---

[2] From LAJC: Mary Bauer, Brenda Castañeda, Angela Ciolfi, Rachael Deane, Shannon Ellis, Adeola Ogunkeyede, Kimberly Rolla, Abigail Turner, and Maggie Yates. From Wiley Rein: Ted Howard. From Kelly & Crandall PLC: Kristi Kelly, and Casey Nash. And from Consumer Litigation Associates: Leonard Bennett, Elizabeth Hanes, and Craig Marchiando.

Plaintiffs concede, a court is not required to identify every time entry found problematic. Dkt. 684 at 4 (acknowledging that "Judge Hoppe was not required to provide a line-by-line explanation for the reductions he proposed"). Rather, a court has the discretion to "use a percentage deduction as a practical means of trimming fat from a fee application." *McDonald v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks omitted); *see, e.g.*, *Loranger v. Stierhem*, 10 F.3d 776, 783 (11th Cir. 1994) ("When faced with a massive fee application, however, an hour-by-hour review is both impractical and a waste of judicial resources."). Given the size of the attorney's fee submissions here—indeed, Plaintiffs' original fee petition and accompanying exhibits alone amounted to nearly 700 pages—this percentage-based cut approach is not only practical, but necessary.

Nor is a twenty-percent reduction unwarranted because it amounts to more than the reduction Defendants sought, as Plaintiffs argue. Dkt. 672 at 14. The difference is slight. Using Plaintiffs' numbers, Defendants sought a reduction of about 19.2 percent for "hours that are excessive, redundant, or otherwise unnecessary."[3] Judge Hoppe proposed a reduction of 20 percent. While Plaintiffs concede it is "permissible" for a Court to impose a greater reduction than that sought by opposing counsel, they argue that would not be appropriate here because Defendants already proposed "extremely aggressive" cuts. Dkt. 672 at 14. There are, however, good reasons to impose modest cuts above those sought by Defendants. Defendants had not raised any excessive or duplicative billing concerns about the hours that Plaintiffs' counsel billed to second-chair depositions, for example.[4]

---

[3] Plaintiffs calculate that Defendants sought a reduction of $289,303, which amounts to 1312.03 hours, *i.e.*, 19.2 percent of the total attorney work hours claimed by Plaintiffs. Dkt. 672 at 14; R&R at 43–44.

[4] *See* R&R at 39–40; Dkt. 602-1 at 3–5.

Plaintiffs next argue that "it appears that Judge Hoppe's deduction for 'team calls' was not based on a concern with duplicative work," but "insufficient detail[]," for which he had already imposed a reduction in fees.[5] Dkt. 672 at 15. In other words, Plaintiffs charge that Judge Hoppe's reduction on this issue was "double-counting." *Id.* But that argument misses the mark. Concerns over unnecessary duplication and concerns over vagueness may overlap in some cases, but that does not mean the Court can only address one problem and not the other. Indeed, "if multiple attorneys bill for completing the same work product and the contribution of each attorney is not justified, the billed hours should be reduced for excessiveness." *Crump v. U.S. Dep't of Navy ex rel. Mabus*, 245 F. Supp. 3d 692, 713 (E.D. Va. 2017) (citing *Rum Creek Coal*, 31 F.3d at 180). Vague billing and excessive billing are often analyzed separately, and each may warrant different reductions in fees requested. *See, e.g.*, *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d 704, 715–17 (E.D. Va. 2012) (separately imposing reductions in fees requested on account of overstaffing and duplication, and for insufficient documentation and block billing). Both concerns are present here: many time entries did not describe the call's subject matter at all (vagueness), nor did Plaintiffs "point to *any* such entries describing how an individual attorney's presence or

---

Notably, Defendants did not challenge any of these hours for Plaintiffs' counsel to second chair depositions. *E.g.*, Dkt. 602-3 at 21 (billing 7.3 hours to second chair Dr. Gable deposition); *id.* at 22 (3.3 hours to second chair Ellen Seabert deposition); *id.* at 93 (7.9 hours to second chair Marsha Stanford deposition); *id.* at 179 (5.4 hours to second chair Stephen Herrick deposition); *id.* at 200 (1.8 hours to second chair Dr. Young deposition). And several of these included additional hours sought for travel time. *See id.* at 93 (2.5 hours travel for Stanford deposition); *id.* at 179 (2.6 hours travel for Herrick deposition).

