CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
10/09/2020
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

Nicholas Scharff MD MPH
252 Hathaway Lane
Wynnewood, Pennsylvania 19096

October 5, 2020

Hon. Norman K. Moon
United States District Court Western District of Virginia
P.O. Box 657
Lynchburg, Virginia 24505

Re: Case No. 3:12-cv-00036
Order of 9/28/2020

Dear Judge Moon:

The document referenced above orders several things of the compliance monitor in Scott v. Clarke et al. However, on the date you issued the order I wrote to resign my position as monitor, as of the last day of October. You kindly scheduled a telephone conference on the following day to discuss these matters. During the call, you directed that I write you outlining my thoughts about the feasibility of performing the tasks set out in the Order. I write now in response to your direction.

The Order specified two tasks for the compliance monitor to perform. I will address these areas separately.

1. <u>Investigation of reported inadequate access to sick call and grievance procedure, failure to prescribe medication</u>.
This request is similar to many I have had from plaintiffs' attorneys in which no specific cases are provided. Each of the elements of this request is represented in the standards of the Settlement Agreement, and I have examined the first two several times from a systemic perspective, i.e. quantifying the timing and quality of responses.

I have just received from FCCW their QI study of the new sick call access process which was initiated during the epidemic and which includes utilization statistics for the past several months. This does not seem to reflect a lack of or loss of access, but it did find that the interval between request and encounter was prolonged as compared to previous, pre-COVID audits. I have requested more precise data on the outliers beyond 3 days. This particular audit addressed access only and did not examine the quality of the care delivered. As usual, I will send a copy of my report on this audit directly to the Court.

As to the third, I have not examined the failure to prescribe medication except in responses to many individual letters of complaint over the past 4 years. In recent months, these have been rare. Several audits have described and quantified the over-prescription of medication, and Dr. Targonski has done some work in this area. I have not audited this element in 2020.

1

Hon. Norman K. Moon          Re: Case No. 3:12-cv-00036          October 5, 2020
                                      Order of 9/28/2020

This sort of auditing is feasible remotely, though remote auditing is comparatively cumbersome, and I am not sure I could complete all three of these this month. I have, however, requested the relevant data from FCCW.

I presume that plaintiffs' attorneys are asking for these reviews because of individual reports of failures, but I have not received any from them. Not finding evidence of systemic failure in an audit does not mean that individual cases of failure do not exist. I have objected consistently and repeatedly to unspecified, unsupported allegations of this type, because a) I believe I should be able to examine the evidence that a problem exists before initiating an extra ad hoc examination of a large program element, and b) if there is a problem with the management of an individual patient, it should be brought to my attention and that of the medical director to be addressed and corrected. To date, none of the complaints regarding sick call access or failure to prescribe have been forwarded, though I am currently investigating, at plaintiffs' attorneys' request, the case of Kiesha Bunns, one of whose complaints concerns the management of her grievances.

If either the Court or the plaintiffs' attorneys wish to identify specific patients or instances to me in any of these 3 areas, I am glad to investigate them as I have innumerable times in the past. If there are many, I should require FCCW to look for root causes and cures.

2: <u>Proposal of temporary measures for remote ascertainment of FCCW's compliance with the terms of the Settlement Agreement</u>

a) circulating a schedule for remote monitoring

Naturally, the scheduling of remote monitoring should await the arrival of the next compliance monitor, since it will be that individual, not I, who carries it out. I am, however, opposed to the idea of publishing such a schedule in any detail, most certainly to anyone except the Court. I have scheduled audits in consideration of several factors including: current deficiencies and complaints, those of the plaintiffs' attorneys not least among them; the calendar of reforms and improvements I have urged or demanded; the need to audit each of the first 20 standards with some frequency. Areas of current non-compliance or of active improvement need to be reviewed more frequently than areas in which FCCW is compliant.

Also, were the schedule of audits published in advance, I would expect plaintiffs' attorneys to object that FCCW was simply tuning-up those elements to be audited and that observed performance was not typical or representative. In short, I do not believe the Settlement Agreement entitles the parties to advance notice of the compliance monitor's auditing schedule, much less to direct or influence it in any way, and I don't think it should.

Instead, I would suggest two procedures:
- FCCW should regularly and frequently monitor each of the first 20 elements of the Settlement Agreement, not primarily from a QI perspective but with specific focus on the requirements for each as enumerated in the Settlement Agreement – a QA perspective. Dr. Targonski has asked me to assist in constructing templates for the 20 standards, and I believe we should be able to finish them before my retirement.

Hon. Norman K. Moon          Re: Case No. 3:12-cv-00036          October 5, 2020
                             Order of 9/28/2020

- The new compliance monitor should have access to these templates but unquestionably should be free to modify them or disregard them entirely. In any case, the compliance monitor should be afforded FCCW's audits and primary data. It would then be relatively simple for the compliance monitor to validate FCCW's findings and/or to repeat the audits using data of the monitor's own selection.

In the present context, while visits are not possible, it is pointless to think or plan in terms of intermittent inspections. Rather, the process of inspection should be continuous, and I would recommend frequent audits, perhaps weekly, bi-weekly, or monthly, directed to individual elements of the Settlement Agreement. These should be reported and summarized in periodic reports to the Court which might be analogous to my visit reports over the past 5 years. I believe that to demonstrate sustained compliance for each standard requires compliance in least 2 successive audits separated by at least 1 year.

b) interviews with relevant class members and counsel by video-conference no less frequently than if in-person visitation had been feasible

I see no real objection to this. But given that "casual" encounters with patients will not be possible, I think the patients to be interviewed should be selected by various parties, not merely by the plaintiffs' attorneys, and should include anyone the monitor wishes to talk with for any reason. What if anything, makes one class member more "relevant" than another should be in the monitor's determination, not that of either of the parties.

I also think the monitor must retain the option of limiting the interviews as seems most useful and tolerable. I do not believe the Settlement Agreement gives either party the power of determining or directing the monitor's interviews.

c) a proposed schedule for the remainder of 2020 for a written report assessing FCCW's compliance with the terms of the Settlement Agreement, as if in-person visitation had been feasible

In our telephone discussion subsequent to this order and my notice of resignation, you suggested I write a summary report for the Court and for the use of the next compliance monitor, providing my view of FCCW's progress over time toward compliance and of remaining areas of non-compliance. I will be happy to do so, and I will provide it before the end of this month.

d) whether additional personnel (i.e., assistant monitors), or equipment would be useful to assist with monitoring function

This is an extremely useful suggestion and, in fact, the one thing I wished most I had asked for before accepting this assignment. It has been immensely difficult to get through the body of data involved in each of the audits during four days on-site, and honestly, four days of such intense work has seemed about the limit of my stamina. A second person assisting would have been useful and helpful. Although adding a second person would increase the cost of auditing, I believe the monitor's ability to audit more quickly and more frequently the many elements of the Settlement Agreement would warrant the expense.

Hon. Norman K. Moon  	Re: Case No. 3:12-cv-00036  	October 5, 2020
	Order of 9/28/2020

However, I would caution in the strongest terms against having more than one monitor. Any second person should work for and at the pleasure of the designated compliance monitor. And finally, there must never be more than one source of information coming from the monitor.

Since this letter is not a plan for remote monitoring, I have not submitted it to the parties for comment, but if the Court feels it would be useful, I will be happy to do so.

Respectfully submitted,

Nicholas Scharff MD
NS/pc