IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| CYNTHIA B. SCOTT et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 3:12cv00036 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| HAROLD W. CLARKE et al., | ) | By:    Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiffs' supplemented petition for award of attorneys' fees following their motion to enforce the Settlement Agreement's quarterly reporting provision. ECF Nos. 688, 734; *see* Mem. Op. of May 7, 2020, ECF No. 677; Settlement Agreement § III(2)(b)(xxi), ECF No. 221-1, at 14; Pls.' Mot. to Enforce, ECF No. 651. Plaintiffs seek $11,445.60 for bringing the motion and fee petition, *see* ECF Nos. 688, 705, plus another $957.60 for time spent trying to "cooperatively engage" Defendants and "drafting and filing a motion for mediation," ECF No. 734. Their supplemented petition seeking $12,403.20 total in attorneys' fees has been fully briefed, ECF Nos. 689, 702, 705, 745, 749, and may be resolved without a hearing. Having considered the parties' arguments, evidence, and the applicable law, I respectfully recommend the Court award Plaintiffs **$8,570.80** in attorneys' fees incurred in bringing the enforcement motion. ECF No. 688. Plaintiffs have not shown that they are entitled to attorneys' fees for time spent corresponding with Defense counsel or bringing the motion for mediation. ECF No. 734.

I. Background

Almost nine years ago, women at the Fluvanna Correctional Center for Women ("FCCW") filed this lawsuit "seeking a remedy for pervasive constitutionally deficient medical care." *Scott v. Clarke*, 355 F. Supp. 3d 472, 506 (W.D. Va.), *amended by* 391 F. Supp. 3d 610

(W.D. Va. 2019) (Moon, J.). "After two years of litigation, and days before a scheduled bench trial" on the merits, "the parties reached a settlement in principle. They spent the next ten months hashing out the details." *Id.* at 478. (citation omitted). In September 2015, the parties jointly submitted a "detailed settlement agreement ('Settlement Agreement' or 'the agreement') to provide for constitutionally adequate medical care at FCCW." *Id.* at 477; *see id.* at 477–79. "The point of the Settlement Agreement was to implement specific practices and standards to remedy [ongoing] constitutional shortcoming[s]" in both the quantity and quality of medical care provided to women housed at FCCW. *Id.* at 494; *see also Scott v. Clarke*, 2016 WL 452164, at *4 (W.D. Va. Feb. 5, 2016) ("[T]he Settlement Agreement addresses with particularity each of the problems Plaintiffs identified in their Complaint and fully developed in the record with the evidence supporting their . . . motion for class certification and their . . . motion for partial summary judgment."). The agreement "sets out twenty-two standards governing FCCW," plus "other discrete requirements," *Scott*, 355 F. Supp. 3d at 495, designed to "measure its performance" with respect to each standard and promote "comprehensive quality improvement," Settlement Agreement § III(b)(2)(xxi)–(xxii).

As part of the agreement, the Court appointed a Settlement Compliance Monitor to visit FCCW four times a year (for at least three years) to speak confidentially with inmates and staff, inspect facilities, and review medical files and grievances as he deemed necessary to "provide a report reflecting the results of each visit to the parties." *Scott*, 2016 WL 452164, at *4. *see also Scott*, 355 F. Supp. 3d at 501–02. These detailed reports were to "identify to the parties any areas or subjects" where the Virginia Department of Corrections ("VDOC") was "not in compliance with the provisions of the settlement or Eighth Amendment standards," and VDOC would "have 30 days from the date of such notice within which to correct any areas of noncompliance. . . ."

2

*Scott*, 2016 WL 452164, at *4. If the problem(s) persisted after 30 days, then Plaintiffs could file

"a motion in this Court to enforce the settlement, seek contempt sanctions, or both." *Id.*; *see, e.g.*,

*Scott*, 355 F. Supp. 3d at 504 ("The Court has reviewed the eight standards it has found

Defendants breached, as well as the egregious facts surrounding many of them. The Court finds

those standards are clear enough that Defendants should easily have known that what has

transpired at FCCW is unacceptable under the agreement.").

Separately, FCCW must "measure its performance on each aspect of the obligations

imposed by th[e] Settlement Agreement" and "analyze[] qualitatively" the quantitative data

collected from mortality reviews, grievance analyses, and patient satisfaction surveys "so as to

identify opportunities for improvement and identify remedies" for shortcomings. Settlement

Agreement § III(b)(2)(xxi); *see* Mem. Op. of May 7, 2020, at 5 ("The language of this specific

provision clearly places on *FCCW*—not the Compliance Monitor—the obligation to 'measure *its*

performance.'"); *id.* at 9 (noting that § III(b)(2)(xxi) "was meant to have independent effect from

the other reporting and monitoring" provisions). FCCW also "must 'track[] and trend[]' its

performance over time and share that information with the Parties through counsel on a quarterly

basis" for as long as the Settlement Agreement is in effect. *Id.* (quoting Settlement Agreement §

III(b)(2)(xxi) ("Performance shall be tracked and trended and shared with the Parties through

counsel on a quarterly basis while this Settlement Agreement is in effect.")).

On February 5, 2016, "the Court entered a final judgment order that conclusively

approved the agreement, declared it operative, and retained jurisdiction to enforce it." *Scott*, 355

F. Supp. 3d at 477. "The final judgment order—drafted jointly by the parties and entered at their

request—specifically ordered that the Settlement Agreement . . . was effective as of that date,"

*id.* at 492, its "implementation was to begin 'no later than' the effective date, and—unless

3

otherwise provided—implementation was to be completed 'within 30 days of' the effective date," *id.* at 495. "That deadline was March 6, 2016." *Id.* at 502.

