IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| **CYNTHIA B. SCOTT, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-36 |
| ) | |
| **A. DAVID ROBINSON, et al.,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' OCTOBER 2023 STATUS REPORT**

Defendants, by counsel, pursuant to the Court's March 16, 2020, Order, ECF No. 655, submit this Status Report in advance of the upcoming Status Conference scheduled for March 6, 2023. Pursuant to the Court's Order, this Status Report addresses:

> . . . areas in which the Compliance Monitor has found Defendants (1) currently non-compliant with the Settlement Agreement; (2) persistently only in partial compliance; and (3) areas where Defendants' compliance has been "downgraded" by the Compliance Monitor. For any such areas, the status reports shall address any discrete, concrete steps Defendants have taken or which can be taken to improve compliance.

ECF No. 655.

In September, the Compliance Monitor issued his Sixth Monitoring Report after visiting Fluvanna Correctional Center for Women ("FCCW") in June 2023. After the most recent round of monitoring by the current Compliance Monitor, the status of FCCW's compliance with the Settlement Agreement can be summarized as follows:



| **Standard** | **Rating as of Last Audit/Report** |
|---|---|
| Provider Staffing (III.2.b.i) | Compliant (4/23) |
| **Intake screening (III.2.b.ii)** | **Compliant (8/23)** |

- 1 -

629.0303\NHS
4860-9257-1014 .v2

| | |
|---|---|
| **Comprehensive Health Assessments (III.2.b.iii)** | **Compliant (8/23)** |
| **Sick call/Access (III.2.b.iv)** | **Compliant (8/23)** |
| Co-Pay (III.2.b.v) | Compliant (4/23) |
| Diagnosis and Treatment (III.2.b.vi) | Partially Compliant (4/23) |
| Emergency Response (III.2.b.vii) | Partially Compliant (4/23) |
| Infirmary Care/Conditions (III.2.b.viii) | Partially Compliant (4/23) |
| **Chronic Care (III.2.b.ix)** | **Partially Compliant (8/23)** |
| Infectious Disease/Waste (III.2.b.x) | Compliant (4/23) |
| Utilization Management (III.2.b.xi) | Compliant (4/23) |
| **Medications (III.2.b.xii)** | **Compliant (8/23)** |
| Medical Equipment (III.2.b.xiii) | Partially compliant (4/23) |
| **Physical Therapy (III.2.b.xiv)** | **Compliant (8/23)** |
| Medical Grievances (III.2.b.xv) | Compliant (4/23) |
| **Patient Access to Care Information (III.2.b.xvi)** | **Compliant (8/23)** |
| **Accommodation for Special Needs (III.2.b.xvii)** | **Partially compliant (8/23)** |
| Training (III.2.b.xviii) | Compliant (4/23) |
| Care/Release Terminally Ill (III.2.b.xix) | Partially compliant (4/23) |
| **Mortality Reviews (III.2.b.xx)** | **Partially Compliant (8/23)** |
| PM/CQI (III.2.b.xxi) | Partially compliant (4/23) |
| VDOC Performance Evaluation (III.2.b.xxii) | Compliant (4/23) |
| Operational Protocols/Policies | Compliant (4/23) |

<u>See</u> ECF No. 904-1, *30.



629.0303\NHS
4860-9257-1014 .v2

I. **Update Regarding EHR**

A vendor has been selected and a contract signed. While the vendor has not yet provided a "go live" date for the EHR, FCCW will be the first facility to have an active EHR. Thus far, the vendor has conducted two eight-hour sessions with VDOC staff to prepare for implementation of the EHR. In addition, the vendor visited FCCW on September 28 to develop plans for building out the EHR with registries and workflows adapted to FCCW's clinical practice.

II. **Response to Compliance Monitor's Ratings of Partial Compliance**

After the most recent round of monitoring, the Compliance Monitor upgraded the areas of Sick Call/Access, Medications, and Accommodations. The areas of Chronic Care and Mortality Reviews were downgraded from compliant to partially compliant.

Notably, Defendants and the Compliance Monitor have started holding monthly calls to discuss progress and outstanding issues in order to focus attention on remaining areas that need to be addressed to achieve full compliance.

    a. **Accommodations**

The Compliance Monitor upgraded this area from noncompliant to partially compliant. The Compliance Monitor noted his belief that more women at FCCW likely meet the criteria for MOUD. FCCW has started screening its population for OUD identify candidates for MAT using criteria from the American Society of Addiction Medicine ("ASAM") and the fifth edition of the Diagnostic and Statical Manual of Mental Disorders ("DSM V").

As to treatment options for MOUD, VDOC currently endorses all recommended agents consistent with ASAM guidelines. Treatment options for MOUD have been



629.0303\NHS
4860-9257-1014 .v2

developed based on guidance from the Justice Department, the ASAM, the National Institute on Drug Abuse, the Substance Abuse and Mental Health Services Administration, and the DSM-V.