[5] The Court is not persuaded by that Plaintiffs' objection regarding the recommended award for "team calls" was so general as to amount to a failure to object to Judge Hoppe's R&R. *See Moon v. BWX Techs., Inc.*, 742 F. Supp. 2d 827, 828 (W.D. Va. 2010); Dkt. 676 at 4. Nor is the Court persuaded by Defendants' similar argument that Plaintiffs only raised general objections in their challenge to the R&R on block billing and vague entries. *Id.* at 5. The Court will address Plaintiffs' arguments in full.

10

participation made 'a distinct contribution' to the call," (unnecessary duplication). R&R at 38 (citation omitted).

Of course, internal communications of counsel may be compensable and regular interoffice conferences are commonplace in complex litigation. But where the time entries for such calls are lacking in description and do not demonstrate why one, much less numerous, attorneys needed to be on the call for the requested amount of time, a reduction is appropriate. *Contrast Coward v. Robinson*, No. 1:10-cv-147, 2017 WL 5195868, at *5 (E.D. Va. Nov. 9, 2017) (holding that regular interoffice conferences between fifteen minutes and an hour were fully recoverable where "nearly all of the conference entries indicate that the subject matter of these communications—strategy, discovery, witness development, and logistics—is compensable"). This Court concludes on a *de novo* review that Plaintiffs' time entries for regularly weekly calls in many cases offered little or no description of the content of the calls.[6] Others offered some description.[7] But rarely if ever did Plaintiffs' counsel's time entries describe any contribution made by any attorney, whether regularly or in any specific call. *See* R&R at 38. To be sure, this issue on its own would not justify a twenty-percent reduction for overstaffing or excessive hours, but it does support a reduction. And, significantly, this is not the only type of time entries that raises such concerns.

Plaintiffs also argue that applying a twenty-percent reduction for overbilling or duplicative work is particularly unjustified for private counsel, since in their words, Judge Hoppe "identified very, very little to criticize" in their time entries. Dkt. 682 at 15–16. There are, nonetheless,

---

[6] *See, e.g.*, October 4, 2017 weekly conference call. Dkt. 583-14 (S. Ellis) at 41 ("Weekly Scott team conference call"); Dkt. 583-19 (A. Ciolfi) at 3 ("team call"). Or the February 21, 2018 call. Dkt. 583-14 (S. Ellis) at 60 ("Weekly Scott team call. Circulate notes and to-do list"); Dkt. 583-19 (A. Ciolfi) at 10 ("weekly team call").

[7] *See, e.g.*, Dkt. 583-16 (A. Ogunkeyede) at 2 (describing issues raised on numerous weekly team calls).

numerous time entries by private counsel that Judge Hoppe noted and that this Court has identified that would support a reduction of twenty percent of hours sought for overbilling or duplicative work. For example, time entries for hours sought "preparing" for hearings or calls in many cases lack requisite detail to justify the high number of hours billed, including Kelly & Crandall PLC's time entries,[8] and those of Consumer Litigation Associates,[9] especially considering that numerous lawyers attended each such hearing.[10]

Concerns over excessive billing and duplication also manifested in Plaintiffs' fees for the mediation. Plaintiffs were represented by six lawyers, including two lawyers from private firms and four lawyers from LAJC. *See* R&R at 38–39. All told, Plaintiffs' lawyers billed 121.3 work hours to prepare for and participate in the mediation, and private counsel billed 15.5 hours and 9.0 hours on that day, respectively.[11] No doubt this was a major undertaking. And Plaintiffs' counsel's thorough attempt to try to reach a mutually agreeable solution to their claims through mediation is certainly commendable. But after considering counsel's descriptions of their involvement in the mediation and the time entries, this Court shares Judge Hoppe's view that Plaintiffs have not shown why two or three could not have done the work of six.[12] *See* R&R at 38–39.