On March 5, 2020, Plaintiffs filed a motion seeking "production of certain documents and data retained by Defendants and prepared, referred to, relied upon, and maintained under" § III(b)(2)(xxi). Pls.' Br. in Supp. of Mot. to Enforce 1–2, ECF No. 652. They argued that this provision "'essentially entitle[d]'" them *both* to Defendants' performance reports *and* to the raw "'data underlying the analysis of FCCW's performance'[] because merely requiring Defendants to produce 'unsupported, unverifiable statements'" about their progress would not help Plaintiffs advance the Settlement Agreement's specific goals. Mem. Op. of May 7, 2020, at 3 (quoting Pls.' Br. in Supp. of Mot. to Enforce 3–4). According to Plaintiffs, Defendants never produced these documents on a quarterly basis in the four years since the Agreement took effect, and they "generally refused" to share any information at all except on two occasions before court hearings in June 2018 and January 2020. *See* Pls.' Br. in Supp. of Mot. to Enforce 2 & n.1; Mem. Op. of May 7, 2020, at 3 (citing Pls.' Br. in Supp. of Mot. to Enforce 4–7). Defendants responded that Plaintiffs were not entitled to either the raw data or information about how FCCW measured its performance on each aspect of the obligations imposed by the Settlement Agreement. *See* Mem. Op. of May 7, 2020, at 4. Rather, those measures "need[ed] only be approved by the Compliance Monitor." *Id.*

On May 7, 2020, Judge Moon granted in part and denied in part Plaintiffs' motion to enforce § III(b)(2)(xxi). *See id.* at 1. He concluded that the "most natural reading of the Settlement Agreement lies in between what Plaintiffs [were] requesting and the position advanced by Defendants." *Id.* at 5. On one hand, "§ III(b)(2)(xxi) ha[d] required and continue[d] to require FCCW to track and trend its performance over time and to share such information with

4

the Parties through counsel on a quarterly basis" since March 2016. *See id.* at 7. Defendants had

"not been doing this" and were "therefore in violation of the Settlement Agreement." *Id.* But,

Judge Moon "agree[d] with Defendants that nothing in § III(b)(2)(xxi) require[d] the production

of underlying raw data," as Plaintiffs requested. *Id.* at 8. The section's "language contemplate[d]

that FCCW's performance assessment on each of its obligations imposed by the Settlement

Agreement that is shared with the Parties [would] refer to and incorporate certain underlying

data, such as by including aggregate statistics or other data benchmarks; and describe whether it

[was] based on a focused or comprehensive medical record review." *Id.* Judge Moon "declined to

further detail the metes and bounds" of FCCW's information-sharing obligations under §

III(b)(2)(xxi), but he "encourage[d] the parties to work cooperatively to ensure (1) Plaintiffs

receive[d] timely, fulsome quarterly reports," and (2) Defendants would "not be unduly burdened

with requests for performance information that [were] overbroad, duplicative, or of marginal

utility given other sources of data and information available to Plaintiffs." *Id.* at 9. He ordered

the parties, before May 14, 2020, to "meet and confer regarding FCCW's future compliance with

§ III(2)(b)(xxi)" so they could address that issue at an upcoming status conference. *Id.* Finally,

Defendants needed to "be prepared to share with the parties [FCCW's] first quarterly submission

no later than August 1, 2020." *Id.*

The parties met and conferred by telephone on May 12, 2020. *See* Tr. of May 13, 2020

Status Conf. 35–36, ECF No. 697. During that call, Plaintiffs' counsel gave Defendants' counsel

seven categories of information or documents that Plaintiffs thought fell within the scope of

Judge Moon's May 7, 2020 memorandum opinion enforcing § III(b)(2)(xxi). *See id.* at 35–36.

Defendants' counsel said they would respond as soon as they could discuss the categories with

FCCW's new medical director. *See id.* at 35–37, 42–43. On June 24, however, Plaintiffs

5

informed Judge Moon that Defendants still "refused to answer any questions about what categories of documents they intended to produce by August 1, 2020." Order of July 2, 2020, at 2, ECF No. 721; *see* Pls.' Mot. for Mediation, ECF No. 708. Defendants did not disagree, but noted that they were "actively preparing, collecting[,] and amassing the necessary information and documents" to submit their first quarterly report by the Court's deadline. Order of July 2, 2020, at 2; *see* Defs.' Resp. in Opp'n to Pls.' Mot. for Mediation 2, ECF No. 715. Judge Moon saw "no reason why Defendants could not have, within [the past seven weeks], at least identified the documents they intended to produce." Order of July 2, 2020, at 2. "Without the full engagement of the parties in the cooperative process envisioned by the Court," Judge Moon found that Plaintiffs had shown good cause to refer the discovery dispute to the undersigned Magistrate Judge for mediation. *Id.* I met with the parties on July 16, July 27, and July 31, 2020. ECF Nos. 730, 737, 743. Defendants made their first quarterly production before the Court's August 1st deadline. Defs.' Resp. in Opp'n to Pls.' Supp'l Pet. for Att'ys' Fees 3, ECF No. 745.

\*

Plaintiffs filed their attorneys' fee petition and supporting materials on May 18, 2020. ECF Nos. 688, 689. They initially sought $11,149.20 for 48.9 hours of work, billed at $228 per hour, done by attorneys Shannon Ellis (3.9 hours), Ted Howard (6.0 hours), Mirela Missova (33.2 hours), and Tristin Brown (5.8 hours). *See* Pls.' Br. in Supp. of Pet. for Att'ys' Fees 10, ECF No. 689; Decl. of Mirela Missova, Esq. ¶ 4 (claiming 33.2 total hours, rather than the 38.5 hours reflected on her timesheet, and explaining that she "exercised billing discretion to remove 5.3 hours of time spent in preparing for the oral argument" to reach her final figure), ECF No. 689-1, at 3. Defendants responded that Plaintiffs' timesheets reflected some "duplicative [and] excessive hours" spent on the motion to enforce, including all of Ms. Brown's claimed time, and

that Ms. Brown's hourly rate should be cut to $170 because she had been licensed to practice law for fewer than six months when she did this work. *See generally* Defs.' Resp. in Opp'n to Pls.' Pet. for Att'ys' Fees 2–8, ECF No. 702. They urged the Court to award $6,862.80 for 30.1 hours of work performed by Ms. Ellis (0.9), Mr. Howard (6.0), and Ms. Missova (23.2). *See id.* at 8.