Patients currently on treatment for MOUD continue without interruption upon reception to FCCW, upon verification and condition and treatment plan, unless there is a clinical indication to stop therapy or the patient requests discontinuation of agonist treatment. For continuation of medication for MOUD, FCCW uses buprenorphine as the primary medication for agonist pharmacologic treatment with extended-release injectable buprenorphine being the *preferred* formulation for *continuation* of agonist treatment for MOUD. Prescribers still retain the discretion to exercise clinical judgment and to prescribe as clinically indicated and consistent with national guidelines for MAT.

For induction of medication for MOUD, naltrexone continues to be the *preferred* formulation for treatment. Again, however, prescribers retain discretion to exercise clinical judgment and to prescribe as clinically indicated and consistent with national guidelines for MAT.

The Compliance Monitor reported that several women apparently reported that their MOUD medication had been "switched" without engaging them about their wishes. Defendants refuted these claims, and during the parties' meet and confer on September 29, Plaintiffs' counsel confirmed that none of the women had their medication switched, much less without consultation.



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\NHS
4860-9257-1014 .v2

The Compliance Monitor also referenced the lack of an addiction medicine specialist for consultation regarding MOUD and MAT.[1] During the parties' meet and confer, the Compliance Monitor clarified that this reference did not require Defendants to hire an addiction medicine specialist. Rather, the Compliance Monitor endorsed the idea of Defendants engaging with outside specialists at other medical systems (UVA, VCU, etc.) who can be available to providers at FCCW to provide consultation and perhaps even telehealth services to the patients. Defendants have formed an agreement with a psychiatrist in private practice who is board certified in addiction medicine to provide offsite and onsite consultations for patients on or eligible for MOUD.

Finally, as the Compliance Monitor noted, two additional treatment officers (total of 4) have been approved and added to FCCW's post audit. FCCW is in the process of filling these positions.

b. **Chronic Care**

The Compliance Monitor downgraded Chronic Care from compliant to partially compliant. Still, the Compliance Monitor noted "[s]everal areas of chronic care show continued improvement . . . ." The compliance Monitor surmised the drop to partially compliant was likely due to the "great amount of time [it] takes to review individual encounters in paper records." As noted above, the EMR vendor is fully engaged in

---

[1] The individual with whom the monitor spoke about MOUD for his report neglected to mention VDOC's ongoing partnership with Spectrum Health Systems. VDOC has for the past five years contracted with Spectrum Health Services, which is a not-for-profit organization, providing a comprehensive continuum of addiction treatment and behavioral health services and has successfully provided both substance use disorder counseling and medication for opiate use disorder treatments to the state of Massachusetts. VDOC recently extended and expanded their contract with Spectrum Health Services.

- 5 -

629.0303\NHS
4860-9257-1014 .v2

developing tuning its EHR platform to fit the practice needs of FCCW. In addition, all nurses and providers have received additional counseling on the requirements for chronic care visit documentation, specifically reporting, documenting, and managing abnormal blood pressures.

### c. Mortality Reviews

The Compliance Monitor downgraded this area due to the lack of assessment of palliative care in two mortality reviews. FCCW will include a self-critical assessment of palliative care, if necessary and where appropriate, in future mortality reviews.

## III. Meet and Confer

The parties and the Compliance Monitor held a meet and confer to discuss the Compliance Monitor's recent report regarding MOUD, the status of EHR implementation, the status of hiring a Director of Nursing, and FCCW's pain management program. Defendants advised that Director of Nursing had been hired on 9/11/23. The Compliance Monitor provided helpful insight regarding MOUD, particularly, as noted above, his thoughts regarding an addiction medicine consultant and tracking of patients who qualify for and either accept or decline MAT for opioid use disorder.

### CONCLUSION

As noted, Defendants continue to work collaboratively with the Compliance Monitor as he continues his assessment of FCCW's compliance with the Settlement Agreement, and Defendants appreciate the opportunity to communicate with the monitor on a more regular basis so that discrete issues can be identified and resolved quickly, and the monitor can lend feedback regarding process improvements.

Respectfully submitted,



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\NHS
4860-9257-1014 .v2

CHADWICK DOTSON, A. DAVID ROBINSON, STEPHEN HERRICK, GARRY JONES, and SHARON SHEFFIELD, M.D.

/s/
Katherine C. Londos (VSB #: 36848)
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:     540/772-9167
Email: klondos@faplawfirm.com
          nschnetzler@faplawfirm.com

Diane M. Abato
SAAG/Chief
Office of the Attorney General
Criminal Justice and Public Safety Division
202 North 9th Street
Richmond, VA 23219
Phone: 804-786-8191
Fax:    804-786-4239
Email: dabato@oag.state.va.us

*Counsel for Chadwick Dotson, A. David Robinson, Stephen Herrick, Garry Jones, and Sharon Sheffield, M.D.*



**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to all counsel of record.

/s/
Of Counsel


FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0303\NHS
4860-9257-1014 .v2