---

[8] *See, e.g.*, Dkt. 583-33 at 2 (billing 5.5 hours to attend and prepare for a one hour, fifteen minute hearing on April 12, 2018); Dkt. 583-33 at 1 (billing nine hours to attend and prepare for a three-hour hearing on May 10, 2018).

[9] *See, e.g.*, Dkt. 583-37 at 10 (billing 6.1 hours to attend and prepare for the same one-hour, fifteen-minute hearing on April 12); Dkt. 583-37 at 4 (billing 7.5 hours to attend and prepare for the same three-hour hearing on May 10).

[10] In fact, six lawyers for the Plaintiffs participated in the April 12, 2018 hearing. Dkt. 350.

[11] *See* Dkt. 583-17 (T. Howard) at 33; Dkt. 583-37 (L. Bennett) at 3.

[12] *See, e.g.*, Dkt. 583-36 (L. Bennett) at 8 ("prepared for, attended and participated in the mediation," billing nine hours); Dkt. 583-19 (A. Ciolfi) at 26 ("mediation," billing sixteen hours).

For these reasons, the Court concludes on *de novo* review that a twenty-percent reduction in Plaintiffs' counsel's attorney's fees for "duplicative efforts, overstaffing, and otherwise excessive hours" is warranted.

2.   Objection to Reduction for Block Billing & Vague Descriptions

Billing entries must "describe specifically the tasks performed," however, vague billing entries and "block billing"[13] are both practices that impair the Court's ability to make an assessment on the reasonableness of time expended in a case. *Harwood v. Am. Airlines, Inc.*, No. 1:17-cv-484, 2019 WL 3244200, at *4 (E.D. Va. May 16, 2019) (internal quotation marks omitted). More specificity is demanded of lawyers' timekeeping records. *See Rum Creek Coal*, 31 F.3d at 180 (the Fourth Circuit has "frequently exhorted counsel to describe specifically the tasks performed").

Judge Hoppe found that Plaintiffs' records "do reflect some unacceptable block billing." R&R at 23. Judge Hoppe gave examples from LAJC's executive director's entries, as well as "fairly minor" examples of block billing by attorneys at Kelly & Crandall and Consumer Litigation Associates, and some by Wiley Rein support staff. *Id.* at 24–25. But in his view, the "bigger flaw" was that "many entries are too vague to understand," which was a particular problem in LAJC's attorney's records and Wiley Rein's timesheets (except those of Mr. Howard). *Id.* at 25–26. Judge Hoppe colorfully explained that "Ms. Ellis's timesheet alone contains 390 unique entries labeled 'Review and respond to case-related email,' all billed at an attorney rate of $220.50 per hour, that do not provide any information about the email's subject matter," which resulted in "more than 240 hours—or *six* full workweeks—just reading and responding to 'case-related email,'" at a total

---

[13] Block billing is a term for "grouping, or lumping several tasks together under a single entry, without specifying the amount of time spent on a particular task." *Harwood*, 2019 WL 3244200, at *4.

cost of almost $53,000 in attorney's fees. *Id.* at 25. In Judge Hoppe's view, the time entries of other LAJC attorneys were also vague in describing matters such as time spent reviewing Defendants' document productions, and time spent "preparing" for meetings. *Id.* at 26.  Ultimately, Judge Hoppe recommended the following reductions in hours for block billing and unacceptably vague descriptions: a twenty-percent reduction for most LAJC's attorneys' time; a thirty-percent reduction for one LAJC attorney's time, a five-percent reduction for private firm attorneys; and a forty-percent reduction for private firm support staff. *Id.* at 23–28, 43.

Of these, Plaintiffs object that a reduction for vagueness of twenty-percent for most of the LAJC attorneys' time is unwarranted—instead, they propose a ten-percent reduction. Dkt. 672 at 2, 17–19. Plaintiffs also object to a five-percent reduction in law firm attorneys' time. *Id.* at 18.[14] The Court will address each objection in turn.