In reply, Plaintiffs agreed to cut the 2.4 hours ($547.20) that Ms. Brown spent editing their motion to enforce and listening to oral argument. *See* Pls.' Reply in Supp. of Pet. for Att'ys' Fees 5–6, ECF No. 705; T. Brown Timesheet 1 (entries of Feb. 24 and Apr. 6, 2020), ECF No. 689-1, at 11. They also agreed to subtract 0.5 hours ($114.00) for time Ms. Ellis spent on potentially noncompensable tasks. *See* Pls.' Reply in Supp. of Pet. for Att'ys' Fees 7–8; Defs.' Resp. in Opp'n to Pls.' Pet. for Att'ys' Fees 7–8 (calling the court clerk, filing documents, and revising billing records); S. Ellis Timesheet 1 (entries of Mar. 23, Mar. 26, and May 11, 2020), ECF No. 689-3, at 4; *cf. Brown v. Mountainview Cutters, LLC*, 222 F. Supp. 3d 504, 514 (W.D. Va. 2016) (explaining that "purely clerical tasks," such as filing documents, making logistical phone calls, and calculating mileage fees, are ordinarily part of a law office's overhead, which is covered in the hourly rate, and therefore "should be not be compensated for at all" under § 1988). However, Plaintiffs added 4.2 hours ($957.60) for time that Ms. Ellis and Ms. Missova spent drafting the reply brief supporting their attorneys' fee petition. *See Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 77 (4th Cir. 1995) (noting that "time spent defending entitlement to attorney's fees is properly compensable under § 1988," but the district court has "discretion to determine exactly what amount would compensate the party sufficiently for the time spent on the fees phase of a lawsuit"). Thus, Plaintiffs' initial motion for attorneys' fees, as amended by their reply brief, sought **$11,445.60** for **50.2 hours** of work on the enforcement motion billed by four attorneys:

7

| Attorney | Hours Claimed (Initial) | Hourly Rate Claimed | Fee Claimed (Initial) | Exhibit ECF Nos. |
|---|---|---|---|---|
| Shannon Ellis | 4.6 | $228 | $1,048.80 | 689-3, at 1–4 |
| Ted Howard | 6.0 | $228 | $1,368.00 | 689-2, at 2–8 |
| Mirela Missova | 36.2 | $228 | $8,253.60 | 689-1, at 2–9; 705-1, at 2–3 |
| Tristin Brown | 3.4 | $228 | $775.20 | 689-1, at 11 |
| **Totals** | **50.2** | | **$11,445.60** | |

Pls.' Reply in Supp. of Pet. for Att'ys' Fees 2, 8.

On July 23, 2020, Plaintiffs filed a supplemental petition seeking an additional $957.60 for the 4.2 hours that Ms. Ellis spent trying to "cooperatively engage" Defendants in discussions about "what categories of documents they intended to produce" before the Court's August 1st deadline and "drafting Plaintiffs' [contested] motion for mediation after that correspondence proved fruitless." Pls.' Supp'l Pet. for Att'ys' Fees 2, ECF No. 734; *see* S. Ellis Supp'l Timesheet, ECF No. 734-1, at 1. Accordingly, they seek a total of **$12,403.20** in fees for **54.4** hours of work done by four attorneys:

| Attorney | Hours Claimed (Final) | Hourly Rate Claimed | Total Fee Claimed (Final) | Exhibit ECF Nos. |
|---|---|---|---|---|
| Ellis | 8.8 | $228 | $2,006.40 | 689-3, at 1–4; 734-1, at 1–2 |
| Howard | 6.0 | $228 | $1,368.00 | 689-2, at 2–8 |
| Missova | 36.2 | $228 | $8,253.60 | 689-1, at 2–9; 705-1, at 2–3 |

| Brown | 3.4 | $228 | $775.20 | 689-1, at 11 |
|---|---|---|---|---|
| **Totals (Final)** | **54.4** | | **$12,403.20** | |

*See id.*; Pls.' Reply in Supp. of Pet. for Att'ys' Fees 8.

Defendants responded that the neither Judge Moon's May 7, 2020 memorandum opinion nor the Settlement Agreement authorized these additional attorneys' fees because they were not "incurred in bringing" Plaintiffs' partially successful motion to enforce § III(b)(2)(xxi). Defs.' Resp. in Opp'n to Pls.' Supp'l Pet. for Att'ys' Fees 1, 3, ECF No. 745; *see* Mem. Op. of May 7, 2020, at 9 (granting in part Plaintiffs' motion to enforce and taking under advisement their request for attorneys' fees); Settlement Agreement § V(2) ("In the event the Plaintiffs prevail in the prosecution of such enforcement action, they may petition the Court for an award of their reasonable costs and attorneys' fees incurred in bringing the action."). They also noted that Plaintiffs' mediation request was "premature" and "did not result in any substantive resolution" because, "[e]ven after multiple sessions" with me, "the parties still disagreed as to what categories of documents should be [included] in the [first] quarterly production." Defs.' Resp. in Opp'n to Pls.' Supp'l Pet. for Att'ys' Fees 2–3. Plaintiffs did not dispute Defendants' assertions, but argued that they nonetheless should recover attorneys' fees for time spent trying "to effectuate the relief they obtained" through Judge Moon's memorandum opinion "partially granting their enforcement motion." Pls.' Reply in Supp. of Supp'l Pet. for Att'ys' Fees 1, ECF No. 749. Essentially, Plaintiffs argued that Ms. Ellis should not have been "forced" to send Defendants' counsel two letters about the quarterly document production (1.1 hours) or ask the Court to refer the dispute to mediation (3.1 hours). *See id.* at 2; S. Ellis Supp'l Timesheet 1 (entries of June 3 and June 12, 2020, and June 18–July 2, 2020).