> a.  *Reduction in LAJC Time by Twenty Percent*

Vague time entries are a bigger impediment to the Court's assessment of the reasonableness of Plaintiffs' fee request than block billing. A case in point is the 390 entries from one LAJC lawyer that just read: "Review and respond to case-related email." R&R at 25. Just as vague are numerous entries: "Review and respond to client letters," or something comparable.[15] Substantial attorney time was billed in entries that only state "document review," "doc review," or something similar, without elaboration.[16] Many time entries in the run-up to trial were similarly vague. There

---

[14] Plaintiffs do not challenge Judge Hoppe's recommendation that the number of paralegal hours claimed by law firms' support staff should be reduced by forty percent or that one junior LAJC lawyer should have his hours reduced by thirty percent. Dkt. 654 at 27, 43; Dkt. 672 at 19.

[15] *See, e.g.*, Dkt. 583-14 (S. Ellis) at 8 (March 19, 2017), 11 (April 7), 14 (April 18 and 21), 16 (May 2), 17 (May 5), 23 (June 9), 24 (June 14).

[16] *See, e.g.*, Dkt. 583-19 (A. Ciolfi) at 8 (January 31, February 1 and 5, 2018), 9 (February 6–9), 10 (February 11), 13 (March 11–12), 19 (April 5, 8, and 9); Dkt. 583-16 (A. Ogunkeyede) at 3 (February 1–2, March 18, 2018).

is little for the Court to go on when thirteen billable hours are sought for "trial prep," or 8.5 hours for "trial prep," or 6.5 hours for "trial prep."[17] A time entry for sixteen billable hours simply read "mediation."[18] Judge Hoppe thoroughly catalogued entries of this nature that were too vague, R&R at 25–30, as contrasted with those types of entries that were more detailed, including those describing research, *id.* at 26 n.10.

The Court finds that LAJC's claimed time for communications, discovery, and preparing for meetings, depositions, and trial were in many instances too vague—more description is needed in order to for the Court to be able to assess the reasonableness of the time spent on the work. *See Lamonaca v. Tread Corp.*, 157 F. Supp. 3d 507, 520 (W.D. Va. 2016) (Conrad, C.J.) ("document review," "work on discovery," and "trial preparation" time entries were vague and inadequate); *Coward*, 2017 WL 5195868, at *5 (entries that "simply state 'prepare for' or attend' the respective hearing or trial" were too vague "to permit the Court meaningfully to determine whether the time claimed was reasonable"). There were also instances of block billing in LAJC's attorneys' time entries that also made it difficult for the Court to discern the reasonableness of the total time expended and the amount that was spent on each individual task.[19] While each case awarding attorney's fees is based on the particular fees submissions at issue, courts have often reduced requested fees by twenty percent on account of vague time entries, *see, e.g.*, *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 621 & n.14 (E.D. Va. 2015), and reductions for block billing have ranged between ten and twenty percent, *id.* at 621–22 & n.15. Considering

---

[17] Dkt. 583-19 (A. Ciolfi) at 29.

[18] Dkt. 583-19 (A. Ciolfi) at 26.

[19] *See, e.g.*, Dkt. 583-19 (A. Ciolfi) at 28 (billing nine hours on May 28, 2018 for "trial prep; opp to motion to continue; young motion; outline remedies"), *id.* (billing nine hours on June 1, 2018, for "trial prep; draft pretrial order; response to MSJ"); R&R at 23–24 (citing entries from A. Turner, LAJC Litigation Director).

the instances of vague time entries and block billing by LAJC in this case, a combined reduction of requested fees by twenty percent fits comfortably within the range of comparable reductions identified from precedent.

Finally, Plaintiffs argue that a reduction of twenty percent of LAJC's hours is too high, because it does not account for the hours they already trimmed from their request in the exercise of their billing judgment or other voluntary reductions from their initial fee request. Dkt. 672 at 2, 18–19. The Court commends Plaintiffs for exercising that billing judgment and trimming hours that could have been "excessive, redundant, or otherwise unnecessary." *See Hensley*, 461 U.S. at 434. But Plaintiffs' removal of other hours from its fee petition that they felt no longer should be included in the exercise of their billing judgment does not provide the Court any more detail on otherwise vague descriptions on those hours that remain.