## II. The Legal Framework

"When a litigant files suit in a court in the United States, he or she will typically pay the costs associated with hiring an attorney. This is the 'American Rule' and it governs litigation in federal courts 'absent explicit congressional authorization' to the contrary." *Wilkins v. Gaddy*, 734 F.3d 344, 349 (4th Cir. 2013) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814–15 (1994)). Congress has "partially abrogate[d] the American Rule" by granting district courts discretion "to award [reasonable] attorneys' fees from state coffers to the prevailing party in a [§ 1983] civil rights action." *Id.* (citing 42 U.S.C. § 1988(b)); *see also Brandon v. Guilford Cty. Bd. of Elections*, 921 F.3d 194, 198 (4th Cir. 2019). "But what Congress provides, Congress can adjust or take away." *Wilkins*, 734 F.3d at 349. It did that for a certain class of civil rights cases where attorneys' fees are authorized under § 1988—i.e., those brought by any person who was a prisoner when she filed suit—by setting limits on how the court calculates attorneys' fees paid to a prevailing plaintiff. 42 U.S.C. § 1997e(d)(1)–(4); *Wilkins*, 734 F.3d at 349. As relevant here, the Prison Litigation Reform Act ("PLRA") provides that "[n]o award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established under [the Criminal Justice Act ('CJA'), 18 U.S.C. § 3006A,] for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3) (citing 18 U.S.C. § 3006A(d)(1)).

"The term 'prevailing party,' as used in § 1988(b) . . . , is a 'legal term of art'" not defined by statute. *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 274 (4th Cir. 2002) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001)). In the Fourth Circuit, a "prevailing" plaintiff must "receive at least some relief on the merits" of her claim, *Hewitt v. Helms*, 482 U.S. 755, 760 (1987), that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff," *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (per curiam) (quoting *Farrar*

10

*v. Hobby*, 506 U.S. 103, 111–12 (1992)). *See Reyazuddin v. Montgomery Cty., Md.*, No. 19-2144, 2021 WL 709593, at *2–3 (4th Cir. Feb. 24, 2021) (published decision); *Doe v. Kidd*, 656 F. App'x 643, 652–53 (4th Cir. 2016) (citing *Farrar*, 506 U.S. at 111–12). "This change must [also] be marked by 'judicial *imprimatur*'" which, if necessary, can be used to enforce the new legal relationship between the parties. *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016) (quoting *Buckhannon*, 532 U.S. at 605); *see Smyth*, 282 F.3d at 282–83.

**

The parties do not contest that Plaintiffs were "the prevailing party" in their action to enforce § III(b)(2)(xxi); that they are entitled to recover from Defendants reasonable attorneys' fees that were directly and reasonably incurred in bringing that enforcement action; and that the PLRA caps counsel's hourly rate at $228 for compensable work performed after January 1, 2020. Plaintiffs bear the burden of demonstrating the amount sought is reasonable considering the facts in their case. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see Scott v. Clarke*, 2020 WL 7220571, at *10 (W.D. Va. Mar. 12, 2020) (Hoppe, M.J.) ("Having established 'entitlement to *an* award' of attorney's fees in the enforcement phase, Plaintiffs' burden now is to produce appropriate documentation showing they've claimed a reasonable number of hours for their work." (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)), *adopted as modified on other grounds by* 2020 WL 2771949 (W.D. Va. May 28, 2020) (Moon, J.).

The Fourth Circuit follows a three-step process to calculate a reasonable attorneys' fee award. *See McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2014). First, the court determines the lodestar figure by multiplying the number of reasonable hours expended by a reasonable hourly rate. *Id.* Plaintiffs "bear[] the burden of . . . documenting the appropriate hours expended and hourly rates," *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 709 (E.D. Va.

11

2012) (citing *Hensley*, 461 U.S. at 437), and their counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," *Hensley*, 461 U.S. at 434. The court's decision about "what constitutes a 'reasonable' number of hours and rate," *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009), is guided by twelve familiar factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (citing *Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)); *see also McAfee*, 738 F.3d at 88–89 & n.5. Courts "indulge[] a 'strong presumption' that the lodestar number represents a reasonable attorney's fee" in the normal run of cases. *McAfee*, 738 F.3d at 88–89 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)). Second, "the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Finally, the court should award some percentage of the remaining amount, depending on the degree of success" the plaintiff enjoyed. *Id.* at 88 (internal quotation marks and citation omitted). The court may apply the *Johnson* factors throughout this process as it deems reasonable and appropriate. *See id.* at 89.

### III. Discussion

A.    *Lodestar Figure*

1.    *Hourly Rates*

Plaintiffs seek recompence at $228.00 per hour for work performed by attorneys Ellis, Howard, Missova, and Brown. They bear the burden "to show that the requested hourly rates are

consistent with the prevailing market rates in the relevant community for the type of work" performed in this case. *McAfee*, 738 F.3d at 91 (quotation marks omitted). "The relevant market for determining the prevailing rate is ordinarily the community" where the district court sits. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). Here, the legal markets in central and western Virginia provide the benchmark for establishing reasonable hourly rates in the Charlottesville Division, even though three of Plaintiffs' four attorneys were from Washington, D.C. *Scott*, 2020 WL 7220571, at *5; *Scott v. Clarke*, 2014 WL 1463755, at *5–6 (W.D. Va. Apr. 15, 2014) (Moon, J.) (rejecting Plaintiffs' "plausible arguments why Washington, D.C. could be used as the relevant legal market to establish reasonable rates for counsel's services" on a successful motion to compel discovery, but concluding that "[g]iven Mr. Howard's experience and qualifications, he [was] entitled to at least $400 per hour for his services in this legal community"). Prevailing rates "may be established through affidavits reciting the fees of counsel with similar qualifications, information concerning fee awards in similar cases, and/or specific evidence of counsel's billing practice." *Freeman v. Potter*, No. 7:04cv276, 2006 WL 2631722, at *4 (W.D. Va. Sept. 13, 2006) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)). A court may also take "judicial notice of the rates awarded in prior cases and the court's own familiarly with the rates prevailing in the district." *Rogers v. Summit Receivables*, No. 3:17cv69, 2018 WL 1161144, at *4 (W.D. Va. Mar. 5, 2018) (quoting *Farbotko v. Clinton Cty.*, 433 F.3d 204, 209 (2d Cir. 2005)); *see, e.g.*, *Scott*, 2014 WL 1463755, at *5–6 (looking to counsel's declarations and hourly rates in similar cases).