The Court finds on *de novo* review that a reduction of LAJC time by twenty percent on account of block billing and vague time entries is warranted. Plaintiffs' objection to the R&R will be overruled in this respect.

b. *Reduction of Private Firms' Time by Five Percent*

Plaintiffs argue that Judge Hoppe's recommended five-percent reduction for private firm attorney's fees is unjustified. Plaintiffs note that, in the case of Mr. Howard in particular, Judge Hoppe "repeatedly *complimented*" the precision of his billing records, but he nonetheless imposed a five percent reduction for all private counsel. Dkt. 672 at 2. To start, a five-percent reduction on account of vagueness and block billing in the billing records of Kelly & Crandall PLC[20] and

---

[20] There were numerous instances of block billing in Kelly & Crandall time entries. *See, e.g.*, Dkt. 583-34 (C. Nash) at 1 (billing four hours for "Review of pending motions. Send write-up to team and suggested resolutions. Review Motion for Extension re: email discovery. Start drafting opposition to Motion for Extension."); Dkt. 583-32 (C. Nash) at 1 (March 30, 2018 entry).

Consumer Litigation Associates cannot reasonably form the basis of an objection here.[21] *See Lusk v. Virginia Panel Corp.*, 96 F. Supp. 3d 573, 583 (W.D. Va. 2015) (reducing total fee award by five percent for "several examples of block billing") (Urbanski, J.).

Rather, Plaintiffs' argument appears to be largely focused on whether Mr. Howard's fees should have been reduced at all. Dkt. 672 at 17–18. Mr. Howard's billing records reflected a greater level of detail than the other private counsel who submitted time entries in support of their fee petition. *See* Dkt. 583-17. Rather than block billing, Mr. Howard carefully broke out the amount of time spent on various tasks within each time entry to the tenth of an hour, and his time entries were quite thorough throughout. To be sure, his records were not perfect. There were instances of vague time entries, such as those relating to the standing conference calls.[22] But the Court would on *de novo* review apply a 2.5 percent reduction of Mr. Howard's hours sought, rather than five percent as recommended. The Court will therefore sustain in part Plaintiffs' objection to the R&R in this respect. The Court finds that a five-percent reduction for the other private firm attorneys is wholly appropriate and warranted. The lodestar will be modified as follows:

While Mr. Howard claimed 993 attorney work hours, the Court finds that Mr. Howard reasonably billed **769.58** hours. This is a 22.5 percent reduction in hours, including a twenty percent reduction for overstaffing, duplicative efforts, and excessive hours, and a 2.5 percent

---

And there were instances of vague time entries. *See, e.g.*, Dkt. 583-33 (C. Nash) at 1 (billing 3.5 hours for "Review of critical case documents").

[21] In Consumer Litigation Associates' time entries, vagueness was more of a problem than block billing, both for larger and smaller time increments. *See, e.g.*, Dkt. 583-37 (L. Bennett) at 3 (billing nine hours to "attend: mediation"); *id.* at 8 (billing one hour to "review discovery").

[22] *See, e.g.*, Dkt. 583-17 (T. Howard) at 26 (billing 1.5 hours on January 24, 2018, for "Email communications with co-counsel and participation in weekly Plaintiffs' Litigation Team Conference Call"); *id.* at 30 (billing 1.5 hours on March 21, 2018, for "participation in weekly call of Plaintiffs' Litigation Team"); *id.* (billing one hour on April 11, 2018, for "participation in weekly Plaintiffs' Litigation Team call").

reduction for vagueness in time entries. The Court finds that would result in a reasonable fee award of **$169,691.29** to Wiley Rein.

While Kelly & Crandall had claimed 157.8 attorney work hours, the Court finds that its attorneys reasonably billed **118.35** hours (a twenty-five percent reduction), which would result in a reasonable fee award of **$26,096.18** to Kelly & Crandall.

While Consumer Litigation Associates claimed 219.2 attorney work hours, the Court finds that its attorneys reasonably billed **164.4** hours (a twenty-five percent reduction), resulting in a reasonable fee award of **$36,250.20** to Consumer Litigation Associates.