Plaintiffs maintain that the "maximum hourly rate" established for CJA counsel during the relevant period—i.e., February through July 2020—was $152.00, which results in a "PLRA-capped rate" of $228 per hour of attorney time. Pls.' Br. in Supp. of Pet. for Att'ys' Fees 5.

Defendants do not contest this hourly rate for most counsel, *see generally* Defs.' Resp. in Opp'n to Pls.' Pet. for Att'ys' Fees 2–8, but they assert it is too high for work performed by Tristin Brown, Esq., who graduated from law school in May 2019 and was admitted to the bar in January 2020, *id.* at 2–3. *See* Missova Decl. ¶ 8. They propose Ms. Brown's hourly rate should be cut to $170.00, which has been found to be "an appropriate rate for a recent law school graduate in the Western District of Virginia." Defs.' Resp. in Opp'n to Pls.' Pet. for Att'ys' Fees 3 (citing *Doe v. Alger*, No. 5:15cv35, 2018 WL 4655749, at *4 (W.D. Va. Sept. 27, 2018) (Dillon, J.)); *see also* Defs.' Br. in Opp'n to Pls.' Pet. for Enf't Phase Att'ys' Fees & Costs Ex. 1, Aff. of Jeff W. Rosen, Esq. ¶ 12 (attesting that $180 is a "reasonable and customary hourly rate for a second year associate attorney" in this market), ECF No. 602-1, at 9–10.

Plaintiffs respond that the parties in *Doe v. Alger* did not contest the first-year associate's proposed hourly rate and, in any event, this Court has found "that $220.50 per hour for compensable work performed by any attorney in this case between January 2017 and June 2019 [was] reasonable and consistent with the PLRA's hourly rate cap for fees sought under § 1988." Pls.' Reply in Supp. of Pet. for Att'ys' Fees 3 (quoting *Scott*, 2020 WL 7220571, at *6) (emphasis omitted). "This included work performed by [Maggie] Yates, an attorney who . . . graduated from law school in 2017 and," according to Plaintiffs, "therefore had skills and experience at the beginning of her time on the case comparable to Ms. Brown's current skills and experience." *Id.* But, Plaintiffs overlook that Ms. Yates's hourly rate was supported by a senior attorney's declaration showing that she "had relevant substantive experience" before joining Plaintiffs' legal team in 2017, *Scott*, 2020 WL 7220571, at *6 (citing Decl. of Angela Ciolfi, Esq. ¶ 58 (June 12, 2019), ECF No. 583-18, at 18), plus eighteen months' post-graduate legal experience by the time trial started in June 2018, *see id.* at *11; Ciolfi Decl. ¶ 58; M. Yates

14

Timesheet 2–4, ECF No. 583-22. Ms. Brown, on the other hand, had been licensed to practice

law for at most three months while she worked on this case in early 2020, and Plaintiffs have not

submitted any information about her substantive training or experience. *See* Missova Decl. ¶ 8.

Ms. Brown also spent all her claimed time on phone calls with co-counsel (1.4 hours) and

researching one issue for Plaintiffs' reply brief (2 hours). *See* T. Brown Timesheet, ECF No.

689-1, at 11 (entries of Feb. 21, Mar. 19, Mar. 20, and Mar. 25, 2020). There is nothing "unique

or remarkable about the work," *U.S. Home Corp. v. Settlers Crossing, LLC*, Civ. No. 08-1863,

2018 WL 4691076, at *10 n.12 (D. Md. Oct. 1, 2018) (reducing first-year associate's rate from

$400 to $175 per hour), Ms. Brown performed that might justify paying her the same rate as her

more experienced colleagues, *see Airlines Reporting Corp. v. Academic Travel Servs. Int'l*, No.

1:11cv965, 2012 WL 13020807, at *2 (E.D. Va. July 12, 2012) (finding that "$300 an hour for a

first-year associate working on a routine default judgment matter [was] unreasonable" and

reducing rate to $180 per hour). *Cf. Essex v. Randall*, No. Civ. A. DKC20033276, 2006 WL

83424, at *3 (D. Md. Jan. 11, 2006) ("To the extent that the law firm used this case as a learning

experience for . . . the first-year associate, her time should not billed.").

　　　"The Court would 'abuse its discretion by awarding the hourly rates requested by

Plaintiffs in the absence of satisfactory specific evidence of the prevailing market rates' in the

Western District of Virginia for [attorneys] 'with similar skill and for similar work.'" *Scott*, 2020

WL 7220571, at *7 (quoting *Robinson*, 560 F.3d at 244); *see also Grissom v. The Mills Corp.*,

549 F.3d 313, 322–23 (4th Cir. 2008). Plaintiffs have not cited any evidence or authority

suggesting that $228 an hour is reasonable compensation in this community for a newly licensed

attorney who is less than a year out of law school. *See Lismont v. Alexander Binzel Corp.*, 47 F.

Supp. 3d 443, 448–49 (E.D. Va. 2014) (finding that $170 was a reasonable hourly rate for an

attorney who had "been practicing patent law for less than a year"). Accordingly, based on the record before me, I find that $170 is a reasonable hourly rate for the work Ms. Brown performed on this case in early 2020. *See Doe*, 2018 WL 4655749, at *4. The requested rate of $228 per hour is reasonable for Ms. Ellis, Mr. Howard, and Ms. Missova. *Scott*, 2020 WL 7220571, at *5–6; *Scott*, 2014 WL 1463755, at *6.

2.    *Hours Claimed*

Next, Plaintiffs bear the burden of "documenting the appropriate hours expended" by their attorneys on the enforcement phase. *Project Vote*, 887 F. Supp. 2d at 709 (citing *Hensley*, 461 U.S. at 437). Adequate documentation requires "reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity" so the court can "weigh the hours claimed and exclude hours that were not reasonably expended." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006) (cleaned up). Additionally, "[c]ounsel should make a good faith effort," before submitting their billing records, to "exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* It may do so "(i) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved." *Guidry*, 442 F. Supp. 2d at 294; *see Fox*, 563 U.S. at 838 (noting that "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time," insofar as their goal is "not [to] achieve auditing perfection"). "The essential goal in shifting fees" to a prevailing party "is to do rough justice," *Fox*, 563 U.S.

16

at 838, and find "a fee that is sufficient to induce a capable attorney to undertake the

representation of a meritorious civil rights case" without producing a windfall, *Perdue*, 559 U.S.

at 552. *See Hensley*, 461 U.S. at 430 n.4.

        a.     *Merits Briefing & Oral Argument*

For the most part, Plaintiffs' billing records are sufficient to justify many, but not all, of

the hours that four attorneys spent researching, briefing, and arguing their motion to enforce the

Settlement Agreement's quarterly reporting provision. That motion presented a straightforward

question of how to interpret one "small section of the settlement agreement," Pls.' Br. in Supp. of

Pet. for Att'ys' Fees 13; *see also* Pls.' Br. in Supp. of Mot. to Enforce 2, and there was no

dispute that FCCW had not complied with the provision's plain text, *see* Mem. Op. of May 7,

2020, at 7.

Defendants assert that Plaintiffs' opening and reply "briefs—containing eight and six

pages of uncomplicated argument, respectively—should not have taken more than 10 hours to

prepare." Defs.' Resp. in Opp'n to Pls.' Pet. for Att'ys' Fees 5; *see* Pls.' Br. in Supp. of Mot. to

Enforce 1–8; Pls.' Reply in Supp. of Mot. to Enforce 1–6, ECF No. 664. They ask the Court to

cut Ms. Missova's time "by 2.2 hours for the opening brief and 4.6 hours for the reply brief," *id.*,

but they do not explain how they picked those figures, *cf. Scott*, 2020 WL 7220571, at *14

(noting that Defendants challenged Plaintiffs' "decision to use January 10, 2017, as the 'bright-

line' start date for enforcement-phase billing," but they did not explain why the Court should

instead use their chosen start date of May 2017). Plaintiffs respond that Ms. Missova, who was

"a relatively new attorney" to this "complex" and protracted litigation, Pls.' Reply in Supp. of

Pet. for Att'ys' Fees 4, drafted and edited both briefs with substantive input from more senior

attorneys, and that Plaintiffs are not seeking compensation for most of those attorneys' work, *see*

*id.* at 4–5; Supp'l Decl. of Mirela Missova, Esq. ¶¶ 3–4, ECF No. 705-1, at 2–3. Ms. Ellis, for

example, did not bill for time she spent on an "initial first draft" of Plaintiffs' opening brief that

"served as the baseline" for Ms. Missova's version. Pls.' Reply in Supp. of Pet. for Att'ys' Fees

4–5; Missova Supp'l Decl. ¶ 3. But Plaintiffs do not explain why an attorney with six years'

post-graduate legal experience, Missova Decl. ¶ 2, needed 9.3 hours to prepare their motion and

eight-page opening brief, *see* M. Missova Timesheet 1 (entries of Feb. 25–26, Feb. 28, and Mar.

2–5, 2020), plus another 11.2 hours to prepare their six-page reply brief, *see id.* (entries of Mar.

22–26, 2020). *Cf. Lismont*, 47 F. Supp. 3d at 451–52 (finding that 24.9 hours of attorney time

preparing a ten-page brief presenting "straight-forward and uncontroversial" arguments on

"uncomplicated" motion for protective order was "excessive" and not supported by party's

billing records). The "complicated nature of th[is] case" generally, Pls.' Reply in Supp. of Pet.

for Att'ys' Fees 5, does not justify the 20.5 hours that Ms. Missova spent briefing a relatively

straightforward question about how to interpret one provision in a contract drafted jointly by the

parties, *see Lismont*, 47 F. Supp. 3d at 451–52. *Cf. Shammas v. Focarino*, 990 F. Supp. 2d 587,

593–94 (E.D. Va. 2014) (finding that 29 hours of attorney time spent briefing a motion for

discovery sanctions was "clearly excessive and unreasonable" where relevant "facts were neither

disputed nor contested and no novel legal issue was presented," and allowing 6.0 hours for the

same).The decision to reduce an attorneys' hours based on excessive or unjustified time spent on

a legal task "falls soundly within the district court's proper discretion in determining an . . .

award" under § 1988. *Trimper*, 58 F.3d at 76–77; *see Grissom*, 549 F.3d at 320–21; *Guidry*, 442

F. Supp. 2d at 294–95. I find that 14.0 hours spent on briefing is reasonable considering Ms.

Missova's legal experience, the uncomplicated nature of the work billed, the fact that senior

members of Plaintiffs' "core legal team" with "necessary background knowledge" of the case

gave "thoughtful and substantive edits" and "other helpful feedback during the drafting and editing process," *id.* at 4, and Judge Moon's unequivocal rejection of Plaintiffs' central argument that they were entitled to FCCW's raw data in addition to the quarterly performance reports, *see* Mem. Op. of May 7, 2020, at 8. *Cf. Lismont*, 47 F. Supp. 3d at 451–52 (allowing 12.5 hours for attorney to prepare short brief supporting "uncomplicated" motion for protective order). Accordingly, I recommend cutting **6.5 hours** from Ms. Missova's total claimed time.

Mr. Howard, the most senior attorney on Plaintiff's litigation team still actively involved in their representation on a day-to-day basis, billed a total of 6.0 hours for reviewing, editing, and discussing Plaintiffs' motion and reply brief that Ms. Missova drafted. *See* Pls.' Br. in Supp. of Pet. for Att'ys' Fees Ex. B, Decl. of T. Howard, Esq. ¶¶ 5–6, ECF No. 689-2, at 3. His input was necessary because he "participated in negotiating and drafting" the provision that Plaintiffs were now trying to enforce. *Id.* ¶ 5; *see also* Defs.' Resp. in Opp'n to Pls.' Pet. for Att'ys' Fees 4–5 (acknowledging Mr. Howard's involvement in the briefing was reasonable). I find that Mr. Howard reasonably spent six hours on those tasks. *Cf. Kreuze v. VCA Animal Hosps., Inc.*, Civ. Act. No. 17-1169, 2019 WL 2107263, at *5–6 (D. Md. May 14, 2019) (allowing 7.8 hours for senior attorney to research, review, and edit a "straightforward" motion for sanctions and reply brief drafted by mid-level associate).

Defendants also assert that Ms. Missova and Mr. Howard could have handled the briefing themselves, and therefore Ms. Ellis should not be compensated for 1.0 hour that she also spent reviewing and editing Plaintiffs' filings. *See* Defs.' Resp. in Opp'n to Pls.' Pet. for Att'ys' Fees 5 (citing S. Ellis Timesheet 1).[1] I agree. When "multiple attorneys bill for completing the same work product and the contribution of each attorney is not justified, the billed hours should be

---

[1] Defendants mistakenly state that Ms. Ellis spent 3.4 hours on these tasks. *See* S. Ellis Timesheet 1 (entries of Feb. 27, Mar. 2, and Mar. 24, 2020).

reduced for excessiveness." *Crump v. U.S. Dep't of Navy ex rel. Mabus*, 245 F. Supp. 3d 692, 713 (E.D. Va. 2017) (citing *Rum Creek Coal*, 31 F.3d at 180); *see also Hudson v. Pittsylvania Cty., Va.*, No. 4:11cv43, 2013 WL 4520023, at *6 (W.D. Va. Aug. 26, 2013) ("Reduction of hours is warranted only if counsel unreasonably duplicate each other's work. Awards for time expended by two or more counsel are proper, provided they reflect the distinct contribution of each lawyer to the case." (citation omitted)). Mr. Howard is an "exceptionally well-qualified" attorney who served on Plaintiffs' "original litigation team in 2012–2014." *Scott*, 2020 WL 7220571, at *16; *see* Howard Decl. ¶¶ 4–5. His substantive work on Ms. Missova's drafts would have ensured Plaintiffs' filings "were as factually accurate and legally persuasive as possible," Howard Decl. ¶ 6, without adding unnecessary expenses. *See Trimper*, 58 F.3d at 76 ("[T]he law is clear that in seeking attorney's fees under [§] 1988, attorneys are under a duty to minimize expenses."); *Faircloth v. Colvin*, No. 2:13cv156, 2014 WL 5488809, at *9 (E.D. Va. Oct. 29, 2014) ("When a task or issue does not require the use of multiple attorneys, the Court should 'award fees for the time of one attorney.'" (quoting *Cox v. Reliance Standard Life Ins. Co.*, 179 F. Supp. 2d 630, 636 (E.D. Va. 2001)). Ms. Ellis has played a "significant role" in this case since 2017, Ellis Decl. ¶ 2, but Plaintiffs' exhibits do not show that she made "a distinct contribution" to the briefing by reviewing the same drafts that Mr. Howard did, *Hudson*, 2013 WL 4520023, at *7 (quotation marks omitted) (citing *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1360 (4th Cir. 1995)). *Cf. Scott*, 2020 WL 7220571, at *16 ("Plaintiffs have not shown why two or three of their most experienced attorneys could not handle the mediation themselves."). Accordingly, I recommend cutting **1.0 hour** from Ms. Ellis's total claimed time. *See Faircloth*, 2014 WL 5488809, at *9.

Finally, Ms. Missova claimed 5.2 hours to prepare for the April 6, 2020 telephonic hearing on Plaintiffs' enforcement motion.[2] *See* Missova Decl. ¶ 4 (explaining that she "exercised billing dissection to remove 5.3 hours of time spent in preparing for the oral argument" in claiming 33.2 total hours, rather than the 38.5 hours reflected on her timesheet); M. Missova Timesheet 1–2 (entries of Mar. 31, Apr. 1–3, and Apr. 5–6, 2020); Defs.' Resp. in Opp'n to Pls.' Pet. for Att'ys' Fees 6–7 & n.3; Pls.' Reply in Supp. of Pet. for Att'ys' Fees 7 (claiming an "already reduced total time of 5.2 hours" for Ms. Missova to prepare for the hearing). That hearing lasted twenty-five minutes. ECF No. 688; *see* S. Ellis Timesheet 1 (claiming 0.4 hours for hearing). Ms. Ellis, who served as second chair, claimed only 1.1 hours to prepare for this hearing. *See* S. Ellis Timesheet 1 (entries of Apr. 2 and Apr. 6, 2020). Again, Ms. Missova does not explain why a mid-level attorney for a prominent civil-rights organization, *see* Missova Decl. ¶ 2, took more than five hours to prepare for a short hearing on a motion and "briefs that she personally drafted," *Scott*, 2020 WL 7220571, at *17 (finding that mid-level associate who drafted Plaintiffs' "relatively straightforward" motion to compel and briefs unreasonably billed 5.5 hours to prepare for and participate in telephonic discovery hearing that lasted one hour, sixteen minutes). Accordingly, I recommend cutting an additional **3.2 hours** from Ms. Missova's total claimed time, *see* Defs.' Resp. in Opp'n to Pls.' Pet. for Att'ys' Fees 6.

---

[2] This figure comes from Defendants' response in opposition to Plaintiffs' initial attorneys' fees petition. Defs.' Resp. in Opp'n to Pls.' Pet. for Att'ys' Fees 6. Ms. Missova's timesheet shows that she spent at least 10.5 hours preparing for the motion hearing. *See* M. Missova Timesheet 1–2 (entries of Mar. 31 (claiming 2.2 hours), Apr. 1 (claiming 1.2 hours), Apr. 2 (claiming 2.0 hours), Apr. 3 (claiming 2.1 hours), Apr. 5 (claiming 1.5 hours), and Apr. 6 (claiming 2.2 hours for preparation, oral argument, and post-hearing "debrief with internal team")); Defs.' Resp. in Opp'n to Pls.' Pet. for Att'ys' Fees 6 n.3 (noting that "Ms. Missova's time spent preparing is reflected in entries for 3/31/20, 4/1/20, 4/2/20, 4/3/20, 4/5/20, and 4/6/20," and explaining Defendants "attribute[d] 1.5 hours of the 4/6/20 entry to preparation," 0.4 hours to oral argument, and 0.3 hours to the post-hearing debrief). Defendants calculated 5.2 hours of preparation time by subtracting 5.3 hours, Missova Decl. ¶ 4, from the 10.5 total hours on Ms. Missova's timesheet, *see* Defs.' Resp. in Opp'n to Pls.' Pet. for Att'ys' Fees 6 (citing Missova Decl. ¶ 4). In reply, Plaintiffs confirmed that they seek compensation for an "already reduced total time of 5.2 hours," or $1,185.60, for this work. *See* Pls.' Reply in Supp. of Pet. for Att'ys' Fees 7.

*Cf. Scott*, 2020 WL 7220571, at *17 (allowing four hours for mid-level attorney to prepare for discovery hearing). Ms. Ellis reasonably spent 1.1 hours preparing for the hearing. *See* Pls.' Reply in Supp. of Pet. for Att'ys' Fees 6.

      *b.*    *Correspondence & Motion for Mediation*

Plaintiffs have not shown they should be compensated for the 4.2 hours that Ms. Ellis spent corresponding with Defendants' counsel and briefing Plaintiffs' optional motion to refer to mediation their questions about what documents Defendants planned to include in their first quarterly production. Plaintiffs "prevailed" on their motion to enforce § III(b)(2)(xxi) because Judge Moon's May 7, 2020 Memorandum Opinion gave them "at least *some* relief on the merits," *Hewitt*, 482 U.S. at 760 (emphasis added), of their claim that Defendants were violating this provision by failing to share both FCCW's performance reports and the raw data used to prepare those reports, *see* Mem. Op. of May 7, 2020, at 5–8. Before that opinion issued, Plaintiffs had not received any such information on a quarterly basis. Afterwards, Plaintiffs were guaranteed to get FCCW's quarterly performance reports—but *not* the underlying raw data— beginning on August 1, 2020, and continuing for as long as the Settlement Agreement is in effect. Mem. Op. of May 7, 2020, at 7–8.

The Settlement Agreement says that Plaintiffs may initiate proceedings "seeking specific performance of the terms" of the agreement and, that "[i]n the event . . . Plaintiffs prevail in the prosecution of such enforcement action, they may petition the Court for an award of their reasonable costs and attorneys' fees *incurred in bringing* the action." Settlement Agreement § V(2) (emphasis added). Judge Moon's May 7 Memorandum Opinion ended the "enforcement action" that Plaintiffs brought "seeking specific performance" of § III(b)(2)(xxi). Plaintiffs have not shown that the letters and motion for mediation they drafted in June and July 2020 were

reasonably "incurred in bringing" this enforcement action, and they do not argue that those activities constitute a new enforcement action in which Plaintiffs should be considered the "prevailing" party. Accordingly, I recommend that the Court deny Plaintiffs' supplemental petition for attorneys' fees and further subtract **4.2 hours** from Ms. Ellis's total claimed time.

B.    *Summary of Adjustments*

Plaintiffs bear the burden of documenting the appropriate hourly rates for their attorneys and the number of hours expended on the litigation considering the facts and circumstances of this case. While Plaintiffs' counsel made some effort to exclude from their fee request hours that were excessive, redundant, unnecessary, or otherwise not properly billed to a paying client, *Hensley*, 461 U.S. at 434, their records do not fully justify the number of hours spent on the enforcement motion. Accordingly, I recommend the following adjustments to their proposed hours and rates:

| Attorney | Hours Claimed (Final) | **Reasonable Hours** | Hourly Rate Claimed | **Reasonable Hourly Rate** | Fee Claimed (Final) | **Reasonable Fee Award** |
|---|---|---|---|---|---|---|
| Ellis | 8.8 | **3.6** | $228 | **$228** | $2,006.40 | **$820.80** |
| Howard | 6.0 | **6.0** | $228 | **$228** | $1,368.00 | **$1,368.00** |
| Missova | 36.2 | **26.5** | $228 | **$228** | $8,253.60 | **$6,042.00** |
| Brown | 3.4 | **2.0** | $228 | **$170** | $775.20 | **$340.00** |
| **Totals** | 54.4 | **38.1** | | | $12,403.20 | **$8,570.80** |

C.    *Determination of Final Award*

The last step is to award some percentage of the lodestar figure to Plaintiffs depending on their degree of success. *McAfee*, 738 F.3d at 88. Typically, adjustments made at this step concern whether to increase the award because the lodestar figure is deemed insufficient to compensate the prevailing party based on its success. *See, e.g.*, *id.* Because "there is a 'strong presumption'

that the lodestar is reasonable," however, such upward departure is warranted only in rare

circumstances. *Perdue*, 559 U.S. at 554. Plaintiffs do not request an enhancement. Accordingly, I

recommend they be awarded **$8,570.80** for reasonable attorneys' fees incurred in bringing their

action to enforce § III(b)(2)(xxi) of the Settlement Agreement.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge

**GRANT in part** Plaintiffs' revised petition for attorneys' fees, ECF No. 688, and **DENY** their

supplemented petition, ECF No. 734.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and
Recommendation], any party may serve and file written objections to such
proposed findings and recommendations as provided by rules of court. A judge of
the court shall make a de novo determination of those portions of the report or
specified proposed findings or recommendations to which objection is made. A
judge of the court may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge. The judge may also receive
further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations

within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is

directed to transmit the record in this matter to the Honorable Norman K. Moon, Senior United

States District Judge.

The Clerk shall send a copy of this Report and Recommendation to the parties.

ENTERED: March 3, 2021

Joel C. Hoppe
United States Magistrate Judge