This results in a higher reasonable fee award of **$232,037.67** for the private attorneys in total (**$5,473.87** more than the amount recommended by Judge Hoppe, *see* R&R at 44). The Court notes, however, that a further five percent reduction in the new lodestar will be applied to account for time spent on unsuccessful claims unrelated to the successful ones. *See* R&R at 45.

### 3. Objection to Exclusion of Travel Time

Finally, Plaintiffs contend that the R&R erroneously excluded 89.5 hours of travel time for LAJC lawyers. Dkt. 672 at 2, 19. Plaintiffs originally sought 342.90 hours of travel time of ten LAJC lawyers, later reduced to 340.5 hours after Plaintiffs withdrew their claim for fees for one attorney. Dkt. 672 at 2; R&R at 6–7 & n.3. The parties do not dispute that Plaintiffs sought compensation for 340.5 travel hours, nor do they dispute that figure should be the starting point notwithstanding the R&R's references to lower numbers of claimed travel time. Dkt. 684 at 6; Dkt. 676 at 5–6; Dkt. 672 at 19. Still, Defendants argue that a twenty-percent reduction of travel time is appropriate and in line with Judge Hoppe's twenty-percent reduction of LAJC's claimed hours for overstaffing and duplicative efforts. Dkt. 676 at 5–6. The Court disagrees that a reduction of that amount is warranted here.

18

Nonetheless, the Court finds that Plaintiffs have not fully substantiated their request for 340.5 hours of travel time by nine LAJC lawyers. For example, as Judge Hoppe noted, eight LAJC lawyers billed 37.5 travel hours to attend the bench trial, including one lawyer who was in attendance all five days but only conducted a cross-examination of one witness on one day. R&R at 39. Similar concerns about excessive hours or duplication of effort were reflected in the billing of six lawyers to attend the mediation, including some travel, and second-chairing depositions. Given the findings of the Court regarding the reductions appropriate on account of excessive hours and duplication of effort, the Court concludes that a reduction in travel time is warranted as well.

The Court, however, credits Plaintiffs' assertions that travel to FCCW to visit and communicate with their clients *in-person* is an especially integral part of the attorney-client relationship in this case, requiring increased travel for in-person client visits.[23] The Court will therefore only reduce LAJC travel time by **ten percent**. The Court will sustain Plaintiffs' objection to the R&R in part; and finds, on *de novo* review, that reducing Plaintiffs' 340.5 travel hours for LAJC lawyers by **ten percent** is appropriate. Accordingly, the Court finds that **306.45** hours of travel time for LAJC is reasonable, resulting in an award of **$33,786.11** for their travel (**$6,113.31** more than the amount for LAJC travel recommended by Judge Hoppe, *see* R&R at 44).

\* \* \*

Incorporating the higher figure for private lawyers' attorney work hours (on account of the increase due Wiley Rein), and the higher figure for travel, the new lodestar would be **$983,861.78**. Then, after the reduction of five percent for time spent on unsuccessful claims unrelated to

---

[23] *See, e.g.*, Dkt. 583-3 (S. Ellis) at 1 ("I served as primary attorney contact for our clients incarcerated at the [FCCW]. This required me to travel to FCCW frequently to meet with clients. Since January 10, 2017, I have visited FCCW more than 100 times."); *id.* at 2 (describing barriers to communications by telephone, email and mail).

successful ones (which is not in dispute), this would result in an award of **$934,668.69** for reasonable attorney's fees incurred in enforcing the Settlement Agreement.

### Conclusion

The Court concludes that Plaintiffs are entitled to the following reasonable attorney's fees and costs. The Court will award Plaintiffs **$934,668.69** in attorney's fees and **$105,161.01** in costs, resulting in a total award of **$1,039,829.70.**

The R&R is therefore adopted except in relation to the Plaintiffs' second objection as it related to the reasonable hours of Mr. Howard, which the Court will sustain in part, and Plaintiffs' third objection regarding travel, which the Court will sustain in part. In all other respects, the R&R will be adopted, and Plaintiffs' objections otherwise overruled. Plaintiffs' petition for attorney's fees and costs will be granted in part in an Order to follow.

The Clerk of Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this __28th__ day of May, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE